| | |
|---|---|
| DONALD J. TRUMP, Candidate for President of the United States of America, <br><br> Plaintiff, <br><br> vs. <br><br> THE WISCONSIN ELECTIONS COMMISSION, and its members, ANN S. JACOBS, MARK L. THOMSEN, MARGE BOSTELMAN, DEAN KNUDSON, ROBERT F. SPINDELL, JR., in their official capacities, SCOTT MCDONELL in his official capacity as the Dane County Clerk, GEORGE L. CHRISTENSON in his official capacity as the Milwaukee County Clerk, JULIETTA HENRY in her official capacity as the Milwaukee Election Director, CLAIRE WOODALL-VOGG in her official capacity as the Executive Director of the Milwaukee Election Commission, MAYOR TOM BARRETT, JIM OWCZARSKI, MAYOR SATYA RHODES-CONWAY, MARIBETH WITZEL-BEHL, MAYOR CORY MASON, TARA COOLIDGE, MAYOR JOHN ANTARAMIAN, MATT KRAUTER, MAYOR ERIC GENRICH, KRIS TESKE, in their official Capacities; DOUGLAS J. LA FOLLETTE, Wisconsin Secretary of State, in his official capacity, and TONY EVERS, Governor of Wisconsin, in his Official capacity, <br><br> Defendants. | Case No. 2:20-cv-01785-BHL |

**BRIEF IN SUPPORT OF MOTION OF NON-PARTIES WISCONSIN STATE CONFERENCE NAACP, DOROTHY HARRELL, WENDELL J. HARRIS, SR., AND EARNESTINE MOSS TO INTERVENE AND FOR LEAVE TO FILE A RESPONSIVE PLEADING ON THE SAME SCHEDULE AS DEFENDANTS**

The Wisconsin State Conference NAACP ("Wisconsin NAACP") (the "organizational Applicant") and Dorothy Harrell, Wendell J. Harris, Sr., and Earnestine Moss (together, the "individual Applicants") (collectively, "Applicants") submit this brief in support of their Motion to Intervene as Defendants as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, for permissive intervention under Rule 24(b); and for leave to file and serve their response to the Plaintiff's motion for injunctive relief on the same schedule set for Defendants.

**INTRODUCTION**

Plaintiff President Donald J. Trump has launched an all-out attack on the result of the November 3, 2020 Wisconsin General Election's balloting for President of the United States. The President seeks sweeping, unprecedented relief, including an order declaring that the Presidential election as carried out was itself a violation of the United States Constitution, and an unheard-of "remand" throwing Wisconsin's Presidential votes into the Wisconsin Legislature for disposition as the Legislature sees fit.

The President's arguments, if accepted, would nullify the votes cast by all of Wisconsin's voters on November 3. Faced with making up a state-wide 20,000 vote gap resulting from an election conducted with remarkable efficiency and transparency in the midst of a global pandemic, the President seeks the extraordinary and unprecedented relief of negating the result of an election that has already been certified by the Governor in accordance with established and unambiguous Wisconsin law. Worse, the President does so despite the fact that he lacks standing to bring this action; despite the fact that he knew long ago of all the purportedly "illegal" voting methods and means yet sat on his hands and allowed them all to proceed; and despite the fact that his claims are based on twisted, groundless interpretations of both federal and Wisconsin law. To disallow votes and negate certification of an election because of factually unsupported allegations of "voter fraud"

2

Case 2:20-cv-01785-BHL   Filed 12/03/20   Page 2 of 16   Document 17

at the cost of hundreds of thousands of votes lawfully cast—including the results in cities and counties with large numbers of Black voters that President-Elect Biden won—would be unprecedented and unlawful. Further, it is unconscionable and would severely undermine faith in the integrity of both this nation's elections and its judicial processes.

Applicants are critical participants in these actions: as of now, they would be the only parties in the case that represent the interests of individual voters, because all of the defendants are government entities or officials. They are well-situated to defend the rights of all Wisconsin voters, and in particular of Black voters, to have their votes count. The individual Applicants are voters whose lawfully cast ballots would be thrown out if President Trump obtains the extraordinary relief he seeks. The organizational Applicant, the Wisconsin NAACP, is a nonpartisan organization representing the interests of its nearly 4,000 Wisconsin members—whose votes would also be thrown out—dedicated to eliminating barriers to voting and increasing civic engagement among its members and in traditionally disenfranchised communities.

