**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| DONALD J. TRUMP, Candidate for President of the United States of America,<br><br>Plaintiff<br><br>v.<br><br>THE WISCONSIN ELECTIONS COMMISSION, et al.,<br><br>Defendants. | No. 2:20-cv-01785 |

**PROPOSED INTERVENOR-DEFENDANT DEMOCRATIC NATIONAL COMMITTEE'S BRIEF IN SUPPORT OF MOTION TO INTERVENE**

## I. Introduction

Pursuant to Federal Rule of Civil Procedure 24, Proposed Intervenor Defendant DNC Services Corporation/Democratic National Committee ("DNC") moves to intervene as a defendant in this lawsuit. Through this lawsuit, Donald J. Trump ("Plaintiff") seeks to undo Wisconsin's lawful certification of the election results. Nearly a month after the election, Plaintiff asks this court for the extraordinary relief of declaring that thousands of votes were "tainted" by constitutional violations and "[r]emanding this case to the Wisconsin Legislature" to determine the appropriate remedy. [Complaint at 72] The DNC represents a diverse group of Democrats, including elected officials, candidates, constituents, and voters. The extraordinary relief Plaintiff seeks would deprive the DNC's members and constituents of their rights to have their votes counted, undermine the electoral prospects of the DNC's candidates, and divert the DNC's resources. The DNC's intervention in this lawsuit is necessary to protect those interests.

Pursuant to Rule 24(c), the DNC intends to file a proposed answer to Plaintiff's complaint. That complaint, however, is 72 pages and 302 paragraphs long, and the DNC needs additional time to prepare a proposed answer. Because of the expedited character of these proceedings, counsel are submitting the DNC's motion to intervene and a proposed order at this time, and will file a proposed answer later on Friday, December 4, 2020.[1]

## II. Argument

### A. The DNC is entitled to intervene as of right.

The DNC is entitled to intervene as of right because (1) its "motion is timely"; (2) the DNC "has an interest relating to the property or transaction at issue in the litigation"; and (3) "that interest may, as a practical matter, be impaired or impeded

[1] The DNC intends to file a motion to dismiss. But to comply with Rule 24(c), the DNC also will file a proposed answer.

by disposition of the case." *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 746 (7th Cir. 2020). Further, no "existing part[y] adequately represent[s]" the DNC's interests. *Id.* (emphasis omitted).

**1. The motion to intervene is timely.**

First, this motion is timely. In considering whether a motion to intervene is timely, courts consider, among other things, "(1) the length of time the intervenor knew or should have known of his interest in the case" and "(2) the prejudice caused to the original parties by the delay." *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019) (quoting *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797 (7th Cir. 2013)).

In this case, the DNC is filing its motion to intervene just one day after Plaintiff filed this lawsuit, and its proposed answer will follow promptly. The DNC has thus "move[d] to intervene as soon as it" knew "its interests might be adversely affected by the outcome of the litigation." *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003). No defendant has yet filed a response to Plaintiff's complaint. And the DNC is prepared to proceed in accordance with whatever schedule this Court sets. Thus, intervention by the DNC will neither delay the resolution of this matter nor prejudice any party. Under these circumstances, the motion is timely.

**2. The DNC has significant interests at stake in this litigation.**

Second, the DNC has a "direct, significant, and legally protectable" interest in this litigation that supports its intervention. *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*, 101 F.3d 503, 506 (7th Cir. 1996). The rules for mandatory intervention "do[] not define 'interest.'" *Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 924 F.3d 375, 391 (7th Cir. 2019). But, the "standing inquiry" gives content to its meaning, as the Seventh Circuit has "required 'more than the minimum Article III interest' for intervention.'" *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 798 (7th Cir. 2019) (quoting *Flying J, Inc. v. Van Hollen*, 578 F.3d 569,

571 (7th Cir. 2009)). At the same time, the Seventh Circuit has "interpreted 'statements of the Supreme Court as encouraging liberality in the definition of an interest.'" *Lopez-Aguilar*, 924 F.3d at 392 (quoting *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982)).

