UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

----------------------------------------------------------------

| | | |
|---|---|---|
| Donald J. Trump, Candidate for President of the United States of America, | ) ) ) | Case No. 20-CV-1785 |
| | ) | Milwaukee, Wisconsin |
| Plaintiff, | ) ) | December 4, 2020 |
| vs. | ) ) | 1:00 p.m. |
| | ) | |
| The Wisconsin Elections Commission, and its members, Ann S. Jacobs, Mark L. Thomsen, Marge Bostelman, Dean Knudson, Robert F. Spindell, Jr., in their official capacities, Scott McDonell in his official capacity as the Dane County Clerk, George L. Christenson in his official capacity as the Milwaukee County Clerk, Juliette Henry in her official capacity as the Milwaukee Election Direction, Claire Woodall-Vogg in her official capacity as the Executive Director of the Milwaukee Election Commission, Mayor Tom Barrett, Jim Owczarski, Mayor Satya Rhodes-Conway, Maribeth Witzel-Behl, Mayor Cory Mason, Tara Coolidge, Mayor John Antaramian, Matt Krauter, Mayor Eric Genrich, Kris Teske, in their official Capacities; Douglas J. LaFollette, Wisconsin Secretary of State, in his official capacity, and Tony Evers, Governor of Wisconsin, in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

----------------------------------------------------------------

**TRANSCRIPT OF STATUS CONFERENCE**
BEFORE THE HONORABLE BRETT H. LUDWIG
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:
Donald J. Trump, Candidate
for President of the
United States of America:        Kroger Gardis & Regas LLP
                                 By: William Bock, Kevin Koons &
                                 James Knauer
                                 111 Monument Cir  - Ste 900
                                 Indianapolis, IN 46204
                                 Ph: 317-698-7332
                                 Fax: 317-264-6823
                                 wbock@kgrlaw.com


For the Defendant:               Stafford Rosenbaum LLP
Governor Tony Evers              By: Jeffrey A Mandell, Rachel
                                 Snyder & Rick Manthe
                                 222 W Washington Ave- Ste 900
                                 PO Box 1784
                                 Madison, WI 53701-1784
                                 Ph: 1-608-256-0226
                                 Fax: 1-608-256-0226
                                 Jmandell@staffordlaw.com


For the Defendants:              Hansen Reynolds LLC
George L Christenson &           By: Andrew A Jones
Julietta Henry                   301 N Broadway St - Ste 400
                                 Milwaukee, WI  53202
                                 Ph: 1-414-326-4952
                                 Fax: 1-414-273-8477
                                 jones@hansenreynolds.com


For the Defendants:              Milwaukee City Attorney
Tom Barrett, Claire              By: James M Carroll
Woodall-Vogg & Jim               841 N Broadway - 7th Fl
Owczarski                        Milwaukee, WI  53202
                                 Ph: 1-414-286-8481
                                 jmcarr@milwaukee.gov


For the Defendants:              Boardman & Clark LLP
Satya Rhodes-Conway,             By: Michael May, James Bartzen &
Maribeth Witel-Behl &            Barry Blonien
Scott McDonell                   1 S Pickney St
                                 Madison, WI  53703
                                 Ph: 1-608-257-9521
                                 Fax: 1-608-283-1709
                                 mmay@boardmanclark.com

CONTINUED APPEARANCES:

For the Defendants:           Racine City Attorney
Cory Mason & Tara Coolidge    By: Scott Letteney
                              730 Washington Ave - Rm 201
                              Racine, WI  53403
                              Ph: 1-414-636-9420

For the Defendants:           Green Bay City Attorney
Eric Genrich & Kris Teske     By: Lindsay Mather, Vanessa Chavez
                              & Joanne Bungert
                              100 N Jefferson Street - Rm 200
                              Green Bay, WI  54301

For the Defendants:           Kenosha City Attorney
John Antaramian & Matt        By: Brian Charbogian & William
Krauter                       Richardson
                              625 - 52nd St
                              Kenosha, WI  53140

For the Defendants:           WI DOJ
The Wisconsin Elections       Office of the Attorney General
Commission, Ann S Jacobs,     By: Colin T Roth, Steven
Mark L Thomsen, Marge         Kilpatrick & Thomas Bellavia
Bostelman, Dean Knudson,      17 W Main St
Robert F Spindell &           PO Box 7857
Douglas J LaFollette          Ph: 1-608-266-0020
                              Fax: 1-608-267-2223
                              rothct@doj.state.wi.us

For the Intervening
Defendants:                   Laffey Leitner & Goode LLC
Wisconsin State Conference    By: Joseph S Goode
NAACP, Dorothy Harrell,       325 E Chicago St - Ste 200
Wendell J Harris, Sr., and    Milwaukee, WI 53202
Earnestine Moss               Ph: 1-414-312-7003
                              Fax: 1-414-755-7089
                              jgoode@llgmke.com

For the Intervening
Defendant:                    Perkins Coie LLP
Democratic National           By: Charles G Curtis, Jr
Committee                     33 E Main St - Ste 201
                              Madison, WI  53703
                              Ph: 1-608-663-5411
                              Fax: 1-608-663-7499
                              ccurtis@perkinscoie.com

U.S. Official Reporter:       SUSAN ARMBRUSTER, RPR, RMR,
Transcript Orders:            Susan_Armbruster@wied.uscourts.gov
Proceedings recorded by computerized stenography,
transcript produced by computer aided transcription.

1                     P R O C E E D I N G S

2

3              THE CLERK:  Case No. 20-CV-1785, Trump v. The

4    Wisconsin Elections Commission, et al.  No appearances in

5    person.  Can I have appearances by phone please starting with

6    counsel for the plaintiff.

7              MR. BOCK:  This is Bill Bock.  And with me in the room

8    is Kevin Koons.  And also on a muted line is James Knauer.

9    We're with the law firm of Kroger Gardis & Regas in

10   Indianapolis, Indiana, and we represent the plaintiff for the

11   President of the United States, Donald J. Trump, Candidate for

12   President.

13             THE CLERK:  Thank you.  And appearances for any

14   defendants.

15             MR. MANDELL:  This is Jeffrey Mandell, Stafford

16   Rosenbaum LLP in Madison, on behalf of Governor Tony Evers.

17   Also listening in on the line on behalf of Governor Evers are my

18   colleagues, Rachel Snyder and Rick Manthe.  And also on the line

19   is our co-counsel, Davida Brook from Susman Godfrey LLP.

20             MR. JONES:  Andrew Jones of Hansen Reynolds in

21   Milwaukee on behalf of George Christenson, the Milwaukee County

22   Clerk and Julietta Henry, the Milwaukee County Election

23   Director.

24             MR. CARROLL:  Good afternoon.  Jim Carroll, City of

25   Milwaukee City Attorney appearing on behalf of defendants,

1  Thomas Barrett, Claire Woodall-Vogg and Jim Owczarski.

2  Listening on the line are my collogues, Mary Shanning, Kathy

3  Block, Elleny Christopoulis, Julie Wilson and Scott Brown.

4  Thank you.

5          MR. MAY:  This is Attorney Michael P May, M-a-y, from

6  the Madison firm of Boardman & Clark.  We represent Mayor Satya

7  Rhodes-Conway of the City of Madison; Maribeth Witzel-Behl, the

8  Clerk for the City of Madison; and Scott McDonell, the Clerk for

9  Dane County.  Listening on the line are James Bartzen, Barry

10  Blonien of the Boardman & Clark Firm and representatives of the

11  City Attorney's Office and the Dane County Corporation Counsel.

12          MR. LETTENEY:  Good afternoon this is Scott Letteney,

13  City of Racine City Attorney, appearing on behalf of Mayor Cory

14  Mason and City Clerk Tara Coolidge.

15          MS. MATHER:  Your Honor, this is Lindsay Mather,

16  Assistant City Attorney for the City of Green Bay, appearing on

17  behalf of Mayor Eric Genrich and Kris Teske our City Clerk.

