# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | | |
|---|---|---|
| Donald J. Trump, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | 2:20-cv-01785-BHL |
| | ) | |
| v. | ) | |
| | ) | |
| The Wisconsin Election Commission, | ) | |
| *et al.,* | ) | |
| Defendants. | ) | |


## BRIEF OF *AMICI CURIAE* CHRISTINE TODD WHITMAN, JOHN DANFORTH, LOWELL WEICKER, *ET AL.,* IN SUPPORT OF DEFENDANTS' OPPOSITIONS TO THE MOTION FOR PRELIMINARY INJUNCTIVE RELIEF


December 7, 2020

Respectfully submitted,

*Of Counsel*
RICHARD D. BERNSTEIN
1875 K STREET, N.W.
Washington, D.C. 20006-1238
(202) 303-1000
rbernsteinlaw@gmail.com

/s/ Nancy A. Temple
NANCY A. TEMPLE
KATTEN & TEMPLE, LLP
209 S. LaSalle Street, Suite 950
Chicago, IL 60604
(312) 663-0800
ntemple@kattentemple.com

Counsel for *Amici Curiae*

# TABLE OF CONTENTS

INTEREST OF *AMICI* .................................................. 1

INTRODUCTION AND
SUMMARY OF ARGUMENT ....................................... 1

ARGUMENT .................................................................. 4

I.  THE WISCONSIN LEGISLATURE MAY NOT
    ADJUDICATE ANY REMEDY, INCLUDING
    ALLOCATING ELECTORS, WITHOUT FIRST
    AMENDING WISCONSIN'S PRESIDENTIAL ELECTION
    STATUTES, SUBJECT TO THE GOVERNOR'S VETO .. 4

II. INDEPENDENTLY, THE ELECTORS CLAUSE AND
    3 U.S.C. §§ 1-2 PROHIBIT THE WISCONSIN
    LEGISLATURE FROM BELATEDLY APPOINTING OR
    ALLOCATING ELECTORS OR CHANGING FROM
    JUDICIAL REMEDIES TO LEGISLATIVELY-
    ADJUDICATED REMEDIES ........................................... 6

    A.  3 U.S.C. §§ 1-2 Prohibit The Wisconsin
        Legislature From Belatedly Appointing Or
        Allocating Electors ................................................. 6

    B.  The Federal Constitution, As Implemented By
        3 U.S.C. §§ 1-2, Also Prohibits The Wisconsin
        Legislature From Belatedly Changing A Part Of
        The Manner of Appointment From Judicial Remedies
        To A Legistlatively-Adjudicated Remedy ............. 9

III. 3 U.S.C. § 6 AND WISCONSIN STATUTES §§ 7.70(5)(b) AND
     9.01(1)-(11) PRECLUDE CERTIFYING ANY ELECTORS
     PURPORTEDLY APPOINTED BY THE LEGISLATURE
     EXPRESSLY OR THROUGH THE GUISE OF A
     REMEDY ................................................................. 13

CONCLUSION.......................................................... 14

LIST OF *AMICI CURIAE* ......................................... 1a

i

# TABLE OF AUTHORITIES

**Cases**                                                      **Pages**

*Arizona State Legislature v. Arizona Independent Redistricting Comm'n,*
576 U.S. 787 (2015)............................................................................ 4

*Bowen v. Georgetown Univ. Hosp.,*
488 U.S. 204 (1988)......................................................................... 12

*Bush v. Gore,*
531 U.S. 98 (2000) ........................................................... 5, 9, 10, 14

*Bush v. Palm Beach Cty. Canvassing Bd.,*
531 U.S. 70 (2000) .......................................................................... 12

*Chiafolo v. Washington,*
140 S. Ct. 2316 (2020) ............................................................... 3, 10

*Donald J. Trump for President, Inc. v. Boockvar,*
No. 4:20-cv-02708-MWB, 2020 WL 6821992 (M.D. Pa.
Nov. 21, 2020), *aff'd,* No. 20-3371, 2020 WL 7012522
(3d Cir. Nov. 27, 2020) .............................................................. 1, 3

