# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

DONALD J. TRUMP, Candidate for President of the
United States of America,

        Plaintiff,

        v.                                      Case No.: 2:20-cv-01785-BHL

THE WISCONSIN ELECTIONS COMMISSION, and its
Members, ANN S. JACOBS, MARK L. THOMSEN,
MARGE BOSTELMANN, DEAN KNUDSON,
ROBERT F. SPINDELL, JR., in their official capacities,
SCOTT MCDONELL in his official capacity as the Dane
County Clerk, GEORGE L. CHRISTENSON in his
official capacity as the Milwaukee County Clerk,
JULIETTA HENRY in her official capacity as the
Milwaukee Election Director, CLAIRE WOODALL-
VOGG in her official capacity as the Executive Director
of the Milwaukee Election Commission, MAYOR TOM
BARRETT, JIM OWCZARSKI, MAYOR SATYA
RHODES-CONWAY, MARIBETH WITZEL-BEHL,
MAYOR CORY MASON, TARA COOLIDGE,
MAYOR JOHN ANTARAMIAN, MATT KRAUTER,
MAYOR ERIC GENRICH, KRIS TESKE, in their
official capacities; DOUGLAS J. LA FOLLETTE,
Wisconsin Secretary of State, in his official capacity, and
TONY EVERS, Governor of Wisconsin, in his official capacity,

        Defendants.

## COMBINED BRIEF OF WISCONSIN MUNICIPAL OFFICIALS
## IN SUPPORT OF THEIR RESPECTIVE MOTIONS TO DISMISS
## AND IN OPPOSITION TO REQUEST FOR EMERGENCY RELIEF

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

STATEMENT OF FACTS .........................................................................................2

ARGUMENT ..............................................................................................................3

    I.     THE PLAINTIFF LACKS STANDING TO ASSERT VIOLATIONS OF
          THE CONSTITUTION'S ELECTOR AND ELECTION CLAUSES .............3

         A.  The Standing Doctrine ............................................................................3

         B.  The Plaintiff Has Not Suffered a Concrete, Particularized and
            Non-Speculative Injury and Therefore Lacks Standing to Bring
            Claims Under the Elections and Electors Clauses .......................................5

         C.  The Plaintiff Lacks Standing to Assert Equal Protection and Due
            Process Violations.........................................................................................6

    II.    THIS ACTION SHOULD BE DISMISSED UNDER PRINCIPLES OF
          LACHES .............................................................................................................7

    III.   THIS ACTION IS MOOT .............................................................................11

    IV.   THE COURT SHOULD DISMISS THIS ACTION UNDER ABSTENSION
          PRINCIPLES ...................................................................................................13

         A.  The Court Should Dismiss This Action Under *Wilton/Brillhart*
            Abstention Principles.....................................................................................13

             1.  The *Wilton/Brillhart* Abstension Doctrine...........................................13

             2.  A Parallel State Court Proceeding Is Pending ......................................14

         B.  Alternatively, the Court Should Stay This Action Under *Pullman*
            Abstention Principle.......................................................................................16

    V.    PLAINTIFF IS NOT ENTITLED TO THE RELIEF SOUGHT.....................16

    VI.   THE ELECTION WAS CONDUCTED CONSISTENT WITH
          WISCONSIN LAW ........................................................................................18

i

A.  No Complaint Was Filed With the Wisconsin Election Commission .......18

B.  The Standards For Challenges to Elections Are Rigorous.........................19

C.  Defendants Followed the Law on Indefinitely Confined Voters ..............21

D.  Absentee Ballots ...................................................................................22

E.  Drop Boxes Are Legal ..........................................................................23

F.  The Mayors Should Not Be In This Case and All of Their Actions
    Were Legal...........................................................................................24

G.  Correction of Absentee Ballots.............................................................25

H.  Access to Observations of Voting..........................................................25

CONCLUSION..........................................................................................25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allen v. Wright*, abrogated on other grounds by *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 126-27 (2014).
468 U.S. 737 (1984) ........................................................................................................ 5

*Bodine v. Elkhart County Election Board*,
788 F. 2d 1270 (7th Cir. 1988) ...................................................................................... 20

*Bognet v. Sec'y Commonwealth of Pennsylvania*,
2020 WL 6686120 (3rd Cir. Nov. 13, 2020) ................................................................ 5

*Brillhart v. Excess Ins. Co. of America*,
316 U.S. 491, (1942) ................................................................................................ 13, 14

*Bryant v. Compass Group USA, Inc*.,
958 F.3d 617 ...................................................................................................................... 4

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398, 133 S.Ct. 1138 (2013) .......................................................................... 4, 7

*Daniels v. Williams*,
474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ................................................. 20

*Duncan v. Poythress*,
657 F.2d 691 (5th Cir.Unit B., 1981) ............................................................................ 20

*Environmental Defense Fund, Inc. v. Alexander*,
614 F.2d 474 (5th Cir. 1980) ............................................................................................ 7

*Envision Healthcare, Inc. v. PreferredOne Ins. Co.*,
604 F.3d 983 (7th Cir. 2010) ................................................................................... 14, 15

*Foster v. Love*,
522 U.S. 67 (1997) ............................................................................................................. 2

*Gamza v. Aguirre*,
619 F.2d 449 (5th Cir.1980) ................................................................................... 20, 21

*Goodman v. McDonnell Douglas Corp.*,
606 F.2d 800 (8th Cir. 1979) ........................................................................................... 8

*Griffin v. Burns*,
570 F.2d 1065 (1st Cir.1978) ........................................................................................ 20

iii

*Hendon v. North Carolina State Board of Elections*,
　710 F.2d 177 (4th Cir.1983) ................................................................................ 20

*Hennings v. Grafton*,
　523 F.2d 861 (7th Cir.1975) ............................................................................ 20, 21

*In the Matter of an Appeal from Recount in the Election Contest of Charles Hayden and George Johnson*,
　105 Wis. 2d 468, 313 N.W. 2d 869 (Ct. App. 1981) ............................................ 19

*Jefferson v. Dane County, 2020 AP557-OA*,
　2020 AP557-OA, dated March 31, 2020.................................................................. 21

*Knox v. Milwaukee County Bd of Election Commissioners*,
　581 F. Supp. 399 (E.D. Wis. 1984) ........................................................................ 8

*King v. Whitmer*,
　No. 20-13134 (E.D. Mich., Dec 7, 2020) ........................................... 6, 11, 12, 17

*Lance v. Coffman*,
　549 U.S. 437 (2007) .............................................................................................. 5

*Lanser v. Koconis*,
　62 Wis. 2d 86, 214 N. W. 2d 425 (1974) ............................................................ 19

*Lingenfelter v. Keystone Consol. Industries, Inc.*,
　691 F.2d 339 (7th Cir. 1982)............................................................................... 7, 8

