# ELECTION RECOUNT PROCEDURES

<mark>November 2020</mark>



**Wisconsin Elections Commission**
P.O. Box 7984
Madison, WI 53707-7984

Phone: (608) 261-2028
FAX: (608) 267-0500
Email: elections@wi.gov
Web: http://elections.wi.gov

EXHIBIT M

# Table of Contents

**Procedures for Requesting a Recount**                                    **1-3**
Who May Request a Recount?                                             1
How is a Recount Requested?                                           1
What is a Recount Petition?                                           1-2
When is a Filing Fee Required?                                        2
Campaign Finance Note                                                3
Where Does the Petitioner File a Recount Petition?                   3
When Must the Petition Be Filed?                                     3
What Happens When the Petition is Properly Filed?                    4

**Procedures for Conducting the Recount**                                   **4-13**
When Does the Recount Begin?                                         4
Who Conducts the Recount?                                            4
Who May Attend the Recount?                                          4-5
Recount Preparations                                                5-6
What Does the Board of Canvassers Do?                                6
How Does the Board of Canvassers Conduct the Recount?               6-13

**After the Recount**                                                        **14**
What Does the Board of Canvassers Do After the Recount?             14
How Does a Candidate or Petitioner Challenge the Results?          14

**Appendix**

**Sample Forms**                                                            **1-6**
Recount Petition                                                     1
Recount Petition for Referendum                                     2
Order for Recount                                                   3
Public Notice of Recount                                            4
Acceptance of Service                                               5
Recount Minutes                                                     6

**Recount Fee Scenarios**                                                   **7**

**Recount Checklists**                                                      **8-11**
Supplies and Materials                                              8
Paper Ballot                                                        9
Optical Scan                                                        10
Direct Recording Electronic (DRE)/Touch Screen Voting              11

**Commission Staff Memorandum: Construction of Wis. Election Stats.**       **12-15**
Directory vs. Mandatory Application of Statutes                     12-13
Election Official Error vs. Voter Error                             14
Board of Canvassers Discretion                                      14-15

**Public Health Guidance**                                                  **16**

# Introduction

Elections are often decided by a few votes. In many cases they are decided by one or two votes out of the several hundred or even several thousand votes that are cast. An election may even end in a tie vote. These circumstances encourage a candidate, typically the one who loses the election, to have all the ballots counted again to assure all legal votes are counted properly, any illegal votes are not counted, and the proper procedures for conducting the election were followed by the election officials.

The process of counting the ballots again is known as a recount. There is no automatic recount. The procedures for requesting and conducting a recount are spelled out in the election laws. A recount is the exclusive remedy to test in court the right of a candidate to hold office based on the number of votes cast at an election.

This manual explains the statutory requirements for requesting a recount, attempts to explain ambiguity in those statutes, expands on the statutory requirements with recommended procedures for conducting a recount, and contains sample forms for use during the recount. Additionally, the Appendix to this manual includes a Commission staff memorandum on the construction of Wisconsin's election statutes which in some cases can influence the advice rendered by Commission staff to board of canvassers conducting a recount. The advice is rendered on a case-by-case basis and is intended to "give effect to the will of the electors" when making decisions during a recount. This memorandum also outlines the discretion board of canvassers may exercise when making decisions during a recount and provides analysis of situations where the board of canvassers considers if an error in the election process was made by a voter or an election official and how that difference impacts the tallying of votes.

This information is prepared by the Wisconsin Elections Commission ("WEC" or "Commission") pursuant to the requirements of Wis. Stat. § 9.01(10). If you have any questions about the recount process, please contact Commission staff through any of the methods below:

Phone: 608-261-2028
Toll Free: 866-VOTE-WIS
Fax: 608-267-0500
Email: elections@wi.gov

# Procedures for Requesting a Recount

## Who May Request a Recount?

Any individual who voted at a referendum election may request a recount of the referendum results. Only an aggrieved candidate, defined as a candidate for an office whose total votes were within 1% of the winner's vote total when at least 4,000 votes were cast or within 40 votes of the winner's total if fewer than 4,000 votes were cast may request a recount of results for an office. Wis. Stat. § 9.01(1)(a)1. There is no automatic recount, even if the unofficial results are extremely close.

## How is a Recount Requested?

A recount is requested by filing a sworn petition with the filing officer along with the filing fee, if required. For the office of the president, a petition for recount must be filed not earlier than the completion of the canvass and not later than 5 p.m. on the 1st business day following the day on which the WEC receives the last county board of canvassers statement. For all other offices, a petition for recount must be filed not earlier than the completion of the canvass and not later than 5 p.m. on the 3rd business day following the last meeting day of the board of canvassers determining the result for the office/referendum. Wis. Stat. § 9.01(1)(a)1.

## What is a Recount Petition?

A recount petition is a sworn statement requesting that the votes at an election be counted again and setting out the reasons why the ballots should be recounted. A recount petition must be filed with the filing officer along with any applicable fee.

The recount petition must state the following information:

1. The petitioner must specifically request a recount or otherwise clearly indicate they desire a recount of particular election results. See Wis. Stat. § 9.01(1)(a)1.

2. The petitioner must indicate he or she was an aggrieved candidate for the office in question Wis. Stat. § 9.01(1)(a)5. If the results of a referendum election are at issue, the petition must state that the petitioner voted on the referendum question. Wis. Stat. § 9.01(1)(a)2.a.

3. The basis for requesting the recount. This can consist of a general statement that the petitioner believes that a mistake or fraud was committed in a specified ward or municipality in the counting and return of the votes cast for the office; or more specific grounds, such as a particular defect, irregularity, or illegality in the conduct of the election, may be listed in the petition. The petitioner shall state if this information is based on personal knowledge of the petitioner or if the petitioner believes the information to be true based on information received from other sources. Wis. Stat. § 9.01(1)(a)2.b.

4. The ward or wards to be recounted.[1] If a municipality consists of only one ward, the petition

---

[1] If a candidate petitions for a recount in part, but not all, of the wards or municipalities within a jurisdiction or district, the opposing candidate may file a petition for a recount in any or all of the remaining wards or municipalities. The latter petition must be filed not later than 5:00 p.m. two days after the board of canvassers completes the first recount. The board of canvassers convenes at 9:00 a.m. on the next business day to count the remaining wards or municipalities. This right also applies to a referendum election. Any elector who voted at the election may petition to recount the remaining wards or municipalities in a referendum election. Wis. Stat. § 9.01(4).

1

need only list the municipality in which the recount is desired. If all wards in a municipality, county or district are to be recounted, the petition may list the municipality, county or district without specifying each ward to be recounted. The petitioner may also state "all wards" if the petitioner wants the entire election recounted. If no ward specifications are indicated, the filing officer will assume that all wards are included. Wis. Stat. § 9.01(1)(a)3.

5. A verification signed under oath before a person authorized to administer oaths. The verification must state that the matters contained in the petition are known to the petitioner to be true except for allegations stated on information and belief, which the individual believes to be true. See Sample Recount Petition (EL-186 or EL-186R).

If a recount petition is not filed in the proper form, or not accompanied by the filing fee (if required) by the filing deadline, the petitioner loses his or her right to a recount of the election. See Wis. Stat. § 9.01(1)(a)2 & (ag)3. A sample recount petition (EL-186 or EL-186R) is available in the Appendix.

After filing the recount petition, the petitioner may amend the petition. This may be done to include information discovered as a result of the facts gathered and determined by the board of canvassers during the recount. If the petitioner wants to amend his or her petition, the petitioner must file a motion to amend the petition with the board of canvassers as soon as possible after the petitioner discovers, or should have reasonably discovered, the new information, and show that the petitioner was unable to include the information in the original petition. Wis. Stat. § 9.01(1)(a)4.

## **When is a Filing Fee Required?**

Determining if a filing fee is required depends on the total votes cast for the office[2] and the difference between the total votes cast for the "leading candidate" and the total votes cast for the petitioner. The "leading candidate" is typically the candidate who won the election. However, in an election where more than one candidate is elected to the same office, or in a primary election when two or more candidates are nominated, the "leading candidate" is the person who received the fewest votes, but is still elected or nominated; not the candidate with the most votes. When more than one candidate is elected or nominated, the number and percentage of votes cast is calculated by first dividing the total votes cast by the number of candidates elected or advancing. Wis. Stat. § 9.01(1)(ag)5. Please see "Recount Fee Scenarios" in the Appendix for an example of how to determine if a filing fee is required.

If 4,000 or fewer votes are cast:
No fee is required if the difference in the total votes cast between the leading candidate and those cast for the petitioner or between the affirmative and negative votes cast at a referendum is less than 10. If the difference is at least 10 votes, a filing fee is required.

If more than 4,000 votes are cast:
No fee is required if the difference between the leading candidate and those cast for the petitioner or between the affirmative and negative votes cast at a referendum is 0.25% or less. If the difference is greater than 0.25%, a filing fee is required.

When a filing fee is required, the cost of the recount should be estimated by the filing officer

---

[2] In an election in which more than one office of the same type is to be filled from the same territory, the total votes cast for the office is determined by dividing the total number of votes cast for the office by the number of offices to be filled. The difference between the total votes cast for the leading candidate and the petitioner is divided by the total votes cast for the office to calculate the percentage difference to determine when a fee is required. Wis. Stat. § 9.01(1)(ag)5.

including the actual cost incurred by the Elections Commission to provide services for performing the recount, and pre-paid by the petitioner in cash or in another form of payment acceptable to the filing officer at the time of filing.  Wis. Stat. § 9.01(1)(ag)2 and 3.

