# Exhibit A

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

Donald J. Trump, Candidate for President of the
United States of America,

Case No. 20-cv-01785-BHL

Plaintiff,

v.

The Wisconsin Elections Commission, and its
members, Ann S. Jacobs, Mark L. Thomsen,
Marge Bostelman, Dean Knudson, Robert F.
Spindell, Jr., in their official capacities, Scott
McDonnell in his official capacity as the Dane
County Clerk, George L. Christenson in his
official capacity as the Milwaukee County
Clerk, Julietta Henry in her official capacity as
the Milwaukee Election Director, Claire
Woodall-Vogg in her official capacity as the
Executive Director of the Milwaukee Election
Commission, Mayor Tom Barrett, Jim
Owczarski, Mayor Satya Rhodes-Conway,
Maribeth Witzel-Behl, Mayor Cory Mason,
Tara Coolidge, Mayor John Antaramian, Matt
Krauter, Mayor Eric Genrich, Kris Teske, in
their official Capacities, Douglas J. LaFollette,
Wisconsin Secretary of State, in his official
capacity, and Tony Evers, Governor of
Wisconsin, in his Official capacity,

Defendants.

**AMICUS BRIEF OF THE CENTER FOR TECH AND CIVIC LIFE**

**TABLE OF CONTENTS**

**Page**

Table of Authorities ........................................................................................................ ii

Introduction ..................................................................................................................... 1

Argument ......................................................................................................................... 2

I.  CTCL'S COVID-19 RESPONSE GRANTS HAVE BEEN PROVIDED ON
A STRICTLY NON-PARTISAN BASIS TO OVER 2500 CITIES AND
COUNTIES ............................................................................................................. 2

II.  EVERY COURT TO CONSIDER THE ISSUE HAS REJECTED
CHALLENGES TO THE LEGALITY OF CTCL'S GRANTS ................................. 7

Conclusion ...................................................................................................................... 11

Case 2:20-cv-01785-BHL   Filed 12/08/20   Page 3 of 22   Document 91-1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Election Integrity Fund v. City of Lansing*,
    No. 20-2048 (6th Cir. Oct. 30, 2020) ........................................................................ 9

*Election Integrity Fund v. City of Lansing*,
    No. 20-CV-950, 2020 WL 6605987 (W.D. Mich. Oct. 19, 2020) ............................ 9

*Ga. Voter All. v. Fulton Cnty.*,
    No. 20-CV-4198, 2020 WL 6589655 (N.D. Ga. Oct. 28, 2020) ............................... 9

*Iowa Voter All. v. Black Hawk Cnty.*,
    No. 20-CV-2078, 2020 WL 6151559 (N.D. Iowa Oct. 20, 2020) ............................ 9

*Minn. Voters All. v. City of Minneapolis*,
    No. 20-CV-2049, 2020 WL 6119937 (D. Minn. Oct. 16, 2020) ............................. 9

*Pa. Voters All. v Centre Cnty.*,
    No. 20-CV-1761, 2020 WL 6158309 (M.D. Pa. Oct. 21, 2020) ............................. 9

*Pa. Voters All. v. Centre Cnty.*,
    No. 20-3175 (3d Cir. Oct. 28, 2020) ....................................................................... 9

*Pa. Voters All. v. Centre Cnty.*,
    No. 20A82 (U.S. Nov. 3, 2020) ............................................................................. 10

*S.C. Voter's All. v. Charleston Cnty.*,
    No. 20-CV-3710 (D.S.C. Oct. 26, 2020) ................................................................ 9

*Tex. Voters All. v. Dallas Cnty.*,
    No. 20-CV-775, 2020 WL 6146248 (E.D. Tex. Oct. 20, 2020) ............................. 9

*Wis. Voters All. v. City of Racine*,
    No. 20-3002 (7th Cir. Oct. 16, 2020) ..................................................................... 8

*Wis. Voters All. v. City of Racine*,
    No. 20-CV-1487 (E.D. Wis.) ............................................................................. 7, 8

