DONALD J. TRUMP, Candidate for President of the United States of America,

    Plaintiff,

v.

THE WISCONSIN ELECTIONS COMMISSION, and its members, ANN S. JACOBS, MARK L. THOMSEN, MARGE BOSTELMANN, DEAN KNUDSON, ROBERT F. SPINDELL, JR., in their official capacities, SCOTT MCDONELL in his official capacity as the Dane County Clerk, GEORGE L. CHRISTENSON in his official capacity as the Milwaukee County Clerk, JULIETTA HENRY in her official capacity as the Milwaukee Election Director, CLAIRE WOODALL-VOGG in her official capacity as the Executive Director of the Milwaukee Election Commission, MAYOR TOM BARRETT, JIM OWCZARSKI, MAYOR SATYA RHODES-CONWAY, MARIBETH WITZEL-BEHL, MAYOR CORY MASON, TARA COOLIDGE, MAYOR JOHN ANTARAMIAN, MATT KRAUTER, MAYOR ERIC GENRICH, KRIS TESKE, in their official capacities; DOUGLAS J. LA FOLLETTE, Wisconsin Secretary of State, in his official capacity, and TONY EVERS, Governor of Wisconsin, in his official capacity.

    Defendants.

Case No.:20CV1785

## DEFENDANT GOVERNOR EVERS'S BRIEF IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR DECLARATORY AND INJUNCTIVE RELIEF

Jeffrey A. Mandell  
Rachel E. Snyder  
Richard A. Manthe  
STAFFORD ROSENBAUM LLP  
222 W. Washington Ave., Suite 900  
Post Office Box 1784  
Madison, WI 53701-1784  
Telephone: 608-256-0226  

jmandell@staffordlaw.com  
rsnyder@staffordlaw.com  
rmanthe@staffordlaw.com  

*Attorneys for Defendant,*  
*Governor Tony Evers*

(Additional counsel on next page)

Justin A. Nelson
Stephen E. Morrissey
Stephen Shackelford Jr.
Davida Brook
SUSMAN GODFREY L.L.P.
1000 Louisiana St., Suite 5100
Houston, TX 77002
Telephone: 713-651-9366
jnelson@susmangodfrey.com
smorrissey@susmangodfrey.com
sshackelford@susmangodfrey.com
dbrook@susmangodfrey.com

Paul Smith
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, DC 20005
Telephone: (202) 736-2200
psmith@campaignlegalcenter.org

# INTRODUCTION

Almost 3.3 million Wisconsin voters participated in November's general election. They exercised this quintessential American right in good faith, using methods established by Wisconsin law, and under guidance issued by the Wisconsin Elections Commission ("WEC). Now, President Trump brings this suit to invalidate their votes and makes a request for an "injunction," which is actually a request that the Court order the case "remanded" to the Legislature (apparently with the hope that the Legislature will appoint electors in some manner other than the one Wisconsin has used for its entire history since statehood). This is not in fact a request for an injunction, but a demand that the Court take action it has no authority to take or, at most, render an improper advisory opinion for the Legislature's consideration.

As a threshold matter, there is no need to address this motion because Plaintiff's complaint should be dismissed. Before a court can consider the merits of a claim, it "must first consider threshold issues of justiciability" which bear on the Court's jurisdiction. *Wernsing v. Thompson*, 423 F.3d 732, 742–43 (7th Cir. 2005). "Jurisdiction is the 'power to declare law,' and without it the federal courts cannot proceed." *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) (quoting *Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 577, 583 (1999)). As set forth in the separately filed motion to dismiss, the Complaint literally **states no claim at all**—and, even if it somehow could be construed liberally to state one, any such claim would be subject to dismissal on numerous grounds, including the availability of exclusive state court procedures for contesting elections, Plaintiffs' inexcusable delay in challenging the conduct at issue before the election, and the complete implausibility of there being any cause of action that could confer upon Plaintiff the relief he seeks. In *Feehan v. Wisconsin Elections Commission*, No. 2020-cv-1771, which arises from the same basic facts and raises some of the same merits

issues, Chief Judge Pepper earlier today denied the plaintiff's motion for an evidentiary hearing, explaining that she would address the justiciability issues in the motions to dismiss as a prerequisite to hearing evidence or otherwise considering injunctive relief. (*See* Dkt. 70) So, too, in another case proceeding in the District of Arizona, in which some of the undersigned counsel are also engaged. *See Bowyer v. Ducey*, No. 2:20-cv-02321 (D. Ariz.). For the same reasons, the Court should first address the motion to dismiss in this matter.