Applicants are entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) because: (1) Applicants filed this motion without delay; (2) Applicants have legally protectable interests in ensuring their lawfully cast ballots are counted; (3) the relief Plaintiff seeks would harm Applicants' interests; and (4) Applicants' interests—the counting of their votes—is distinct from those of the named Defendants. Fed. R. Civ. P. 24(a)(2); *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 746 (7th Cir. 2020).

Alternatively, Applicants should be permitted to intervene under Rule 24(b). Because Applicants seek leave to directly challenge Plaintiff's attempt to disenfranchise the entire Wisconsin electorate, their claims and defenses necessarily share common questions of law and fact with the main action, and Applicants' motion would neither delay nor prejudice the orderly adjudication of Plaintiff's claims. The NAACP-Pennsylvania State Conference, other public-

interest organizations, and individual voters were recently granted permissive intervention in a very similar case brought by the Trump campaign in the Middle District of Pennsylvania. *See Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-cv-02078-MWB, Document 72 (Nov. 12, 2020, M.D. Pa.) (attached as **Exhibit 1** to this brief).[1]

## FACTUAL BACKGROUND

A. **President Trump Seeks to Undo The 2020 Presidential Election in Wisconsin.**

Among other requests, President Trump seeks relief (1) declaring that Defendants' conduct of the 2020 Presidential Election in Wisconsin violated the Electors Clause of the United States Constitution; (2) declaring that the same conduct by Defendants also violated the Equal Protection and Due Process Clauses; (3) declaring that these alleged violations "likely tainted more than 50,000 ballots," more than enough to change the results of the election; (4) declaring that the proper remedy for these "constitutional violations" is to "remand" this case to the Wisconsin Legislature, where it would determine for itself a remedy; and "[e]njoining any actions inconsistent with the Court's declaration and judgment." (Compl. at pp. 71-72, Prayer for Relief.) Because the certification of President-Elect Biden's victory is obviously "inconsistent" with this relief, President Trump has mounted an all-out attack on the validity of an already-certified Presidential election in Wisconsin.

The President's desired remedies are as baseless as his factual allegations and legal arguments. Moreover, he waited too long to file this suit, and he lacks standing to bring his claims in the first place. Therefore, Applicants seek to intervene in this action to protect the interests of individual voters whose fundamental right to vote is under attack and to provide the perspective

---

[1] The Pennsylvania court did not address whether the intervenors there were entitled to intervention as a matter of right, "because [the court] readily find[s] that they satisfy the requirements for permissive intervention under Fed. R. Civ. P. 24(b)." *Boockvar*, at 1-2.

of an organization whose mission is to facilitate full and fair participation in the electoral process. Applicants have at least as much of an interest in the outcome of this litigation as Defendants. Indeed, as voters who stand to be disenfranchised if Plaintiff gets his unprecedented relief, the individual Applicants' and the NAACP's members' interest is arguably greater. *See Jansen v. City of Cincinnati,* 904 F.2d 336 (6th Cir. 1990) (allowing intervention as of right to class of Black fire fighters in challenge by white fire fighters to city's diversity hiring program, finding that the city would not adequately protect their interests).

> **B.  The Organizational Applicant Promotes the Interests of Voters and Has Members Who Would Be Disenfranchised by the Relief Plaintiff Seeks.**

The Wisconsin NAACP is a non-profit advocacy group for civil rights for Black Americans. It is a nonpartisan organization that represents nearly 4,000 Wisconsin members, many of whom are now at risk of being unlawfully deprived of their right to vote. The Wisconsin NAACP is dedicated to eliminating barriers to voting and increasing civic engagement among its members and in traditionally disenfranchised communities, and it expends substantial resources on voter education and turnout efforts. For this election, the Wisconsin NAACP's efforts have included providing accurate information to voters on how to cast in-person, mail-in, and absentee ballots to ensure that voters have a full and fair opportunity to participate in spite of the unprecedented circumstance of the election taking place during a global pandemic. (Harris Decl. ¶¶ 14-20.) The Wisconsin NAACP focuses on strategies, including litigation, to eliminate Black voter suppression in Wisconsin. (*Id.*) It has members who would be disenfranchised if Plaintiff obtained the relief he seeks, including members who voted in person in Dane County, members who voted by absentee ballot in Milwaukee County, and members who voted in other Wisconsin counties. (Harris Decl. ¶¶ 8, 17; Harrell Decl. ¶ 8; Moss Decl. ¶¶ 9-10.)