The DNC has several significant, protectable interests at stake in this lawsuit, each of which justifies its intervention. First, Plaintiff seeks to disrupt the certification of Wisconsin's November 3, 2020 Presidential election results and to cast doubt on the entitlement of the Democratic Party's candidates for President and Vice-President to Wisconsin's ten electoral votes. Interference with a political party's electoral prospects constitutes constitutional injury. *See, e.g.*, *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th Cir. 2006) (holding that a "basis for the [Texas Democratic Party's] direct standing is harm to its election prospects" and that "a political party's interest in a candidate's success is not merely an ideological interest"); *Owen v. Mulligan*, 640 F.2d 1130, 1132 (9th Cir. 1981) (holding that "the potential loss of an election" is sufficient injury to confer Article III standing). Courts have permitted political parties to intervene on these grounds. *See, e.g.*, *Issa v. Newsom*, No. 220CV01044MCECKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting intervention of state party where "Plaintiffs' success on their claims would disrupt the organizational intervenors' efforts to promote the franchise and ensure the election of Democratic Party candidates" (quoting *Paher v. Cegavske*, No. 320CV00243MMDWGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020))).

Further, Plaintiff's requested relief of de-certifying the election would have significant disenfranchising effects on the DNC's constituents. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189 n.7 (2008) (agreeing with the unanimous view of the Seventh Circuit that the Indiana Democratic Party had Article III standing to challenge a voter identification law that risked disenfranchising its members). This, in turn, would require the DNC to divert resources to safeguard the

timely certification of statewide results. *See Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (concluding that challenged law "injure[d] the Democratic Party by compelling the party to devote resources" that it would not have needed to devote absent new law), *aff'd*, 553 U.S. 181; *see also Issa*, 2020 WL 3074351, at *3 (granting intervention and citing this interest).

As a result, the DNC's injuries are direct and significant and support its intervention.

**3. Denial of the motion to intervene would impair the DNC's ability to protect its interests.**

Next, the DNC's interests "may, as a practical matter, be impaired or impeded by disposition of the case." *Driftless Area Land Conservancy*, 969 F.3d at 746. When, as here, a proposed intervenor has a protectable interest in the outcome of the litigation, courts have "little difficulty concluding" that its interests will be impaired. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)). When considering this factor, courts examine the "practical consequences" of denying intervention. *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967); Advisory Comm. to Fed. R. Civ. P. 24 1966 Amendment ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene. . . .").

As set forth above, there can be little doubt that if Plaintiff were to succeed in undoing the election results, the DNC "would be directly rather than remotely harmed." *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009). The relief Plaintiff seeks would threaten the DNC's electoral prospects, disenfranchise the DNC's members, and otherwise harm the DNC's mission. Courts have frequently permitted political parties to intervene in similar circumstances. *See, e.g.*, *Paher v. Cegavske*, No. 20-00243-MMD-WGC, 2020 WL 2042365, at *4 (D. Nev. Apr. 28, 2020)

(granting DNC intervention in election case regarding election procedures and recognizing impairment of DNC's interests); *see also Issa*, 2020 WL 3074351, at *3 (recognizing impairment of state party's interests in lawsuit regarding election procedures).

**4. The DNC's interests are not adequately represented by the existing parties.**

Finally, the DNC's interests are not adequately represented by the existing parties. *Driftless Area Land Conservancy*, 969 F.3d at 747. The Seventh Circuit employs a tiered approach to "evaluating adequacy of representation." *Id.* at 747. "'The default rule . . . is a liberal one.'" *Id.* (quoting *Planned Parenthood of Wisconsin, Inc.*, 942 F.3d at 799). It requires a 'minimal" burden of showing that representation "'may be' inadequate." *Id.* (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). A more stringent showing is required "if the interest of the absentee is identical to that of an existing party, or if a governmental party is charged by law with representing the absentee's interest." *Id.* Ultimately, examination of this factor "calls for a contextual, case-specific analysis, and resolving questions about the adequacy of existing representation requires a discerning comparison of interests." *Id.* at 748.

In this case, the Defendant state officials and the DNC have "interests and objectives that are materially different" from each other. *Id.* at 749. The Defendants have an interest in defending the actions of state officials. The DNC has different objectives: ensuing that the valid ballot of every Democratic voter in Wisconsin is counted and safeguarding the election of Democratic candidates. Ultimately, the DNC has specific interests and concerns—including the Democratic Party's overall electoral prospects and use of its limited resources—that none of the current Defendants share. Considering these material differences in objectives, no

heightened burden of showing of inadequacy is required.[2] *Id.* And the DNC has met the "minimal" burden of showing that the Defendants' "representation 'may be' inadequate." *Id.* (quoting *Trbovich*, 404 U.S. at 538 n.10).