18  Listening on the line are my colleagues, City Attorney Vanessa

19  Chavez and Deputy City Attorney Joanne Bungert.

20          MR. CHARBOGIAN:  Brian Charbogian appearing for Mayor

21  John Antaramian and City Clerk Treasurer of Kenosha Matt

22  Krauter.  And listening on the line is my fellow Assistant

23  United States Attorney, Attorney William Richardson.  And on

24  each of my clients' behalf, I would object to personal

25  jurisdiction based on defective service.

1    MR. ROTH:  Colin Roth from the Wisconsin Department of
2  Justice on behalf of the Wisconsin Elections Commission, Ann
3  Jacobs, Mark Thomsen, Marge Bostelmannle, Dean Knudson and
4  Robert Spindell, and also Secretary of State Doug LaFollette.
5  With me are my collogues listening in Steven C Kilpatrick and
6  Tom Bellevia also from the Wisconsin DOJ.

7    THE CLERK:  Do we have any further appearances on the
8  line?

9    MR. GOODE:  This is Joseph Goode, Laffey Leitner &
10  Goode in Milwaukee, on behalf of the proposed intervening
11  defendants, nonparty Wisconsin State Conference NAACP, Dorothy
12  Harrell, Wendell J Harris, Sr., and Ernestine Moss.

13    MR. MANDELL:  This is Attorney Mandell.  I got an
14  email from Attorney Charles Curtis on behalf of the proposed
15  intervenor Democratic National Committee that he has been
16  dropped from the participant line.

17    THE COURT:  Good afternoon everyone.  I apologize for
18  the brief delay with the --  We're having some technical issues
19  given the number of people trying to call in, and so I realize
20  we're going to try to connect Mr. Curtis before we get started
21  here.  So my courtroom deputy has been trying to add Mr. Curtis,
22  but it's not working.

23    THE COURT:  I'm told that we may now have Mr. Curtis
24  on the phone.  Mr. Curtis, are you on the phone?

25    MR. CURTIS:  Yes.  Good afternoon.  Sorry for all the

1   confusion.  I am here from Perkins Coie, Madison, and I'm

2   appearing on behalf of the Democratic National Committee.  Thank

3   you, Your Honor.

4           THE COURT:  Thank you for your patience.  And thank

5   you all for your patience.

6           So let me just make sure that I've got everyone who

7   will be lead counsel for today's proceedings.  I've got Mr. Bock

8   for the plaintiff.

9           MR. BOCK:  Yes, Your Honor.

10          THE COURT:  I've got Ms. Mather for Green Bay -- for

11  the Green Bay defendants, correct?

12          MS. MATHER:  Yes, Your Honor.

13          THE COURT:  Mr. Roth for the Department of Justice.

14          MR. ROTH:  Correct on behalf of the Elections

15  Commission and their members and Secretary of State LaFollette.

16          THE COURT:  And we have Mr. Curtis for the DNC.  We

17  have Mr. Goode for the NAACP and the proposed intervenors.

18  We've got Mr. Jones for defendant Christenson.

19          MR. JONES:  Also Julietta Henry, Your Honor.

20          THE COURT:  And then Mr. Mandell for the Governor.

21  Mr. Charbogian for the Kenosha defendants.

22          MR. CHARBOGIAN:  Yes, Your Honor.

23          THE COURT:  Mr. Carroll for the City of the Milwaukee

24  defendants.

25          MR. CARROLL:  That's correct, Your Honor.

1          THE COURT:  Mr. Letteney for the Racine defendants.

2          MR. LETTENEY:  Correct, Judge.

3          THE COURT:  And then is that everybody?  And Mr. May

4    for the Madison defendants.  All right.  We've succeeded in

5    taking roll call, and that's only taken 36 minutes from the time

6    we were supposed to start.

7          So we're here today for a status and scheduling

8    conference in this civil matter.  By way of background, the

9    plaintiff filed a 72-page complaint against the Wisconsin

10   Elections Commission, its members and a number of other

11   defendants, including various clerks, mayors and election

12   officials from around the state.

13         That complaint was filed on December 2nd, Wednesday.

14   The complaint concerns alleged conduct by the defendants which

15   the plaintiff contends deviated from or violated Wisconsin

16   Statutes and the Election Code in connection with this past

17   November's Presidential Election in Wisconsin.

18         The plaintiff asserts a claim under 42 U.S.C. Section

19   1983 for violations of his rights under Article II, Section 1 of

20   the Constitution, the Electors Clause.  Also asserts claims

21   under the 1st and 14th Amendments.  At least the complaint says

22   that.  I'm not clear what the 1st Amendment issue is.

23         But ultimately, the plaintiff seeks an order for

24   declaratory relief declaring that the defendants violated the

25   Electors Clause by failing to abide by the directions of the

8

1    Wisconsin Legislature in connection with the 2020 Presidential

2    Election; that they violated the Equal Protection and Due

3    Processes Clauses in connection with the election, and that the

4    constitutional violations "likely tainted" more than 50,000

5    ballots.

6              The plaintiff seeks an order remanding the case to the

7    Wisconsin Legislature to consider these alleged violations and

8    determine a remedy.  The complaint also seeks an injunction

9    against any actions inconsistent with the final declaration and

10   judgment as well as fees, costs and other relief.

11             On that same day, the plaintiff filed a motion for

12   expedited declaratory injunctive relief and for an expedited

13   hearing on the motion.  That motion requested a hearing within

14   48 hours.

15             In citing Civil Local Rule 7(a)(2), the plaintiff

16   states that he would not be submitting any memorandum or other

17   supporting papers and would rely solely on the substance of the

18   complaint and the exhibits attached thereto and such other

19   evidence as adduced at a hearing.

20             On December 3rd, yesterday, the defendant, Governor

21   Tony Evers, filed a notice of a related case in this docket.  In

22   that notice, the defendant suggested that this case be

23   reassigned to Chief Judge Pamela Pepper, who was presiding over

24   another election-related lawsuit brought by a different

25   plaintiff against different defendants.

9

1         Yesterday evening, Judge Pepper denied that request.

2    Also yesterday, the plaintiff filed an Appendix of Exhibits to

3    the complaint, 600 pages I think.  The Court then set today's

4    status and scheduling conference.  After the Court set the

5    conference, we had two motions to intervene.  One by the

6    Wisconsin State Conference of the NAACP and three individual

7    members of the NAACP as well as by the Democratic National

8    Committee.

9         Earlier today, there was -- the plaintiff filed a

10    motion for expedited discovery asking the Court to order

11    expedited responses to certain questions for production and

12    request for admission directed toward the Elections Commission

13    and Milwaukee Mayor Tom Barrett.

14         And I'm going to update my docket now to see if

15    there's anything else that's been filed in the last 36 minutes.

16    It does not appear -- Other than notices of appearances, it does

17    not appear to be the case, so that's where things stand as far

18    as the Court's aware.

19         What I'd like to do today is not delve too much into

20    the substance or the merits of the allegations or claims raised

21    in the complaint but rather to map out a plan or a schedule for

22    how we're going to resolve the issues that are presented here

23    today.

24         This is an unusual case obviously, and there is --

25    There's a time component to it, and so I'd like to figure out a

1    way if we can to resolve these issues on the merits efficiently.

2           Before we get into that, let me ask whether any of the

3    counsel -- any of the lead counsel that are on the phone have

4    any corrections or additions to my sort of summary of the

5    procedural posture of the case?  If anybody has any additions or

6    corrections, let me know right now.

7           MR. BOCK:  Your Honor, this is Bill Bock for the

8    plaintiff.  No corrections whatsoever.  I would note that the

9    exhibits to the complaint we attempted to upload at the filing,

10   and we couldn't get that done.  The system didn't accept them,

11   and that's why we filed them the next day.  But that's it, thank

12   you.