*Foster v. Love,*
522 U.S. 67 (1997) ........................................................................... 9

*Jarecki v. G.D. Searle & Co.,*
367 U.S. 303 (1961) ....................................................................... 13

*McPherson v. Blacker,*
146 U.S. 1 (1892) ...................................................................... 2, 11

*Roe v. Alabama,*
43 F. 3d 574 (11th Cir. 1995) ....................................................... 12

*Smiley v. Holm,*
285 U.S. 355 (1932) .................................................................... 2, 4

*Trump v. Evers,*
No. 2020AP1971-OA (Wis. Sup. Ct. Dec. 2, 2020) .................... 2, 4

Case 2:20-cv-01785-BHL   Filed 12/07/20   Page 3 of 22   Document 57-1

*United Savings Ass'n v. Timbers of Inwood Forest Assoc.,*
484 US. 365 (1988) .......................................................................... 12

*Wisconsin Voters Alliance v. Wisconsin Election Comm'n,*
No. 2020PA1930-OA (Wis. Sup. Ct. Dec. 4, 2020) ..................... 3, 9

*Zadvydas v. Davis,*
533 U.S. 678 (2001) ....................................................................... 12

## Constitutional and Statutory Authorities

U.S. Const., art. I, § 4 ................................................... 2, 4, 6 *passim*

U.S. Const., art. II, § 1 ......................................................... *passim*

U.S. Const., amend. XIV ................................................................ 12

1 Stat. 239 (1792) .......................................................................... 8

5 Stat. 721 (1845) ...................................................................... 7, 8

17 Stat. 28 (Feb. 2, 1872) ............................................................ 8

2 U.S.C. § 7 .................................................................................... 8

2 U.S.C. § 8(a) .............................................................................. 8

3 U.S.C. § 1 ....................................................................... *passim*

3 U.S.C. § 2 ....................................................................... *passim*

3 U.S.C. § 5 .......................................................................... 2, 3, 6

3 U.S.C. § 6 ................................................................... 3, 6, 13, 14

Wis. Const, Art. V, § 2 .................................................................. 6

Wis. Const, Art. V, § 10(a) ........................................................... 6

Wis. Stat. § 7.70(5)(b) ............................................................ 3, 13

Wis. Stat. § 8.25(1) .................................................................. 2, 5

iii

Wis. Stat. § 9.01 ...................................................*passim*

Wis. State. § 9.01(6) ................................................ 2

Wis. State. § 9.01(7) ................................................ 2

Wis. State. § 9.01(8) ................................................ 2

Wis. State. § 9.01(11) ............................................ 2, 5, 14

## Other Authorities

G. Brosofsky, M. Dorf, & L. Tribe, *State Legislators
Cannot Act Alone in Assigning Electors* (Sept. 25, 2020) ............ 5

CONG. GLOBE, 28th Cong., 2d Sess. 14 (Dec. 9, 1844) ............... 8

CONG. GLOBE, 28th Cong., 2d Sess. 21 (Dec. 11, 1844) ............. 8

S. Johnson, *Dictionary of the English Language* (6th ed. 1785) .. 10

## INTEREST OF AMICI CURIAE

*Amici* include former Governor Christine Todd Whitman, former Senator John Danforth, former Governor and Senator Lowell Weicker, former Congressional representatives Constance Morella and Christopher Shays, Carter Phillips, former Acting Attorney General Stuart Gerson, conservative legal scholars, and others who have worked in Republican federal administrations. *See* Appendix A.[1] Reflecting their experience, *amici* have an interest in seeing the rule of law applied in contentious election cases. *Amici* speak only for themselves personally, and not for any entity or other person.