*Logerquist v. Board of Canvassers for Town of Nasewaupee*,
　150 Wis.2d 907, 442 N.W.2d 551 (Ct. App. 1989) .............................................. 20

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) ............................................................................................. 4

*Partido Nuevo Progresista v. Barreto Perez*,
　639 F.2d 825 (1st Cir.1980) ................................................................................ 20

*Pettengill v. Putnam County R-1 School District*,
　472 F.2d 121 (8th Cir.1973)................................................................................ 21

*Powell v. Power*,
　436 F.2d 84 (2d Cir. 1970) ................................................................................... 7

*R.R. St. & Co. v. Vulcan Materials Co.*,
　569 F.3d 711 (7th Cir. 2009).............................................................................. 13

iv

*Rudisill v. Flynn,*
    619 F.2d 692 (7th Cir.1980) ........................................................................ 20

*Shipley v. Chicago Bd. of Election Comm'rs,*
    947 F.3d 1056 (7th Cir. 2020) ...................................................................... 7

*Siegel v. LePore,*
    234 F.3d, 1163 .............................................................................................. 13

*Spokeo, Inc. v. Robins,*
    578 U.S.___, 136 S.Ct. 1540 (2016) ........................................................ 3, 4

*Sta-Rite Indus., Inc. v. Allstate Ins. Co.,*
    96 F.3d 281 (7th Cir. 1996) ........................................................................ 15

*Toney v. White,*
    488 F.2d 310 (5th Cir. 1973) ...................................................................... 9

*Trump for President, Inc. v. Secretary Commonwealth of Pennsylvania,*
    2020 WL 7012522 (3rd Cir. Nov. 27, 2020) .............................................. 1

*United States v. O'Connor,*
    1997 WL 413594 (7th Cir. 1997) ................................................................ 17

*United States v. Richardson,*
    418 U.S. 166 (1974) .................................................................................... 5

*Wilton v. Seven Falls Company,*
    515 U.S. 277, (1995) ................................................................................... 13

*Wis. Right to Life State Political Action Comm. v. Barland,*
    664 F.3d 139 (7th Cir.2011) ....................................................................... 16

*Wisconsin Voters Alliance v. Wisconsin Elections Commission,*
    2020AP1930-OA, dated December 4, 2020 ............................................ 3, 17

*Wood v. Raffensperger,* Case No.,
    2020 WL 7094866 (11th Cir. Dec. 5, 2020) ............................................ 11

Statutes

3 U.S.C. §§ 6 and 15 ........................................................................................... 12

28 U.S.C. § 2201(a) ............................................................................................. 14

28 U.S.C. §§ 2201-2202 ...................................................................................... 13

v

U.S. Const. art. II, § 1, cl. 2 ................................................................................. 2

United States Constitution, art. I, § 4, cl. 1 and art. II, § 1, cl. 2 ...................................... 2

Wis. Stat. § 5.01(1) ................................................................................. 1, 2, 19

Wis. Stat. § 5.06(1) ................................................................................. 10, 18

Wis. Stat. § 6.86(2)(a) ................................................................................. 21

Wis. Stat. § 7.41 ................................................................................. 25

Wis. Stat. § 5.06 ................................................................................. 18

Wis. Stat. § 6.84(2) ................................................................................. 14, 15

Wis. Stat. § 6.86(1)(ar) ................................................................................. 14

Wis. Stat. § 6.86(2) ................................................................................. 21

Wis. Stat. § 6.87(6) ................................................................................. 23

Defendants Scott McDonell, County Clerk for Dane County, Satya Rhodes-Conway, Mayor of the City of Madison, Maribeth Witzel-Behl, City Clerk for the City of Madison, Cory Mason, Mayor of the City of Racine, Tara Coolidge, City Clerk of the City of Racine, John Antaramian, Mayor of the City of Kenosha, Matt Krauter, City Clerk of the City of Kenosha, Eric Genrich, Mayor of the City of Green Bay, and Kris Teske, City Clerk of the City of Green Bay (collectively, the "Wisconsin Municipal Officials") submit this brief in support of each defendant's respective motion to dismiss this action and in opposition to the plaintiff's request for emergency relief.

## INTRODUCTION

"*Voters, not lawyers, choose the President. Ballots, not briefs, decide elections.*" *Donald J. Trump for President, Inc. v. Secretary Commonwealth of Pennsylvania,* 2020 WL 7012522, at *9 (3rd Cir. Nov. 27, 2020).

Having lost the presidential election, the incumbent, plaintiff in this action, has commenced a scorched earth policy of attempting to overturn the will of the people through litigation. In this case, that effort comes to Wisconsin, in an action that is stunning in its requested relief.

Plaintiff asks this court to replace the will of the people with the will of the candidate. He asks this court to throw out a duly conducted election and disenfranchise millions of Wisconsin voters, based upon vague allegations of the potential for fraud. There is no basis for the allegations or the remedy requested. This court should dismiss the complaint and allow Wisconsin and the nation to move on.

Wisconsin law is clear on the purpose of elections, and how the courts are to interpret statutes governing elections. Wis. Stat. § 5.01(1) provides:

1

> (1)  Construction of chs. 5 to 12. Except as otherwise provided, chs. 5 to 12 shall
> be construed to **give effect to the will of the electors,** if that can be ascertained
> from the proceedings, notwithstanding informality or failure to fully comply with
> some of their provisions. (Emphasis added)

Strikingly absent from plaintiff's complaint is any claim of fraud, any claim that any specific ballot does not represent the actual vote of the elector, any claim that acceptance of plaintiff's theories would change the outcome of the votes cast in the election, or any claim that the election as administered fails to represent "the will of the electors", as required by Wis. Stat. § 5.01(1). The complaint must be dismissed.

## STATEMENT OF FACTS

This brief is submitted on behalf of the mayors[1] and clerks of five municipalities, Dane County and the cities of Madison, Green Bay, Racine and Kenosha.  The complaint alleges violations of the Elections Clause and the Electors Clause of the United States Constitution, art. I, § 4, cl. 1 and art. II, § 1, cl. 2, respectively. The Elections Clause gives state governments the authority to control the process by which federal elections are conducted. *Foster v. Love*, 522 U.S. 67, 69 (1997). The Electors Clause grants each state the power to appoint its Presidential electors in the manner it selects. U.S. Const. art. II, § 1, cl. 2. The State of Wisconsin has a statutory scheme governing the conduct of elections, primarily found in Chapters 5-12 of the Wisconsin Statutes.

Although the complaint attempts to invoke federal law, in reality it is a claim that the election violated certain state laws.  The complaint alleges that the defendants violated provisions of Wisconsin's election laws in regard to the availability of mail-in ballots, the use of unmanned drop boxes, the processing of mail-in ballots outside the visibility of poll watchers, by

---

[1] This action concerns the conduct of the November 3, 2020 election.  The mayors of the four cities have no statutory role in the conduct of elections.  The complaint does not indicate what relief is sought with respect to the mayors or why the mayors are parties to this action.