If the recount results in the petitioner being elected or a reversal of the outcome of a referendum or the recount results in a difference in the votes cast that is at or above the threshold for paying the fee, the filing fee shall be refunded to the petitioner within 45 days after the board of canvassers makes its determination in the recount.  If the results of the recount do not change the outcome of the election, or the recount results in a difference in the votes cast that is below the threshold for paying the fee, the petitioner shall pay any balance owing toward the actual cost of the recount within 45 days after the filing officer provides the petitioner with a written statement of the amount due.  Wis. Stat. § 9.01(1)(ag)3m.

**Campaign Finance Note:**

Per Wis. Stat. § 11.1104(9), "Contributions used to pay legal fees and other expenses incurred as a result of a recount under s. 9.01" are not subject to contribution limits.  These contributions may be collected from the time of the initial recount petition has been filed until the recount process ends.  Legislative campaign committees and political parties are not subject to contribution limits, and can give unlimited amounts to candidate committees however reporting requirements still apply.  For information regarding the campaign finance laws, please contact the Wisconsin Ethics Commission (http://ethics.wi.gov/content/contact-us).

**Where Does the Petitioner File the Recount Petition?**

The petitioner files the recount petition with the filing officer with whom nomination papers or a declaration of candidacy are filed for that office.  The filing officer for any federal or state office or referendum is the Wisconsin Elections Commission.  The filing officer for any county office or referendum is the county clerk.  The filing officer for a municipal office or referendum is the municipal clerk or the board of election commissioners.  The filing officer for a school board office or referendum is the school district clerk.  Wis. Stat. §§ 8.10(6)(d), 9.01(1)(ar)1.

**When Must the Petition be Filed?**

If a municipal or county board of canvassers determines the election results, the time frame for filing is not earlier than the completion of the canvass for the election and not later than 5:00 p.m. on the third business day after the last meeting day of the board of canvassers which determines the election or referendum results.  Wis. Stat. § 9.01(1)(a)1.

If the Wisconsin Elections Commission Chairperson or designee determines the election or referendum result, the petition must be filed no earlier than the last meeting day of the last county board of canvassers to make a statement in the election or referendum and no later than 5:00 p.m. on the third business day after the Wisconsin Elections Commission receives the last statement from the county board of canvassers.  Wis. Stat. § 9.01(1)(a)1.

For an election for President of the United States, the recount petition deadline is the 5:00 p.m. on the first business day after the Wisconsin Elections Commission receives the last statement from a county board of canvassers for the election.

**What Happens When the Petition is Properly Filed?**

Upon receipt of a valid recount petition, the filing officer shall prepare a public notice of the recount (see Appendix for an example) pursuant to Wis. Stat. § 19.84 describing when and where the recount will be held. The filing officer shall send a copy of the notice to the board of canvassers and deliver a copy of the petition and public notice to all candidates whose names were listed on the ballot for the same office. The Wisconsin Elections Commission recommends that the filing officer also deliver the notice to any registered write-in candidates. In a partisan primary, candidates from all parties for the same office must be notified by the filing officer. A candidate or agent designated by the candidate may personally accept delivery of the copy of the petition. Upon delivery, the candidate or agent shall be required to sign a receipt (see Appendix). If a candidate or agent does not personally accept delivery, the copies shall be given promptly to the sheriff. The sheriff shall promptly serve the copies on the candidates without fee. Wis. Stat. § 9.01(2).

The petitioner and other candidates are encouraged to obtain legal counsel to represent them in any recount proceedings. Wis. Stat. § 9.01(3). The board of canvassers should also make arrangements to obtain legal advice as needed during the recount proceedings. The Commission staff may also be made available via phone during the recount upon request.

Please note that the Wisconsin Elections Commission should be notified of all recounts. In the event of a recount for state or federal office involving more than one county, the boards of canvassers shall consult with the Commission staff in order to ensure that uniform procedures are used to the extent practicable. The Commission staff will make arrangements for a teleconference through the respective county clerks prior to beginning the recount. Candidates will be invited to participate and the teleconference will be open to the public. Wis. Stat. § 9.01(10).

# Procedures for Conducting the Recount

**When Does the Recount Begin?**

The recount begins no earlier than 9 a.m. on the day following delivery of notice to all candidates and no later than 9 a.m. on the day following the last day for filing the recount petition. Wis. Stat. § 9.01(1)(ar)3. In a recount ordered by the Wisconsin Elections Commission, the board of canvassers shall convene no later than 9 a.m. on the third day following receipt of the order by the county clerk. Wis. Stat. § 9.01(1)(b). If the following morning is a Saturday (or holiday) the Wisconsin Elections Commission recommends that the board of canvassers begin the recount on the Saturday (or holiday).

**Who Conducts the Recount?**

The board of canvassers that determined the original election result conducts the recount, except for state and federal elections. For state and federal elections, the county boards of canvassers for the counties in which the contested votes are cast conduct the recount. The Wisconsin Elections Commission recommends that the board of canvassers be composed of the same people who initially canvassed the election results. However, in the event one of the original members is unavailable when the recount is scheduled to begin, other qualified individuals may be appointed to fill the temporary vacancy. Wis. Stat. §§ 7.53(1)(b), (2)(a), 7.60(2). If a member of the board of canvassers is unavailable for the recount, the clerk should be notified immediately and a list of qualified replacements composed before the recount begins. The minutes of the recount should reflect any change in canvass board members and the reason for the substitution.

4

The board of canvassers may hire tabulators who work at the canvass board's direction and who assist in administering the recount. Tabulators may assist the board of canvassers in conducting the recount, but only members of the board of canvassers are competent to make any determination as to the validity of any vote tabulated. Wis. Stat. § 9.01(5)(b). The Wisconsin Elections Commission recommends that where possible, the election inspectors who worked the polls on Election Day serve as tabulators.

## Who May Attend the Recount?

Any person may attend the recount. This includes the candidates, their representatives or legal counsel, media representatives, and any other interested persons. Wis. Stat. § 9.01(3). If there are multiple representatives from a single campaign, a single representative shall be identified as the designated primary representative to the board of canvassers. Secondary representatives may ask clarifying questions of recount staff and request that ballots be set aside for further review by the board of canvassers, but any challenges or objections for the record must be made by the designated primary representative. The recount statute does not specifically dictate how many individuals must be allowed to observe a recount, but it is clear that the ballot and materials must be available for candidates and their representatives to view and offer any objections to a ballot being counted. Wis. Stat. § 9.01(1)(b)11.

The canvass board members and the tabulators are the only persons who may handle and touch the ballots and other election materials. The board of canvassers must, however, allow the candidates and their representatives and/or legal counsel to view and identify the election materials. Wis. Stat. § 9.01(1)(b)11. Public health guidance should be considered by the board of canvassers when setting up the recount location and observation areas. Social distancing, the use of facecoverings and hand hygiene should all be clearly communicated to individuals that will be attending the recount in person to ensure the safety of everyone involved in recount. (See Public Health Guidance starting on Page 16 of the Appendix to this manual). Any challenges to the procedure established by the board of canvassers regarding observation should be decided by the board and documented in the minutes. The optional use of a live video feed to provide greater transparency and minimize the number of individuals observing in person should also be considered.

The board of canvassers shall exercise reasonable control over the conduct of the recount to assure that the canvassers and tabulators do not experience interference from any person observing the recount. All persons who are not under the supervision of the board of canvassers are considered observers and are subject to the observer guidelines established by the Wisconsin Elections Commission in this manual and the board of canvassers. To clearly identify candidate representatives, all observers shall wear badges or nametags identifying themselves and their role (candidate, media, etc.). This procedure allows individuals assisting the board of canvassers to quickly identify candidate representatives who are provided the ability to view and identify ballots and election materials for purposes of raising an objection to the counting of a ballot with the board of canvassers.

The board of canvassers may establish marked observer areas[3] and ask that observers remain within those areas unless otherwise permitted by the board of canvassers. If there is not sufficient room for all observers to view the election materials, preference shall be given to candidates or

---

[3] Unlike observation areas in the polling place, recount observations areas are not required to be placed at any specific distance as long as the candidates and their representatives can view and identify the election materials and the observers are not disruptive to the recount process.

their representatives. The use of video or still cameras inside the recount room is permitted unless it is disruptive or interferes with the recount. The board of canvassers may enforce reasonable restrictions on items brought into the recount room such as marking devices, food, or drink.

If any observer engages in disruptive behavior that in the opinion of the board of canvassers threatens the orderly conduct of the recount, the board of canvassers shall issue a warning and if the observer does not cease the offending conduct, order the observer's removal.

## Recount Preparations

Unless a court orders otherwise, the board of canvassers may decide to either hand-count or use voting equipment to tabulate the ballots. The board of canvassers may also choose to hand-count certain wards, while using voting equipment to tabulate other wards. Wis. Stat. § 5.90(1). If voting equipment is used, it should be programmed to read and tally only the results for the contest to be recounted. Prior to the recount, the filing officer should consult individually with board of canvass members to inquire how each prefers the ballots be tabulated. Based on that informal polling, the filing officer can prepare for the recount. The formal decision on the tabulation method to be used should be made publicly when the recount begins so as to provide an opportunity for candidates or their representatives to object.

The filing officer administering the recount should ensure that all the supplies and materials needed for the recount have been acquired prior to the start of the recount. The filing officer should also acquire the necessary original election materials for each reporting unit to be recounted. A sample checklist of materials and supplies is available in the Appendix.

If the necessary materials are not on hand when the recount is scheduled to begin, the Wisconsin Elections Commission recommends that the board of canvassers convene by the deadline set by statute, document what materials are missing, what steps have been taken to procure them for the record, and adjourn until the materials are available.[4] In the event that the board of canvassers has the required materials for some, but not all the wards to be recounted at the time they are scheduled to begin the recount, the board of canvassers may begin the recount with those wards for which it has the required materials while the missing materials are being obtained.