*Wis. Voters All. v. City of Racine*,
    No. 20-CV-1487, 2020 WL 6129510 (E.D. Wis. Oct. 14, 2020) ........................ 7, 8

*Wis. Voters All. v. Wis. Elections Comm'n*,
    No. 2020AP1930-OA (Wis. Dec. 4, 2020) ........................................................... 10

**STATUTES**

Wis. Stat. § 12.11 ................................................................................................................ 7

## Introduction

Plaintiff alleges that The Center for Tech and Civic Life (CTCL) engaged in a nefarious partisan effort to induce violations of Wisconsin election law. *See* Compl. ¶¶ 169-73, 218-34 & 288-95. That is wrong and arises from a grievous misrepresentation of CTCL's COVID-19 Response Grant Program. This amicus brief explains CTCL's program, which made grants available on a strictly nonpartisan basis to local election departments nationwide to help administer the election amid the pandemic. CTCL provided a grant to every single local election department that applied—over 2500 counties, cities, towns, and villages across the country (including 221 in Wisconsin). Most of those funds were used to purchase personal protective equipment for voters and election workers, to recruit and train additional staff, to provide improved security, to establish in-person polling places, to process mail-in ballots, and to ensure emergency preparedness. CTCL's program thus helped officials throughout the nation to run secure, lawful, and efficient elections for all Americans.

Notably, this is not the first time this Court has reviewed the legality of CTCL's program. Just two months ago, Wisconsin Voters Alliance sued the Cities of Racine, Kenosha, Green Bay, Madison, and Milwaukee for using CTCL's grants, alleging a host of state and federal claims and asserting that CTCL had a partisan agenda. Judge Griesbach rejected those arguments, denying a temporary restraining order and then a preliminary injunction on the ground that the Wisconsin Voters Alliance was not likely to succeed on the merits. When the Wisconsin Voters Alliance sought relief pending appeal, Chief Judge Sykes and Judges Flaum and Easterbrook of the United States Court of Appeals for the Seventh Circuit—followed by Justice Kavanaugh of the United States Supreme Court—rejected those petitions.

This brief recounts that litigation. It also describes seven other federal lawsuits challenging the legality of CTCL's grant program in other states, all of which have failed.

1

Finally, the brief describes the failed attempt to convince the Wisconsin Supreme Court to overturn the State's election results due, in part, to alleged misconduct related to CTCL funding. At this point, eight federal district judges, nine federal circuit judges, two U.S. Supreme Court Justices, and a majority of Justices of the Wisconsin Supreme Court have rejected motions premised on allegations of impropriety or illegality in the operation of CTCL's grant program. Those rulings underscore the error of Plaintiff's contentions here.

**Argument**

## I. CTCL'S COVID-19 RESPONSE GRANTS HAVE BEEN PROVIDED ON A STRICTLY NON-PARTISAN BASIS TO OVER 2500 CITIES AND COUNTIES

CTCL is a nonpartisan, non-profit organization whose mission is to promote civic engagement and the modernization of election administration procedures.[1]  Consistent with that mission, CTCL's leadership is bipartisan and its Board of Directors and Advisory Committee consist primarily of individuals—including elected election administrators from both major political parties—who have dedicated their careers to nonpartisan election administration.[2] CTCL's team also includes civic technologists, trainers, researchers, and election administration and data experts working to foster a more informed and engaged democracy.[3]  Since CTCL's founding in 2014, it has worked closely with local election officials across the country—and particularly in smaller jurisdictions with limited personnel—to enable them to more effectively serve voters in their communities.[4]  To that end, it has connected election officials with tools and

---

[1] The facts in this section are based on CTCL's publicly accessible website.

[2] *See* CTCL, *Board of Directors*, https://www.techandciviclife.org/board-of-directors/ ("The work of CTCL benefits from the expertise and support provided by a distinguished and diverse board of directors."); CTCL, *Advisory Committee*, https://www.techandciviclife.org/advisory-committee/ ("CTCL's Advisory Committee is made up of some of the most experienced, thoughtful election professionals in the United States.").