But even if the Court did reach Plaintiff's request for injunctive relief, the inescapable conclusion is that just as the Complaint states *no* claim, neither it nor this Motion contains any actual request for any specific *injunctive* relief. The Compliant does not seek an order requiring anyone to do anything, other than a single legally insufficient boilerplate line about "[e]njoining any actions inconsistent with the Court's declaration"). That request makes no sense, since the declarations sought are exclusively backwards-looking. The only real action Plaintiff seeks is to "[r]emand this case to the Wisconsin legislature." (Cmplt. at 72, ¶4), which is not something a federal court can do. And Plaintiff's Motion for Expedited Declaratory and Injunctive Relief does not advance the ball at all, because it merely mirrors (and largely incorporates by reference) the Complaint, while not even including a proposed order. The entire case, notwithstanding Plaintiff's constant requests for haste, is illusory and cannot be adjudicated.

Even if there were an actual request for injunction to be decided, Plaintiff cannot meet any element of the test for granting injunctive relief. He cannot demonstrate any cognizable injury, much less irreparable harm. Nor can Plaintiff demonstrate that he has no alternative remedy, because he is currently pursuing similar claims through the recount procedures prescribed as exclusive by the Wisconsin Legislature. In addition, the balance of harms tilts heavily away from Plaintiff, because the relief he seeks (enlisting the Court in effect to

encourage the Legislature to overturn the election) would cause enormous prejudice to nearly 3.3 million Wisconsin voters by depriving them of their chosen representation in the Electoral College, as well as doing "indelible damage to every future election" and diminishing "public trust in our constitutional order." *Wis. Voters Alliance v. Wis. Elections Comm'n*, No. 2020AP1930-OA, Order at *3 (Wis. Dec. 4, 2020) (Hagedorn, J., concurring on behalf of majority of Justices).[1]

"[I]f there is a sufficient basis to invalidate an election, it must be established with evidence and arguments commensurate with the scale of the claims and the relief sought." *Id.* (Hagedorn, J., concurring). Here, as in that case, the record offered by the Plaintiff has "come nowhere close." *Id.* The Middle District of Pennsylvania's observations when confronted with analogous requests are instructive:

> Plaintiffs ask this Court to disenfranchise almost seven million voters.… One might expect that when seeking such a startling outcome, a plaintiff would come formidably armed with compelling legal arguments and factual proof of rampant corruption, such that this Court would have no option but to regrettably grant the proposed injunctive relief despite the impact it would have on such a large group of citizens.
>
> That has not happened. Instead, this Court has been presented with strained legal arguments without merit and speculative accusations.… In the United States of America, this cannot justify the disenfranchisement of a single voter.

*Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-cv-02078-MWB, 2020 WL 6821992, at *1 (M.D. Pa. Nov. 21, 2020); *See also Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, No. 20-3371, 2020 WL 7012522, at *1 (3d Cir. Nov. 27, 2020) ("Free, fair elections are the lifeblood of our democracy. Charges of unfairness are serious. But calling an

---

[1] Pursuant to Civil L. R. 7(j)(2), all unpublished cases, orders, and dispositions cited are filed in conjunction with this brief.

election unfair does not make it so. Charges require specific allegations and proof. We have neither here.").

For all of these reasons, as detailed below, Plaintiff's motion should be denied.

**RELEVANT FACTS**

In the November election, a record turnout of nearly 3.3 million Wisconsinites—approximately 72.66 percent of the voting-age population—voted.[2] By a narrow but clear margin, Joe Biden defeated President Trump.[3] President Trump requested a recount of the canvasses in Dane and Milwaukee counties.[4] After the recounts in Dane and Milwaukee Counties concluded, Joe Biden's statewide lead increased by 87 votes.[5]

Wisconsin law provides that the recount process "constitutes the exclusive judicial remedy" for any "alleged irregularity, defect or mistake committed during the voting or canvassing process." Wis. Stat. § 9.01(11). It provides for judicial review of recount results via appeal to the Wisconsin circuit court. Wis. Stat. § 9.01(6)(a); *see also Trump v. Evers*, No. 2020AP1971-OA, Order at *2 (Wis. Dec. 3, 2020); *id.* (Hagedorn, J. concurring) ("[C]hallenges to election results are also governed by law. … [Section 9.01] provides that these actions should be filed in the circuit court, and spells out detailed procedures for ensuring their orderly and swift disposition."). President Trump has initiated and is actively prosecuting an appeal of the recount

---

[2] WEC, "Important things voters should know after the election" (Nov. 5, 2020), available at https://elections.wi.gov/node/7235 (last visited Dec. 8, 2020).