### C. The Individual Applicants Are Voters Who Would Be Disenfranchised by the Relief Plaintiff Seeks.

Individual Applicant Wendell J. Harris, Sr. ("Harris") lives in the City of Milwaukee, located in Milwaukee County, Wisconsin and is registered to vote at his current address in Milwaukee. (Harris Decl. ¶ 4.) Harris is also a member of the NAACP and has served as President of the Wisconsin NAACP since November 2019. (*Id*. ¶ 11.) For the November 3, 2020 General Election, Harris voted by absentee ballot because he was ill with COVID-19 at the time and was concerned about infecting others. (*Id*. ¶ 6.) Harris mailed his ballot from his Milwaukee residence on October 26, 2020. (*Id*. ¶ 5.)

Individual Applicant Earnestine Moss ("Moss") lives in the City of Madison, located in Dane County, Wisconsin and has been a registered voter at her current address in Madison since approximately 2006. (Moss Decl. ¶ 4.) She is also a member of the NAACP Dane County Branch 36 AB. (*Id*. ¶ 6.) For the November 3, 2020 General Election, Moss voted in person at her polling place in Madison. (*Id*. ¶ 7.)

Individual Applicant Dorothy Harrell ("Harrell") lives in the City of Beloit, located in Rock County, Wisconsin, and has been a registered voter at her current address in Beloit for nearly ten years. (Harrell Decl. ¶ 4.) Harrell is also the President of the Wisconsin NAACP Beloit Branch. (*Id*. ¶ 6.) For the November 3, 2020 General Election, Harrell voted early, in person at Beloit City Hall during the last week of October 2020. (*Id*. ¶ 7.)

## ARGUMENT

### I. APPLICANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Applicants satisfy the criteria to intervene as of right under Fed. R. Civ. P. 24(a). Intervention as of right must be granted when: (1) the motion to intervene is timely; (2) the proposed intervenors possess an interest in the subject matter of the action; (3) denial of the motion

6

Case 2:20-cv-01785-BHL   Filed 12/03/20   Page 6 of 16   Document 17

to intervene would affect or impair the proposed intervenors' ability to protect their interests; and (4) the proposed intervenors' interests are not adequately represented by the existing parties to the lawsuit. *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 746 (7th Cir. 2020); *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 700 (7th Cir. 2003). Applicants have satisfied those requirements.

### A. The Motion to Intervene Is Timely.

This motion, which is being filed one day after the President initiated this action, is undoubtedly timely. *See, e.g.*, *Uesugi Farms, Inc. v. Michael J. Navilio & Son, Inc.*, 2015 WL 3962007, at *2 (N.D. Ill. June 25, 2015) (motions filed 4-6 weeks after the complaint are timely); *Planned Parenthood of Wis., Inc. v. Kaul*, 384 F. Supp. 3d 982, 985 (W.D. Wis. 2019) (motion filed "approximately two and a half months after the complaint was filed and within a week of defendants' answer" was timely).

Applicants' prompt intervention will not delay the advancement of this action or otherwise prejudice the parties. Applicants are not seeking additional time for any proceedings, and there is therefore no plausible claim that intervention would cause any delay, far less any prejudicial delay. Under these circumstances, the motion is timely. *See Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 924 F.3d 375, 389–90 (7th Cir. 2019) (the "most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case.") (quoting *Nissei Sangyo America, Ltd. v. United States*, 31 F.3d 435, 439 (7th Cir. 1994)). Applicants are prepared to participate in the Scheduling Conference set for December 4, 2020 where they will ask the Court to grant this motion. Applicants' motion to intervene is timely under Rule 24.

**B. Applicants Have Sufficient Interest in This Litigation.**

Applicants are entitled to intervene if they have "direct, significant, and legally protectable" interests in the litigation. *Solid Waste Agency of N. Cook Cnty. v. United States Army Corps of Eng'rs*, 101 F.3d 503, 506 (7th Cir. 1996). The Seventh Circuit has embraced the Supreme Court's approach of "encouraging liberality in the definition of an interest." *Lopez-Aguilar*, 924 F.3d at 391.