Indeed, other courts have held that such divergent interests between government defendants and others warrant intervention. *See, e.g.*, *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (recognizing that intervention may be appropriate when "an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor"); *see also, e.g.*, *Issa*, 2020 WL 3074351, at *3 (granting intervention and observing that the interests of officials were to "properly administer election laws," in contrast to the interests of a state party, which included "ensuring their party members and the voters they represent have the right to vote," "advancing their electoral prospects," and "allocating their limited resources"); *Paher*, 2020 WL 2042365, at *3 (granting intervention as of right where proposed intervenors, including the DNC, "may present arguments about the need to safeguard [the] right to vote that are distinct from [state defendants'] arguments").

**B. The DNC is also entitled to permissive intervention.**

If the Court does not grant intervention as a matter of right, the DNC respectfully requests that the Court exercise its discretion to allow it to intervene under Rule 24(b). The Court has discretion to grant a motion for permissive intervention when the Court determines that: (1) the proposed intervenor's claim or defense and the main action have a "common question of law or fact," and (2) the

---

[2] Further, the Wisconsin Elections Commission and Governor are not "charged by law with protecting the interests of the proposed intervenors," the DNC. *Planned Parenthood of Wisconsin, Inc.*, 942 F.3d at 799; *see also Wisconsin Educ. Assn Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013) (finding that, in challenge to constitutionality of statute related to unions, the Governor and other state officials were "not charged by law" with protecting interests of employees seeking to intervene in defense of the statute).

intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B) and (b)(3); *see also Planned Parenthood of Wisconsin, Inc.*, 942 F.3d at 803 (discussing the district court's broad discretion in granting permissive intervention).

The DNC meets the criteria for permissive intervention. The motion to intervene is timely and, given that this litigation is at a very early stage, intervention will not unduly delay or prejudice the adjudication of the original parties' rights. Moreover, the DNC will inevitably raise common questions of law and fact, including challenging Plaintiff's claims that the lawful votes of Wisconsin voters should be invalidated. The DNC would contribute to the complete development of the factual and legal issues before this Court and is "uniquely qualified to represent the 'mirror-image' interests" of the Plaintiff. *See Democratic Nat'fl Comm. v. Bostelmann,* No. 20-CV-249-WMC, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (denying Republican National Committee's motion to intervene as a matter of right but granting permissive intervention because the RNC represented "the 'mirror-image' interests" of the plaintiffs).

## III. Conclusion

For the reasons stated above, this Court should grant the DNC's motion to intervene as a matter of right. In the alternative, this Court should exercise its direction and grant the DNC permissive intervention.

DATED: December 4, 2020

Respectfully Submitted,

*s/ Michelle M. Umberger*

Charles G. Curtis, Jr.
SBN 1013075
Michelle M. Umberger
SBN 1023801
Sopen B. Shah
SBN 1105013
Will M. Conley
SBN 1104680
PERKINS COIE LLP
33 East Main St., Suite 201
Madison, WI 53703
(608) 663-7460
ccurtis@perkinscoie.com
mumberger@perkinscoie.com
sshah@perkinscoie.com
wconley@perkinscoie.com

Marc E. Elias*
John Devaney*
Zachary J. Newkirk*
PERKINS COIE LLP
700 Thirteenth St., N.W.,
Suite 800
Washington, D.C. 20005
(202) 654-6200
melias@perkinscoie.com
jdevaney@perkinscoie.com
znewkirk@perkinscoie.com

Seth P. Waxman*
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
(202) 663-6000
seth.waxman@wilmerhale.com

David S. Lesser*
Jamie Dycus*
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

Matthew W. O'Neill
SBN 1019269
FOX, O'NEILL & SHANNON, S.C.
622 North Water Street,
Suite 500
Milwaukee, WI 53202
(414) 273-3939
mwoneill@foslaw.com

*Counsel for Proposed Intervenor-Defendant*

** Application for admission pending*

**CERTIFICATE OF SERVICE**

I hereby certify that on Friday, December 4, 2020, I filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Michelle M. Umberger*
Counsel for Proposed Intervenor