13          THE COURT:  All right.  So thank you.  And they are on

14   the docket.  So that's --  That's the backdrop.  And Mr. Bock,

15   let me start with you.  When we first asked, have you had any

16   communications with any of the opposing counsel in this case to

17   --  with respect to how we proceed in a jointly acceptable way?

18          MR. BOCK:  I have not, Your Honor, other than, of

19   course, the communications that you ordered our staff that's

20   been undertaking to try to make sure everybody had notice of the

21   conference today.

22          But -- And as I said or as we said in the complaint,

23   we believe that the hearing be narrowly concise, and that was

24   the purpose of our discovery, just to confirm the existence or

25   nonexistence of documents in three categories with the Elections

1   Commission and request admissions as to the public nature of

2   certain other exhibits that we intend to use, and that's --

3   That's all the discovery that we anticipate.

4          And so -- But I'm prepared to tell you the approximate

5   number of witnesses that we think that we'll have and the amount

6   of time that we think as stated in the complaint would be a

7   one-day hearing.

8          THE COURT:  All right.  So one of the things that I

9   was confused about was the motion or the reference to local or

10  Civil Local Rule 7(a)(2), which says the plaintiff would not be

11  submitting any memorandum or supporting papers and would just be

12  relying on the complaint.  But now it sounds like maybe that was

13  just in connection with the motion to expedite.  So the

14  plaintiff is intending to put on some sort of evidentiary

15  presentation; is that correct?

16         MR. BOCK:  Yes, sir.

17         THE COURT:  So you're thinking a one-day hearing?

18         MR. BOCK:  Yes.

19         THE COURT:  So you've asked for some expedited so

20  written discovery.  Does the plaintiff intend to ask for any

21  expedited depositions, or is it just going to be written

22  discovery?

23         MR. BOCK:  We don't anticipate additional discovery.

24  We simply ask whether documents existed in three categories and

25  asked for admissions as to the eventual authenticity and public

1   nature of documents in three other categories due to the

2   Elections Commission and, one, Mayor Barrett.  And we intend to

3   call four to seven witnesses, and that's why we indicated our

4   anticipated time for a hearing would just be a single day.

5           THE COURT:  I'm sorry, how many witnesses did you say?

6           DEFENDANT:  Four to seven.  We're still working on

7   that, Your Honor, and part of that may depend on discussions

8   about stipulations once we complete the call today.

9           THE COURT:  I thought you had said 47 witnesses and

10  you said get it done in one day.

11          MR. BOCK:  That's a few less than we have on the call

12  today.  Sorry, I need to speak more clearly.

13          THE COURT:  Okay.  So thank you for that.  In terms of

14  service, one of the defendants raised an issue with respect to

15  service.  Where do things stand with respect to service of the

16  complaint from the plaintiff's perspective?

17          MR. BOCK:  Your Honor, we have -- I think we have four

18  maybe firms serving individuals yesterday, and I don't have a

19  list of where we are.  But before the end of the conference,

20  I'll try to get you that list.

21          THE COURT:  Obviously, if we're going to do this on an

22  expedited basis, that's got to happen.  So you're thinking one

23  day.  All right.  Let me -- So you requested a hearing within

24  48 hours.  That would be the end of the day today, and that's

25  not going to happen.  I'm probably looking at next week.  Let me

1    --  Let me turn to the defendants.

2         MR. BOCK:  I don't know, and I don't presume to know

3    the Court's schedule or what you would feel would be an

4    appropriate time.  But just from our perspective and recognizing

5    that we're still --  There are some parties that still need to

6    be served, perhaps, we were thinking maybe Wednesday,

7    December 9th, would be an appropriate day for the hearing.

8         THE COURT:  Let me turn to the defendants now, and I

9    guess --  Let me start with Mr. Mandell because you were the

10   first to appear.  Have you --  well --  I guess -- Have counsel

11   for the defendants been in communication either with -- and I'm

12   you -- Mr. Mandell, have you been in contact with other counsel

13   for the defendants relating to a -- sort of a schedule here or a

14   plan?  Rather than having nine different people propose a plan,

15   I'm wondering if there's a more efficient way to do this.  But

16   what are your thoughts?

17        MR. MANDELL:  Good afternoon, Your Honor.  We had a

18   brief call with counsel for I believe all of the defendants

19   shortly before we convened with the Court.  On that call, we did

20   not really seek to find agreement on a schedule, so I do not

21   presume to speak for any other defendant.  But I will tell you

22   that in the other case that is proceeding before Judge Pepper as

23   you noted, that case had a subset of the defendants here.  There

24   are no defendants there, I don't believe, who are absent here

25   except perhaps one of the Elections Commissions nurse was

14

1    inadvertently left off the complaint here.

2            In that case, both the Governor and Wisconsin

3    Elections Commission defendants submitted a proposed schedule to

4    Judge Pepper.  And while we've been on the phone here or shortly

5    before, she issued a scheduling order requiring a response to

6    the -- to the preliminary injunction papers in that case be

7    filed at the end of the day on Monday and our reply be filed at

8    the end of the day on Tuesday.

9            I think in speaking for the Governor, I guess I don't

10   presume to speak for anyone else, the Governor would be amenable

11   to a -- to an analogous schedule here.  To make sure that the

12   papers are accurate, I would ask that, you know, we have an

13   extra couple of hours if the Court were also going to set a

14   deadline on Monday evening, I ask we get a few hours after Judge

15   Pepper's schedule so that we can make sure that the papers here

16   are in good order and precisely pitched to this case itself.

17   There's a lot of overlap, but we would want to make sure, of

18   course, that we have all the right names and things in them, but

19   the Governor would be amenable to a schedule like that.

20           THE COURT:  So I've not seen Judge Pepper's order, but

21   she's -- so she put a response deadline.  So if we did

22   something similar, her response deadline is Monday at 5:00, and

23   you're talking about maybe Monday evening?

24           MR. MANDELL:  That's correct, Your Honor.  So we have

25   a response Monday at 5:00 in Judge Pepper's courtroom.  I would

1  request if this Court were to follow a very similar schedule,

2  that we would be looking at Monday at 8:00 or Monday at midnight

3  or something like that so that we can make sure that we

4  coordinated the papers precisely for this case and this Court.

5          THE COURT:  That makes sense to me.  Anyone else from

6  the defense team want to or -- I don't mean to call you a team.

7  Anyone else from the -- who's counsel for any of the defendants

8  want to chime in and throw Mr. Mandell under the bus or offer a

9  different schedule?

10          MR. ROTH:  Thank you, Your Honor.  This is Attorney

11  Roth from DOJ on behalf of the Commission.  I guess I would

12  respectfully ask for an extra day, if that's possible.  I would

13  just add that the team here at DOJ that's handling both the

14  federal cases is also handling a parallel-recount proceeding

15  that just started in state court; that President Trump is

16  essentially disputing the results of the Dane and Milwaukee

17  County recounts.

18          I may be mistaken, but I believe we have a scheduling

19  conference in that state proceeding later this afternoon, but

20  don't quote me on that.  I could be wrong.  The only way saying

21  the DOC team has three cases that we're handling simultaneously

22  on these issues right now.  So given the voluminous nature of

23  these exhibits that were -- were just filed which we frankly

24  haven't even downloaded yet, you know, I think perhaps an extra

25  day, Tuesday afternoon close of business would --  would be

1    preferable from our perspective.

2        THE COURT:  The problem with that is if we're going to

3    have a hearing on Wednesday, that makes it tight to get a reply

4    in.  Let me turn back to --  Well, anybody else on the defense

5    side of the ledger here want to weigh in at this point?