## INTRODUCTION AND SUMMARY OF ARGUMENT

There are many reasons to dismiss the Complaint and deny a preliminary injunction. This brief focuses on one. As a federal district court recently held, "invalidating the votes of millions" is "simply not how the Constitution works." *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-cv-02708-MWB, 2020 WL 6821992, at *12 (M.D. Pa. Nov. 21, 2020), *aff'd,* No. 20-3371, 2020 WL 7012522 (3d Cir. Nov. 27, 2020). This is illustrated by the improper request in the Complaint for a judgment that would "[r]emand this matter to the Wisconsin Legislature to review the nature and scope of the infringement declared and determine the appropriate remedy for the constitutional violation[s] established, including any impact on the allocation of Presidential electors for the state of

---

[1] No counsel for any party authored the brief in whole or in part, and no person other than amici made a monetary contribution to its preparation or submission

1

Wisconsin." Complaint, Dkt. No. 1, ¶ 31; *see also id.* at p. 72, Prayer, ¶ 4. But, for at least three reasons, the Wisconsin legislature has no authority to appoint electors expressly or in the guise of adjudicating a remedy.

First, Wisconsin provides by statute, Wis. Stat. § 8.25(1), for the popular election of presidential electors. Wisconsin Statutes further provide that any challenges to election results are governed by § 9.01, which "constitutes the 'exclusive judicial remedy' applicable to [Plaintiff's] claim." *Trump v. Evers,* No. 2020AP1971-OA, at 2 (Wis. Sup. Ct. Dec. 2, 2020) (Hagedorn, J., concurring) (quoting Wis. Stat. § 9.01(11)). Wisconsin's courts, not the Wisconsin legislature, address any post-election disputes. *Id.* (citing Wis. Stat. §§ 9.01(6)-(8)).

The Wisconsin legislative scheme for elections does not grant any adjudication or remedial authority to the Wisconsin legislature. Thus, the Wisconsin legislature could not appoint electors or otherwise adjudicate a remedy unless and until a new statute first amends these statutes, or repeals and replaces them. But any such new statute "shall be subject to the veto power of the Governor as in other cases of the exercise of the lawmaking power." *Smiley v. Holm*, 285 U.S. 355, 373 (1932).

Second, and independently, Article II, Section 1 of the Constitution (the "Electors Clause") confers plenary power on Congress over the time when a state must choose electors. With one rare exception, 3 U.S.C. § 1 has implemented that power to prevent a state legislature from appointing electors after the election day determined by Congress – November 3, 2020. The rare and exclusive

2

exception is set forth in 3 U.S.C. § 2 and applies only when a state's "election has failed to make a choice." The Complaint does not and could not allege such a failure. That failure does not and cannot occur simply because a losing candidate has raised challenges in and outside court. American courts have been resolving and remedying election challenges for centuries, and none has ever disenfranchised millions of voters. *Donald J. Trump for President, Inc.*, 2020 WL 6821992, at *1. Because a failed election has not occurred here, after November 3, 2020, a state legislature cannot either appoint its own slate of electors or otherwise change retroactively any aspect of the manner of appointment – including the statutory procedures for adjudicating a remedy– for any reason. This is essential to preserving the "trust of a Nation that here, We the People rule." *Chiafolo v. Washington*, 140 S. Ct. 2316, 2328 (2020).

Third, for presidential electors, 3 U.S.C. § 6 and Wisconsin Statutes § 7.70(5)(b) require the Governor of Wisconsin to sign the certificate prepared by the Wisconsin Elections Commission "showing the determination of the results of the canvass and the names of the persons elected," and Wisconsin Statutes § 9.01 provide the exclusive remedy for any disagreement with that certification. The legislatively-adjudicated remedy proposed by the Complaint violates 3 U.S.C. § 6 and these Wisconsin statutes.

In short, Plaintiff cannot forum shop from the Wisconsin judiciary to the Wisconsin legislature. *Cf. Wisconsin Voters Alliance v. Wisconsin Election Commission,* No. 2020AP1930-OA, at 2-3 (Wis. Sup. Ct. Dec. 4, 2020) (Hagedorn,

3

J., joined by Bradley, Dallett, Karofsky, JJ., concurring) ("These petitioners have come nowhere close" to the "evidence and arguments" necessary "to invalidate an election" such that presidential electors might be chosen by the legislature.); *Trump v. Evers,* No. 2020AP1971-OA, at 4 (Wis. Sup. Ct. Dec. 2, 2020) (Roggensack, C.J., joined by Ziegler, J., dissenting) ("The remedy Petitioners seek may be out of reach for a number of reasons.").