2

reducing or eliminating voter information certifications for mail-in ballots, and by allowing election workers to alter certifications on mail-in ballots. (Compl. ¶¶ 28 a-e.) The plaintiff asserts that the conduct of the election "usurped the Wisconsin legislature's exclusive authority to direct the election for Presidential electors in Wisconsin" in violation of state law, as well as equal protection and due process standards. (Dkt. 1, ¶ 29.)

The plaintiff seeks both declaratory and injunctive relief for the alleged violations. In terms of declaratory relief, the plaintiff seeks an order finding that the defendants violated both the Electors Clause and the Elections Clause. He also requests a finding that the alleged constitutional violations "likely tainted more than 50,000 ballots." (Dkt. 1, p. 72.) As for injunctive relief, the plaintiff asks that the Court "remand" the case to the Wisconsin Legislature to determine a remedy, potentially nullifying the results of the election and disenfranchising every Wisconsin voter. In a concurring opinion, Wisconsin Supreme Court Justice Hagedorn recently described similar relief sought in a case before that court as a "real stunner . . . unprecedented in American history," and "the most dramatic invocation of judicial power I have ever seen." *Wisconsin Voters Alliance v. Wisconsin Elections Comm'n*, No. 2020AP1930-OA, pp. 2-3 (Dec. 4, 2020)(Hagedorn, J., concurring) (Declaration of Michael P. May (May Decl.), Exh. 7).

## **ARGUMENT**

## I. THE PLAINTIFF LACKS STANDING TO ASSERT VIOLATIONS OF THE CONSTITUTION'S ELECTOR AND ELECTION CLAUSES.

### A. The Standing Doctrine.

The "(s)tanding doctrine limits the judicial power to cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S.Ct. 1540, 1550 (2016) (Thomas, J., concurring) (internal citations and quotations

3

omitted). The doctrine of Article III standing "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S.Ct. 1138, 1146 (2013). In practice, the doctrine acts to limit the category of litigants able to seek a remedy in federal court for a legal wrong. *Spokeo* at 1547.

The plaintiff in a federal case bears the burden of establishing Article III standing. *Bryant v. Compass Group USA, Inc*., 958 F.3d 617, No. 20-1443 (7th Cir. May 5, 2020). To do so, the plaintiff must establish three prerequisites: 1) that he suffered an actual or imminent, concrete and particularized injury; 2) a causal connection between the injury and the conduct complained of; and 3) a likelihood that the injury will be redressed by a favorable decision. *Id.,* citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A particularized injury is one that affects the plaintiff "in a personal and individual way." *Spokeo* at 1548 (internal quotes and citations omitted). A concrete injury is one that actually exists, one that is not abstract. Id. A statutory violation alone does not establish a concrete injury. Id. at 1549.

As Justice Thomas explained in *Spokeo,* a private litigant seeking to vindicate a violation of rights belonging to that person presumptively suffered a de facto injury of the sort for which the judicial power of the federal courts may be invoked. Id. at 1551. However, "(t)he injury-in-fact requirement often stymies a private plaintiff's attempt to vindicate the infringement of public rights" -- interests in common to all members of the public. Id. at 1552 (emphasis original):

> The separation of powers concerns underlying our public-rights decisions are not implicated when private individuals sue to redress violations of their own private rights. But, when they are implicated, standing doctrine keeps courts out of political disputes by denying private litigants the right to test the abstract legality of government action.

Id.

4

**B. The Plaintiff Has Not Suffered a Concrete, Particularized and Non-Speculative Injury and Therefore Lacks Standing to Bring Claims Under the Elections and Electors Clauses.**

"Federal courts are not venues for plaintiffs to assert a bare right 'to have the Government act in accordance with law.'" *Bognet v. Sec'y Commonwealth of Pennsylvania,* 2020 WL 6686120, at *16 (3rd Cir. Nov. 13, 2020), quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984), abrogated on other grounds by *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 126-27 (2014). Such a claim is a "generalized grievance" for which an individual litigant lacks standing. *United States v. Richardson,* 418 U.S. 166, 173 -75 (1974). The plaintiff here seeks a remedy for alleged violations of state law, specifically, the way the last election was conducted. A private litigant, even a candidate for public office such as the plaintiff here, lacks standing to sue for alleged violations of the Elections and Electors Clauses. *Bognet* at 21-22.

In *Bognet,* the plaintiffs were four registered voters in Pennsylvania and a candidate, Bognet, for a seat in Pennsylvania's congressional delegation. They sued in federal court alleging that the decision of the Pennsylvania Supreme Court allowing an extension of the period to accept mail-in ballots beyond election day violated their rights to equal protection as well as the Elections Clause and the Electors Clause. Id. at 14-15. Pennsylvania statutes provided that mail-in ballots must be received by 8 p.m. on election day. 25 Pa. Stat. and Cons. Stat. §§ 3146.6(c), 3150.16(c).

The Third Circuit Court of Appeals held that the plaintiffs lacked standing to sue for injuries allegedly attributable to an Elections Clause violation. Citing *Lance v. Coffman*, 549 U.S. 437, 442 (2007), the court found that a violation of the Elections Clause was an injury in common to all citizens, not the plaintiffs in particular. *Bognet* at 19. The court ruled that the same logic applied to the Electors Clause claim, as both Clauses vest similar power in the state

legislature. Id. at 19. Even if the plaintiffs had Article III standing to bring those claims, the court found that the right to determine the conduct of Pennsylvania's elections was one that belonged to the state legislature:

> Because Plaintiffs are not the General Assembly, nor do they bear any conceivable relationship to state lawmaking processes, they lack standing to sue over the alleged usurpation of the General Assembly's rights under the Elections and Electors Clauses. No member of the Assembly is a party to this lawsuit.

Id. at 20.

A federal court in Michigan reached a similar conclusion this week regarding challenges to election results based on alleged Elections and Elector Clause violations. *King v. Whitmer*, No. 20-13134, slip op. at 28 (E.D. Mich., Dec. 7, 2020, May Decl. Exh 9) (Elections and Elector Clause challenges are the province of the legislature).

The plaintiff in this suit is not a member of the Wisconsin Legislature and bears no conceivable relationship to Wisconsin's lawmaking processes. His complaint plainly alleges that the Wisconsin Legislature's "exclusive authority" has been "usurped." (Dkt. 1, ¶ 29). The plaintiff lacks standing to bring claims under the Elections and Elector Clauses.

### C.     The Plaintiff Lacks Standing to Assert Equal Protection and Due Process Violations.

The plaintiff's equal protection and due process claims are premised on the same alleged violations of state law as his Elections Clause and Elector Clause claims. For the reasons discussed above, he has not alleged a particularized injury. For example, his voting rights were not impacted. Nor has the plaintiff alleged any concrete injury; his prayer for relief speculates that more than 50,000 ballots likely were tainted by election law violations, without any basis for asserting that number or that the allegedly tainted ballots necessarily affected him. A speculative

or possible injury does not satisfy a plaintiff's obligation to demonstrate standing. *Clapper,* 568 U.S. at 409.