The Wisconsin Elections Commission recommends that the board of canvassers note in the minutes if proper notice of the recount was given to all candidates. Also, the board of canvassers should note if the recount was properly noticed as a public meeting under Wis. Stat. § 19.84.

The filing officer may choose to conduct an administrative review of the recount materials prior to the recount commencing to identify possible errors or anomalies (e.g., reconciliation of poll books). If any such review was conducted by the filing officer prior to the recount, the filing officer shall publicly present a full report to the board of canvassers of any errors or anomalies identified as well as any corrective action taken. The board of canvassers may choose to adopt or reverse any decision made by the filing officer during the administrative pre-recount review.

## What Does the Board of Canvassers Do?

The duty of the board of canvassers is to recount the votes cast for the office in question and to correct the errors, if any, that were made at the original determination of the election results. If necessary, the board of canvassers may also issue subpoenas to compel witnesses or documents for

---

[4] The Board of Canvassers may not adjourn for more than one day at a time. Wis. Stat. § 9.01(1)(ar)3.

the recount. The board of canvassers is also required to make a complete written record of the recount. Wis. Stat. § 9.01(5)(a).

Each party to a recount must be given an opportunity to object and provide offers of evidence on:

- all objections to the recount itself,
- the composition of the board of canvassers,
- the procedures followed,
- any ballot cast at the election, and
- any other issues presented to the board of canvassers during the recount.

Wis. Stat. § 9.01(5)(a).

Any objections or offers of evidence, the canvass board's decisions, and any findings of fact regarding any irregularities discovered during the recount, must be recorded in the written minutes of the recount proceedings. While a court reporter is not required, an audio recorder is recommended to ensure detailed minutes are kept. A sample format for the recount minutes can be found in the Appendix.

## **How Does the Board Conduct the Recount?**

The board of canvassers conducts the recount by following the procedures in Wis. Stat. §§ 5.90; 7.50; 7.51; & 9.01(1)(b). Please see the Appendix for checklists specific to the use of each type of tabulation method and the Commission staff memorandum on the construction of Wisconsin's election statutes and the discretion a board of canvassers may exercise when making decisions during the recount. These procedures are conducted separately for each municipality and reporting unit within the municipality. The board of canvassers shall announce each reporting unit before beginning the recount process for that reporting unit. Please note that the board of canvassers must keep complete minutes of each step completed, any objections made, any evidence introduced, any findings of fact made, and any decisions of the board of canvassers including the reasoning behind the decision.

1. Reconcile Poll Lists – Wis. Stat. § 9.01(1)(b)1

   The board reconciles the two poll lists and any supplemental lists to confirm the lists record the same voters, the same total number of electors who voted in the ward or municipality, and that the same supplemental information is noted. The canvassers determine from the poll lists the total number of voters, the number of absentee votes recorded, and identify any irregularities appearing on these lists. The canvassers note in the minutes the total number of persons who voted, how many absentee votes were recorded, and any irregularities found on the poll lists.

2. Review Absentee Ballots and Materials – Wis. Stat. § 9.01(1)(b)2

❑ *Determine Number of Absentee Voters*

   The Wisconsin Elections Commission recommends that the board of canvassers determines the number of absentee voters by reviewing the poll lists, the absentee ballot certificate envelopes, the Inspectors' Statement (EL-104), and the absentee ballot log (EL-124).

❑ *Examine Written Absentee Applications*

The board of canvassers then reviews the written applications for absentee ballots and the list of absentee voters maintained by the municipal clerk. There should be a written application for each absentee ballot envelope except those issued in-person in the clerk's office. In the case of indefinitely confined, a designation on a list prepared by the municipal clerk is sufficient if it indicates that an absentee ballot was delivered to and returned by an absentee voter.

Do not reject an absentee ballot if there is no separate written application.[5] Because of the variety of reasons that the board of canvassers may not be able to locate a specific written application, and the likelihood that a voter may be improperly disenfranchised, the board of canvassers should not reject an absentee ballot due to the lack of a written application. The board of canvassers records in the minutes the number of written absentee ballot applications on file as well as an explanation of any discrepancy, but any request to reject a ballot on this basis should be determined by a reviewing court rather than the board of canvassers.

❑ *Review Rejected Absentee Ballots*

The board of canvassers examines the rejected absentee ballot certificate envelopes contained in the brown carrier envelope (EL-102). Rejected absentee ballot certificate envelopes are identified by the election inspectors on election night and marked "rejected." The reason for the rejection should be noted on the Inspectors' Statement (EL-104).

The board of canvassers should make their own determination for each rejected absentee ballot certificate envelope.[6] Any improperly rejected ballots should be marked and placed into the pool of ballots to be counted. If the number of voters is increased under this procedure the change should be recorded in the minutes. Any errors by election inspectors in rejecting absentee ballots should be documented in the minutes along with the corrective action taken.

❑ *Examine Defective Absentee Ballot Envelopes*

The board of canvassers examines the used absentee ballot certificate envelopes (EL-122) contained in the white carrier envelope (EL-103). If the board finds any defective[7] absentee ballot certificate envelope not identified on election night they should be marked as defective, assigned a serial number, set aside, and properly preserved. A notation including a description of the defect should be made in the minutes.

The number of voters determined at the beginning of the recount is reduced by the total number of absentee ballots set aside under this procedure. This adjusted number is noted in the minutes and used whenever the number of voters is referred to during the recount. Do not remove ballots from the pool yet.

3. <u>Examine Ballot Bag or Container</u> – Wis. Stat. § 9.01(1)(b)3

The board of canvassers examines the ballot bag or ballot container (EL-101) to determine that it has not been tampered with, opened, or opened and resealed. The board of canvassers should verify that the tamper-evident seal matches the serial number on the Ballot Container

---

[5] See Informal Opinion of Staff Attorney Re: Recount of the Town of Walworth Recall Election (11/18/02); but see also Wis. Stat. § 6.84(2); *Walther V. Lee v. David Paulson*, 2001 WI App 19.

[6] See Wis. Stat. § 6.88(3) for procedures and guidance on accepting or rejecting absentee ballot certificate envelopes.

[7] An absentee ballot is defective only if it is not witnessed, the witness did not provide an address, it is not signed by the voter, or if the certificate envelope and the certification language is missing. Wis. Stat. § 9.01(1)(b)2.

Certification (EL-101) and the Inspectors' Statement (EL-104). The Wisconsin Elections Commission recommends the board of canvassers investigate any irregularities or possible tampering with the ballots and note its findings in the minutes.

4. Reconcile Ballot Count – Wis. Stat. § 9.01(1)(b)4.

❑ *Ballot Count – 4.(a)*

The board of canvassers opens the ballot bag or ballot container and removes the contents. The canvassers or tabulators count the number of ballots in the ballot bag, excluding any ballots that were set aside and not counted by the election inspectors on election night under the provisions of Wis. Stat. § 7.51(2). These "set aside" ballots should have been marked and bundled by the election inspectors on election night.

The board of canvassers reviews all ballots marked rejected, defective, and objected to, to decide whether such ballots were correctly categorized when the ballots were first examined after the election.

❑ *Separate Probable Absentee Ballots – 4.(b)*

The board of canvassers separate all "probable absentee ballots"[8] from the other ballots. The number of probable absentee ballots should equal the number of properly completed certificate envelopes (as determined by the board of canvassers in step 2 above), the number of absentee ballots recorded on the registration list on election night, and the number of written applications. Any discrepancies should be recorded in the minutes.

❑ *Reconciling the Number of Ballots with the Number of Voters[9]*

If the number of voters is greater than or equal to the number of ballots, skip this step. Only in the situation where the number of ballots exceeds the number of voters should the board of canvassers engage in the following procedure.

If the board of canvassers previously determined that any absentee ballot certificate envelopes were defective, the board of canvassers draws at random, without inspection, from the pool of probable absentee ballots, the number of ballots equal to the number of envelopes that have been determined defective. If the board of canvassers finds more defective absentee ballot envelopes than probable absentee ballots, the board of canvassers shall set aside all probable absentee ballots. The probable absentee ballots shall not be counted, but shall be marked as to the reason for their removal, set aside and properly preserved. The board of canvassers notes in the minutes the steps taken under this procedure and the results determined. Wis. Stat. § 9.01(1)(b)4.b.

If the number of ballots still exceeds the number of voters, the board of canvassers or the tabulators shall place all the ballots face up to check for blank ballots. Any blank ballots (ballots which have not been marked for any office) shall be marked as to the reason for their removal, set aside and properly preserved. The board of canvassers should record this action in the minutes. Wis. Stat. § 9.01(1)(b)4.c.

---

[8] The board of canvassers shall presume that a ballot initialed only by the municipal clerk, executive director of the board of election commissioners, deputy clerk or secretary is an absentee ballot. Wis. Stat. § 9.01(1)(b)4.b.
[9] See Appendix pgs. 12-15 for discussion of the Board of Canvassers retaining some discretion to ensure that statutes are applied to "give effect to the will of the electors."

9

If the number of ballots still exceeds the number of voters after removing all blank ballots, the board of canvassers shall place all ballots face down to check for initials. Any ballots not properly initialed by two inspectors or any probable absentee ballots not properly initialed by the municipal clerk or deputy clerk are set aside. The board of canvassers must, without inspection, randomly draw from the improperly initialed ballots as many ballots as are necessary to reduce the number of ballots to equal the number of voters determined to have voted on election day less any defective absentee ballot certificate envelopes. Any ballots removed for lack of proper initials shall not be counted, but shall be marked as to the reason for their removal, set aside and properly preserved. The board of canvassers should record this action in the minutes. Wis. Stat. § 9.01(1)(b)4.d.