[3] *See* CTCL, *Our Story*, https://www.techandciviclife.org/our-story/.

[4] *See id.*

trainings, identified best practices, created easy-to-use resources for election administrators, promoted infrastructure to better deliver information about elections, and developed the cybersecurity purchased by the federal government to prepare local election departments to protect voting systems from attack.[5]

In 2020, CTCL recognized that election administrators nationwide faced unprecedented challenges in adapting to the pandemic.[6] Many of these challenges were exacerbated by funding shortfalls. For example, election offices needed funds to cover personal protective equipment, election worker recruitment and training, and absentee voting equipment and supplies.[7] Federal and state funding offered some relief but came nowhere close to offsetting the cost of running an election during the pandemic.[8]

To fill that need, CTCL created a COVID-19 Response Grant Program. This nationwide charitable grant program offered funding to help local officials adopt safe and efficient voting procedures.[9] CTCL's grants were available on a nondiscriminatory basis to *any* local election department that chose to apply—rural, urban, or suburban; politically red, blue, or purple—anywhere in the country.[10] CTCL guaranteed every applicant (even the most sparsely populated jurisdictions) a minimum of $5,000 and publicly committed to approving every eligible local

---

[5] *See* CTCL, *Election Officials*, https://www.techandciviclife.org/our-work/election-officials/ ("We help election officials adopt the tools and skills necessary to meet the changing needs of today's public."); *see also* U.S. Election Assistance Comm'n, *U.S. Election Assistance Commission Offers No-Cost Online Cybersecurity Training For Election Officials*, June 22, 2020, https://www.eac.gov/news/2020/06/22/us-election-assistance-commission-offers-no-cost-online-cybersecurity-training.

[6] *See* CTCL, *CTCL Program Awards Over 2,500 COVID-19 Response Grants*, Oct. 29, 2020, https://www.techandciviclife.org/grant-awards/.

[7] *See id.*

[8] *See* CTCL, *A First Look at CTCL Grant Program Impact*, Nov. 13, 2020, https://www.techandciviclife.org/grant-update-november/.

[9] *See id.*

[10] *See id.*

Case 2:20-cv-01785-BHL   Filed 12/08/20   Page 8 of 22   Document 91-1

election department that applied, subject only to verification that the applicant was legitimate.[11] Thus, applicants were asked only for basic information such as the number of registered voters and their existing budgets. No partisan criteria were requested or even communicated to CTCL (much less considered in awarding grants).[12] CTCL provided grants with the expectation that they would be used for lawful election administration purposes as determined by local officials; therefore, CTCL imposed minimal conditions on the acceptance of grants and instead focused principally on ensuring that grants were actually used for election administration (rather than some other purpose).

As the following map reflects, over 2500 cities, counties, towns, and villages across the United States applied for and received CTCL grants[13]:



---

11 *See* CTCL, *CTCL Grant Program Receives Over 2,100 Applications and Counting*, Oct. 8, 2020, https://www.techandciviclife.org/grant-update-october/.

12 *See id.*

13 *See CTCL Program Awards Over 2,500 COVID-19 Response Grants*.

4

That figure includes 221 jurisdictions in Wisconsin. *See* Appendix A (listing recipients in Wisconsin).[14] It also includes jurisdictions of all population sizes, as summarized by this graph published after 2,100 election offices had applied[15]:



The election offices that applied for CTCL grants identified a range of anticipated uses. The most common anticipated expenses included purchasing personal protective equipment, providing poll worker recruitment and training, ensuring sufficient temporary staffing, and obtaining mail/absentee equipment and supplies.[16]

Those expectations matched reality. CTCL's published initial analysis includes the following conclusions[17]:

- **Staffing**: "[E]lection offices overwhelmingly spent grant funds on hiring additional workers, incentivizing workers with hazard pay, and compensating overtime work. . . .  To replace veteran poll workers, jurisdictions used grant

---

[14] CTCL, *Grants Awarded: CTCL COVID-19 Response Grant Program*, https://docs.google.com/spreadsheets/d/1E7P3owIO6UlpMY1GaeE8nJVw2x6Ee-iI9d37hEEr5ZA/edit#gid=1993755695 (listing all grantees in United States) (last visited Dec. 8, 2020).