[3] https://elections.wi.gov/sites/elections.wi.gov/files/Statewide%20Results%20All%20Offices%20%28pre-Presidential%20recount%29.pdf (last visited Dec. 8, 2020).

[4] https://elections.wi.gov/sites/elections.wi.gov/files/2020-11/Trump%20Campaign%20Recount%20Petition.pdf (last visited Dec. 8, 2020).

[5] "Completed Wisconsin recount confirms Joe Biden's win over Donald Trump," *Associated Press* (Nov. 30, 2020), available at https://madison.com/wsj/news/local/govt-and-politics/elections/completed-wisconsin-recount-confirms-joe-bidens-win-over-donald-trump/article_6335f4cb-4308-5108-ae71-88bf62ce90bf.html (last visited Dec. 5, 2020).

4

results. *See Trump v. Biden*, No. 2020CV7092, Order for Consolidation and for Appointment of Judicial Officer (Milwaukee Cty. Cir. Ct. Dec. 3, 2020).

## STANDARD OF REVIEW

An injunction "is not a remedy which issues as of course…" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982). Injunctive relief that provides a plaintiff "substantially all the relief he seeks, is disfavored, and courts have imposed a higher burden on a movant in such cases." *Money v. Pritzker*, 453 F. Supp. 3d 1103, 1117 (N.D. Ill. 2020) (internal quotations omitted). "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006). "Since a permanent injunction is a form of relief on the merits, the plaintiff must also show not just a probability of success on the merits but actual success." *Vaughn v. Walthall*, 968 F.3d 814, 824–25 (7th Cir. 2020).

## ARGUMENT

Although Plaintiff frames his motion as a request for an injunction, it is in reality a demand that this Court do something indisputably beyond its power: "remand" the case to the Wisconsin Legislature. There is no specific request to enjoin Defendants from taking any specific action, nor to compel them take a certain action. This is an unprecedented request, and has no basis in law. However, to the extent the court considers Plaintiff's request as an "injunction," Plaintiff still fails because he cannot satisfy any of the requirements.

5

## I. Plaintiff's request for "injunctive" relief is one no court may grant.

The concept of "remanding" a case from an Article III court to a state legislature is bizarre and without any basis in law. There is no basis for such a procedure in the U.S. Code, no precedent for it in any reported decisions, and no way such a procedure could possibly be consistent with the structure and purpose of our Article III judiciary, which consists of courts of limited jurisdiction constitutionally permitted to decide cases and controversies—not to submit cases for final decision to a state legislative body.

Unsurprisingly, then, recent decisions around the country have found that courts do not have the power to "remand" a case to the Legislature. Just yesterday, the Eastern District of Michigan affirmatively rejected such a request, stating "'there is no basis in law by which the courts may grant [Plaintiffs'] request to ignore the results of an election and recommit the choice to the General Assembly to substitute its preferred slate of electors….'" *King v. Whitmer*, No. 20-CV-13134, 2020 WL 7134198, at *6 (E.D. Mich. Dec. 7, 2020) (quoting *Kelly v. Commonwealth*, No. 68 MAP 2020, 2020 WL 7018314, at *3 (Pa. Nov. 28, 2020) (Wecht,, J., concurring)). The Michigan decision also cited a Georgia court's conclusion that "interfere[ing] with the result of an election that has already concluded would be unprecedented and harm the public in countless ways." *Wood v. Raffensperger*, No. 1:20-cv-04651, 2020WL 6817513, at *13 (N.D. Ga. Nov. 20, 2020), aff'd, 2020 WL 7094866 (11th Cir. Dec. 5, 2020). In essence, Plaintiff's request is unheard of, and is not actually injunctive relief.

The request for a "remand" to the Wisconsin Legislature (Mot. ¶18) is thus in no way a proper or cognizable request for an injunction. What remains? The Motion also requests several declarations, but those by definition are not requests for injunctions because they are not requests that the Court order a particular party to do, or not do, something. They are, rather, requests for

6

advisory opinions, which are improper on their own. Regardless, they are not requests for injunctive relief.[6]

Finally, Plaintiff's Motion also requests that "the Court enter an order enjoining any actions inconsistent with the Court's declaration and judgment" (*id.* ¶19). But that sort of bootstrapping request is also not proper. It runs afoul of the requirements that an injunction "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B) and (C).