The interest of the individual Applicants is simple: voters who legally cast ballots in the 2020 election have a significantly protectable interest in ensuring their ballots are counted, especially since there has been a recount that did not change the result and that result has been certified in accordance with Wisconsin law. *See Reynolds v. Sims*, 377 U.S. 533, 555 n.29 (1964) ("There is more to the right to vote than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth. The right to vote includes the right to have the ballot counted."); *see also League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421 (5th Cir. 2011) (finding a legally protectable interest where the intervenor sought to protect his right to vote). The Constitution "accords special protection for the fundamental right of voting, recognizing its essential role in the 'preservati[on] of all rights." *Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (citations omitted).

Likewise, the Wisconsin NAACP has an interest in protecting one of the core missions of the organization—ensuring that its members, and all citizens of Wisconsin, are given a full and equal opportunity to exercise their fundamental right to vote—to which it has dedicated considerable effort. The Wisconsin NAACP is committed to eliminating barriers to voting and increasing civic engagement, especially in communities that have been traditionally disenfranchised. In pursuit of that mission, it engages in robust voter-registration, voter-education,

8

Case 2:20-cv-01785-BHL   Filed 12/03/20   Page 8 of 16   Document 17

and get-out-the-vote activities, expending considerable resources to ensure that eligible voters in Wisconsin can exercise their right to vote.

Negating the result of a Presidential election and throwing it instead for decision into the Legislature would undermine the organization's voter-advocacy efforts by leading some voters to believe that voting is pointless because their ballots will not be counted, making it more difficult and more expensive for the Wisconsin NAACP to carry out its mission in the future. The threat of frustration of this core voter-enfranchisement mission gives the Wisconsin NAACP a significantly protectable interest in this litigation. *See, e.g.*, *Common Cause Ind. v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019) ("[A] voting law can injure an organization enough to give it standing by compelling [it] to devote resources to combatting the effects of that law that are harmful to the organization's mission.").

The Wisconsin NAACP also has an interest in ensuring that legally cast ballots are not discarded because that would force the organization to divert resources from other organizational priorities to educate members and other voters about their rights and the severe restrictions on voting that the President seeks to impose. *See, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610-12 (5th Cir. 2017) (finding standing where an organization was required to dedicate additional resources to assisting voters navigate the polls); *Fla. State Conf. of N.A.A.C.P. v. Browning,* 522 F.3d 1153, 1164-65 (11th Cir. 2008); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008); *Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020). If President Trump were to obtain the relief he seeks, the Wisconsin NAACP would be forced to commit resources immediately to explain to its members how their votes had been taken from them. In addition, the diversion of the organization's resources would continue into future years, as it would need to dedicate larger portions of its staff

and monetary resources toward ensuring that members' votes are not rejected. These efforts will come at the expense of other organizational priorities.

Finally, courts routinely find that public interest organizations, such as the Wisconsin NAACP, should be granted intervention in voting and other election-related cases, recognizing the significantly protectable interests such organizations have in the electoral process. *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111 (D. C. Cir. 2015); *Pub. Interest Legal Found., Inc. v. Winfrey*, 463 F.Supp.3d 795 (E. D. Mich. 2020); *Kobach v U. S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec.12, 2013); *LaRoque v. Holder*, No. 1:10-cv-00561 (D. D. C. Aug. 25, 2010). This case is no exception.

### C. Disposition of this Case May Impair Applicants' Interests.

Applicants also satisfy the third prong of the intervention analysis because the disposition of this action may impair or impede their ability to protect their interests. Importantly, applicants need show only that their interests **may** be impaired if intervention is denied, not that that their interests **will** be impaired. *See Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (holding that proposed intervenor need show only that its interest "may" be impaired).

When proposed intervenors have a protectible interest in the outcome of the litigation, courts have "little difficulty concluding" that their interests will be impaired. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). When considering this factor, courts "look[] to the 'practical consequences' of denying intervention." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977); *see also* Advisory Comm. to Fed. R. Civ. P. 24 1966 Amendment ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene. . . ."). Intervention is warranted if the proposed remedy threatens to harm intervenors. *See, e.g.*, *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th

Cir. 2009) (granting intervention when proposed intervenors "would be directly rather than remotely harmed by the invalidation" of challenged statute).

Here, the requested remedy and harm are extreme—President Trump seeks relief that would not just burden the individual Applicants and the Wisconsin NAACP's members but would completely disenfranchise **all** Wisconsin voters, stripping them of their fundamental right to vote. Applicants' rights thus undoubtedly stand to "be affected by a proposed remedy in this case." *See Seneca Res. Corp. v. Twp. of Highland, Elk Cty.*, 863 F.3d 245, 257 (3d Cir. 2017). The individual Applicants could have their lawfully cast ballots tossed out, and the Wisconsin NAACP is at risk of losing its ability to protect its interests and those of its members in voter participation.