6        MR. CARROLL:  Your Honor, Jim Carroll, Milwaukee City

7    Attorney's Office for the City of Milwaukee defendants.  I think

8    we would agree that a Tuesday deadline is more reasonable,

9    particularly given that like several of the other defendants,

10   the City of Milwaukee, to my knowledge as of this moment, has

11   not been --  been served.

12       And I also note, Your Honor, in respect that you don't

13   want to get into a substantive discussion of the merits of the

14   case, but certainly I would anticipate that defendants may raise

15   concerns about jurisdiction, among other things.  And so my

16   assumption would be that those would be something you would want

17   raised in the response so that Your Honor could consider them

18   before even proceeding with an evidentiary hearing on this

19   matter.

20       THE COURT:  So thank you for that.  Let me turn back

21   to Mr. Bock.  You proposed Wednesday the 9th for the hearing.

22   What if we did the hearing on Friday, the 11th?

23       MR. BOCK:  The issue there I guess for us is just the

24   timing.  You know, the relevance of the December 14th date for

25   the meeting of the Electoral College in each of the states

1 doesn't give us much time to be able to -- the appellate part

2 and to also essentially have any opportunity to seek relief to

3 the Supreme Court if either side were so inclined.

4          THE COURT:  So I'm sensitive to that.  But at the same

5 time, you know, the plaintiff did wait to file this case until

6 Wednesday, December 2nd which -- And most of the allegations in

7 the complaint relate to things that happened, you know, during

8 the -- back in November, so there's a little bit of -- A time

9 crunch has been created by the plaintiff.

10          MR. BOCK:  I understand that perspective.  And, you

11 know, so obviously, you've heard where we're coming from.  If we

12 could do it on Thursday, that gives us that one extra day.  But

13 I don't know what your schedule is either so --

14          THE COURT:  Well, I've got a bunch of civil status

15 hearings on Wednesday, the 10th.  But we could probably -- I'm

16 looking at my courtroom deputy.  But we could probably

17 reschedule those.  She's nodding.  So why don't we do that.  Why

18 don't we mark off a hearing for December 10th as the hearing

19 day.  We'll allow the defendants until 5:00 on Tuesday to file

20 responses to the -- to the motion.  And then we will allow

21 until noon on Wednesday, the 9th, for any replies from the

22 plaintiff, so that's sort of the briefing schedule.  Go ahead

23 whoever that was.  If you could state your name before you

24 speak, that would be helpful.

25          MR. BOCK:  This is Bill Bock.  I just said thank you,

1    Your Honor.  Sorry to interrupt.

2            THE COURT:  Thank you.  So and, you know, the

3    assertion that there may be some jurisdictional issues embedded

4    in this is not lost on me.  And those will, I assume, be

5    addressed in the briefs, but I don't want to schedule this in a

6    way that --  I mean, time's compressed, so those issues need to

7    get raised and briefed sort of hand-in-hand, side-by-side with

8    the hearing now set for the 10th.

9            And, obviously, there's some significant

10   jurisdictional issues that are raised here, justiciability

11   issues I would say, so that's our briefing schedule.

12           In terms of discovery, the plaintiff has indicated

13   what the plaintiff is looking for in terms of discovery.  Let me

14   turn to the defendants on that issue, and I'll again start with

15   Mr. Mandell and others can chime in, if necessary.

16           MR. MANDELL:  Your Honor, this is Jeffrey Mandell.

17   None of the discovery questions were directed to the Governor.

18           THE COURT:  Do any of the defendants wish to take any

19   discovery?  Is there a need for that?

20           MR. MANDELL:  I don't --  I don't believe, Your Honor,

21   that we -- that the Governor is seeking any discovery, but I

22   don't know if anyone else has a different view.

23           THE COURT:  Let me just say this.  So the plaintiff

24   has indicated they've got four to seven witnesses, they're

25   trying to figure that out or he's trying to figure that out.

1    His team is trying to figure that out.  When those witnesses --

2    We can set a deadline for those to be identified.

3           You know, sometimes in the preliminary injunction

4    context, there would be expedited deposition discovery.  Maybe

5    that's not necessary here.  That's why I bring that up.

6           Anyone else on the defense team want to weigh in on --

7    Again, I said team.  Anyone else on the defense side of the

8    ledger want to address that?

9           MR. CARROLL:  Your Honor, Jim Carroll again, City of

10   Milwaukee.  There is, I believe, a single request for admission

11   directed at Mayor Barrett, my client.  And so I guess we just

12   appreciate some sense of when we should respond to that.  In

13   candor to the Court, I don't think it will require a great deal

14   of time given that it's one request, but we would like some

15   time.  We haven't even really had a chance to review it in any

16   detail yet.

17          Additionally, we would request a list of the

18   plaintiff's prospective witnesses for the hearing as early as

19   possible.  Thank you.

20          THE COURT:  All right.  Who else was --  The other

21   discovery was aimed at the Elections Commission, correct?

22          MR. ROTH:  Correct, Your Honor.  This is Attorney Roth

23   for the Commission.  With respect to the discovery drafted to

24   the Commission, like the attorney from Milwaukee just said, we

25   haven't had a ton of time to -- to evaluate it.  It just came

1    in.  I guess I would ask that --  that the response deadline be

2    contemporaneous with our written response on Tuesday close of

3    business.

4            And the other thing I would point out is in order to

5    make sure we can meet that deadline, I have talked with the

6    Commission, and they would ask -- and this is presumably a

7    discussion we can have off line with the plaintiffs -- that the

8    document request be limited to Elections Commission management

9    as administrators as opposed to the entire staff.  That would,

10   obviously, speed up the process of gathering relevant documents.

11   And we think narrowing it just to those individuals would still

12   catch any potentially responsive information.

13           You know, again it's not that we're trying to hide

14   anything.  But just in the interest of time and getting things

15   put together quickly, that would help the Commission respond by

16   Tuesday at 5:00.

17           And then just to tie it off on plaintiff's proposed

18   witnesses, we agree --  I guess we would ask that those

19   witnesses are identified I would ask if possible by the end of

20   the day today.  You know, we obviously haven't had a time to

21   even consider whether to potentially seek depositions.  But in

22   order to leave that possibility open at all, I think we,

23   obviously, need to know their identities as soon as possible.

24           THE COURT:  Thank you.  Mr. Bock, what's your response

25   to all that?

1          MR. BOCK:  Sure.  In terms of the document requests

2    themselves, I think as long as the --  If I could understand

3    precisely who the management administrators are, that would be

4    helpful, and I can respond to Mr. Roth on that.

5          And then in terms of the witness list, our anticipated

6    witnesses have at this point are either --  are either named

7    defendants or they are employees of the predictions that have

8    been or there are a couple of probably additional witnesses from

9    a group of maybe poll watchers.  We're still evaluating who

10   those individuals are, and I would propose that we identify

11   those individuals at the same time.  Well, maybe we can identify

12   them by end of the day on Monday.

13         I was going to say the same time as the response

14   briefs but that's Tuesday, so I would propose that we write our

15   witness list 8:00 p.m. on Monday.

16         THE COURT:  Thank you.  So what's the hang up with --

17   Obviously, you've got some strategic calls as to who you're

18   going to -- who you would call.  But it seems late Monday seems

19   a long time given the --  given --  seems too long to me given

20   the expedited nature of all that.  Is there any reason --  I'm

21   trying to understand.  If there's a reason for that, I want to

22   know what that is.

23         MR. BOCK:  The reason is that we've only been in the

24   case for a few days ourselves, and we are -- In terms of as I

25   said, most of the individuals that we're going to be speaking

1  with at the hearing on Thursday are a public officials.  But we

2  will have two or three at the most individuals that witnessed

3  some of the occurrences on election day, and so we're still in a

4  process of reaching out to those individuals, so that's the

5  reason.  We literally have been retained within the past week.

6      MR. CARROLL:  Your Honor, this is Jim Carroll.  Can I

7  respond to that briefly?