## ARGUMENT

I. THE WISCONSIN LEGISLATURE MAY NOT ADJUDICATE ANY REMEDY, INCLUDING ALLOCATING ELECTORS, WITHOUT FIRST AMENDING WISCONSIN'S PRESIDENTIAL ELECTION STATUTES, SUBJECT TO THE GOVERNOR'S VETO.

In *Smiley v. Holm*, 285 U.S. 355 (1932), the Supreme Court unanimously held that, under the Elections Clause, which grants state legislatures power over the "manner" of congressional elections, when a state's constitution includes a governor's right to veto statutes passed by the state legislature, any new law governing congressional elections "shall be subject to the veto power of the Governor as in other cases of the exercise of the lawmaking power." *Id.* at 373. All nine Justices of the Supreme Court reaffirmed *Smiley* in *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787, 806-08 (2015); *see id.* at 840-41 (Roberts, C.J., joined by Scalia, Thomas, and Alito, JJ.) (dissenting).

*Smiley* applies to state presidential election statutes. To start, the Elections and Electors Clauses have "considerable similarity." *Id.* at 839. Second, since

4

1788, state legislatures have enacted the manner of presidential election *by statute*. G. Brosofsky, M. Dorf, & L. Tribe, *State Legislators Cannot Act Alone in Assigning Electors*, at 5-7 (Sept. 25, 2020) (detailing with citations this practice).[2] In particular, in 1788 South Carolina first provided *by statute* for the legislative selection of presidential electors. *Id.* at 7 (citing 1788 South Carolina statute). Only after the statute was enacted did the South Carolina legislature appoint electors. *Id.*

Wisconsin, by statute, provides for the popular election of presidential electors. Wis. State. § 8.25(1). Under the Electors Clause, the statutory "manner" of appointment also includes statutorily-designated state court procedures for "election disputes," "protest[s]" and "[c]ontests" concerning, among other things, "canvassing" and "certification." *Bush v. Gore,* 531 U.S. 98, 113-14, 116-18 (2000) (Rehnquist, C.J., concurring, joined by Scalia and Thomas). Wisconsin, by statute, provides for presidential election disputes to be resolved by Wisconsin's courts. Wis. Stat. §§ 9.01(1)-(10). "This section constitutes the exclusive judicial remedy for testing the right to hold an elective office as the result of an alleged irregularity, defect or mistake committed during the voting or canvassing process." *Id.* at § 9.01(11).

A new statute would have to amend these Wisconsin statutes, or repeal and replace them, in order for the Wisconsin legislature to change the manner of

---

[2] Available at http://www.dorfonlaw.org/2020/09/state-legislatures-cannot-act-alone-in.html.

appointing electors either by providing for legislative selection, or by providing for

a legislatively-adjudicated remedy – rather than judicial remedies – for alleged

violations. Wisconsin's Governor would have veto power over any such proposed

new statute. Wis. Const. Art. V, § 10(a).[3]

## II. INDEPENDENTLY, THE ELECTORS CLAUSE AND 3 U.S.C. §§ 1-2 PROHIBIT THE WISCONSIN LEGISLATURE FROM BELATEDLY APPOINTING OR ALLOCATING ELECTORS OR CHANGING FROM JUDICIAL REMEDIES TO LEGISLATIVELY-ADJUDICATED REMEDIES.

### A. 3 U.S.C. §§ 1-2 Prohibit The Wisconsin Legislature From Belatedly Appointing Or Allocating Electors.

3 U.S.C. § 1 provides:

> The electors of President and Vice President shall be appointed, in each State, on the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President.

3 U.S.C. § 2 provides:

> Whenever any State has held an election for the purpose of choosing electors, and has failed to make a choice on the day prescribed by law, the electors may be appointed on a subsequent day in such a manner as the legislature of such State may direct.