In general, an alleged violation of state election laws by public officials, standing alone, does not implicate Constitutional concerns. *Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1062 (7th Cir. 2020) (deliberate violation of state election laws by state election officials does not necessarily transgress against the Constitution); *Powell v. Power*, 436 F.2d 84,88 (2d Cir. 1970) (no claim under Equal Protection Clause based on state's erroneous counting of votes cast by unqualified voters). Even if the complaint did assert some cognizable Constitutional claim, the plaintiff must meet his burden of establishing that he has standing to prosecute such a claim, which he has not.

## II.    THIS ACTION SHOULD BE DISMISSED UNDER PRINCIPLES OF LACHES.

Plaintiff's claims should be dismissed based on laches.  This result is mandated by the dilatory filing of this action, occurring months after plaintiff was aware of the nature of his alleged claims.  Plaintiff did not bother to file this case before the election.  He did not manage to file it for nearly a month after the election:  after the votes were counted twice, after the results were certified; and after the Governor signed the Certificate of Ascertainment appointing the electors from Wisconsin.  (May Decl. Exh. 4).

Laches is an equitable doctrine barring claims which are not timely brought developed by chancellors of equity to prevent assertion of stale claims.  *Environmental Defense Fund, Inc. v. Alexander*, 614 F.2d 474, 478 (5th Cir. 1980).   To support a defense of laches, there must be a showing of a lack of diligence by the party against whom the defense is asserted and prejudice to the defending party.  *Lingenfelter v. Keystone Consol. Industries, Inc.*, 691 F.2d 339, 340 (7th Cir. 1982). One of the primary ways of determining whether the delay is excusable is by

7

examining the plaintiff's prior knowledge. *Knox v. Milwaukee County Bd of Election Commissioners*, 581 F. Supp. 399, 402 (E.D. Wis. 1984).

The plaintiff bears the burden of explaining his delay in bringing suit. Id. Plaintiff utterly fails to meet his burden. In his filing with this court, the plaintiff says nothing about why he failed to file this action well before this election.

The question of whether the defense of laches is valid is left to the discretion of the trial court. Id., *Lingenfelter*, 691 F.2d at 341. Although that discretion is not "unfettered by appropriate standards or shielded from thorough appellate review." Id., (quoting, *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804 (8th Cir. 1979). The circumstances of this case and the relevant legal standards compel this court's exercise of its discretion to dismiss this complaint.

Plaintiff's lack of diligence is amply demonstrated by reviewing the timeline of events. Plaintiff challenges: The WEC's "Guidance for Indefinitely Confined Electors" of March 29, 2020, issued over eight months the filing of this action (Dkt. 12-2); Wisconsin Safe Voting Plan 2020 grant requests submitted to the Center for Tech & Civic Life on June 15, 2020, over five months before filing (Dkt. 12-12); WEC Guidance relating to absentee ballot drop boxes issued on August 19, 2020, over three months prior to filing (Dkt. 12-13); the Safe Voting Plan grants received by various Wisconsin municipalities announced on July 7, 2020, nearly six months before filing (Dkt. 12-28); the Wisconsin Election Commission Amended Guidance regarding Missing or Insufficient Witness Address on Absentee Certificate Envelopes dated October 16, 2016, four years ago (May Decl. Exh. 6); .and "Spoiling Absentee Ballot Guidance" issued by the WEC on October 19, 2020, over one month prior to filing (Dkt. 12-25).

8

Plaintiff never sought to enjoin any of these acts prior to the election. Instead, he waited until he learned the outcome of the election to reach the conclusion that these acts necessitate nullification of the election. He waited until after the election was certified by the WEC and the Certificate of Ascertainment was signed by the Governor before seeking relief in this court. (May Decl. Exh. 4).

The plaintiff's claims could have been adjudicated well before millions of Wisconsin voters cast their ballots. Plaintiff knew all the facts relevant to his present claims in the months prior to the election as evidenced by the dates of the documents accompanying his filing in this matter. Rather than act when he could have and should have, he waited until after the votes were cast, the recount completed, the results certified, and the Certificate of Ascertainment signed.

Federal election law does not countenance plaintiff's waiting to bring these claims until after the election. *Toney v. White*, 488 F.2d 310 (5th Cir. 1973). Entertaining dilatory suits such as this can only serve to reward parties who have sat on their rights to the severe detriment of voters and elections officials. Id., at 314. The court ruled:

> We agree with the panel that the law imposes the duty on parties having grievances based on discriminatory practices to bring the grievances forward for pre-election adjudication. We also agree that the failure to require prompt pre-election action in such circumstances as a prerequisite to post-election relief may permit, if not encourage, parties who could raise a claim 'to lay by and gamble upon receiving a favorable decision of the electorate' and then, upon losing, seek to undo the ballot results in a court action.

The prejudice to the defendants and the voters of Wisconsin is unmistakable and overwhelming, especially in view of the extreme, unprecedented remedy plaintiff seeks. Judge Hagedorn's statement quoted previously says it all.

Plaintiff's requested remedy would disenfranchise millions of Wisconsin voters. Granting the remedy would mean all the time, effort and money expended by the defendants in

9

administering and holding the election would have been wasted. The legitimacy of all the other office holders elected throughout the state at the election would immediately be called into question as would the legitimacy of all future elections.

Wisconsin has a specific process to deal with the types of complaints raised by the plaintiff and it affords adjudication prior to the election so that everyone knows what the rules are. The statute provides, in relevant part:

> Whenever any elector of a jurisdiction or district served by an election official believes that a decision or action of the official or the failure of the official to act with respect to any matter concerning nominations, qualifications of candidates, voting qualifications, including residence, ward division and numbering, recall, ballot preparation, election administration or conduct of elections is contrary to law, or the official has abused the discretion vested in him or her by law with respect to any such matter, the elector may file a written sworn complaint with the board requesting that the official be required to conform his or her conduct to the law, be restrained from taking any action inconsistent with the law or be required to correct any action or decision inconsistent with the law or any abuse of the discretion vested in him or her by law.

Wis. Stat. § 5.06(1). No such complaint was filed regarding any of the alleged wrongdoing in the plaintiff's complaint. As noted below, at page 18, related statutes make it clear no action may be filed without first seeking redress from the WEC.

Plaintiff claims an emergency. It is an emergency of the plaintiff's own making. The court ought not to reward a party who acts in so cavalier a way with respect to our cherished bedrock of democracy, the conduct of elections.

The plaintiff is essentially taking a "Heads I win, tails you lose" approach to this litigation. If the plaintiff had won Wisconsin, all these alleged illegal actions matter not. Plaintiff is happy to take the spoils of what he terms a "failed election" if he wins. But if he loses, plaintiff will cry foul. The court should not countenance such an approach. The doctrine of laches applies, and plaintiff's claims should be dismissed.