If the number of ballots still exceeds the number of voters, the board of canvassers places the remaining ballots in the ballot bag and randomly draws, without inspection, the number of ballots equal to the number of excess ballots.[10] These ballots shall not be counted, but shall be marked as to the reason for their removal, set aside and properly preserved. The actions taken under this procedure are recorded in the minutes. Wis. Stat. § 9.01(1)(b)4.e.

When the number of ballots equals the number of voters or if the number of voters exceeds the total number of ballots, the board of canvassers returns the ballots to the ballot bag or container and thoroughly mixes the ballots. Wis. Stat. § 9.01(1)(b)5.

5. Review Provisional Ballots

The board of canvassers shall examine the Inspectors' Certificate of Provisional Ballots (EL-108), Provisional Ballot Reporting Form (EL-123r), Provisional Ballot Certificate envelopes (EL-123), and Statement of the Municipal Board of Canvassers (EL-106AP) to determine if provisional ballots were correctly processed. The board of canvassers should determine if all ballots for voters providing the required information[11] have been included in the original result. The board of canvassers shall record any discrepancies in the minutes. Wis. Stat. § 6.97.

6. Count the Votes

When counting paper or optical scan ballots, questions often arise concerning the intent of the elector. Election officials have a duty to attempt to determine voter intent and give effect to that intent if it can be determined. Election officials are expected to use common sense to determine the will of an elector based on the marks made by the elector on the ballot. The decisions of the election inspectors may be reviewed by the board of canvassers conducting the recount. Wis. Stat. §§ 7.50, 7.51, 7.60.

Even if an elector has not fully complied with the provisions of the election law, votes should be counted as intended by the elector to the extent that the elector's intent can be determined. Wis. Stat. §§ 5.01(1), 7.50(2). The Wisconsin Elections Commission has a manual titled "Counting Votes," which is designed to assist election officials in determining voter intent. A copy of the "Counting Votes" manual is available on the agency website and should be reviewed by the board of canvassers prior to the recount.

The exact steps for tabulating the votes will vary depending on the method or combination of

---

[10] See Appendix pgs. 12-15 for discussion of the Board of Canvassers retaining some discretion in potential drawdown scenarios to ensure that statutes are applied to "give effect to the will of the electors." One factor considered, is whether an error can be determined and whether the error was committed by the voter or the election official.
[11] See Wis. Stat. § 6.97 and Wis. Admn. Code Ch. EL § 3.04.

methods of tabulation selected by the board of canvassers:

    1. Hand Count

The Wisconsin Elections Commission recommends that hand counts be conducted using teams of at least two tabulators. These tabulators will double-check each other's work throughout the process to ensure that an accurate count is maintained.

❑ *Sort Ballots by Candidate*

Each tabulation team should begin by sorting the ballots into stacks: One stack for each candidate (ballots that clearly indicate a vote for a ballot candidate or a valid write-in candidate) and one stack for ballots where no vote may be counted (defective ballots, votes for invalid write-in candidates, etc). Candidate representatives should be given the opportunity to review each ballot as it is sorted, and may request that the tabulators set aside questionable ballots for closer examination and determination of voter intent by the board of canvassers. [12] The board of canvassers may consult with its legal counsel or the Wisconsin Elections Commission staff regarding any questionable ballots. The Wisconsin Elections Commission recommends that any such consultation should be recorded in the minutes.

❑ *Create Stacks of a Fixed Number*

Set aside the stack of ballots for which no vote can be counted. For each stack of ballots marked for a candidate, each tabulator should create sub-stacks of a fixed number (e.g., 25 ballots) with a remainder stack for any number left over from creating the full-size stacks. Each stack should be double-checked by a second tabulator to ensure the stack contains exactly the number expected.

❑ *Tally Stacks to Determine the Total Vote*

The board of canvassers then carefully counts the number of stacks for each candidate. The counts should be recorded separately by two individuals on two clearly-labeled tally sheets (EL-105). After all of the counts have been recorded, the two tally sheets should be compared against each other to ensure an accurate count is determined. The recount vote totals are recorded in the minutes.

A reconciliation of the ballots for which no vote could be counted should be recorded in the minutes. This documentation should list the reasons the ballots could not be counted and the number of ballots not counted for each reason.

    2. Optical Scan

If an optical scan tabulator is used, the Wisconsin Elections Commission recommends that where possible the tabulator should be programmed to only tally the results for the contest to be recounted. If the tabulator is not reprogrammed to tally only the contest to be recounted, the Wisconsin Elections Commission recommends that the counts for other contests be separated, set aside and preserved. The recounted results for the other contests should not be included in the board of canvassers report of recount results.

<u>Note:</u> The original memory device for the voting equipment from election day cannot be cleared

---

[12] Please refer to the <u>Counting Votes Manual</u> on the WEC website for detailed rules and examples of when to count or not count a mark as a vote.

and reprogrammed for use at the recount, so an alternative memory device must be acquired for use at the recount. Wis. Stat. § 7.23(1)(g), (2).

❑ *Examine the optical scan tabulator*

The board of canvassers shall make a record of the number of the tamper evident seal, protective counter, or other device, if any, before opening any of the voting equipment. The board of canvassers examines the electronic voting equipment to determine that any other tamper evident seals are intact and match the log maintained by the election inspectors and the municipal clerk. The board of canvassers notes in the minutes any irregularities or possible tampering with the device. Wis. Stat. §§ 5.90(1) & 9.01(1)(b)6.

❑ *Test the optical scan tabulator*

The board of canvassers tests the automatic tabulating equipment to ensure it is programmed correctly for the recount using a pre-audited group of ballots marked to record a predetermined number of valid votes for each candidate or contest choice (test deck). The test deck should include at least one ballot with more selections than permitted (overvote) and for recounts in a partisan primary, at least one ballot with votes in more than one party primary (crossover) in order to test the ability of the tabulator to reject such ballots. The results of the test deck tabulation should be compared to the pre-audited results to ensure accuracy and a record of the test results should be noted in the minutes. Wis. Stat. §§ 5.84(1), 5.90(1). The board of canvassers may choose to test the tabulator for all reporting units at once and skip this step in subsequent reporting units if using the same memory device for all reporting units.

❑ *Compare Duplicate Ballots with Original Ballots*

On election day, some ballots cannot be processed by the optical scan tabulator due to overvotes or other defects. When this happens, election officials create a duplicate ballot to honor as much of the elector's intent as possible. The duplicate ballot is then tallied by the equipment and the original is set aside and not counted. Both the duplicate and original ballots should be marked as such and contain identical serial numbers so they can be matched up.

The board of canvassers compares any duplicate ballots with their respective originals to determine the correctness of the duplicates. If any duplicate ballots were remade incorrectly, the board of canvassers should set aside the incorrectly remade duplicate ballot, mark it with the reason for its removal, create a new duplicate ballot, and mark it as such. Wis. Stat. § 5.90(1).

❑ *Insert Ballots Into the Optical Scan Tabulator*

Each ballot shall be reviewed by the board of canvassers and may be inspected by the candidates or their representatives before being inserted into the tabulator. If it appears the ballot may not be recorded correctly by the tabulator, or if the ballot is objected to, the ballot is set aside to be examined by the board of canvassers for voter intent and counted separately by hand.

❑ *Generate Results*

The board of canvassers places the optical scan tabulator into post-election mode and generates a results tape for the reporting unit. The board of canvassers adds in any votes counted

separately by hand using new tally sheets and records the total results as part of the revised canvass statement, see Step #9.

If the equipment needs to be used for another reporting unit, the board of canvassers shall ensure that all ballots have been removed from the tabulator and re-secured in ballot bags or containers before proceeding to reset the equipment for use with the next reporting unit.

3.  Direct Record Electronic (DRE)

In many polling places across the state direct record electronic (DRE) voting equipment is used in conjunction with paper ballots or optical scan ballots to enable indivduals with disabilities to vote privately and independently.  As a result, the paper ballots and optical scan ballots should be counted first by following the steps described above, if applicable.

❑  *Separate the Voter Verified Paper Audit Trail into Individual Ballots*

DRE equipment records votes two separate ways: electronically and on a paper tape that the voter can view to verify the equipment is recording their votes correctly before casting their ballot.  In a recount, the board of canvassers is required to use the paper record.  Wis. Stat. § 5.90(1).  The paper tape consists of a pre-election readiness report, a zero-report showing that no votes are currently in the memory of the machine, individual ballot records, and a closing results report.

To facilitate counting of the individual ballot records and to preserve the confidentiality of an individual's vote, the board of canvassers may cut the paper record to separate the individual voter records and then further cut the paper tape into the individual ballots, which would then be randomized.  When cutting the paper tape be careful that only the section of the tape covering election day is used.  When separating the tape into individual ballots, watch for "voided" ballots which appear the same as other ballot entries except they will be followed by a "void" entry on the tape.  The "void" entry may appear far below the record of votes cast on the tape.  These "voided" ballots should not be counted as they were not cast.

As an alternative to cutting the paper tape, the boards of canvassers may retain the paper record in its original format and simply scroll through the tape to count each individual ballot.  However, if the tape is not cut, the board of canvassers must take the appropriate precautions to ensure the confidentiality of votes as the entries on the paper record will be in the order that the voters used the equipment.

If due to a paper jam or misprint some individual ballot records are not available, the board of canvassers may consult with the voting equipment vendor to determine if the missing records can be recreated.  The board of canvassers may be able to obtain records from the vendor, such as cast ballot records, that will allow them to tally votes from the missing ballot records.  Any such tallying should be documented in the recount minutes.