[15] *See CTCL Grant Program Receives Over 2,100 Applications and Counting*.

[16] *See id.*

[17] *See generally A First Look at CTCL Grant Program Impact.*

Case 2:20-cv-01785-BHL   Filed 12/08/20   Page 10 of 22   Document 91-1

funds to hire recruiters, launch recruitment advertising campaigns, and incentivize workers with hazard pay. . . . Many jurisdictions [also] used the funding to pay temporary workers to process a drastic increase in vote-by-mail."

- **Safety**: "Grant funds went toward personal protective equipment like face masks, face shields, and latex gloves — sometimes even enough to offer voters PPE, not just poll workers. Funds went toward hand sanitizer, disinfectant, sterilizing wipes . . . bleach and paper towels, sterilizing wands, electrostatic sprayers, sneeze guards, plexiglass screens, air purifiers, and thermal temperature stations."

- **COVID-19 Testing**: "Despite all the safety precautions, serving as an election worker included some amount of health risk. This led many jurisdictions to offer hazard pay, and at least a few offices used grant funds to pay for COVID-19 testing for poll workers after the election."

- **Accessibility**: "Several offices used [funds] to ensure that accessibility wasn't sacrificed during the pandemic. This ranged from big-ticket items, like ADA-compliant voting machines, to smaller purchases, like chairs."

- **Equipment**: "Voter behavior shifted toward mail voting even in counties that did not actively promote the option. Processing mail ballots at scale takes substantial infrastructure that many jurisdictions did not have before the grant program. Grant funds went toward mail processing equipment like ballot printers, folding machines, inserters, label makers, postage machines, sorting machines, barcode scanners, machines with signature verification software, envelope joggers, letter-opening machines, high-speed scanners, counting/tabulation machines, and more."

- **Security**: "Some offices made renovations like securing the doors to their election offices and warehouses, in order to accommodate the new need to store a large volume of returned mail ballots. Others bought ballot safes, tamper-proof security seals, security cameras, etc."

- **Emergency Preparedness**: "Some jurisdictions spent funds on emergency preparedness measures, especially electricity generators. Western offices worried about wildfires and public power shutoffs, northern offices worried about snowstorms, and rural offices worried about everything. . . . generators were needed to power creative polling places, like outdoor tents and mobile voting centers."

As this publicly available information shows, the CTCL COVID-19 Response Grant Program did a lot of good in many communities across the country—and across Wisconsin (extending to 221 jurisdictions, rather than the mere handful discussed by Plaintiff). CTCL is

proud to have played a role in supporting election officials nationwide who worked hard to ensure fair, secure, and efficient elections for Americans from all walks of life and all political backgrounds.

## II. EVERY COURT TO CONSIDER THE ISSUE HAS REJECTED CHALLENGES TO THE LEGALITY OF CTCL'S GRANTS

This is not the first suit asserting that CTCL's COVID-19 Response Grant Program is an unlawful partisan conspiracy. Litigants in multiple jurisdictions have filed eight federal lawsuits over the past two months aimed at acceptance and use of CTCL grants. Every single judge to consider those lawsuits has deemed them meritless or otherwise denied any relief. That includes eight federal district judges, three unanimous federal appellate panels, and two Justices of the United States Supreme Court. This judicial consensus undermines Petitioners' suggestion that there is anything untoward, unlawful, or partisan about CTCL's nationwide grant program.

In fact, this Court has already issued decisive rulings in a lawsuit challenging the receipt of CTCL's grants. On September 24, 2020 the Wisconsin Voters Alliance ("WVA") sued the Cities of Racine, Milwaukee, Kenosha, Green Bay, and Madison for accepting CTCL grants. *See Wis. Voters All. v. City of Racine*, No. 20-CV-1487 (E.D. Wis.). There, WVA alleged that the CTCL program was "targeted . . . overwhelmingly" to "progressive" cities and counties, in violation of the United States Constitution, several federal laws, and Wisconsin Statutes § 12.11. *See id.*, Compl., Dkt. 1. On this basis, WVA sought emergency relief to block acceptance or use of the grants. *See id.*, Mot. for TRO, Dkt. 2.