In sum, the man deficiencies of the Motion underscore the fact that this is not a request for an injunction at all, but a demand for extraordinary and unprecedented court action to "remand" this court case to the Legislature.

**II. Defendants Are Overwhelmingly Likely To Prevail on the Merits**.

To the extent the Court would even consider the "merits" of what Plaintiff is asking the Court to declare, there is no likelihood of success. Plaintiff's entire case rests upon strained legal theories that contort Wisconsin law. In reality, WEC's guidance has been longstanding and endorsed by the Wisconsin Legislature and Supreme Court of Wisconsin. Accordingly, Plaintiff cannot establish that he has any chance of successfully disenfranchising Wisconsin's voters.

Defendant made merits arguments in his brief in support of the motion to dismiss. For the sake of brevity, Defendant will refer the Court to Section I of that brief for a discussion of the likelihood of success on the merits. In sum, Plaintiff has no likelihood of success because:

- Longstanding WEC guidance allowing clerks to cure absentee ballot witness addresses comports with Wisconsin law.

---

[6] To be sure, legitimate requests for injunctive relief often (probably always) require a court to decide questions of law. But legitimate requests for injunctive relief by definition go further: the court not only decides some question of law (or, preliminarily, some question of fact), but orders a party to do, or refrain from doing, something. Without the latter part, there is no request for injunctive relief.

- WEC's guidance on indefinitely confined voters is consistent with Wisconsin law and was endorsed by the Supreme Court of Wisconsin.
- Drop-boxes are allowed by statute, and Wisconsin's Legislature approves of their use.
- CTCL grants have been unanimously upheld as lawful by eight federal courts, including this one. *See Wis. Voters All. v. City of Racine*, No. 20-C-1487, 2020 WL 6129510, (E.D. Wis. Oct. 14, 2020).
- Wisconsin law expressly permits municipalities to limit observer access.
- Plaintiff has not shown any violations of his rights to due process or equal protection.

Plaintiff's interpretation of WEC's guidance and Wisconsin election law are not tethered to reality and he has no plausible claim that would survive a Fed. R. Civ. P. 12(b)(6) motion, so he most certainly has no "claim" that gives a reasonable likelihood on the merits. This is especially true when the only thing even remotely resembling an "injunction" Plaintiff seeks is a a bizarre request for remand to the Legislature. Which (as explained above) is not something within this Court's power.

### III. Plaintiff Has—and Is Pursuing—an Alternate Adequate Remedy at Law.

The recount procedure set out in Wisconsin law expressly and unambiguously "constitutes the exclusive judicial remedy" for any "alleged irregularity, defect or mistake committed during the voting or canvassing process." Wis. Stat. § 9.01(11). Section 9.01 provides a recount process for an aggrieved party following an election. Under that process—the process prescribed by the Wisconsin Legislature—judicial review cannot occur until after a recount, and that appeal must go to state circuit court. *See* Wis. Stat. § 9.01(6)(a); *Trump v. Evers*, Order at *2; *see also id.* (Hagedorn, J. concurring) ("[C]hallenges to election results are also governed by law. … [Section 9.01] provides that these actions should be filed in the circuit court, and spells out detailed procedures for ensuring their orderly and swift disposition. See § 9.01(6)-(8). Consequently, an adequate, and exclusive, state law remedy exists to challenge results of an

8

Case 2:20-cv-01785-BHL    Filed 12/08/20    Page 10 of 14    Document 94

election."). That exclusive procedure is indisputably an aequate remedy at law for the grievances Plaintiff raises in the Complaint and Motion.

In Plaintiff is already utilizing this remedy. He petitioned Dane and Milwaukee Counties for a recount and then appealed the recount results to state circuit court. *Trump v. Biden*, Milwaukee County Case No. 2020CV7092 and Dane County Case No. 2020CV2514Notice of Appeal and Appeal under Wis. Stat. § 9.01(6)(a). Indeed, yesterday he filed complaints in the consolidated cases and filed a motion for judgment against both counties. *Trump v. Biden*, Milwaukee County Case No. 2020CV7092 and Dane County Case No. 2020CV2514, Motion For Judgment. The existence of this legal remedy, and Plaintiff's active pursuit of it, precludes imposition of his requested injunction here.