These concerns of voter disenfranchisement are amplified with respect to the underrepresented minority communities that the Wisconsin NAACP serves. "Historically . . . throughout the country, voter registration and election practices have interfered with the ability of minority, low-income, and other traditionally disenfranchised communities to participate in democracy." *Ind. State Conf. of NAACP v. Lawson,* 326 F. Supp. 3d 646, 650 (S.D. Ind. 2018), *aff'd*, 937 F.3d 944 (7th Cir. 2019). The Wisconsin NAACP has worked to remedy those practices, in part, by ensuring that their voter-registration, voter-education, and get-out-the-vote efforts reach vulnerable and underserved minority communities. Thus, the organization has a significant interest in ensuring that Plaintiff's proposed relief does not harm those communities.

**D.     The Interests of Existing Defendants May Diverge from Those of Applicants.**

Applicants also meet the "minimal" burden of demonstrating that the existing parties in the litigation may not protect their interests. *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007) ("A party seeking intervention as of right must only make a showing that the representation 'may be' inadequate and 'the burden of making that showing should be treated as minimal.'") (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

Here, the interests of the Applicants are distinct and may diverge from those of the governmental Defendants. While the Defendants may have a generalized interest in upholding the law, they do not have a direct interest in protecting the validity of their own votes, as do the individual Applicants and the Wisconsin NAACP's members, or in ensuring the broad voter access that is fundamental to the mission of the Wisconsin NAACP. *See Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-4095- EFM-DJW, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (applicants who had shown their interests in protecting voter rights, particularly in minority and underprivileged communities, might have private interests that diverge from the public interest of the defendant Election Assistance Commission); *see also, e.g.*, *Meek v. Metro. Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993) ("The intervenors sought to advance their own interests in achieving the greatest possible participation in the political process. Dade County, on the other hand, was required to balance a range of interests likely to diverge from those of the intervenors."), *abrogated on other grounds by Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007).

Moreover, there are issues, positions, and claims that a governmental entity may omit that are critical to public-interest organizations such as the Wisconsin NAACP. While Defendants are broadly responsible for the management of elections, the interests of Applicants are very personal to these individuals, to the organization's members, and particularly to the Black community whose voting rights are under siege from President Trump. Their right to vote—indeed, their right to have the lawful votes they have already cast counted—is at risk.

## II. THE COURT SHOULD ALTERNATIVELY GRANT PERMISSIVE INTERVENTION.

Even if the Court determines that Applicants are not entitled to intervene as a matter of right, the Court should exercise its discretion to grant permissive intervention. The Court's discretion in this regard is broad, where: (1) the proposed intervenor's claim or defense and the main

action have a question of law or fact in common, and (2) the intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b)(1)(B) and (b)(3); *Bond v. Ultreras*, 585 F.3d 1061,1070–71 (7th Cir. 2009); *see also Sokaogon Chippewa Comm. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000) ("Permissive intervention under Rule 24(b) is wholly discretionary."). Even where courts deny intervention of right, they often find that permissive intervention is nonetheless appropriate. *See, e.g., City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 986 (7th Cir. 2011); *see also Solid Waste Agency*, 101 F.3d at 509.

Applicants easily satisfy the threshold requirements for permissive intervention here. Their motion is timely, and they seek to assert defenses that squarely address the factual and legal premise of the President's claims. *See Boockvar*, *supra*, at 2-3 (holding that NAACP and individual members satisfied the Rule 24(b) requirements for permissive intervention). Permissive intervention is especially appropriate because the Applicants will present a perspective on key legal and factual issues that differs from the positions of the Defendants and the other parties in this case.

In particular, the individual Applicants and the Wisconsin NAACP's members are themselves among the individual voters whose ballots President Trump seeks to negate. Furthermore, the Wisconsin NAACP will be able to present a unique perspective based on its deep experience educating, registering, and assisting voters in Wisconsin counties and constituent communities. The Wisconsin NAACP, the NAACP affiliates in other states, and Applicants' counsel have litigated hundreds of voting rights cases and have experience analyzing claims such as those asserted here and the evidence related to them. Applicants and their counsel will draw on this national experience and their history representing populations most likely to be impacted by the relief that the President seeks in framing their defense of this litigation. The Wisconsin NAACP

13

also represents thousands of Wisconsin voters who, along with individual Applicants, would potentially be disenfranchised if President Trump is successful in this litigation.