8      THE COURT:  Sure.

9      MR. CARROLL:  Thank you, Your Honor.  While I'm

10  somewhat sympathetic to the concerns raised by plaintiff's

11  counsel, the fact is that, as you noted earlier, this case could

12  and should have been filed weeks ago and was not.  And the fact

13  that plaintiff's counsel chose of their own volition to accept

14  this case and to ask for an extremely expedited schedule is

15  really their decision.

16      So I can't imagine how it would not prejudice those of

17  us defending this case to not know who the witnesses are.  And I

18  frankly can't imagine that plaintiff's counsel doesn't know who

19  their witnesses are when they want an evidentiary hearing next

20  week.  Thank you.

21      MR. MANDELL:  Your Honor.  This is Jeff Mandell on

22  behalf of the Governor.  I want to reiterate Mr. Carroll's point

23  to say while we don't seek affirmative discovery, hearing that

24  there will be witnesses or there will likely be witnesses, two

25  to three, that half the trial witnesses that -- evidentiary

1  witnesses the plaintiff's counsel said that they anticipated in

2  total.  We'd like to know who they are and a brief summary of

3  what they're anticipated to testify to so that we can decide if

4  we do need to have short depositions.  So we would ask for that

5  certainly earlier than Monday, and we would also ask that

6  plaintiff's counsel guarantee that they can be available for

7  depositions sometime during the day on Wednesday since our

8  oppositions are due Tuesday afternoon.

9          THE COURT:  All right.  So here's -- Go ahead.

10          MR. ROTH:  This is Attorney Roth for the Commission.

11  I would just add, not to reiterate what everyone has already

12  said, but to the extent that staff or folks from -- on my client

13  will be called to testify.  The earlier we know who they are the

14  better.

15          Obviously, my clients need to prepare so they can be

16  ready on Thursday to give complete and accurate testimony to the

17  Court.  So, you know, obviously they won't be deposed by us, but

18  we need to get them ready, so the sooner the better.  That's

19  all.  Sorry for interrupting, Your Honor.

20          THE COURT:  No, I appreciate it.  So here's what I'm

21  going to do.  With respect to the discovery responses, I will

22  order those to be provided by Tuesday at 5 o'clock.

23          With respect to witnesses, I will order that the

24  plaintiff identify any --  any witnesses by Sunday at noon along

25  with a short summary of each witness' anticipated testimony.

24

1    If the defendants are going to call any response

2  rebuttal witnesses, I have no idea if that's going to happen or

3  not, but I will give respondents -- or the defendants.  The

4  defendants should --  Why don't you file your counter witness

5  list, if any, along with your responses to the -- to the motion

6  at the same time.  You said that was Tuesday at 5:00; is that

7  right?  I have so many notes here.  Does that make sense to

8  everyone?

9    MR. BOCK:  Yes, Your Honor, on behalf of the

10  plaintiff.  Thank you.

11    MR. ROTH:  Yes, Your Honor, for the Commission.

12    MR. CARROLL:  Yes, Your Honor, for the City of

13  Milwaukee.  Thank you.

14    THE COURT:  Let me also while I'm thinking of it say

15  in terms of --  There was a question about discovery and

16  document production, and Mr. Bock said that maybe you guys could

17  deal with that off line.  Let me encourage you all to talk off

18  line to try to work a lot of these things out.  You're all

19  experienced counsel.  You should be able to resolve a lot of

20  these things without the --  without the Court's intervention.

21    I would also say on the defendant's side of the

22  ledger, it would be extremely helpful prior to the Thursday

23  hearing if there could be some sort of coordination as to who's

24  taking the lead so that we don't have eight lawyers asking the

25  same question of the same witness.

1          Ideally it would be, you know, you could appoint one

2     person to handle each one.  I'm not going to require that, but

3     that would be ideal in terms of efficiency.  Does that all make

4     sense?

5          MR. CARROLL:  Your Honor, one question -- James

6     Carroll, City of Milwaukee.  Is the hearing going to be

7     conducted by Zoom or some other similar remote way?

8          THE COURT:  That's where I'm going next.  So with all

9     of those deadlines, my --  my inclination is to conduct the

10    hearing by Zoom.  But the number of parties here makes that a

11    little complicated.  And so if folks have thoughts or

12    recommendations on how we can do that in an efficient way, I'm

13    open.  Mr. Bock.

14         MR. BOCK:  Yes, Your Honor.  I am not I will confess a

15    Zoom expert, but the plaintiff's preference would be strongly to

16    have an in-person hearing for some of these reasons, but we

17    understand, obviously, the sorts of challenges in this time that

18    presents, but that is our preference.

19         THE COURT:  Anyone else want to weigh in on that?

20         MR. MANDELL:  Your Honor, this is Jeff Mandell for the

21    Governor.  We strongly prefer not to have an in-person hearing.

22    As you've seen from the appearances, we have --  we have

23    co-counsel who are working from out of state, and the travel on

24    this would be difficult.  There are cases like this happening

25    all over the country, and we're happy to work with plaintiff's

26

1  counsel on, you know, and the Court to make sure that this can

2  be done efficiently and effectively.  We think it should be done

3  electronically.

4          MR. CARROLL:  Your Honor, Jim Carroll, City of

5  Milwaukee.  We would echo those sentiments.  We will strongly

6  prefer a Zoom approach.  And I think per your directive a moment

7  ago, everyone can work together to coordinate everything and

8  ensure there isn't repetitive testimony and repetitive

9  questioning.

10          THE COURT:  So one possibility --

11          MR. ROTH:  Attorney Roth for the Commission.  We

12  concur, I apologize.  We agree with what they just said.

13          THE COURT:  One possibility would be to do a hybrid.

14  When I was downstairs on the bankruptcy court this summer did a

15  few hearings like that where we had some counsel in person and

16  some remote and some witnesses remote.  Given the --  Given the

17  number of parties here, I don't want everyone in here in person.

18  So maybe the simplest thing to do is to do everything remote.

19  What are the defendants thoughts on that, on a hybrid?

20          MR. MANDELL:  Your Honor, this is Jeff Mandell for the

21  Governor.  I think that we think it would be simpler and fair to

22  do everything remotely.  I've had some complex national

23  litigation in the last few months where we've done quite a bit

24  with about the same number of attorneys and parties, and we've

25  been able to do this.

1    I just think it's really difficult to do a hybrid

2 where people who are not present in the courtroom have the full

3 --  the full possibility of participating on equal footing with

4 those who are present.

5    THE COURT:  So I appreciate that.  And obviously given

6 the substance of this dispute, it's a significant issue.  So

7 I'll order that we would do the hearing by Zoom.  I would ask

8 the parties to sort of coordinate among themselves on protocols

9 for that, but we will conduct it by Zoom.

10    One sort of procedural question I had related to the

11 substance of this, without getting into the substance too much,

12 is that the request is for --  There's a motion for a

13 preliminary injunction, but it strikes me that this is really --

14 What the plaintiff is really seeking is a trial --  is an

15 expedited trial on the merits of the declaratory judgment claims

16 because the --  the --  the -- There's no injunctive relief

17 requested other than if the Court were to issue a declaratory

18 judgment along the line of the plaintiff's request, that I would

19 enjoin the parties to or enjoin the defendants from violating

20 that order.  So it strikes me as it's not so much an injunction

21 motion as it is an expedited trial on the merits.  Mr. Bock.

22    MR. BOCK:  It's been a long time, Your Honor, since my

23 civil procedure class.  And I hear what you're saying, and I

24 think I agree with it.  I might consult with somebody better on

25 procedure than I.

1    But essentially what we're asking for is the Court to

2    find that under the terms of the Constitution, that the election

3    was a failed election, that it was not a valid election.