3 U.S.C. § 1 requires that electors "shall be appointed, in each state, *on*"

November 3, 2020. (Emphasis added.) To use the words of 3 U.S.C. § 1, what

Wisconsin executive and judicial officials, by statute, do after the nationwide

---

[3] Such a new statute might well violate the Wisconsin Constitution. *See* Wis. Const. Art. VII, § 2 ("The judicial power of this state shall be vested in a unified *court* system . . . ."). (Emphasis added).

6

election day is determine which electors were "appointed . . . on" election day—that is, determine which candidate won Wisconsin's popular election by votes cast by election day.

3 U.S.C. § 2 creates a single, narrow exception that allows electors to "be appointed on a subsequent day [after the nationwide election day] in such manner as the legislature of such state may direct," but only "[w]henever any State has held an election for purpose of choosing electors, and has failed to make a choice on" the nationwide election day. Under the canon of *expressio unius est exclusio alterius*, the exception in 3 U.S.C. § 2 is the exclusive exception to the bar in § 1 on a state legislature's appointing electors after election day. Plaintiff cannot alchemize a much broader exception by using "allocat[ed]" as a pretextual substitute for "appointed."

The Complaint does not mention 3 U.S.C. § 2, much less allege that its narrow exception applies here. Nor could it. An election "has [not] failed to make a choice" merely because determining the winner is disputed. This is demonstrated by an analogy to another contest – a legal case. Often, a legal case is decided by only one vote – that is, by a split appellate decision with strong arguments on both sides as to which party was entitled to prevail. But no one would say that a 5-4 final decision by the Supreme Court, opposed by four vigorously dissenting Justices, "has failed" to choose a winner in that case.

This plain meaning of "failed to make a choice" is confirmed by the statutory history of 3 U.S.C. §§ 1-2. Congress first enacted these provisions in 1845. 5 Stat.

7

721 (1845). The prior statute, enacted in 1792, allowed states to appoint electors on any of the "thirty-four days preceding the first Wednesday in December." 1 Stat. 239 (1792). The 1845 statute required, for the first time, that all states appoint electors on the same nationwide election day: "the Tuesday next after the first Monday in the month of November." 5 Stat. 721 (1845). The early proposed versions of the 1845 statute did not contain an exception for a "failed" election. See CONG. GLOBE, 28th Cong., 2d Sess. 14 (Dec. 9, 1844).

Representative Hale of New Hampshire suggested to the bill's manager, Representative Duncan of Ohio, that a provision should be added for the "contingency" faced by New Hampshire, where state law required that the electors could be elected only by "a majority of all the votes cast." *Id.* In his state, Hale explained, because the candidate with the most votes might obtain only a plurality, "it might so happen that no choice might be made on election day." *Id.* The next time the bill was debated, Representative Duncan offered, and the House adopted, an amendment containing what has become 3 U.S.C. § 2. CONG. GLOBE, 28th Cong., 2d Sess. 21 (Dec. 11, 1844).

In 1872, Congress enacted similar provisions for elections of a Representative – a nationwide election day and an exception if "upon" that day "there shall be a failure to elect." 17 Stat. 28-29 (Feb. 2, 1872), now codified as 2 U.S.C. §§ 7, 8(a). The Supreme Court has stated: "The only explanation of this provision [2 U.S.C. § 8(a)] in the legislative history is Senator Alan G. Thurman's statement that 'there can be no failure to elect except in those States in which a

8

majority of all the votes is necessary to elect a member.'" *Foster v. Love*, 522 U.S. 67, 71 n.3 (1997) (citation omitted).

There was never a suggestion with respect to the 1845 or 1872 statutes that when an election has engendered vigorous litigation, such an election could therefore be considered an election that "has failed to make a choice" or "fail[ed] to elect." That would have consigned the Nation to continue the routine appointments of electors and election of Representatives by states on different days that the 1845 and 1872 statutes were designed to prevent.

If Plaintiff succeeds, surely the Democrats would go to court to argue that future elections "failed to make a choice." "Once the door is opened to judicial invalidation of presidential election results, it will be awfully hard to close that door again." *Wisconsin Voters Alliance, supra,* at 3 (Hagedorn, J., joined by Bradley, Dallet, and Karofsky, JJ., concurring). Thus, like Gresham's Law, the bad would drive out the good.