10

Courts from around the nation have been deciding similar cases and dismissing them out of hand. The most recent example comes from Michigan. In *King v. Whitmer*, Case No. 20-13134, at p. 13, E.D. MI, the court dismissed plaintiffs' request to throw out the result of the election based on laches. (May Dec. Ex 9). The plaintiff in that case waited 21 days after the election to sue. Here the plaintiff waited 29 days. Just as in this case, the plaintiff in the Michigan case did not bring any of their challenges prior to the election and offered no excuse for their dilatory actions.

## III.    THIS ACTION IS MOOT.

Plaintiff waited until after the State of Wisconsin certified the election to file this lawsuit. Governor Evers signed the Certificate of Ascertainment For President, Vice President, and Presidential Electors General Election - November 3, 2020 on November 30, 2020. (May Decl. Exh. 4). This action was filed two days after the Ascertainment was executed.

The doctrine of mootness has been applied in other litigation related to the 2020 presidential election. The courts have concluded that once the election has been certified and the electors chosen, there is no live case or controversy. In *Wood v. Raffensperger*, Case No. 20-14418, 2020 WL 7094866 (11th Cir. Dec. 5, 2020), a unanimous court found that the voter's suit to enjoin certification of Georgia's election results was moot. The court reiterated that it was not empowered to decide moot questions and that a question is moot when there is no longer a live controversy. Id., at *6-*8. The court further noted that an issue can become moot at any stage of the lawsuit, even if there was an actual controversy when the case began. Id. With these principles in mind, the court held that the plaintiffs' request to prohibit the certification of the vote was moot because the vote and the electors were already certified. Id. The court rejected

11

the claim that the matter was not moot because the litigation was ongoing holding that mootness concerns the availability of relief. There was no relief available to the plaintiff after certification.

The court of appeals in Michigan reached the same result in *Donald J. Trump for President, Inc. v. Secretary of State*, LC NO. 2020-000225 MZ. The plaintiff's complaint requested an order that would have halted the counting of ballots in Michigan. (May Decl. Exh. 10). The plaintiffs then filed an emergent application on November 6, 2020 and then did nothing about it until November 30, 2020 at 11:21 p.m. Id. at 2. By that time, the Michigan Board of Sate Canvassers certified the presidential election and the list of electors had been sent to the United States Senate. The court held that certification of the vote mooted the challenge by Donald Trump.

The federal court for the Eastern District of Michigan reached the same result in *King v. Whitmer*, Case No. 20-13134, at p. 13, (E.D. MI, December 7, 2020, May Dec. Exh. 9). The court succinctly noted, "this ship has sailed." The court held that just as in Wisconsin, the Michigan vote was certified prior to the commencement of litigation and that the relief requested was not available.

The same result is warranted in this case. The relief requested by plaintiff is to have the election "remanded" to the legislature to determine the proper remedy. (Dkt. 6, p. 3 "Remand this matter to the Wisconsin Legislature for its consideration as to a remedy"). That remedy is simply not available to the plaintiffs after the Governor certified the election. The Executive branch is co-equal to the Legislative branch. There is simply no basis for the legislature to act at this point. As such the remedy that plaintiff seeks is not available.

The Electoral Count Act of 1887 requires the certificate of ascertainment to be signed by the governor for the electors of a state to be recognized. (3 U.S.C. §§ 6 and 15). Given that the

Ascertainment has already been sent, the relief of "remanding to the legislature" is of no moment. Assuming the legislature was remotely interested in such a usurpation of power, there is nothing for them to do because the only legally cognizable Certificate of Ascertainment has already been filed.

The plaintiff may argue that the certification of an election does not always moot a challenge to the election. While that was the result in *Siegel v. LePore*, 234 F.3d, 1163 (11th Cir. 2000 (en banc), the facts there were significantly different than the facts of this case. The Siegel case involved the 2000 election and at the time the court made its decision the votes in Florida were still being counted. Id. at 1173. Here the recount was finished, and the election certified by the Governor prior to the commencement of the instant lawsuit.

## IV. THE COURT SHOULD DISMISS THIS ACTION UNDER ABSTENTION PRINCIPLES.

The plaintiff in this action, Donald J. Trump, is a petitioner in an original action brought in the Wisconsin Supreme Court and now pending in the Circuit Court for Milwaukee County that raises issues identical to those raised in this action. (May Decl. Exhs 1 and 3). This Court can and should abstain from exercising its jurisdiction in this action and should dismiss this action instead.

### A. The Court Should Dismiss This Action Under *Wilton/Brillhart* Abstention Principles.

#### 1. The *Wilton/Brillhart* Abstention Doctrine.

The plaintiff seeks declaratory judgment. This Court can and should dismiss this action under the *Wilton/Brillhart* abstention doctrine, derived from *Wilton v. Seven Falls Company*, 515 U.S. 277, (1995) and *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, (1942). "Under . . . the *Wilton/Brillhart* abstention doctrine, district courts possess significant discretion to dismiss

13

or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims." *R.R. St. & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 713 (7th Cir. 2009).

As explained by the Seventh Circuit:

This discretion arises from the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 itself, which provides that district courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The discretionary nature of the Act led the Supreme Court to hold in *Brillhart* and *Wilton* that district courts have substantial discretion in deciding whether to declare the rights of litigants and may, in the sound exercise of their discretion, stay or dismiss an action seeking a declaratory judgment in favor of an ongoing state court case.

*Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010) (emphasis in the 7th circuit *Envision* opinion). There are no set criteria for abstention, but "the classic example of when abstention is proper occurs where . . . solely declaratory relief is sought and parallel state proceedings are ongoing." Id.

### 2. A Parallel State Court Proceeding Is Pending.

The plaintiff in this action, Donald J. Trump, is a petitioner in an original action brought in the Wisconsin Supreme Court. *Donald J. Trump et al v. Anthony S. Evers et al*, Appeal Number 2020AP001971 – OA. A copy of the petition commencing the original action is at May Decl., Exh. 1. The petition for leave to commence an original action was denied. The Wisconsin Supreme Court held that "[o]ne or more appeals from the determination(s) of one or more boards of canvassers or from the determination of the chairperson of the Wisconsin Elections Commission may be filed by an aggrieved candidate in circuit court." (May Decl., Exh. 2. Plaintiff has filed such an appeal. May Decl., Exh. 3).

The petition, and the subsequently filed appeal, raise the following issues:

1.      Whether absentee ballots issued in-person to voters by municipal clerks' offices in Milwaukee County and Dane County without the required written application, pursuant to Wis. Stat. § 6.86(1)(ar), are illegal and invalid.

14

2.     Whether absentee ballots issued by municipal clerks' offices in Milwaukee County and Dane County without the required written application, pursuant to Wis. Stat. § 6.86(1)(ar), should be excluded from the Presidential Election results in Wisconsin as required by Wis. Stat. § 6.84(2).