❑  *Tally Individual Ballots to Determine the Total Vote*

The board of canvassers carefully counts each individual ballot record as recorded on the tape.  The counts should be recorded by two individuals on clearly labeled tally sheets (EL-105).  After all of the counts have been recorded, the two tally sheets should be compared against each other to ensure an accurate count is determined.  The recount vote totals should be compared against the original results as generated by the DRE and any discrepancies shall be recorded in the

minutes.

7. Secure Original Materials

After concluding the recount for a particular reporting unit, the board of canvassers shall gather and account for all original election materials. All ballots shall be placed into a ballot bag or container and resealed. The board of canvassers shall document in the minutes the serial number of any new security seals or tags used.

All election materials should be accounted for before proceeding to the next reporting unit to prevent the accidental mixing of materials from different reporting units.

8. Prepare New Canvass Statement

If any corrections were made to the results, the board of canvassers shall prepare a statement of revised election results using the canvass reporting form (EL-106). Wis. Stat. § 9.01(1)(b)9.

# After the Recount

## What does the board of canvassers do after completing the recount?

- If the recount is for a municipal election, the board of canvassers promptly forwards the results and minutes to the municipal clerk.
- If the recount is for a school board election, the board of canvassers promptly forwards the results and minutes to the school board clerk.
- If the recount is for a county election, the county board of canvassers promptly forwards the results and minutes to the county clerk.
- If the recount is for a state or federal election, the results and minutes of the recount are to be forwarded immediately to the Wisconsin Elections Commission and should be received no later than 13 days after the recount is ordered. Wis. Stat. § 9.01(1)(ar)3.

A copy of the minutes of any recount should be sent to the Wisconsin Elections Commission. For federal, state, and county elections, the board of canvassers should also send copies of the minutes to the chief officers of the state or county committee for any registered political party who ran candidates for that office. Wis. Stat. § 9.01(5)(bm).

No certificate of election may be issued by the filing officer until the deadline for filing all appeals has passed and the election results are final.

## How Does a Candidate or Petitioner Challenge the Recount Results?

The candidate or petitioner has a right to appeal the recount determination in circuit court. The appeal must be filed with the circuit court within five (5) business days of the completion of the recount in all counties concerned. Notice must also be served in person or by certified mail on all other candidates and persons who filed a written notice of appearance before the board of canvassers. If the recount affects a state or federal office or referendum, notice of the appeal must be served on the Wisconsin Elections Commission. See Wis. Stat. §§ 9.01(6), (7), (8), & 9.

The recount process and the subsequent judicial appeals is the exclusive remedy for testing the right to hold an elective office as the result of an alleged irregularity, defect, or mistake committed

during the voting or canvassing process.  Wis. Stat. § 9.01(11).

## Conclusion

This information is prepared pursuant to Wis. Stat. § 9.01(10).  Petitioners, candidates, and filing officers should seek legal counsel when they are involved in a recount.  If you have any questions, concerns, suggestions or recommendations about the recount process, please contact the:

**Wisconsin Elections Commission**
**P.O.  Box 7984**
**Madison, WI  53707-7984**
**Phone: 608-261-2028   Fax: 608-267-0500**
**Email: elections@wi.gov**
**Website: http://elections.wi.gov**

# Appendix

**Sample Forms**     **1-6**
     Recount Petition     1
     Recount Petition for Referendum     2
     Order for Recount     3
     Public Notice of Recount     4
     Acceptance of Service     5
     Recount Minutes     6

**Recount Fee Scenarios**     **7**

**Recount Checklists**     **8-11**
     Supplies and Materials     8
     Paper Ballot     9
     Optical Scan     10
     Direct Recording Electronic (DRE)/Touch Screen Voting     11

**Commission Staff Memorandum: Construction of Wisconsin Election Statutes**     **12-15**
     Directory vs. Mandatory Application of Statutes     12-13
     Election Official Error vs. Voter Error     14
     Board of Canvassers Discretion     14-15

**Public Health Guidance**     **16**

# SAMPLE RECOUNT PETITION

| In Re: | The Election for | Verified Petition |
|---|---|---|
| | (specify office) | for Recount |

Petitioner (name of petitioner) alleges and shows to (specify the clerk or body with whom nomination papers are filed for that office):

1. That Petitioner was a candidate for the office of (specify office) in an election held on (specify date of election);

2. The Petitioner is an aggrieved party as defined in Wis. Stat. § 9.01(1)(a)5.

3. That Petitioner is informed and believes that a (mistake or fraud) has been committed in (specify each ward or municipality) in the counting and return of votes cast for the office of (specify office); and/or

4. That Petitioner (is informed and believes) or (knows of his/her own knowledge) that:

   (Specify other defects, irregularities or illegalities in the conduct of the election).

Wherefore:  Petitioner requests a recount of (specify each ward or municipality in which a recount is desired; each ward need not be specified if a recount is requested for all wards within a jurisdiction).

Dated this _____ day of _____, _____.


_____
Petitioner

I, (name of petitioner), being first duly sworn, on oath, state that the matters contained in the above petition are known to me to be true except for those allegations stated on information and belief, which I believe to be true.


_____
Petitioner


Subscribed and sworn to before me this _____ day of _____, _____.


_____
Notary Public (or other person authorized to administer oaths)

My Commission Expires _____
(specify expiration date)

The information on this form is required by Wis. Stat. § 9.01.  This form is prescribed by the Wisconsin Elections Commission, 212 E. Washington Avenue, 3rd Floor, P.O.  Box 7984, Madison, WI  53707-7984, (608) 261-2028
**EL-186** (Rev.4/18)

# SAMPLE RECOUNT PETITION FOR REFERENDUM

| In Re: | The Election for (specify referendum) | Verified Petition for Recount |
|---|---|---|

Petitioner (name of petitioner) alleges and shows to (specify the clerk or body with whom the referendum was filed):

1. That Petitioner was an elector who voted upon the referendum in the election held on (specify date of election);

2. That Petitioner is informed and believes that a (mistake or fraud) has been committed in (specify each ward or municipality) in the counting and return of votes cast for the referendum of (specify referendum); and/or

3. That Petitioner (is informed and believes) or (knows of his/her own knowledge) that:

   (Specify other defects, irregularities or illegalities in the conduct of the election).

Wherefore: Petitioner requests a recount of (specify each ward or municipality in which a recount is desired; each ward need not be specified if a recount is requested for all wards within a jurisdiction).

Dated this _____ day of _____, _____.


_____
Petitioner

I, (name of petitioner), being first duly sworn, on oath, state that the matters contained in the above petition are known to me to be true except for those allegations stated on information and belief, which I believe to be true.


_____
Petitioner


Subscribed and sworn to before me this _____ day of _____, _____.

_____
Notary Public (or other person authorized to administer oaths)

My Commission Expires _____
(specify expiration date)

The information on this form is required by Wis. Stat. § 9.01. This form is prescribed by the Wisconsin Elections Commission, 212 E. Washington Avenue, 3rd Floor, P.O. Box 7984, Madison, WI 53707-7984, (608) 261-2028
**EL-186R** (Rev.11/09/16)

# SAMPLE ORDER FOR RECOUNT

## STATE OF WISCONSIN – (County)

| | | |
|---|---|---|
| **In the matter of:** | ) | |
| | ) | **ORDER FOR RECOUNT** |
| A Recount of the (Election) | ) | |
| for (Title of Office) | ) | |
| for the (District), held | ) | |
| on (Date) | ) | |

On (Date Recount Petition was filed), a recount petition was filed by (Petitioner's Name), a candidate for the office of (Office Title) for the (District), at the (Election) held on (Date).

The petition requests a recount of (list specific wards or municipalities) for the office of (Office Title).

The filing officer has reviewed the petition. The petition is sufficient. Any applicable fee has been received and accepted.

Pursuant to Wis. Stat. § 9.01:

**IT IS ORDERED THAT:**

1.  A recount be conducted of all the votes cast for the office of (Office Title) for the (District) at the (Election) held on (Election Date) in (list of specific wards or municipalities).

2.  The boards of canvassers convene at (Time) on (Date) at (Location), to begin the recount.

3.  The recount be completed by the board of canvassers immediately.

4.  The clerk transmit a certified canvass report of the result of the recount and a copy of the minutes of the recount proceedings to the Wisconsin Elections Commission immediately after the completion of the recount.

Dated: _____

_____
(Clerk's Name)
(Clerk's Title)

# SAMPLE PUBLIC NOTICE

## Notice of Recount for the Office of (Office Title) for the (District) in the (Election)

TO:        All Candidates On The Ballot For The Office of (Office Title) for the (District) and Other Interested Persons

FROM:     (Clerk)

SUBJECT:  Recount of the Votes Cast for the Office of (Office Title) for the (District) in the (Election)

DATE:     (Date)

A recount of the votes cast at the (Election Date) (Election) for the office of (Office Title) for the (District) will begin at the time and location set forth below:

        **(Municipality)** – 9:00 a.m. on (Date), at (Location).

A copy of the recount petition is attached. This notice is given pursuant to Wis. Stat. § 9.01(2).

You have the right to be present and to be represented by counsel to observe and challenge the votes cast and the board of canvassers' decisions at the election.

Attachment

# Sample Acceptance of Service

**MEMORANDUM**

**DATE**:          (Date)

**TO**:             (Clerk)

**FROM**:         Candidate for (Office)

**SUBJECT**:     Service of Recount Petition


Pursuant to Wis. Stat. § 9.01(2) on this day, I have personally received delivery of copies of the notice of recount, recount petition, and order for recount for the office of (office) at the (election date) (election name).  I agree to waive service and accept delivery.