Following oral argument, Judge Griesbach denied a TRO on the ground that the WVA was not likely to succeed on the merits of its claims. *See Wis. Voters All. v. City of Racine*, No. 20-CV-1487, 2020 WL 6129510, at *2 (E.D. Wis. Oct. 14, 2020). He concluded that "Plaintiffs have presented at most a policy argument for prohibiting municipalities from accepting funds

from private parties to help pay the increased costs of conducting safe and efficient elections." *Id.* He added that, whatever the risk of skewing an election through selective funding, "[t]he record before the Court . . . does not provide the support needed for the Court to make such a determination, especially in light of the fact that over 100 additional Wisconsin municipalities received grants as well." *Id.* Finally, he held that "the Court finds nothing in the statutes Plaintiffs cite, either directly or indirectly, that can be fairly construed as prohibiting the defendant Cities from accepting funds from CTCL." *Id.*

After Judge Griesbach issued his ruling, WVA moved for a preliminary injunction. *See Wis. Voters All.*, No. 20-CV-1487, Dkt. 31. Judge Griesbach denied that motion, too. *See id.*, Dkt. 37.

Meanwhile, WVA filed a motion for an injunction pending appeal with the United States Court of Appeals for the Seventh Circuit. *See Wis. Voters All. v. City of Racine*, No. 20-3002 (7th Cir. Oct. 16, 2020), Dkt. 1. That same day—in fact, just a few hours later—Chief Judge Sykes and Judges Flaum and Easterbrook unanimously denied the motion. Undaunted, WVA took its case to the United States Supreme Court, where it filed a motion for an injunction pending appeal. *See Wis. Voters All. v. City of Racine*, No. 20A75 (U.S. Oct. 28, 2020). On October 29, 2020, Justice Kavanaugh denied that motion outright.

Thus, even before Election Day, this Court vetted claims substantially similar to those presented by Plaintiff in this action and found them to be without merit. Justice Kavanaugh, Chief Circuit Judge Sykes, and Circuit Judges Easterbrook and Flaum upheld this Court's ruling. That is no coincidence. It reflects the errors in the claims pressed by Plaintiff.

And that litigation was only the tip of the iceberg. The same counsel who represented WVA before this Court also took their claims on the road, filing cases in Michigan, Minnesota,

Iowa, Pennsylvania, South Carolina, Georgia, and Texas challenging the CTCL grant program. In each case, the court denied motions for a TRO and/or a preliminary injunction. *See Ga. Voter All. v. Fulton Cnty.*, No. 20-CV-4198, 2020 WL 6589655 (N.D. Ga. Oct. 28, 2020), Dkt. 18; *S.C. Voter's All. v. Charleston Cnty.*, No. 20-CV-3710 (D.S.C. Oct. 26, 2020), Dkt. 5; *Pa. Voters All. v Centre Cnty.*, No. 20-CV-1761, 2020 WL 6158309 (M.D. Pa. Oct. 21, 2020), Dkt. 75; *Iowa Voter All. v. Black Hawk Cnty.*, No. 20-CV-2078, 2020 WL 6151559 (N.D. Iowa Oct. 20, 2020), Dkt. 23; *Election Integrity Fund v. City of Lansing*, No. 20-CV-950, 2020 WL 6605987 (W.D. Mich. Oct. 19, 2020), Dkt. 19; *Tex. Voters All. v. Dallas Cnty.*, No. 20-CV-775, 2020 WL 6146248 (E.D. Tex. Oct. 20, 2020), Dkt. 28; *Minn. Voters All. v. City of Minneapolis*, No. 20-CV-2049, 2020 WL 6119937 (D. Minn. Oct. 16, 2020), Dkt. 25.