### IV. Plaintiff Will Not Suffer Any Harm from Denial of Injunctive Relief.

Plaintiff must also establish that he will suffer irreparable harm. *Vaughn* 968 F.3d at 824-825. Yet Plaintiff has not alleged any harm.

This is, admittedly, an odd analysis to undertake since most of what Plaintiff requests has nothing to do with injunctive relief at all. It is hard to imagine, for instance, how denial of a *declaratory judgment* could somehow cause a party irreparable harm. It is even harder to imagine such an argument being made by Plaintiff, since he admits that entry of his requested declaratory judgment will in no way bind the Wisconsin Legislature, whom he hopes will step in to decide the election.

Yet even if one were to consider the grievances Plaintiff seeks to address in his requested declaratory relief, denial of the relief still poses no threat of harm, let alone irreparable harm. The WEC's guidance does not disenfranchise a single voter, nor has it minimized the influence of any groups, protected or otherwise. Further, it has no impact on Plaintiff's rights as a candidate.

9

Plaintiff has not alleged that the guidance disproportionately favored supporters of President-elect Biden over Plaintiff's supporters, or hampered the ability of Plaintiff's supporters to vote.

As for Plaintiff's request for a "remand" to the Wisconsin Legislature, once again it is impossible to see how denial of this (also impossible) request could cause Plaintiff irreparable harm. As Plaintiff admits, the requested remand would not *require* the Wisconsin Legislature to do *anything*. Cmplt. at 72, ¶4. Nor would a failure to "remand" this case somehow prevent the Wisconsin Legislature from doing anything. If the Wisconsin Legislature has the power Plaintiff seems to hope it has, then it has that power whether or not this Court "remands" this case to the Legislature. (Thankfully, though, the Wisconsin Legislature has unequivocally stated that it does *not* have the power to do what President Trump wishes it to do—that is, throw out the election results and declare President Trump the winner.)[7]

## V. By Contrast, the Requested Relief would Cause Enormous Prejudice to Defendants and Wisconsin Voters.

The relief requested by the Plaintiff is not an injunction, but a declaration and "remand" that Plaintiff *hopes* would convince the Wisconsin Legislature to retroactively deprive nearly 3.3 million Wisconsin voters of their constitutional right to vote in the 2020 presidential election. That unprecedented request would nullify the outcome of an entire election. That harm is unprecedented, and would crack the bedrock of representative democracy.

The U.S. Supreme Court has repeatedly emphasized the importance of the right to vote. Voting is "one of the most fundamental rights of our citizens." *Bartlett v. Strickland*, 556 U.S. 1, 10 (2009). "No right is more precious in a free country than that of having a voice in the election

---

[7] "GOP leaders in 4 states quash dubious Trump bid on electors," *Associated Press* (November 14, 2020), available at https://apnews.com/article/election-2020-joe-biden-donald-trump-legislature-pennsylvania-b199b2debc87fbb20612a48835bc0dba (last visited Dec. 8, 2020).

of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). Plaintiff's request undermines a belief fundamental to this country. A greater public harm can hardly be conceived.

The relief, if granted, would also undermine the State's ability to conduct its own elections, and open the door to additional frivolous challenges in the future. Not only that, but the requested relief would raise serious federalism and separation of powers questions. Those harms heavily weigh against Plaintiff. Accordingly, the motion should be denied.

## CONCLUSION

For the reasons above, Plaintiff's Motion for Expedited Declaratory and Injunctive Relief (Dkt. 6) should be denied.

Dated: December 8, 2020     Respectfully submitted,

/s/ Jeffrey A. Mandell
Jeffrey A. Mandell
Rachel E. Snyder
Richard A. Manthe
STAFFORD ROSENBAUM LLP
222 W. Washington Ave., Suite 900
Madison, WI 53701-1784
Telephone: 608-256-0226
Email: jmandell@staffordlaw.com
Email: rsnyder@staffordlaw.com
Email: rmanthe@staffordlaw.com

Justin A. Nelson
Stephen E. Morrissey
Stephen Shackelford Jr.
Davida Brook

11

SUSMAN GODFREY L.L.P.
1000 Louisiana St., Suite 5100
Houston, TX 77002
Telephone: 713-651-9366
jnelson@susmangodfrey.com
smorrissey@susmangodfrey.com
sshackelford@susmangodfrey.com
dbrook@susmangodfrey.com

Paul Smith
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, DC 20005
Telephone: (202) 736-2200
psmith@campaignlegalcenter.org

*Attorneys for Defendant, Governor Tony Evers*