Granting Applicants' motion at this early stage of the case would not delay or prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b). By contrast, refusing to permit intervention would deprive Applicants of the chance to defend their significant and protectable interests in the litigation.

### III. THE COURT SHOULD GRANT APPLICANTS LEAVE TO FILE A RESPONSIVE PLEADING BY THE DEADLINE IMPOSED ON THE DEFENDANTS.

Applicants further move for leave to file a response to President Trump's motion for declaratory and injunctive relief no later than the deadline that this Court sets for the current Defendants. This Court has discretion to grant a motion to intervene that is not accompanied by a pleading where no prejudice will result to the other parties. *See Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 595 (7th Cir. 1993), citing Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987); *see also City of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 95 n.11 (1st Cir. 2008) (finding "no abuse of discretion in the district court's decision to elevate substance over form" and excuse the failure to file a pleading with a motion to intervene); *U.S. v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) (finding that "statement of interest satisfie[d] Rule 24(c) because it provide[d] sufficient notice to the court and the parties of [the movant's] interests"); *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1236 n.19 (D.C. Cir. 2004) (explaining that, absent any claim of "inadequate notice," there was "no reason to bar intervention based solely upon" the "technical defect" of failure to attach a pleading). "Accordingly, denial of a motion to intervene based solely on the movant's failure to attach a pleading, absent prejudice to any party, constitutes an abuse of discretion." *Peaje Investments LLC v. Garcia-Padilla*, 845.F3d 505, 515

(1st Cir. 2017), *citing Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 314–15 (6th Cir. 2005).

This motion is being filed at the very outset of the litigation, and granting this motion in the absence of a proposed responsive pleading will not delay or prejudice any party, as Defendants have themselves not yet filed a responsive pleading or anything opposing the President's motion for injunctive relief and this brief provides sufficient notice of the basis for intervention and the outlines of the defenses that Applicants will assert. President Trump filed this action late on December 2, 2020. Applicants retained the undersigned the next day, and this motion is being filed approximately 27 hours after the President filed suit.

Applicants contend that the President lacks standing and, as a result, the Court lacks jurisdiction such that the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1), making injunctive relief inappropriate. Applicants further contend that President Trump waited far too long to bring this suit; therefore, laches bars his ability to pursue equitable remedies. Finally, Applicants will argue that claims asserted in the Complaint lack legal and factual merit so that the pleading does not state a plausible claim for relief; thus, the Complaint should also be subject to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

With leave of court, and consistent with the Seventh Circuit's admonition that an intervening party "submit **within a reasonable time** a well-pleaded claim or defense," *Shevlin*, 809 F.2d at 450 (emphasis added), Applicants propose filing their opposition to the President's motion for injunctive and other relief no later than whatever deadline the Court sets for the other defendants to file their own responses.

## CONCLUSION

For the reasons stated above, the Court should grant Applicants' motion to intervene as of right or, in the alternative, for permissive intervention and to respond to the pending motion on the same schedule as Defendants.

Dated this 3rd day of December, 2020.

*s/ Mark M. Leitner*
Joseph S. Goode (WI State Bar No. 1020886)
Mark M. Leitner (WI State Bar No. 1009459)
John W. Halpin (WI State Bar No. 1064336)
Allison E. Laffey (WI State Bar No. 1090079)
LAFFEY, LEITNER & GOODE LLC
325 E. Chicago Street, Suite 200
Milwaukee, WI 53202
(414) 312-7003 Phone
(414) 755-7089 Facsimile
jgoode@llgmke.com
mleitner@llgmke.com
jhalpin@llgmke.com
alaffey@llgmke.com

Kristen Clarke (*admission pending*)
Jon Greenbaum (*admission pending*)
Ezra Rosenberg (*admission pending*)
Jacob Conarck (*admission pending*)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW, 9th Floor
Washington, DC 20005
(202) 662-8315 (phone)
(202) 783-0857 (fax)
kclarke@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jconarck@lawyerscommittee.org

*Attorneys for Intervenor-Defendants Wisconsin State Conference NAACP,* **Dorothy Harrell, Wendell J. Harris, Sr., and Earnestine Moss**