4    So I guess I can try to describe that kind of on order

5    an injunction for the presidential election. But I think I

6    agree with you that it's more consistent with a request for

7    expedited --

8    THE COURT: And the reality is Rule 65(a)(2) provides

9    for consolidating a hearing on a preliminary injunction with a

10   trial on the merits. So I'm not sure that procedurally that

11   makes much of a difference one way or the other. But to me,

12   there's really not much of a request for injunctive -- Nobody's

13   asking me to preserve the status quo. It's really more of a

14   request for pretty remarkable declaratory relief.

15   MR. BOCK: Correct.

16   THE COURT: Again without getting too much into the

17   substance, I will also raise one question that seems -- that

18   seems sort of obvious to me. The complaint says, "That the

19   plaintiff acknowledges that in relation to the Electors Clause

20   of Article II of the U.S. Constitution, it is ultimately the

21   exclusive province of the Wisconsin Legislature to determine the

22   remedy for violations of Article II of the United States

23   Constitution in Wisconsin." That's a quote. If that's the

24   case, why are we doing anything in this Court? And why if

25   that's the appropriate arena for a remedy, why isn't the

1  plaintiff going to the Legislature?

2          MR. MANDELL:  Because I think the Legislature has

3  chosen to appoint electors through an election.  And the Court

4  first has to determine that the --  that they have --  that the

5  election essentially was not followed or conducted in a

6  constitutional manner.  And at that point under the law and

7  under the Constitution, the Legislature -- And we can at that

8  point decide how it will appoint electors.

9          THE COURT:  So I get the argument.  I have a very,

10 very hard time seeing how this is justiciable in the federal

11 court.  I also have real question --  The request to remand this

12 case to the Legislature also strikes me as really bizarre in the

13 sense that the case was filed here.

14          When I think of remand, I think of, you know, sending

15 it back to a lower court or lower adjudicative body, and that's

16 not really what I'm being asked to do here.

17          But anyway, I don't want to get into the merits, but

18 there's some --  I have some serious questions, which I'm sure

19 the parties will help me with in the briefing.

20          MR. BOCK:  I was going to say -- Your Honor, this is

21 Bill Bock.  I think maybe the term remand might be inartful.

22 We're simply asking for declaratory relief, and then stating

23 what the next step would be.  But we're not asking the Court to

24 --  to determine that the --  what the remedy for after

25 declaring the violation --  after of the violation is declared

1    or is not to provide a remedy for that violation.

2            THE COURT:  All right.  Like I said, I don't want to

3    get too much in the merits here, and I'll await briefing, which

4    I'm sure will address those and other issues.

5            I guess the next thing to address today just briefly

6    are the motions to intervene.  Let's see who we have on for

7    that.  We have Mr. Goode and Mr. Curtis.

8            MR. GOODE:  Yes, Your Honor.

9            MR. CURTIS:  Yes, Your Honor.

10           THE COURT:  My --  My initial reaction to the motions

11   to intervene is that my --  my general understanding of

12   intervention is that it's --  Rule 24 is intended to address a

13   situation where you've got a piece of real property where you've

14   got multiple owners, for example, and you've got multiple owners

15   with an interest in the property, and one of these owners is in

16   a dispute with a third party.  And the other owner says wait, I

17   need to intervene because the Court's going to make a ruling

18   about this property.  I have an interest in it.  And if I'm not

19   allowed to intervene, I could be --  my interest could be

20   adversely affected, and I need a chance to address that.

21           And I realize intervention is used in other situations

22   than that, but that's sort of the core purpose of Rule 24.  This

23   --  The interests of the intervening parties seem to me to not

24   be sort of unique.  I mean, I think every voter or potential

25   voter in the State of Wisconsin has the same interests as the

1   proposed intervenors, so I'm not sure why --  what necessarily

2   makes --  what interest rises to the level of warranting

3   intervention in this case.

4          I also have a question as to whether all of those

5   interests of all of the proposed --  the voting --  the right to

6   have their votes counted, those interests of the proposed

7   intervenors, why they aren't being adequately represented

8   already by the host of defense counsel that defendants and

9   defense counsel we already have in the case?  Mr. Curtis, do you

10  want to address that first?

11         MR. CURTIS:  Yes.  Thank you, Your Honor.  As to

12  the -- As to the interest at stake, Your Honor talked about the

13  property.  We're certainly not talking about real property here,

14  but we are ultimately talking about electoral votes of this

15  state.

16         The DNC appears on behalf of our party, the democratic

17  party.  And our party's nominees won those electoral votes.

18  Again, they're not property, but it's a very distinct interest.

19  Those electoral votes, we submit, belong to our nominees.

20         And so I think there is a different interest than the

21  typical, you know, voter or --  or -- And I certainly want to

22  emphasize that the other defense counsel here are --  are

23  outstanding lawyers and --  and we have a great deal of respect

24  for them.  The interest though, Your Honor, is still distinct

25  and unique.

32

1    I would add two other points if I may.  If the Court
2  is not persuaded under 24(a), I would note there is permissive
3  intervention under 24(b).  Judge Connolly in the Western
4  District earlier this year in the *DNC v. Bostelmann* case allowed
5  the RNC, and I believe we cited this case in our motion, allowed
6  the RNC to intervene because its arguments were kind of a mirror
7  image of what the plaintiffs were arguing.
8    Here we can add the Trump Campaign trying to take
9  those votes away from our party's nominees and the victors.  And
10  so in whether under a 24(a) or 24(b) analysis, we would
11  respectfully submit it's another at the table.
12    Again, our nominees won the votes fair and square.  I
13  would add in conclusion the schedule that Your Honor has set
14  sounds imminently reasonable.  We will participate if allowed to
15  consistent with that schedule.  We will not hold anyone up, and
16  we'll do our best to avoid any overlap.
17    THE COURT:  Thank you.  Mr. Goode.
18    MR. GOODE:  Yes, Your Honor.  I would like to join in
19  with what Mr. Curtis just said.  And speaking on behalf of the
20  NAACP and my three individual clients.
21    We have individual voters here who have if this case
22  is to proceed and relief is granted would lose the valuable vote
23  they made.  NAACP has been an organization that has been
24  advocating for minority rights in this country for well over
25  100 years.

1        It's very distinct impressions and viewpoints that

2   should be heard by the Court in relation to this, and there may

3   be some divergence between the defendants will do.  And I agree

4   with Mr. Curtis with respect to the quality of lawyers that are

5   in this case.  The Court will get a full plethora of information

6   and views and legal analysis on how to approach this case on

7   Tuesday at 5:00.

8        We stand ready if the Court is allowing us in to file

9   a brief by 5:00 p.m. on Tuesday.  It is our view that the case

10  is legally infirm.  We think we have a viewpoint here that would

11  be of use to the Court.  We certainly don't seek to slow

12  anything down, and we simply would like the right to

13  participate.

14       There is a host of cases cited on page 11 of our brief

15  that speak directly to this issue.  The NAACP has spent a lot of

16  time in this election cycle and others intervening and

17  participating in this manner so minority votes and black votes

18  are heard in this context.

19       I would also point the Court to Exhibit 1 to our

20  brief, which is the *Boockvar* case.  Where in this election cycle

21  post November 3rd, a federal judge in the Middle District of

22  Pennsylvania did grant permissive intervention.

23       So we're not here to delay.  We're here to participate

24  and have our voice heard, and we will, obviously, rest with

25  whatever the Court decides, but we would like to have the

1  opportunity to file a motion to dismiss on Tuesday by 5 o'clock

2  because we do think there are legal issues here that have to be

3  addressed before any evidentiary on Thursday is to proceed.

4          THE COURT:  So thank you for that.  Let me ask you

5  both.  Is there any reason --  Is there any reason that the

6  proposed intervenors --  It wouldn't be sufficient to treat --

7  to allow them to appear as amici if I'm pronouncing that.  My

8  Latin pronunciation is nonexistent.

9          But it seems to me --  I don't want to deny anybody,

10  first, the interest in voting.  The interests here are real.