> B. The Federal Constitution, As Implemented By 3 U.S.C. §§ 1-2, Also Prohibits The Wisconsin Legislature From Belatedly Changing A Part Of The Manner Of Appointment From Judicial Remedies to A Legislatively-Adjudicated Remedy.

It would violate the Electors Clause for the Wisconsin legislature, *after* election day, to change retroactively the manner of appointment by "chang[ing] the statutorily provided apportionment of responsibility" for which state bodies "oversee election disputes," *Bush v. Gore,* 531 U.S. 98, 113-14 (2000) (Rehnquist,

9

C.J., concurring, joined by Scalia and Thomas, JJ.), from courts to the legislature.[4] The first applicable requirement of the Electors Clause is that a state "shall appoint, in such manner as the Legislature thereof may direct." This is an adverbial prepositional phrase with "in such manner as the Legislature thereof may direct" modifying "appoint." When "in" is used as a preposition, this denotes that the object of the proposition and the modified word are "*present*" at the same time. S. Johnson, *Dictionary of the English Language* (6th ed. 1785) (emphasis added). A picture is not "in the frame" when the frame does not yet exist. Dr. Johnson illustrated that "in" denotes a temporal concurrence with this example: "Danger before, and *in*, and after the act." *Id.* (emphasis in original). A danger that occurs only "after" the act is not danger "in" the act.

Thus, because the Electors Clause makes "such manner as the Legislature thereof may direct" the object of "in," then "such manner" can be only the manner in place simultaneously with the state's "appoint[ment]" (the modified word). Retroactivity is the antithesis of the simultaneity between "appoint" and "in such manner" that the Electors Clause requires. This is confirmed by "our whole experience as a Nation." *Chiafolo*, 140 S. Ct. at 2326 (quotations and citation omitted). After election day, no state ever has changed retroactively a part of the

_____

[4] The procedural posture of *Bush v. Gore* was very different from this case. Vice President Gore had filed an action expressly authorized by a Florida statute in a Florida trial court and the Florida Supreme Court had decided Vice President Gore's appeal from an adverse trial court decision. 531 U.S. at 101 (per curiam). In turn, the United States Supreme Court directly reviewed the Florida Supreme Court's decision. *Id.* at 100.

manner of appointment from judicial remedies to a legislatively-adjudicated remedy.

The second pertinent requirement of the Electors Clause is that the state must comply with "the time of choosing the Electors" that Congress has determined. Here, "choosing" electors and "appoint[ing]" electors are synonymous. *See McPherson v. Blacker*, 146 U.S. 1, 40 (1892). Congress has implemented its power over the time of appointing electors in 3 U.S.C. § 1. It provides that "electors … shall be appointed, in each state, *on*" the nationwide election day. (Emphasis added.) In this statutory provision, "appointed" must refer to "appointed, in such manner" because the Constitution allows no other kind of appointment. Thus, the requirement of 3 U.S.C. § 1 that a state appoint electors "on" election day requires using the manner of appointment that exists "on" election day. A different manner of appointment that is created after November 3, 2020 no more exists "on" election day than does a manner of appointment that applied to a prior election but was repealed or amended *before* November 3, 2020.

Three canons of construction confirm that 3 U.S.C. § 1 does not allow a state to change a part of its manner of appointment after election day and apply the new manner retroactively to the appointment of electors "on" election day. First, because "[r]etroactivity is not favored in the law," a statutory provision "will not, as a general matter, be understood to encompass the power to

11

promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208 (1988).