3.     Whether absentee ballots accompanied by incomplete certifications or on which municipal clerks added missing information in contravention of Wis. Stat. §§ 6.84(2) and 6.87(6d) are illegal and invalid.

4.     Whether absentee ballots accompanied by incomplete certifications or on which municipal clerks added missing information in the contravention of Wis. Stat. §§ 6.84(2) and 6.87(6d) should be excluded from the Presidential Election results in Wisconsin as required by Wis. Stat. § 6.84(2).

5.     Whether absentee ballots cast by electors claiming Indefinite Confinement status, which status was claimed on or after March 25, 2020, for which there was no voter identification provided are illegal and invalid.

6.     Whether absentee ballots case by electors claiming Indefinite Confinement status, which status was claimed on or after March 25, 2020, for which there was no voter identification provided should be excluded from the Presidential Election results in Wisconsin.

7.     Whether stationing poll workers, receiving ballots, witnessing ballot certifications and other clerk's office activities in Madison's "Democracy in the Park" events complied with Wisconsin Election laws.

8.     Whether relief by drawdown is appropriate for legal violations committed at the "Democracy in the Park" events.

(May Decl. Exh. 1, pp 2-3).  Plaintiff raises in the state court action precisely the issues he raises in this action.

The Seventh Circuit stated in *Envision*: "[t]wo actions are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in two fora." *Envision*, 604 F.3d at 986, citing *Sta-Rite Indus., Inc. v. Allstate Ins. Co.*, 96 F.3d 281, 287 (7th Cir. 1996).  Without question, that is the case here.

## B. Alternatively, the Court Should Stay This Action Under *Pullman* Abstention Principle.

Alternatively, this Court should stay this action under *Pullman* abstention principles. *Pullman* abstention is appropriate "when (1) there is a substantial uncertainty as to the meaning of the state law and (2) there exists a reasonable probability that the state court's clarification of state law might obviate the need for a federal constitutional ruling." *Wis. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 150 (7th Cir.2011) (internal quotations omitted).

Here, plaintiff alleges various violation of Wisconsin's elections laws. Defendants respectfully submit that there have been no violations of Wisconsin's election laws, as set forth in Sec. V. below. To declare that the election laws have been violated, this Court is asked by the plaintiff to construe and interpret those laws, when an action is pending in state court that will construe and interpret those laws. *Pullman* abstention principles call on this Court to hold its fire until the state courts have spoken, because quite possibly the Court will not be required to construe Wisconsin's election laws at all.

## V. PLAINTIFF IS NOT ENTITLED TO THE RELIEF SOUGHT.

The plaintiff seeks both declaratory and injunctive relief for the alleged violations. In terms of declaratory relief, the plaintiff seeks an order finding that the defendants violated both the Electors Clause and the Elections Clause. He also requests a finding that the alleged constitutional violations "likely tainted more than 50,000 ballots." Dkt. 1, p. 72.) As for injunctive relief, the plaintiff asks that the Court "remand" the case to the Wisconsin Legislature to determine a remedy, potentially nullifying the results of the election and disenfranchising every Wisconsin voter.

In a concurring opinion, Wisconsin Supreme Court Justice Hagedorn recently described similar relief sought in a case before that court as a "real stunner….unprecedented in American history," and "the most dramatic invocation of judicial power I have ever seen." *Wisconsin Voters Alliance v. Wisconsin Elections Comm'n,* No. 2020AP1930-OA, pp. 2-3 (Dec. 4, 2020) (Hagedorn, J., concurring). Those sentiments were echoed by a federal court in Michigan in a decision resolving a challenge to the November 2020 election results in that state. In that case, as here, the plaintiffs sought to disenfranchise millions of electors. In the court's unvarnished view, the relief the plaintiffs were seeking "is stunning in its scope and breathtaking in its reach." *King v. Whitmer*, No. 20-13134, slip op. at 2 (E.D. Mich., Dec. 7, 2020). The relief sought here is equally outrageous, particularly when premised on baseless suppositions and theories. See *United States v. O'Conno*r, No. 96-2992, 1997 WL 413594, at *1 (7th Cir. 1997) (a belief is not evidence and does not support any relief, much less extraordinary relief).

Apart from the striking (and baffling) scope of the remedy requested, the injunctive aspect of it appears directed only at an election that has passed. That calls into question the plaintiff's decision to name as defendants the municipal officials being sued. Their work is done: the votes from their districts have been tallied and certified in accordance with state law and guidance issued by the State. The municipal defendants have no ability to reverse the procedural conduct of an election long since finished. They ought to be dismissed from the case summarily. No injunctive relief against them is possible as it relates to the election past.

The same holds true for declaratory relief. While in theory, the court could decide that some acts in the election were wrong, there is no relief to provide the plaintiff, and certainly no relief from these defendants. Plaintiff is essentially seeking an advisory opinion.

17

At the initial status conference, the court questioned whether injunctive relief or the stunning remedy sought by plaintiff were really in play. Plaintiff's counsel seemed to waver on exactly what relief was being sought. This leaves the defendants in an impossible situation: the relief first asked is not available against the municipal officials, and we apparently must guess what sort of remedy might be requested.

Finally, even if some declaratory or injunctive relief were requested for the *next* election, no such election is planned in Wisconsin until a February 2021 primary date and the spring non-partisan election in April, 2021. If that is what plaintiff wants, the court may remove this from the emergency calendar, and the parties may proceed at a normal litigation speed.

## VI.  THE ELECTION WAS CONDUCTED CONSISTENT WITH WISCONSIN LAW.

Plaintiff makes many claims about the election supposedly being conducted contrary to Wisconsin law. The claims are baseless.

### A.  No Complaint Was Filed With the Wisconsin Elections Commission.

As noted above (p. 10), Wisconsin has an established procedure for challenging the conduct of elections. Plaintiff did not follow it: no person on behalf of the Trump campaign filed a complaint with the WEC pursuant to Wis. Stat. § 5.06(1). Not only does the statute permit electors to file complaints regarding the actions of election officials, §5.06 (2) requires invoking that administrative remedy prior to initiating court action:

> (2) No person who is authorized to file a complaint under sub. (1), other than the attorney general or a district attorney, may commence an action or proceeding to test the validity of any decision, action or failure to act on the part of any election official with respect to any matter specified in sub. (1) without first filing a complaint under sub. (1), nor prior to disposition of the complaint by the commission….

Wis. Stat. § 5.06(3) recognizes that failure to file an administrative complaint in a timely manner may unfairly affect the rights of other parties:

(3)  A complaint under this section shall be filed promptly so as not to prejudice the rights of any other party. In no case may a complaint relating to nominations, qualifications of candidates or ballot preparation be filed later than 10 days after the complainant knew or should have known that a violation of law or abuse of discretion occurred or was proposed to occur.