_____
   (Signature of Candidate)


_____
    (Print Name)

# Sample Recount Minutes

Date of Recount:                                              County:

Office to be Recounted: *(Include District Number)*

Original Result: *(Candidates' Names and Votes for Each Candidate.  If there was a tie, explain how it was broken.)*

Canvass Board Members: *(If substitute, give reason for substitution.)*

Other Personnel: *(Tabulators, Corporation Counsel, Clerical Support)*

Others Present:

Notification: *(Were candidates notified and was public notice given?)*

Electronic Voting Equipment Test Results:

*For Each Reporting Unit:*

Name of Municipality:

Reporting Unit:

Original Vote Totals for Reporting Unit:

Number of Voters from Registration List:

Number of Absentee Ballot Applications:

Number of Absentee Ballots:

Notes: (Include a description of any discrepancies, irregularities, errors, problems, objections raised by observers.  Record any decision of the board of canvassers.  Identify any exhibits by description and number.)

Recount Vote Totals for Reporting Unit:

Recount Results:

An electronic or hard copy of the minutes from any recount must be sent to:

Wisconsin Elections Commission
P.O.  Box 7984
Madison, WI  53707-7984
elections@wi.gov

# Recount Fee Scenarios

Scenario #1: Village President

| Candidate | Votes |
|-----------|-------|
| A | 4,500 |
| B | 4,410 |

In this scenario, candidate A would currently be elected to office. If a recount was requested, the fee is determined by first calculating the total votes cast for the office (4,500+4,410 = 8,910). The difference between the leading candidate and the petitioner (90 votes) is divided by the total votes cast (8,910) and then multiplied by 100 to get the percentage difference (1.01%).

Candidate B would be required to pay a filing fee as the percentage difference is greater than .25%. However, the vote difference between the leading candidate and the petitioner is more than 1% so the contest is not eligible for a recount.


Scenario #2: School Board (vote for up to 3)

| Candidates | Votes |
|------------|-------|
| A | 3,500 |
| B | 3,000 |
| C | 2,920 |
| D | 2,910 |
| E | 2,900 |
| F | 2,800 |

In this scenario, candidates A-C would currently be elected to office. If a recount was requested, the fee is determined by adding up all the votes cast for the office (18,030 total) and dividing it by the number of offices to be filled (3 in this scenario) to get a total of 6,010. The difference between the leading candidate (C, as he or she is the candidate with the lowest number of votes still being elected to office) and the petitioner is divided by 6,010 and multiplied by 100 to get the percentage difference.

So in this case:
- If Candidate D requested a recount, there would be no fee required as the difference is .17%, which is not greater than .25%
- If Candidate E requested a recount, a filing fee would be required as the difference is .33%, which is greater than .25%
- If Candidate F requested a recount, the difference would be 2% so the contest is not eligible for recount.

**General Checklist of Supplies and Materials Needed for the Recount:**

❑ Paper and Pens (To record the minutes of the recount!)

❑ Tape Recorder (Optional)

❑ Speaker Phone (for consultation with WEC staff or counsel)

❑ Test Deck for Electronic Voting Equipment Test

❑ New *Tally Sheets* (EL-105)

❑ New *Canvass Reports* (EL-106)

❑ Copies of any informational memoranda relating to the election and the recount prepared by the Wisconsin Elections Commission staff and sent to county and municipal clerks.

❑ Recount checklists and the *Elections Recount Procedures Manual* available from the Wisconsin Elections Commission

**Election Materials from Each Reporting Unit:**

❑ All ballots to be recounted, contained in the original ballot bag or ballot container (EL-101), including any provisional ballots processed after Election Day;

❑ All paper audit trails from direct record electronic (DRE) voting devices;

❑ All logs of security seals for ballot boxes or electronic voting equipment;

❑ Both copies of the original poll lists, including any supplemental voter lists;

❑ All absentee ballot applications (See page 7);

❑ Any rejected absentee ballots, contained in the original brown carrier envelope (EL-102);

❑ Any used absentee ballot certificate envelopes, contained in the white carrier envelope (EL-103);

❑ The original Inspectors' Statement (EL-104);

❑ The MBOC Record of Activity (EL-104P) created during the processing of provisional ballots, if any;

❑ The original tally sheets (EL-105) and any results tapes generated by electronic voting and tabulating devices;

❑ The original canvass report of the election results (EL-106);

❑ The amended canvass report of the election results created after any provisional ballots were tabulated (EL-106P);

❑ Any provisional ballot documentation (EL-108 & EL-123);

❑ The absentee ballot log (EL-124); and

❑ The test deck for any electronic voting equipment.

# Recount Checklist

Hand Counted Paper Ballots

Municipality_____ Date_____
Reporting unit_____ Contest_____

**This checklist is designed to facilitate uniform practices and is to be completed simultaneously with the recount process for each reporting unit in the recount.**

❑ Compare and reconcile poll lists.
❑ Absentee ballot review: number, applications, rejected, defective envelopes.
❑ Verify tamper evident serial number on ballot container matches seal number written on Inspectors' Statement (EL-104) and Ballot Container Certification (EL-101).
❑ Ballot count.
   o Review ballots marked "rejected," "defective," or "objected to."
   o Separate absentee ballots and drawdown (*May be skipped if the number of absentee ballots equals the number of proper envelopes*).
   o Reconcile the number of ballots with the number of voters.
   o Treatment of excess ballots (*May be skipped if the number of voters equals or exceeds the number of ballots.*)
❑ Review provisional ballots.
❑ Hand count paper ballots.
   o Sort ballots by candidate.
   o Create stacks of a fixed number.
   o Tally the stacks using duplicate original tally sheets (EL-105).
❑ Add in any votes counted separately by other methods.
❑ Secure the original election materials.
❑ Prepare canvass statement.
❑ Prepare minutes for each reporting unit and attach completed checklist to minutes.

# Recount Checklist
Optical Scan Voting Equipment

Municipality_____ Date_____
Reporting unit _____ Contest_____

**This checklist is designed to facilitate uniform practices and is to be completed simultaneously with the recount process for each reporting unit in the recount.**

- ❑ Compare and reconcile poll lists.
- ❑ Absentee ballot review:  number, applications, rejected, defective envelopes.
- ❑ Verify tamper evident serial number on ballot container matches seal number written on Inspectors' Statement (EL-104) and Ballot Container Certification (EL-101).
- ❑ Ballot count.
  - o Review ballots marked "rejected," "defective," or "objected to."
  - o Separate absentee ballots and drawdown (*May be skipped if the number of absentee ballots equals the number of proper envelopes).*
  - o Reconcile the number of ballots with the number of voters.
  - o Treatment of excess ballots (*May be skipped if the number of voters equals or exceeds the number of ballots.)*
- ❑ Review provisional ballots.
- ❑ Verify voting equipment tamper evident serial number seal number written on Inspectors' Statement (EL-104) contains Chief Inspector's initials for pre-election and post-election verification.
- ❑ Test the automatic tabulator (*The Board of Canvassers may choose to test the tabulator for all reporting units at once and skip this step in subsequent reporting units if using the same memory device for all reporting units.)*
- ❑ Compare duplicate ballots with original ballots.
- ❑ Feed ballots into the optical scan tabulator.
- ❑ Generate results.
- ❑ Add in any votes counted separately by other methods.
- ❑ Secure the original election materials.
- ❑ Prepare canvass statement.
- ❑ Prepare minutes for each reporting unit and attach checklist to minutes.

Case 2:20-cv-01785-BHL   Filed 12/08/20   Page 29 of 37   Document 80-13

# Recount Checklist

Direct Recording Electronic (DRE)/Touch Screen Voting Equipment

Municipality_____ Date_____

Reporting unit_____ Contest_____

**This checklist is designed to facilitate uniform practices and is to be completed simultaneously with the recount process for each reporting unit in the recount.**

- ❑ Compare and reconcile poll lists.
- ❑ Absentee ballot review: number, applications, rejected, defective envelopes.
- ❑ Verify tamper evident serial number on ballot container matches seal number written on Inspectors' Statement (EL-104) and Ballot Container Certification (EL-101).
- ❑ Ballot count.
    - o Review ballots marked "rejected," "defective," or "objected to."
    - o Separate absentee ballots and drawdown (*May be skipped if the number of absentee ballots equals the number of proper envelopes).*
    - o Reconcile the number of ballots with the number of voters.
    - o Treatment of excess ballots (*May be skipped if the number of voters equals or exceeds the number of ballots.)*
- ❑ Review provisional ballots.
- ❑ Verify voting equipment tamper evident serial number seal number written on Inspectors' Statement (EL-104) contains Chief Inspector's initials for pre-election and post-election verification.
- ❑ Separate voter-verified paper audit trail into individual ballots (may be skipped if canvass board members take appropriate precautions to ensure the confidentiality of individual electors' votes)
- ❑ Hand count permanent paper record of votes generated by DRE and record on duplicate tally sheets (EL-105).
- ❑ Add in any votes counted by other methods.
- ❑ Secure the original election materials.
- ❑ Prepare canvass statement.
- ❑ Prepare minutes for each reporting unit and attach checklist to minutes.

Case 2:20-cv-01785-BHL   Filed 12/08/20   Page 30 of 37   Document 80-13

# WISCONSIN ELECTIONS COMMISSION



212 East Washington Avenue, 3rd Floor
Post Office Box 7984
Madison, WI  53707-7984
(608) 261-2028
elections@wi.gov
elections.wi.gov

Interim Administrator Meagan Wolfe

COMMISSIONERS

Beverly R. Gill
Julie M. Glancey
Ann S. Jacobs
Jodi Jensen
Dean Knudson
Mark L. Thomsen, Chair

---

## MEMORANDUM

**DATE:**       For the May 24, 2018 Commission Meeting

**TO:**         Members, Wisconsin Elections Commission

**FROM:**       Meagan Wolfe
               Interim Administrator

               Prepared and Presented by:
               Michael Haas, Staff Counsel
               Nathan Judnic, Senior Elections Specialist

**SUBJECT:**    Commission Recount Manual

The information contained in the Commission's Recount Manual is prepared pursuant to Wis. Stat. § 9.10(10) to ensure that uniform procedures for boards of canvassers conducting recounts are followed when possible.  The purpose of the Recount Manual, and other manuals and guidance documents prepared by the Commission staff, is to help explain statutory requirements, offer guidance on ambiguous provisions of the statutes, if necessary, and when needed, expand upon statutory requirements with recommended best practices and procedures.