In several of these cases, moreover, courts rejected versions of the same unsupported partisan targeting theories about CTCL that Plaintiff alleges here. *See*, *e.g.*, *Pa. Voters All.*, 2020 WL 6158309, at *6 ("Defendants have used CTCL funding in a nonpartisan way to facilitate the upcoming election…."); *Ga. Voter All.*, 2020 WL 6589655, at *5 ("Plaintiffs have failed to plead or argue that Fulton County was favored over ostensible Georgia counties that were conservative, deserved grant money, and did not receive it."); *Tex. Voters All.*, 2020 WL 6146248, at *18 ("CTCL grants are nonpartisan and guaranteed to any municipality that meets minimum criteria . . . 88% of Texas counties that received grants voted for the Republican presidential candidate in 2016.").

In the Pennsylvania and Michigan federal cases, the plaintiffs sought emergency appellate injunctions. The Third and Sixth Circuits unanimously denied relief. *See Election Integrity Fund v. City of Lansing*, No. 20-2048 (6th Cir. Oct. 30, 2020) (Stranch, Bush, Murphy, JJ.), Dkt. 10; *Pa. Voters All. v. Centre Cnty.*, No. 20-3175 (3d Cir. Oct. 28, 2020) (Ambro,

Greenaway, Bibas, JJ.), Dkt. 20. When the Pennsylvania plaintiffs asked Justice Alito to intervene, he followed Justice Kavanaugh in denying relief without even calling for a response. *See Pa. Voters All. v. Centre Cnty.*, No. 20A82 (U.S. Nov. 3, 2020) (application for injunction denied).

Finally, on November 21, 2020, WVA filed a petition for original action before the Wisconsin Supreme Court. In its petition, WVA raised the same theories Plaintiff does here regarding CTCL's COVID-19 Response Grants to the Cities of Madison, Green Bay, Racine, Kenosha, and Milwaukee. The Wisconsin Supreme Court denied WVA's petition.[18] In his concurrence in support of the Court's decision to deny the petition, Justice Hagedorn stated that the "petition f[ell] far short of the kind of compelling evidence and legal support we would undoubtedly need to countenance the court-ordered disenfranchisement of every Wisconsin voter."[19] Later, Justice Hagedorn went further in his criticism of WVA's claims and requests:

> Something far more fundamental than the winner of Wisconsin's electoral votes is implicated in this case. At stake, in some measure, is faith in our system of free and fair elections, a feature central to the enduring strength of our constitutional republic. It can be easy to blithely move on to the next case with a petition so obviously lacking, but this is sobering. The relief being sought by the petitioners is the most dramatic invocation of judicial power I have ever seen. Judicial acquiescence to such entreaties built on so flimsy a foundation would do indelible damage to every future election. Once the door is opened to judicial invalidation of presidential election results, it will be awfully hard to close that door again. This is a dangerous path we are being asked to tread. The loss of public trust in our constitutional order resulting from the exercise of this kind of judicial power would be incalculable.[20]

---

[18] For a copy of the order denying WVA's petition for original action, *see Wis. Voters All. v. Wis. Elections Comm'n*, No. 2020AP1930-OA (Wis. Dec. 4, 2020), *http://www.thewheelerreport.com/wheeler_docs/files/120420wscwva.pdf.*

[19] *See id.* at 2.

[20] *Id.* at 3.

## Conclusion

There is a clear moral to this story. After months of litigation—and despite the opportunity to present their cases to nineteen judges—those challenging the validity of CTCL's grants have failed to persuade *anyone* of their claim that CTCL is somehow involved in an unlawful effort to undermine the integrity of the election. That is because there is no truth to that offensive allegation (and no evidence supporting it). CTCL's COVID-19 Response Grant Program is exactly what it appears to be: a nationwide effort by nonpartisan, nonprofit election administration experts to assist local officials in over 2500 jurisdictions as they conducted an election amid unprecedented challenges. To the extent Plaintiff rests its case upon accusations aimed at CTCL (or individuals who helped to fund its grant program), those attacks are unfounded and demonstrate the error of its position.

Dated this 8th day of December, 2020.