11  I'm not questioning that in anyway.  But my --  My concern is

12  intervention makes --  makes all these folks parties, and that

13  can bog down.  It creates additional burdens and additional

14  issues.

15          Is there any reason why instead of intervening as

16  parties, the proposed intervenors couldn't --  couldn't be --

17  their interests won't be satisfied by simply allowing them to

18  file amicus briefs?  Mr. Curtis.

19          MR. CURTIS:  Thank you, Your Honor.  And I know any

20  amicus brief that we would file would be read and carefully

21  considered by the Court.  Again, I come back.  This is not

22  simply a matter of representing voters as important as that is,

23  as crucial as that is.  But it really does seem to me that --

24  that my client's nominees for president and vice president won

25  those electoral votes.  We have a significant protectable

1   interest in those votes, which I think is preserving of 24(a)
2   treatment intervention of right.
3           Again, I'm hearing Your Honor of -- of the possibility
4   of getting things bogged down, slowing things up, and I assure
5   the Court that we would not let that happen.
6           We also would -- would if allowed to intervene plan
7   to move to dismiss on Tuesday in addition to responding to the
8   pending motion.  But again, I would just point Your Honor to the
9   unique nature of the interests that my party's nominees have in
10  these electoral votes, and it seems to be the plaintiff's bottom
11  line is that I want to take those votes away from --  from our
12  candidates.
13          THE COURT:  So I will take the motions to intervene
14  under advisement, and I'll try to get a written decision out
15  over the weekend or on Monday, but I will say --  I will say --
16  Again, I'm not --  I'm not -- I definitely don't want to
17  downplay the interests because I understand they are important
18  ones both on the DNC side and the NAACP and the individuals.  So
19  while I'm --  While I'm wrestling with the Seventh Circuit law
20  on intervention, I'll take that under advisement.
21          You should know that if nothing else, the Court would
22  definitely allow amicus briefs from both of the intervening
23  parties.  So I'm taking it under advisement, but I don't want to
24  leave you completely hanging.  So if you are working on things,
25  they won't be thrown out.  You'll be able to file them.  If not

1    as -- if not as parties, at least as amici.  Does that make

2    sense?

3            MR. GOODE:  It does, and we certainly appreciate that

4    right if that's the direction the Court wishes to go.  I would

5    like to just raise one other point in advance of the status

6    conference today.  I believe with respect to our motion, NAACP's

7    motion and my individual clients, we have consent to take

8    matters to the Court from I think from everybody at this point.

9    We just haven't heard back from the Milwaukee -- City of

10   Milwaukee defendants or City of Kenosha defendants or the

11   plaintiffs.  But every other party to the case, some of whom

12   gave it to us before we filed last night and some of whom have

13   given to us today have no objection to the intervention to the

14   extent that that makes a difference in Your Honor's analysis.

15           THE COURT:  Thank you for that.  Again, my real

16   concern is not getting things bogged down.  Go ahead, is that

17   Mr. Curtis?

18           MR. CURTIS:  Thank you, Your Honor.  You --  You asked

19   if we understood where you're at and understood your message

20   about we can get to work writing one way or other, and I

21   appreciate that.

22           One other point I just note is in terms of difference

23   between an amicus and a party are the appeal rights they hold,

24   and that, of course, is another concern on our part in case, you

25   know, the parties -- the other parties were to do something that

37

1  we disagreed with.  So I would add that to what I said earlier,

2  there is the difference without the ability to appeal.  But I

3  appreciate the Court's comments, and we are already at work on a

4  brief.

5           THE COURT:  I'll also note for the record that neither

6  of the intervenors have complied with Rule 24(c) which requires

7  that with the motion to intervene, you're supposed to serve --

8  it's supposed to be accompanied by a pleading that sets out the

9  claim or defense which the intervention is sought.

10          So I'm not going to hang you up on that procedural

11 issue, and I know the DNC motion contemplated that something

12 would be filed shortly, but I wanted to raise that as a

13 procedural issue.  Go ahead.

14          MR. GOODE:  May I speak to that to --

15          THE COURT:  Go ahead.

16          MR. CURTIS:  I can go first or the NAACP.

17          THE COURT:  Mr. Curtis go first.  We will go in

18 alphabetical order.

19          MR. CURTIS:  Thank you, Your Honor.  Yes, you

20 correctly note that it was said in our motion over night that we

21 acknowledge the applicability of Rule 24(c) and are at work on a

22 proposed answer.  Again, I don't have the complaint in front of

23 me.  It's 70 plus pages 300 plus paragraphs.  We wanted to take

24 --  be careful in responding.

25          I think we're up to about paragraph 270 or 280 now.

1    We will intend to correct that omission today, Your Honor.

2         THE COURT:  Thank you.  Mr. Goode.

3         MR. GOODE:  Yes, Your Honor.  I point you to page 14

4    of our brief which addresses this issue.  Given the expedited

5    time that we're proceeding with, we filed our motion last night

6    I think within 26 hours of the complaint being filed.  And we

7    cite to the *Shevlin* case, which is referred to on page 14.

8    Given that we're willing to live with the deadlines the Court

9    has imposed for the party and parties themselves haven't

10   provided a responsive pleading, at this point we don't see any

11   prejudice certainly to the plaintiff with respect to it.

12        And I would, of course, mirror my friend Mr. Curtis'

13   statement about the appellate rights because I do think it

14   merits an additional notation with respect to how we should be

15   designated in this cation.  That's all I have, Your Honor.

16   Thank you.

17        THE COURT:  I'm familiar with all that.  So thank you.

18   As I said, I'll take it under advisement and try to get you

19   something over the weekend or on Monday.

20

21        MR. CURTIS:  Thank you, Your Honor.

22        MR. GOODE:  Thank you, Judge.

23        THE COURT:  You're welcome.  I guess that sort of

24   concludes the matters that I had on my agenda to discuss today.

25   Because again, is there anything else procedurally that the

1    parties want to bring up at this point?

2              MR. BOCK:  This is Bill Bock.

3              THE COURT:  Mr. Bock.

4              MR. BOCK:  So two matters just in terms of efficiency

5    and maybe saving some people some time.  One would be I was

6    thinking about the hearing itself.  Everybody --  You're going

7    to have a lot of reading coming in and all of us will have.  And

8    it seems to me that the --  that the arguments, you know, are

9    kind of set out in the complaint will be set out in the briefs

10   for opening statements, so I just make a suggestion and maybe it

11   will help everybody to know in advance if we didn't need to

12   prepare an opening statement and can simply make our arguments

13   at closing upon the completion of the evidence, so that was the

14   first thing.  And I have one other matter.

15             THE COURT:  What's the other matter?

16             MR. BOCK:  In thinking about the compressed times that

17   all of us are dealing with, I just wanted to raise whether we

18   thought that the defendants that are on the call would waive

19   service, and I think everybody --  everybody knows what the --

20   what the issues are.  I don't think they are --  It just seems

21   to me to be a little bit of a waste of time and effort and

22   resources trying to do that at this point given that everybody

23   is --  And I'm very grateful for the fact that people have

24   appeared on this call to help us schedule.  I want to thank

25   everybody for being on the call to help us get a schedule in

1   place.

2           Having done that, it just kind of seems to me that --

3   that going through the service process at this point would be

4   superfluous, and we certainly want to do whatever we can to get

5   people whatever they need if there are documents that they

6   haven't received thus far, and we'll be available to do that.