Second, a court must adopt "a construction of a statute that is fairly possible," when the alternative construction would "raise a serious doubt as to [the statute's] constitutionality." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Construing 3 U.S.C. § 1 to empower a state to apply retroactively a part of the manner of appointment enacted after election day would raise serious constitutional doubts. To start, there is at least a serious question whether such retroactivity comports with the simultaneity required by the "appoint, in such manner" requirement in the Electors Clause. *Supra*, at 9-11. Moreover, there is at least a serious question whether the Due Process Clauses preclude a federal statute that would enable states after a popular election to change retroactively a part of the manner of appointing electors. *See Bush v. Palm Beach Cty. Canvassing Bd.*, 531 U.S. 70, 73 (2000) (the Supreme Court granted certiorari over, but did not decide, whether "by effectively changing the State's elector appointment *procedures* after election day, [the State] violated the Due Process Clause") (emphasis added); *Roe v. Alabama*, 43 F.3d 574, 581 (11th Cir. 1995) (a post-election change violates due process when it has "the effect of disenfranchising" some voters).

Third, one provision of a statute should not be interpreted to render another provision "a practical nullity and a theoretical absurdity." *United Savings Ass'n v. Timbers of Imwood Forest Assoc.*, 484 U.S. 365, 375 (1988). If 3

12

U.S.C. § 1 permitted a state legislature after election day to apply a new aspect of the manner of appointment retroactively, there would be no need for 3 U.S.C. § 2. No state's election would ever fail to make a choice "on" election day if a state legislature always has the power for any reason to change any part of the manner of appointment retroactively after election day. To paraphrase a Supreme Court case on statutory interpretation: "If there is a big hole [3 U.S.C. § 1] in the fence for the big cat, need there be a small hole [3 U.S.C. § 2] for the small one?" *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961) (quotations and citations omitted).

Therefore, the Electors Clause, as implemented by 3 U.S.C. § 1, bars a state's application of a post-election day change in a part of the manner of appointment – including which state body decides remedies – to the 2020 presidential election unless, at a minimum, the state's election "has failed to make a choice" under 3 U.S.C. § 2. And, as demonstrated above, at 6-8, that exception does not remotely apply here.

III.   3 U.S.C. § 6 AND WISCONSIN STATUTES §§ 7.70(5)(b) AND 9.01(1)-(11) PRECLUDE CERTIFYING ANY ELECTORS PURPORTEDLY APPOINTED BY THE LEGISLATURE EXPRESSLY OR THROUGH THE GUISE OF A REMEDY.

The Complaint also ignores 3 U.S.C. § 6. This section requires the governor to certify the winning electors based on the "final ascertainment, under and in pursuance of the *laws* of such State providing for such ascertainment." *Id.* (emphasis added). Wisconsin Statute § 7.70(5)(b) provides: "For presidential electors, the [Wisconsin elections] commission shall prepare a certificate showing

13

the determination of the results of the canvass and the names of the persons elected and the governor shall sign, affix the great seal of the state, and transmit the certificate . . . ." Wisconsin Statutes §§ 9.01(1)-(11) provide the exclusive remedy for *any* "alleged irregularity, defect or mistake during the voting or canvassing process a judicial remedy." Wis. Stat. § 9.01(11); *supra,* at 5. Thus, under and pursuant to 3 U.S.C. § 6 and Wisconsin statutory law, neither the Governor nor anyone else could certify any electors that hypothetically might in the future purportedly be appointed by the state legislature for the 2020 presidential election expressly or through the guise of a legislatively-adjudicated remedy.[5]

## CONCLUSION

The Complaint should be dismissed and the motion for a preliminary injunction should be denied.

---

[5] Any change to these Wisconsin statutes, as they existed on election day, would be subject to the governor's veto, *see supra,* Part I, and if applied to the 2020 presidential election, would violate federal law by retroactively changing a part of the manner of appointment. *See* Part II.B., *supra; see also Bush v. Gore,* 531 U.S. 98, 113-14 (2000) (Rehnquist, J., concurring, joined by Scalia and Thomas, JJ.) (manner of appointment includes state's pre-election statutes that "delegated the authority to run the elections and to oversee election disputes to [state election officials] and to state circuit courts") (citations to pre-election Florida statutes omitted); *id.* at 116-18 (manner of appointment includes pre-election state statutes governing "canvassing," "recount," "certification," and "[c]ontests").