The plaintiff raises the issues in this complaint now, after the election.  The plaintiff's supporters could and should have raised the issues before the election.  They did not.  Failing to timely invoke that administrative remedy means that election officials and voters proceeded under the rules as they have been applied in past elections. The plaintiff's failure to invoke this administrative remedy is prejudicial to the rights of all voters and other candidates.  As noted above, this supports the argument that plaintiff's claims are subject to laches, but it also demonstrates that defendants reasonably relied on the failure of any of plaintiff's supporters or the Wisconsin Legislature to challenge the manner of the election.  The defendants proceeded to apply the laws as written and interpreted because neither the plaintiff nor anyone acting on his behalf challenged those laws.

**B.      The Standards For Challenges to Elections Are Rigorous.**

The standards to be applied by the court to election challenges such as this one are clear. "Absent connivance, fraud or undue influence, substantial compliance with the statutory voting procedures is sufficient."  *In the Matter of an Appeal from Recount in the Election Contest of Charles Hayden and George Johnson*, 105 Wis. 2d 468, 313 N.W. 2d 869 (Ct. App. 1981), citing *Lanser v. Koconis*, 62 Wis. 2d 86, 90, 214 N. W. 2d 425 (1974).

These cases also establish the rule that nearly all the requirements in Wisconsin election law are directory, not mandatory.

This is consistent with Wis. Stat. § 5.01(1):

(1)  Construction of chs. 5 to 12. Except as otherwise provided, chs. 5 to 12 shall be construed to give effect to the will of the electors, if that can be ascertained

19

from the proceedings, **notwithstanding informality or failure to fully comply with some of their provisions.** (Emphasis added).

Finally, the courts have made it clear that in order to challenge any ballot, "the requisite standard of proof is beyond a reasonable doubt, whether the challenge occurs prior to the election, at the polls, or after the election." *Logerquist v. Board of Canvassers for Town of Nasewaupee*, 150 Wis.2d 907, 917, 442 N.W.2d 551 (Ct. App. 1989).

Federal courts apply similarly strict standards. The admonitions of the court in *Bodine v. Elkhart County Election Board*, 788 F. 2d 1270, 1271-2 (7th Cir. 1988), applies here:

> "It is not every election irregularity, however, which will give rise to a constitutional claim and an action under section 1983." *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir.1975). In what has become a widely accepted statement of the standard, Judge Tone in *Hennings* held that section 1983 is implicated only when there is "willful conduct which undermines the organic processes by which candidates are elected." 523 F.2d at 864 (emphasis added). Accord, *Hendon v. North Carolina State Board of Elections*, 710 F.2d 177, 182 (4th Cir.1983) (election process must reach the point of "patent and fundamental unfairness"); *Duncan v. Poythress*, 657 F.2d 691, 701 (5th Cir.Unit B., 1981) (citing *Hennings*); *Partido Nuevo Progresista v. Barreto Perez*, 639 F.2d 825, 827 (1st Cir.1980); *Gamza v. Aguirre*, 619 F.2d 449, 452 (5th Cir.1980) (quoting *Hennings*); *Rudisill v. Flynn*, 619 F.2d 692, 695 (7th Cir.1980) (incidental burdens not actionable under section 1983); *Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir.1978) (section 1983 does not cover garden variety election irregularities). See generally *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official....").

> Implicit in the restriction of section 1983 to debasement of the electoral process are two considerations, one of great import, the other of practical concern. First, federalism concerns caution against excessive entanglement of federal courts in state election matters.

> > The very nature of the federal union contemplates separate functions for the states. If every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute, and the elaborate state election contest procedures, designed to assure speedy and orderly disposition of the multitudinous questions that may arise in the electoral process, would be superseded by a section 1983 gloss.

*Gamza*, 619 F.2d at 453. See also *Pettengill v. Putnam County R-1 School
District*, 472 F.2d 121 (8th Cir.1973). Second, as was stressed in *Hennings*,
elections are generally conducted by volunteers, rather than trained professionals.
While this may be a positive aspect of the electoral system it inevitably leads to
errors of widely differing degrees of severity. *Hennings*, 523 F.2d at 865.

Appellants, in the present case, have alleged nothing more than garden variety
election irregularities that could have been adequately dealt with through the
procedures set forth in Indiana law.

When these standards are applied to the allegations of the complaint, the complaint is inadequate.

Plaintiff simply cannot show beyond a reasonable doubt that there was a deliberate series of

actions to undermine the very core of the election.

### C.    Defendants Followed the Law on Indefinitely Confined Voters.

Plaintiff claims the Wisconsin Elections Commission and local officials failed to follow

the law on the use of indefinitely confinement.  Not so.

Under Wis. Stat. sec. 6.86(2)(a), a voter may self-identify as "indefinitely confined

because of age, physical illness or infirmity or is disabled for an indefinite period."  The voter

then receives an absentee ballot and may vote without further identification.  Election officials

are not required to verify the voter's statement.  Absentee ballots submitted by indefinitely

confined voters are witnessed as are other absentee ballots.

The Wisconsin Supreme Court approved past practice, and the practice for this election,

by approving the WEC guidance in a ruling on March 31, 2020 (*Jefferson v. Dane County*,

Appeal No. 2020AP 557, May Dec. Exh. 5).[2]  The court explicitly stated (p. 2):

In regard to clarification, the WEC has met and has issued guidance on the proper
use of indefinitely confined status under Wis. Stat. § 6.86(2) in its March 29, 2020
publication, "Guidance for Indefinitely Confined Electors COVID-19."   The
WEC guidance states as follows:

> 1.    Designation of indefinitely confined status is for each
> individual voter to make based upon their current circumstances.  It does

---

[2] The WEC Guidance is at Dkt. 12, Ex. 2.

not require permanent or total inability to travel outside of the residence. The designation is appropriate for electors who are indefinitely confined because of age, physical illness or infirmity or are disabled for an indefinite period.

2. Indefinitely confined status shall not be used by electors simply as a means to avoid the photo ID requirement without regard to whether they are indefinitely confined because of age, physical illness or infirmity, or disability.

We conclude that the WEC's guidance quoted above provides the clarification on the purpose and proper use of the indefinitely confined status that is required at this time.

Defendants followed the advice and the law as set out by the Wisconsin Supreme Court for the spring and fall elections. None of the plaintiff's other allegations – including those related to a Facebook post that was public for 6 days in March of 2020 or the mere fact that voting under this statute increased – overcome this law; in effect, plaintiff is making a collateral attack on the Wisconsin Supreme Court's ruling of March 31, 2020, approving the WEC's guidance on this statute.

Wisconsin officials followed the law and the election was proper.