Unlike laws governing other topic areas, the construction and application of election laws is somewhat unique.

> 5.01 **Scope. (1)** Construction of chs. 5 to 12.  Except as otherwise provided, chs. 5 to 12 shall
> be construed to give effect to the will of the electors, if that can be ascertained from the
> proceedings, notwithstanding informality or failure to fully comply with some of their provisions.

Wis. Stat. § 5.01(1).  The Legislature's decision to construct Wisconsin's election statutes in this manner affects how the courts have interpreted these statutes which in turn influences advice provided by Commission staff when fact specific scenarios are presented, usually on a case by case basis.  The construction of statutes to "give effect to the will of the electors" has resulted in three general concepts which provide the framework for advice rendered by Commission staff:  1) directory vs. mandatory application of election statutes, 2) election official error vs. voter error, and 3) board of canvassers decision-making discretion.

### Directory vs. Mandatory Application of Statutes to "give effect to the will of the electors"

Based on Wis. Stat. § 5.01(1) (and its identical predecessor statute), Wisconsin courts view the election statutes with an eye towards a voter's ballot being counted as cast when possible, versus a ballot being set aside and not counted if the will of the elector can be determined, even if a statute directs – but does not mandate – a ballot to be set aside in certain circumstances.  Especially during a recount, this construct can be important in reviewing ballots that may or may not have been issued, cast or counted in compliance with every specific step of the election statutes.  The consistent application of this concept is illustrated by the following statements of the Wisconsin Supreme Court:

> The difference between mandatory and directory provisions of election statutes lies in the
> consequences of nonobservance:  An act done in violation of a mandatory provision is void, whereas

an act done in violation of a directory provision, while improper, may nevertheless be valid. Deviations from directory provisions of election statutes are usually termed 'irregularities,' and, as has been showing in the preceding subdivision, such irregularities do not vitiate an election. Statutes giving directions as to the mode and manner of conducting elections will be construed by the courts as directory, unless a noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result, as where the statute merely provides that certain things shall be done in a given manner and time without declaring that conformity to such provisions is essential to the validity of the election. *Sommerfeld v. Board of Canvassers*, 269 Wis. 299, 69 N.W.2d 235 (1955), *Olson v. Lindberg*, 2 Wis.2d 229, 85 N.W.2d 775 (1957).

In keeping with sec. 5.011, Stats. (which is now sec. 5.01(1)), this court has quite consistently construed the provisions of election statutes as directory rather than mandatory so as to preserve the will of the elector. *Grandinjan v. Boho*, 29 Wis.2d 674, 139 N.W.2d 557 (1966).

…We have held that the word 'shall' can be construed to mean 'may.' *George Williams College v. Williams Bay*, 242 Wis. 311, 7 N.W.2d 891 (1943).

In passing upon statutes regulating absentee voting, the court should look to the whole and every part of the election laws, the intent of the entire plan, the reasons and spirit for their adoption, and try and give effect to every portion thereof. *Sommerfeld*, 269 Wis.2d at 238.

The Court has consistently sought to preserve the will of the electors by construing election provisions as directory if there has been substantial compliance with their terms. *Grandinjan*, 29 Wis.2d at 682.

Throughout the statutes with reference to elections the intent of the legislature is apparent. It is to encourage and assist qualified electors to cast their ballots for candidates of their choice. To prevent fraud the legislature in some instance has specifically stated that there must be strict compliance with a statute or a ballot cannot be counted. In so far as we have been called upon to construe that statutes we have held that where the legislature has provided in explicit language that absentee ballots shall not be counted unless certain provisions of the statute are complied with, compliance with those provisions is mandatory. Where it has not done so expressly and in clear language we have held that provisions regulating absentee voting are directory, and that strict compliance therewith is not required. *Petition of Anderson*, 12 Wis.2d 530, 533 (1961).

See also additional cases in which the Court has determined that election statutes shall be interpreted as directory and not mandatory as to give effect to the will of the electors: *State ex rel. Tank v. Anderson*, 191 Wis. 538, 211 N.W. 938 (1927), *State ex rel. Bancroft v. Stumpf*, 21 Wis. 586 (1867), *Ollman v. Kowalewski*, 238 Wis. 574, 300 N.W. 183 (1941), *State ex rel. Graves v. Wiegand*, 212 Wis. 286, 249 N.W. 537 (1933), *State ex rel. Oaks v. Brown*, 211 Wis. 571, 249 N.W. 50 (1933), *Lanser v. Koconis*, 62 Wis.2d 86, 214 N.W.2d 425 (1974), *McNally v. Tollander*, 302 N.W.2d 440, 100 Wis.2d 490 (1981).

One area of the election statutes that the Legislature has determined should be read as mandatory, are some provisions related to the absentee voting process – Wis. Stat. §§ 6.86, 6.87(3) to (7) - and how absentee ballots should be treated at a recount – Wis. Stat. § 9.01 (1)(b)2. and 4. See Wis. Stat. § 6.84(1) and (2). In those instances, for example, when an absentee ballot certificate envelope is unsigned by the voter or the witness, those ballots cannot be counted. If absentee ballots were originally counted by the local board of canvassers in contravention of the absentee ballot procedures, those ballots during a recount "may not be included in the certified result of any election." This is the basis for separating probable absentee ballots from regularly cast ballots during a recount – the mandatory versus directory treatment of ballots cast in contravention of an absentee procedure contained in §§ 6.86 or 6.87(3) to (7).

With the noted exception above for certain absentee ballot procedures, the Commission staff (as well as the former State Elections Board staff and the former Government Accountability Board staff) provides guidance that is intended to give effect to the will of the electors which may apply a directory reading of the statutes, given a specific-fact scenario. This may happen when, for example, a question is received as to whether a drawdown should occur when the election officials can identify the issue, it was no fault of the voter that more ballots exist than voters, the total number of ballots issued at a polling place reconciles with the total number of voters (but not within the reporting unit, meaning incorrect ballots were likely issued), and there is no evidence of any fraud or malfeasance. In such cases Commission staff often advise that a draw down is not the best practice, although the final decision is

up to the board of canvassers. Drawing down requires the removal of a ballot, or ballots, at random and is generally viewed as a last resort option because the result will likely disenfranchise a random voter – something that the Legislature was arguably trying to avoid by inserting the language contained in Wis. Stat. § 5.01(1).

### Election Official Error vs. Voter Error

Another line of cases which factors into advice provided by Commission staff, especially during a recount, concerns the identity of the individual that committed an error. The error is magnified when it results in the number of voters and ballots failing to reconcile which could trigger a random draw down of ballots prior to the counting of ballots at the recount. The question becomes whether a voter and their properly cast ballot should be subject to random removal and potential disenfranchisement if an error was committed by an election official and not the voter. Removing ballots through the draw down procedure when an election official issued a voter the wrong ballot or failed to initial a ballot does not seem to agree with the Legislature's construction of election statutes set forth in Wis. Stat. § 5.01(1) and caselaw below.

The Wisconsin Supreme Court has stated:

> …The voter's constitutional right to vote cannot be baffled by latent official failure or defect. *Ollmann,* 238 Wis. at 579.

> In *State ex rel. Symmonds v. Barnett*, 182 Wis. 114, 195 N.W. 707 (1923), the ballot of certain voters were not counted, because the voter's names did not appear on the voter registration list. These voters were, however, duly registered voters who had voted in the preceding primary election. Only the failure of the registration board to update the registration list explained the omission of their names. This Court ordered that votes of these voters must be counted, stating: As a general rule a voter is not to be deprived of his constitutional right of suffrage through the failure of election officers to perform their duty, where the elector himself is not delinquent in the duty which the law imposes on him. *State ex rel. Wood v. Baker*, 38 Wis. 171 (1875); *Barnett*, 182 Wis. at 127.

> Because the right to vote is so central to our system of government, this Court has consistently sought to protect its free exercise. *McNally v. Tollander*, 302 N.W.2d 440, 100 Wis.2d 490 (1981). In the *Ollmann* case, ballots were initialed by only one election official, rather than being initialed by two election officials per the statutory requirement. The Wisconsin Supreme Court held that the ballots with only one set of initials were properly counted, stating that: "The voter would not knowingly be doing wrong. And not to count his vote for no fault of his own would deprive him of his constitutional right to vote…A statute purporting so to operate would be void, rather than the ballots." *McNally*, 100 Wis.2d at 502 citing *Ollmann*.

When questions are asked by local officials regarding how to treat a ballot, especially in recount situations, who made the error is a factor that is considered when rendering advice based on the decisions issued in these cases. Without considering this factor, election officials with ill intentions could potentially manipulate election results by purposefully committing errors (issue wrong ballots, fail to apply required election official notations to the ballot), knowing that ballots will automatically be drawn down or a new election potentially ordered if errors are discovered and the statute requiring a draw down is applied in a mandatory fashion without considering the source of error.

In such cases, where it is clear that an error has been committed by an election official, the voter is not at fault and there is no evidence of fraud or malfeasance, Commission staff often advise that a draw down is not the best practice, although the final decision is up to the board of canvassers. Drawing down requires the removal of a ballot, or ballots, at random and is generally viewed as a last resort option because the result will likely disenfranchise a random voter – something that the Legislature was arguably trying to avoid by inserting the language contained in Wis. Stat. § 5.01(1).