By:    *s/ Kendall W. Harrison*
Kendall W. Harrison (#1023438)
Mike B. Wittenwyler (#1025895)
Maxted Lenz (#1104692)
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Phone: 608-257-3911
Fax: 608-257-0609
kharriso@gklaw.com
mwittenw@gklaw.com
mlenz@gklaw.com

Joshua Matz, NY Bar No. 5388962
Harmann Singh, NY Bar No. 5811021
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Phone: 212-763-0883
jmatz@kaplanhecker.com
hsingh@kaplanhecker.com

*Attorneys for the Center for The Tech and Civic Life (CTCL)*

23798335.1

**APPENDIX A**

**Jurisdictions In Wisconsin That Received Grants From The CTCL COVID-19 Response Grant Program**

<u>**Cities**</u>

Abbotsford
Altoona
Amery
Antigo
Appleton
Barron
Beloit
Brodhead
Brookfield
Chetek
Chilton
Plymouth
Colby
Cuba City
Delafield
Eau Claire
Edgerton
Fitchburg
Fond du Lac
Fort Atkinson
Green Bay
Hudson
Janesville
Kenosha
Kewaunee
Lake Mills
Lancaster
Madison
Marathon
Marinette
Marshfield
Menasha
Milton
Milwaukee
Monona
Mosinee
Niagara
Omro
Peshtigo

Pittsville
Platteville
Racine
Rice Lake
River Falls
Schofield
Sun Prairie
Two Rivers
Waukesha
Wausau
West Allis

**<u>Counties</u>**

Marathon

**<u>Towns</u>**

Amberg
Athelstane
Aztalan
Beaver
Beaver
Beecher
Beetown
Beetown
Bennett
Bergen
Berlin
Bern
Bevent
Brazeau
Brighton (Marathon County)
Brothertown
Brule
Calumet
Cassel
Chetek
Chilton
Cleveland
Clinton
Dodge
Dunbar
Eagle (Waukesha County)
Easton
Eau Pleine

2

Emmet, Marathon County
Evergreen
Farmington
Forest (Richland County)
Frankfort
Franzen
Freedom
Friendship
Fulton
Genesee
Gillett
Goodman
Green Valley
Greenbush
Grover
Guenther
Halsey
Hamburg, Marathon County
Hamilton
Harrison (Calumet County)
Harrison (Lincoln County)
Hazel Green
Hewitt
Holton
Hull
Ixonia
Johnson
Knowlton
La Prairie
Lake
Lake Mills
Lawrence
Liberty
Lima
Lisbon
Little River
Long Lake
Maple Grove
Marathon
Marshall
Marshall
McMillan
Medina
Metomen
Milton
Morgan

3

Morrison
Mosinee
Mount Hope
Mountain
Norrie
Oakland
of Day
Onalaska
Ottawa
Palmyra
Paris
Pembine
Perry
Peshtigo
Pittsfield
Plover
Plymouth
Porterfield
Pound
Prairie Lake
Red Springs
Reid
Rhine
Rib Falls
Rib Mountain
Rice Lake
Rietbrock
Ringle
Riverview
Rock
Rush River
Sheboygan Falls
Silver Cliff
Spencer
Springfield
Stanfold
Stettin
Superior
Taycheedah
Texas
Troy
Turtle
Wausau
Weston
Westport
Wien

4

Wrightstown (Brown County)

**<u>Villages</u>**

Athens
Biron
Black Earth
Cambridge
Campbellsport
Clear Lake
Clinton
Coleman
Cottage Grove
Crivitz
Dickeyville
Edgar
Elderon
Elkhart Lake
Endeavor
Ettrick
Fenwood
Footville
Hammond
Hatley
Hazel Green
Iron Ridge
Kekoskee
Kronenwetter
Luck
Maine
McFarland
Minong
Montfort
Oakfield
Ontario
Osceola
Palmyra
Pound
Readstown
Rockland
Rothschild
Solon Springs
Spencer
Stratford
Superior
Tennyson

Turtle Lake
Unity
Waldo
Waunakee
Wausaukee
Weston
Wilton