7   But that would be my second position to the matter.

8           THE COURT:  So I'll turn to defense counsel shortly.

9   One thing we could do with respect to openings and all of that.

10  Perhaps, it makes sense to schedule a sort of final pretrial so

11  to speak, prehearing call on Wednesday afternoon to sort of dot

12  our Is and cross our Ts before Thursday's hearing.  Does that --

13  What do folks thing about that possibility?

14          MR. BOCK:  Your Honor, what time did you propose?

15          THE COURT:  I didn't.  I'm thinking maybe some time

16  Wednesday afternoon.

17          MR. JONES:  Your Honor, this Andrew Jones for the

18  Milwaukee County defendants.  I haven't spoken up because I've

19  generally agreed with what counsel for the other defendants have

20  said in court.  I think that's a very practical suggestion.  I

21  think as some of the counsel for the defendants have suggested,

22  you know, the briefs that get submitted I think are going to

23  highlight some --  some very important legal defenses to the

24  claims justiciability issues as you put it.

25          So I do think that that sort of call on Wednesday

1  afternoon would go a long way towards clarifying what needs to

2  be addressed at a hearing on Thursday, at least from my

3  perspective.

4          THE COURT:  Anyone else want to weigh in?

5          MR. MANDELL:  This is Jeff Mandell for the Governor.

6  I agree with that.  I think a call would be very helpful in

7  helping us think through and organize how Thursday's hearing

8  might proceed, and that will be a lot clearer once you have all

9  the briefs and know what factual issues and know what legal

10  issues are placed before the Court.

11          You know with respect to the other proposals, I would

12  say that we do think that if the plaintiff has fact witnesses,

13  we think that they should be testifying, and we should have the

14  opportunity to cross-examine them.

15          In terms of service, I can say for the Governor, I

16  don't think that we would insist on formal service.

17          MR. CARROLL:  Your Honor, Jim Carroll, City of

18  Milwaukee.  If I may respond to those issues first.  No

19  objection to the pretrial on Wednesday afternoon.  In fact, I

20  think that would be a good idea including some of the reasons

21  Mr. Jones stated.

22          As to waiver of service, I don't have authorization

23  from my clients to waive service and respectfully, I would not

24  recommend that they do so anyway.  Thank you.

25          MR. LETTENEY:  Scott Letteney from the City of Racine

1    defendants.  I am going to echo what Mr. Carroll just said.  I

2    don't have authorization to waive service.  Some documents were

3    brought in to me since this hearing.  I haven't had a chance to

4    review them completely, but I will say for sure Judge, we don't

5    have the exhibits to the complaint yet, so we don't know for

6    sure that we have everything.  And before we are prepared to

7    waive service, I believe we need to have everything.

8             THE COURT:  Anyone further want to weigh?

9             MR. CHARBOGIAN:  Judge, Brian Charbogian for the Mayor

10   John Antaramian and Matt Krauter, the City Clerk Treasurer for

11   the City of Kenosha.  I would be in the same camp as Mr. Carroll

12   and Mr. Letteney.  Without restating what they said, it seems

13   striking to me to have the plaintiff wait about a month before

14   filing this suit and then potentially have issues with service

15   and then simply just request that those issues be forgiven

16   outright.  I also would not recommend to my client to waive

17   service.

18             THE COURT:  All right.

19             MR. BOCK:  Your Honor, this is Bill Bock.  I would

20   just point out that the federal rules kind of address issues

21   like this and try to get parties to work together in a case like

22   this that is of importance and is of an expedited nature and

23   where everybody is working hard.  And specifically on service

24   Rule 4(d) regarding waiver of service does require counsel to --

25   to undertake to not --  not resist service but avoid unnecessary

1    expenses of serving a summons.

2           And so if -- If there's a reluctance to -- to waive

3    service on this call, then I would suggest that the Court could

4    enter an order that requires the parties to -- and shortens the

5    time that they have to -- in which to decide whether they're

6    going to waive service.

7           And I've asked that, you know, if this discussion is

8    considered to it be our request for waiver of service under

9    4(d)(1) and that they -- if we are -- if we have to serve

10   people, I think that there's authority that the Court would have

11   then to require the defendants to pay for that service.

12          MR. CARROLL:  Your Honor, this is Jim Carroll, City of

13   Milwaukee.  That assertion is bold to say the least.  The notion

14   that the plaintiff's expense in properly serving defendants in a

15   lawsuit that was initiated less than 48 hours ago and that

16   expense should be a consideration of this Court I think is

17   frankly laughable.

18          THE COURT:  So -- You know, I don't want to get

19   bogged down in service issues.  I set a schedule on how we're

20   going to resolve the case next week.  I do think everybody

21   should read Rule 4(d).

22          There is an obligation to avoid unnecessary expenses

23   of serving a summons.  You know, I'm not going to -- I don't

24   appreciate a lot of back and forth on that here.  I can't make

25   anybody -- I don't think I can force anybody to waive service.

1    There are repercussions if you don't waive service.  I'm not

2    sure how significant those are in the scheme of things, but I

3    would expect counsel to cooperate in the efficient resolution of

4    this dispute as I said earlier.  I'm not going to say anything

5    more about service.  You guys can talk amongst yourselves off

6    line to try to get that resolved.

7            With respect to final pretrial prehearing conference,

8    why don't we have --  We'll set that for Wednesday afternoon at

9    3 o'clock.  That will be after all of the briefing is filed, and

10   we can talk then about how we would conduct things on Thursday

11   the 10th.  Let me also just say, obviously, there are a lot of

12   defendants.  There are a lot of defense counsel on this call.

13   It would be much appreciated by the Court if you could

14   coordinate in terms of your briefing and in terms of your

15   presentation of evidence on the 10th.  The more paper you throw

16   at me, the harder it's going to be for me to get through those

17   and my law clerks to get through those papers.

18           And my expectation is there's going to be substantial

19   overlap in terms of arguments and issues.  So let me encourage

20   you.  I'm not going to require it, but let me encourage you to

21   work together to maybe come up with a single brief or with a

22   smaller number of briefs because if you inundate me with a lot

23   of papers, that's not very helpful, and I assume that you all

24   want to be helpful to the Court.

25           So we'll talk on Wednesday at 3 o'clock.  We'll do

1    that by phone, and then we'll have the Thursday hearing by Zoom,

2    and we'll probably get an order out with some protocols on that

3    before Wednesday.  But if not, we'll talk about those protocols

4    on Wednesday afternoon.  With all that being said, is there

5    anything further that we need to do today?  Mr. Roth or

6    Mr. Bock?

7            MR. BOCK:  Not from the perspective of the plaintiff,

8    Your Honor.  Thank you very much.  We appreciate your time.

9            THE COURT:  All right.  Any of the defendants?

10           MR. CHARBOGIAN:  Judge, Brian Charbogian, just one

11   housekeeping question.  If we had set a time for the hearing on

12   Thursday, I must have missed it.  Can I inquire what time the

13   Court wants to have that hearing?

14           THE COURT:  It depends on how long we need.  I'll plan

15   on starting at 9:00 a.m..  If we --  If we get to Wednesday and

16   it sounds like a number of witnesses has decreased and it's

17   going to be shorter, maybe we can start later.  But for right

18   now, let's plan to start at 9:00 a.m..

19           MR. CHARBOGIAN:  Thank you.

20           THE COURT:  Thank you for raising that.  All right.

21   You've all got some briefs to get filed.  We've set at schedule.

22   I appreciate your time and cooperation today.  Again, let me

23   encourage you to continue to do that to try to make this as

24   efficient as possible so we can get this resolved in a timely

25   manner.  We are adjourned.

1       (Whereupon proceeding was concluded.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


       I, SUSAN ARMBRUSTER, RPR, RMR, Official Court Reporter for the United States District Court for the Eastern District of Wisconsin, do hereby certify that the foregoing pages are a true and accurate transcription of my original machine shorthand notes taken in the aforementioned matter to the best of my skill and ability.


Signed and Certified December 4, 2020.

<u>/s/Susan Armbruster</u>

Susan Armbruster

Susan Armbruster, RPR, RMR
United States Official Reporter
517 E Wisconsin Ave., Rm 200A,
Milwaukee, WI 53202
Susan_Armbruster@wied.uscourts.gov