14

December 7, 2020                    Respectfully submitted,

                                    /s/ Nancy A. Temple
*Of Counsel*                        NANCY A. TEMPLE
RICHARD D. BERNSTEIN                Katten & Temple, LLP
1875 K Street, N.W.                 209 S. LaSalle Street, Suite 950
Washington, D.C. 20006              Chicago, IL 60604
(202) 303-1000                      (312) 663-0800
rbernsteinlaw@gmail.com             ntemple@kattentemple.com


                    *Counsel for Amici Curiae*


                              15

# APPENDIX A

## LIST OF AMICI CURIAE

**Christine Todd Whitman**, Administrator, Environmental Protection Agency, 2001–2003; Governor, New Jersey, 1994–2001.

**John Danforth**, United States Senator from Missouri, 1976-1995; United States Ambassador to the United Nations, 2004-2005; Attorney General of Missouri, 1969-1976.

**Lowell Weicker,** Governor, Connecticut, 1991-1995; United States Senator from Connecticut, 1971-1989; Representative of the Fourth Congressional District of Connecticut in the United States House of Representatives, 1969-1971.

**Constance Morella**, Representative of the Eighth Congressional District of Maryland in the United States House of Representatives, 1987-2003; Permanent Representative from the United States to the Organisation for Economic Co-operation and Development, 2003-2007.

**Christopher Shays**, Representative of the Fourth Congressional District of Connecticut in the United States House of Representatives, 1987-2009.

**Carter Phillips**, Assistant to the Solicitor General, 1981-1984.

**Stuart M. Gerson**, Acting Attorney General, 1993; Assistant Attorney General for the Civil Division, 1989–1993; Assistant United States Attorney for the District of Columbia, 1972–1975.

**Donald Ayer**, Deputy Attorney General 1989-90; Principal Deputy Solicitor General 1986-88; United States Attorney, E.D. Cal 1982-86; Assistant U.S. Attorney, N.D. Cal 1977-79.

**Edward J. Larson**, Counsel, Office of Educational Research and Improvement, United States Department of Education, 1986-1987; Associate Minority Counsel, Committee on Education and Labor, United States House of Representatives, 1983-1986; formerly University of Georgia Law School Professor; currently Hugh & Hazel Darling Chair in Law at Pepperdine University.[*]

---

[*] The views expressed are solely those of the individual amici, and reference to current positions is solely for identification purposes.

Case 2:20-cv-01785-BHL   Filed 12/07/20   Page 21 of 22   Document 57-1

**John Bellinger III**, Legal Adviser to the Department of State, 2005-2009; Senior Associate Counsel to the President and Legal Adviser to the National Security Council, 2001-2005.

**Michael Stokes Paulsen**, Attorney-Advisor, Office of Legal Counsel, U.S. Department of Justice, 1989-1991; Special Assistant United States Attorney, Eastern District of Virginia, 1986; Staff Attorney, Criminal Appellate Section, United States Department of Justice, 1986; currently University Chair & Professor of Law, The University of St. Thomas.*

**Alan Charles Raul**, Associate Counsel to the President, 1986-1988; General Counsel of the Office of Management and Budget, 1988-1989; General Counsel of the United States Department of Agriculture, 1989-1993; Vice Chairman of the Privacy and Civil Liberties Oversight Board, 2006-2008.

**Paul Rosenzweig**, Deputy Assistant Secretary for Policy, Department of Homeland Security, 2005-2009; Office of Independent Counsel, 1998-1999; United States Department of Justice, 1986-1991; currently Professorial Lecturer In Law, The George Washington University Law School.*

**Robert Shanks**, Deputy Assistant Attorney General, Office of Legal Counsel, 1981-1984.

**Stanley Twardy**, U.S. Attorney for the District of Connecticut, 1985–1991.

**Keith E. Whittington**, William Nelson Cromwell Professor of Politics, Princeton University, 2006-present; currently Visiting Professor of Law, Georgetown University Law Center.*

**Richard Bernstein**, Appointed by the United States Supreme Court to argue in *Cartmell v. Texas*, 529 U.S. 513, 515 (2000); *Montgomery v. Louisiana*, 136 S. Ct. 718, 725 (2016).

---

* The views expressed are solely those of the individual amici, and reference to current positions is solely for identification purposes.