**D.      Absentee Ballots.**

Much of plaintiff's allegations are a false suggestion that there is something untoward about absentee ballots. Wisconsin allows municipal officials to issue absentee ballots to any voter for any reason. Entire sections of plaintiff's complaint (Dkt. 1, ¶109-162) are dedicated the canard that absentee ballots are somehow suspect. They are not. Part of plaintiff's complaint, typical of many of the claims, argues that absentee ballots are potential avenues of fraud (Dkt. 1, ¶ 144). Potential for fraud is not what is required under the standards set out above. This is far short of the mark; plaintiff must have specific evidence of a ballot or ballots that were procured by fraud. Mere speculation is not sufficient.

Wisconsin officials followed the law and the election was proper.

### E.     Drop Boxes Are Legal.

Plaintiff alleges drop boxes violate Wisconsin law (Dkt. 1, ¶174-234).  They do not.

Under the control and supervision of the clerks who run Wisconsin elections, these drop boxes

are nothing more than an extension of the Clerk's office for the receipt of ballots.  They are

secure.  Plaintiff has no evidence of misuse or any single ballot that was tainted by this process.

The WEC approved the use of drop boxes in August, 2020, and no person challenged the

use of drop boxes.  See https://elections.wi.gov/node/7036; Dkt. 12, Ex. 13.

Wisconsin law does not designate any method for return of absentee ballots to the

municipal clerk.  Sec. 6.87(4)(b)1 provides in part:

> The envelope shall be mailed by the elector, or delivered in person, to the
> municipal clerk issuing the ballot or ballots.

Wis. Stat. § 6.87(6) provides:

> The ballot shall be returned so it is delivered to the polling place no later than 8
> p.m. on election day. Except in municipalities where absentee ballots are
> canvassed under s. 7.52, if the municipal clerk receives an absentee ballot on
> election day, the clerk shall secure the ballot and cause the ballot to be delivered
> to the polling place serving the elector's residence before 8 p.m. Any ballot not
> mailed or delivered as provided in this subsection may not be counted.

To suggest drop boxes may be insecure is to equally suggest that USPS mailboxes may be

insecure.  That does not meet the standard to throw out the ballots.

Plaintiff also makes allegations that some votes may have been deposited in drop boxes

after 8 pm.  This is more than speculation; it is simply wrong.  The Drop Boxes were all secured

on Monday, November 2, at 5 pm, the day before the election.  The Drop Boxes included a

notice that if you arrived on election day, you were to take your ballot to your polling place. See

May Decl., Exh. 11.  This is a prime example of the sort of wild speculation with no basis in fact or law in plaintiff's case.

Wisconsin officials followed the law and the election was proper.

**F.     The Mayors Should Not Be In This Case and All of Their Actions Were Legal.**

Plaintiff also complains that Wisconsin Mayors encouraged their residents to vote and accepted funds to do so (Dkt. 1, ¶ 168-173).  Plaintiff paints this as some nefarious plot, going so far as to call it the "Mayors' Voting Plan." (Dkt. 1, ¶ 287).

As this court is well aware, Mayors do not conduct elections.  The Wisconsin Municipal Officials are puzzled why the Mayors of these cities were even named in the lawsuit.  Nowhere does the complaint allege any legal obligation of the Mayors related to the conduct of an election.  The Complaint fails to state a claim against the Mayors.

Any complaint about encouraging voting runs straight into the First Amendment rights of the Mayors to urge all citizens to participate in the electoral process.  It is impossible to find any legal obligation of the Mayors that was breached.

Similarly, there is no cause of action for municipal governments receiving funds to help conduct a robust election.  This matter was already before Judge Griesbach in the Eastern District, who refused to issue an injunction against receipt and use of these funds.  See May Decl. Exh. 8.  That order notes that over 100 municipalities in Wisconsin used these funds, not just the municipal officials plaintiff added as parties to this case.

Wisconsin officials followed the law and the election was proper. The Mayors acted properly and the complaint against them should be dismissed.

### G.  Correction of Absentee Ballots.

Wisconsin has long allowed clerks to make minor, clerical corrections to absentee ballots, when the correct information can be discovered.  This is often filling in an address of a spouse who lives at the same address as the absentee voter, and who witnessed their spouse's ballot.

One reading the complaint would think poll workers were filling out ballots and making up voters to sign them!  (Complaint ¶235-258). That is not what happens.  This minor correction of clerical errors helps to fulfill the intent of the voter, and protect the voter's right to vote.

The WEC issued Guidance on this matter in 2016, and it has been used in elections since that time.  See https://elections.wi.gov/node/4275, May Decl. Exh. 11.  Contrary to plaintiff's arguments, the WEC carefully considered this and the law does not require exclusion of a ballot where an address was confirmed and added to an absentee ballot.

Wisconsin officials followed the law and election was proper.

### H.  Access to Observation of Voting.

Plaintiff complains of minor annoyances in the access to observation of voting. (Complaint ¶ 281-293).  Wis. Stat. sec. 7.41 recommends a 3-8 foot distance for observation of voting.  Given the pandemic, elections officials have some discretion in application of the rule. Observation of voting has no relationship to the validity of the ballots.  None of these amount to a reason to toss out ballots, under the standards set out above.

Wisconsin officials followed the law and the election was proper.

## CONCLUSION

The people of Wisconsin chose Joe Biden to be the 46th President of the United States of America.  Nothing in plaintiff's complaint comes close to raising an issue as to the validity of

that choice.  The complaint is devoid of any factual or legal basis to set aside the will of the

people and should be dismissed in its entirety.

Dated this 8th day of December, 2020.

/s/ Michael P. May

Michael P. May, SBN 1011610
James E. Bartzen, SBN 1003047
Barry J. Blonien, SBN 1078848
Boardman & Clark LLP
U.S. Bank Plaza, Suite 410
1 South Pinckney Street
P.O. Box 927
Madison, WI  53701-0927
(608) 257-9521
mmay@boardmanclark.com
jbartzen@boardmanclark.com
bblonien@boardmanclark.com

*Attorneys for Defendants Satya Rhodes-Conway,
Mayor of the City of Madison, Maribeth Witzel-
Behl, City Clerk of Madison, Scott McDonell,
County Clerk of Dane County*

/s/Dixon R. Gahnz

Dixon R. Gahnz, SBN 1024367
Daniel Bach, SBN 1005751
Daniel S. Lenz, SBN 1082058
Terrence M. Polich, SBN 1031375
Lawton & Cates, S.C.
345 West Washington Avenue, Suite 201
Madison, WI 53703
(608) 282-6200
dgahnz@lawtoncates.com
dbach@lawtoncates.com
dlenz@lawtoncates.com
tpolich@lawtoncates.com

*Attorneys for  Cory Mason, Mayor of the City of
Racine, Tara Coolidge, City Clerk of the City of
Racine, John Antaramian, Mayor of the City of
Kenosha, Matt Krauter, City Clerk of the City of
Kenosha, Eric Genrich, Mayor of the City of Green
Bay, and Kris Teske, City Clerk of the City of Green
Bay*

26