### Board of Canvassers Discretion

Despite advice provided by Commission staff when asked by a board of canvassers, ultimately that statutory body retains the authority and discretion to make decisions it deems appropriate. Statutes specifically provide the board of canvassers the authority to count and recount ballots and correct errors that may have occurred during the initial canvassing of ballots and certification of results. See Wis. Stat. §§ 7.51, 7.52, 7.53, 7.60 and 9.01(1) and (5). The board of canvassers is comprised of an odd number of individuals and takes into account party balance when

possible in its composition. Courts rely on the determination and reasoning of the board of canvass when determining if a decision on appeal was properly decided and gave effect to the will of the electorate. See *DeBroux v. Board of Canvassers for the City of Appleton* (Three Cases), 557 N.W.2d 423, 206 Wis.2d 321 (Wis. App., 1996) ("As the SEB notes in its brief, the statutory scheme for a recount 'places a premium' on the Board's judgment to give effect to the will of the electorate.")

The Commission's procedures set forth in the Recount Manual, as well as the advice provided when a local election official or member of the board of canvassers asks a specific question on the treatment of a ballot, many times in the context of a recount, strives to be consistent with the intent of the election statutes and the supporting caselaw.

While the draw down procedure for example, is effective at creating ballot and voter totals that reconcile, it is not an effective tool for determining and removing the exact offending ballot or ballots, which caused the number of ballots to not match the number of voters. Rather than recommend a procedure that will likely disenfranchise a random voter due to an error made by an election official, the Commission staff's approach has been to advise a board of canvassers that they have some discretion to avoid a draw down if they can identify an explanation as to why the discrepancy occurred, considering the factors discussed above.

Ultimately, the decision of the board of canvassers is what is challenged in court, not the advice rendered by the Commission staff. The Commission staff, however, believes the board of canvassers should be provided with advice that considers the cases discussing the "directory vs. mandatory" application of election statutes as well as considering who made the error that has generated the question in the first place. Any decisions made should consider "the will of the electors, if that will can be ascertained from the proceedings, notwithstanding informality or failure to fully comply with some of their provisions."



# Wisconsin Elections Commission

212 East Washington Avenue | Third Floor | P.O. Box 7984 | Madison, WI 53707-7984
(608) 266-8005 | elections@wi.gov | elections.wi.gov

---

| | |
|---|---|
| **DATE:** | For the November 18, 2020 Commission Meeting |
| **TO:** | Members, Wisconsin Elections Commission |
| **FROM:** | Meagan Wolfe          Richard Rydecki |
| | Administrator          Deputy Administrator |
| **SUBJECT:** | Public Health Guidance for Recount Proceedings |

In preparation for a statewide recount Wisconsin Elections Commission (WEC) staff has worked with a public health professional from the Wisconsin Department of Health Services to develop suggested procedures for counties to apply to recount planning and setup efforts. These procedures follow the same concepts we have stressed throughout the 2020 elections that have been conducted during the COVID-19 pandemic. Public health considerations such as hand hygiene, face coverings, social distancing and COVID-19 symptom screenings should be incorporated into any recount setup. New considerations must be made to account for how recounts differ from administering voting at polling places or during the in-person absentee period.

Conducting a recount requires a significant number of people to be present in the same room or facility, including Board of Canvass members, tabulators, candidate representatives, public observers and other staff to assist with administrative and security-related tasks. The recount timeline also requires participants to be present in enclosed areas for long periods of time until the recount is complete. State law requires any recount to be completed within 13 days of the issuance of the recount order and several counties have expressed they will need the majority of that time to complete all required procedures before the deadline. In addition, a recount requires tabulators and Board of Canvass members to work within close proximity of one another and allows candidate representatives to be close enough to review each ballot before it is tabulated. All of these factors were presented to the public health official who assisted with the development of this guidance and have been considered in the procedures outlined below.

## Space Considerations

In order to keep all participants and observers spaced out appropriately during the recount, counties have had to consider securing a larger space during their planning process. Additional space provides the ability to space out tables where tabulators are working while still allowing for multiple reporting units or municipalities to be recounted at the same time. WEC staff has discussed this option on several calls with county clerks in preparation for the recount and many indicated they identified and reserved larger spaces to conduct the recount.

The use of a larger space was confirmed as a recommended option by DHS as the larger space will allow for increased airflow that prevent aerosols from building up throughout the day. Any practices that increase the percentage of outdoor air in the recount space are recommended, such as opening windows and propping open doors, if possible. You may be able to work with the vendor or owner of the recount space to increase total airflow supply to occupied spaces, if possible. This can be done by disabling or changing the settings of demand-control ventilation (DCV) controls that reduce air supply based on temperature or occupancy.

Because of the prolonged nature of the recount, county officials may also consider the use of UV sanitation lights and additional ventilation, such as fans, where practicable. Some of these additional efforts may help to combat accumulation of aerosol particles. However, care should be taken in regard to where these items are utilized. For example, additional fans would not be appropriate directed at a table of paper, election materials, but a portable UV

*Wisconsin Elections Commissioners*
Ann S. Jacobs, chair | Marge Bostelmann | Julie M. Glancey | Dean Knudson | Robert Spindell | Mark L. Thomsen

---

*Administrator*
Meagan Wolfe

Case 2:20-cv-01785-BHL    Filed 12/08/20    Page 35 of 37    Document 80-13

light may be.

**Setup Considerations**

The recount space should be set up so that there is adequate space between all participants and observers but allows for transparency and efficiency throughout the process. Signs, tape marks, or other visual cues such as decals or colored tape should be used on the floor, placed six feet apart, to keep the recount area organized and to ensure space between all parties when physical barriers are not possible.

Tabulators are required to work in pairs when hand counting ballots and candidate representatives have the ability to review (but not touch) ballots before they are tabulated. For those that must work closely together, it is recommended some physical barriers (e.g., plexiglass shields) are used to provide protection between participants. These barriers can be the tabletop shields that many municipal clerks used on election day at polling places or in their offices during in-person absentee voting. Counties can coordinate with their municipal clerks to borrow excess shields that can be used during the recount.

Tables used for the recount should be arranged in a way that ensures adequate distance between participants and observers. The number of people assigned to each table should also be limited. Arrange chairs in seating areas by turning, draping (covering chair with tape or fabric so seats cannot be used), spacing, or removing chairs to maintain social distancing. Identifying chairs that should not be used will be essential if rooms are used during the recount that have permanent seating, such as county board meeting rooms.

Designated candidate representatives should be able to review a ballot during the recount proceedings. This will require the implementation of a system for the representative to safely examine the ballot without violating social distancing standards. Clear tabletop barriers can be used for this purpose, but other methods may be used depending on the set up and needs of each recount site.

Additional observers, beyond the party representatives who need to be allowed access to see voting materials, may be asked to remain in an area designated by the county officials that accounts for social distancing. Current public health guidance is that a six-foot distance should be maintained meaning that non-party representative observers should expect that they will be asked to stay at least six feet from recount workers and other observers.

**Screener Questions**

All individuals entering the recount facility or room should be screened to determine if they are exhibiting symptoms of COVID-19. Symptomatic individuals should not be allowed to participate in or observe the recount proceedings until they are free from symptoms. These questions were developed with the assistance of public health officials from the Wisconsin Department of Health Services.

1. Have you come in contact with a person known or suspected to have COVID-19?
2. Have you had a fever or chills in the last 24 hours?
3. Have you had a cough in the last 24 hours?
4. Have you had any shortness of breath or difficulty breathing in the last 24 hours?
5. Have you had any unexplained muscle or body aches in the last 24 hours?
6. Have you experienced a loss of taste or smell within the last 24 hours?
7. Have you had a sore throat within the last 24 hours?

   If you answered "yes" to any of the seven questions, you should not participate in or observe at the recount today.

**Face Coverings**

Face coverings should be required of all people inside the recount space to help prevent the spread of COVID-19 among participants. Larger spaces and workstations that are spread out to account for social distancing will help minimize potential transmission of the virus but recount procedures still require tabulators and observers to be in close

proximity to one another and face coverings should be required to increase the safety of all involved in the recount. The Executive Order requiring face coverings is still in effect while legal challenges to that order are settled by the courts and other counties may have local public health orders that also require face coverings. The Board of Canvassers conducting the recount should clearly communicate with those attending the recount about social distancing, face coverings and hand hygiene health guidance prior to the start of the recount to ensure all individuals participating are aware of the role they play in keeping the location safe. It is recommended that County Clerks have additional disposable face coverings available for tabulators and observers who do not have their own upon arrival at the recount facility.

**Hand Hygiene and Surface Cleaning**

Strict hand hygiene and surface cleaning procedures should also be incorporated into the protocols at recount sites to minimize potential surface transmission of the virus. These procedures are familiar to election officials and have been recommended since the onset of the pandemic earlier this year. Participants and observers should be required to wash or sanitize their hands upon entry to the recount facility. In addition, tabulators should wash or sanitize their hands regularly throughout the day. If gloves are used, recount participants should take care when removing those gloves so as to not contaminate their bare hands in the process. After gloves have been removed, hands should be washed or sanitized to minimize the chance for COVID-19 transmission.

Surfaces such as tables and voting equipment should also be disinfected regularly throughout the day. Information on recommendations for election specific cleaning and disinfection are available on the Centers for Disease Control and Prevention webpage. In addition, approved cleaning procedures provided by your voting equipment vendor should be used to clean any voting equipment at regular intervals during the day. Best practices for cleaning different models of voting equipment can be found here: https://elections.wi.gov/node/6723.