# Exhibit 1



OFFICE OF THE CLERK

# Supreme Court of Wisconsin

110 EAST MAIN STREET, SUITE 215
P.O. BOX 1688
MADISON, WI 53701-1688

TELEPHONE (608) 266-1880
FACSIMILE (608) 267-0640
Web Site: www.wicourts.gov

December 3, 2020

**To:**

| | |
|---|---|
| R. George Burnett<br>Conway, Olejniczak & Jerry, SC<br>P.O. Box 23200<br>Green Bay, WI 54305-3200 | Joshua L. Kaul<br>Thomas C. Bellavia<br>Colin T. Roth<br>Colin R. Stroud<br>Wisconsin Department of Justice<br>P.O. Box 7857<br>Madison, WI 53707-7857 |
| James R. Troupis<br>Troupis Law Office, LLC<br>4126 Timber Lane<br>Cross Plains, WI 53528 | |
| Margaret C. Daun<br>Milwaukee County Corporation Counsel<br>901 N. 9th Street, Room 303<br>Milwaukee, WI 53233 | David R. Gault<br>Assistant Corporation Counsel<br>Office of the Dane County Corporation Counsel<br>210 Martin Luther King, Jr. Blvd., Room 419<br>Madison, WI 53703-3345 |

*Address list continued on page 9.

You are hereby notified that the Court has entered the following order:

No. 2020AP1971-OA     <u>Trump v. Evers</u>

A petition for leave to commence an original action under Wis. Stat. § (Rule) 809.70, a supporting legal memorandum, and an appendix have been filed on behalf of petitioners, Donald J. Trump, et al. Responses to the petition have been filed by (1) Governor Tony Evers; (2) the Wisconsin Elections Commission and its Chair, Ann S. Jacobs; (3) Scott McDonell, Dane County Clerk, and Alan A. Arnsten and Joyce Waldrop, members of the Dane County Board of Canvassers; and (4) George L. Christensen, Milwaukee County Clerk, and Timothy H. Posnanski, Richard Baas, and Dawn Martin, members of the Milwaukee County Board of Canvassers. A non-party brief in support of the petition has been filed by the Liberty Justice Center. A motion to intervene, a proposed response of proposed respondents-intervenors, and an appendix have been filed by the Democratic National Committee (DNC) and Margaret J. Andrietsch, Sheila Stubbs,

Ronald Martin, Mandela Barnes, Khary Penebaker, Mary Arnold, Patty Schachtner, Shannon Holsey, and Benjamin Wikler (collectively, "the Biden electors"). The court having considered all of the filings,

IT IS ORDERED that the petition for leave to commence an original action is denied. One or more appeals from the determination(s) of one or more boards of canvassers or from the determination of the chairperson of the Wisconsin Elections Commission may be filed by an aggrieved candidate in circuit court. Wis. Stat. § 9.01(6); and

IT IS FURTHER ORDERED that the motion to intervene is denied as moot.

BRIAN HAGEDORN, J. (*concurring*). I understand the impulse to immediately address the legal questions presented by this petition to ensure the recently completed election was conducted in accordance with the law. But challenges to election results are also governed by law. All parties seem to agree that Wis. Stat. § 9.01 (2017–18)[1] constitutes the "exclusive judicial remedy" applicable to this claim. § 9.01(11). After all, that is what the statute says. This section provides that these actions should be filed in the circuit court, and spells out detailed procedures for ensuring their orderly and swift disposition. See § 9.01(6)–(8). Following this law is not disregarding our duty, as some of my colleagues suggest. It is following the law.

Even if this court has constitutional authority to hear the case straightaway, notwithstanding the statutory text, the briefing reveals important factual disputes that are best managed by a circuit court.[2] The parties clearly disagree on some basic factual issues, supported at times by competing affidavits. I do not know how we could address all the legal issues raised in the petition without sorting through these matters, a task we are neither well-positioned nor institutionally designed to do. The statutory process assigns this responsibility to the circuit court. Wis. Stat. § 9.01(8)(b) ("The [circuit] court shall separately treat disputed issues of procedure, interpretations of law, and findings of fact.").

We do well as a judicial body to abide by time-tested judicial norms, even—and maybe especially—in high-profile cases. Following the law governing challenges to election results is no threat to the rule of law. I join the court's denial of the petition for original action so that the petitioners may promptly exercise their right to pursue these claims in the manner prescribed by the legislature.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017–18 version.

[2] The legislature generally can and does set deadlines and define procedures that circumscribe a court's competence to act in a given case. Village of Trempealeau v. Mikrut, 2004 WI 79, ¶9–10, 273 Wis. 2d 76, 681 N.W.2d 190. The constitution would obviously override these legislative choices where the two conflict.

PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting).* Before us is an emergency petition for leave to commence an original action brought by President Trump, Vice President Pence and Donald Trump for President, Inc., against Governor Evers, the Wisconsin Elections Commission (WEC), its members and members of both the Milwaukee County Board of Canvassers and the Dane County Board of Canvassers. The Petitioners allege that the WEC and election officials caused voters to violate various statutes in conducting Wisconsin's recent presidential election. The Petitioners raised their concerns during recount proceedings in Dane County and Milwaukee County. Their objections were overruled in both counties.

The Respondents argue, in part, that we lack subject matter jurisdiction because of the "exclusive judicial remedy" provision found in Wis. Stat. § 9.01(11) (2017-18).[3] Alternatively, the Respondents assert that we should deny this petition because fact-finding is required, and we are not a fact-finding tribunal.

I conclude that we have subject matter jurisdiction that enables us to grant the petition for original action pending before us. Our jurisdiction arises from the Wisconsin Constitution and cannot be impeded by statute. Wis. Const., art. VII, Section 3(2); City of Eau Claire v. Booth, 2016 WI 65, ¶7, 370 Wis. 2d 595, 882 N.W.2d 738. Furthermore, time is of the essence.

However, fact-finding may be central to our evaluation of some of the questions presented. I agree that the circuit court should examine the record presented during the canvasses to make factual findings where legal challenges to the vote turn on questions of fact. However, I dissent because I would grant the petition for original action, refer for necessary factual findings to the circuit court, who would then report its factual findings to us, and we would decide the important legal questions presented.

I also write separately to emphasize that by denying this petition, and requiring both the factual questions and legal questions be resolved first by a circuit court, four justices of this court are ignoring that there are significant time constraints that may preclude our deciding significant legal issues that cry out for resolution by the Wisconsin Supreme Court.

## I. DISCUSSION

The Petitioners set out four categories of absentee votes that they allege should not have been counted because they were not lawfully cast: (1) votes cast during the 14-day period for in-person absentee voting at a clerk's office with what are alleged to be insufficient written requests for absentee ballots, pursuant to Wis. Stat. § 6.86(1)(b); (2) votes cast when a clerk has completed information missing from the ballot envelope, contrary to Wis. Stat. § 6.87(6d); (3) votes cast by those who obtained an absentee ballot after March 25, 2020 by alleging that they were indefinitely

---

[3] All subsequent references to the Wisconsin Statutes are to the 2017–18 version.

confined; and (4) votes cast in Madison at "Democracy in the Park" events on September 26 and October 3, in advance of the 14-day period before the election, contrary to Wis. Stat. § 6.87.

Some of the Respondents have asserted that WEC has been advising clerks to add missing information to ballot envelopes for years, so the voters should not be punished for following WEC's advice. They make similar claims for the collection of votes more than 14 days before the November 3 election.

If WEC has been giving advice contrary to statute, those acts do not make the advice lawful. WEC must follow the law. We, as the law declaring court, owe it to the public to declare whether WEC's advice is incorrect. However, doing so does not necessarily lead to striking absentee ballots that were cast by following incorrect WEC advice. The remedy Petitioners seek may be out of reach for a number of reasons.

Procedures by which Wisconsin elections are conducted must be fair to all voters. This is an important election, but it is not the last election in which WEC will be giving advice. If we do not shoulder our responsibilities, we leave future elections to flounder and potentially result in the public's perception that Wisconsin elections are unfair. The Wisconsin Supreme Court can uphold elections by examining the procedures for which complaint was made here and explaining to all where the WEC was correct and where it was not.

I also am concerned that the public will misunderstand what our denial of the petition means. Occasionally, members of the public seem to believe that a denial of our acceptance of a case signals that the petition's allegations are either false or not serious. Nothing could be further from the truth. Indeed, sometimes, we deny petitions even when it appears that a law has been violated. Hawkins v. Wis. Elec. Comm'n, 2020 WI 75, ¶¶14–16, 393 Wis. 2d 629, 948 N.W.2d 877 (Roggensack, C.J., dissenting).

## II.  CONCLUSION

I conclude that we have subject matter jurisdiction that enables us to grant the petition for original action pending before us. Our jurisdiction arises from the Wisconsin Constitution and cannot be impeded by statute. Wis. Const., art. VII, Section 3(2); City of Eau Claire, 370 Wis. 2d 595, ¶7. Furthermore, time is of the essence.

However, fact-finding may be central to our evaluation of some of the questions presented. I agree that the circuit court should examine the record presented during the canvasses to make factual findings where legal challenges to the vote turn on questions of fact. However, I dissent because I would grant the petition for original action, refer for necessary factual findings to the circuit court, who would then report its factual findings to us, and we would decide the important legal questions presented.

I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this dissent.

REBECCA GRASSL BRADLEY, J. (*dissenting*).  "It is emphatically the province and duty of the Judicial Department to say what the law is."  Marbury v. Madison, 5 U.S. 137, 177 (1803).  The Wisconsin Supreme Court forsakes its duty to the people of Wisconsin in declining to decide whether election officials complied with Wisconsin's election laws in administering the November 3, 2020 election.  Instead, a majority of this court passively permits the Wisconsin Elections Commission (WEC) to decree its own election rules, thereby overriding the will of the people as expressed in the election laws enacted by the people's elected representatives.  Allowing six unelected commissioners to make the law governing elections, without the consent of the governed, deals a death blow to democracy.  I dissent.

The President of the United States challenges the legality of the manner in which certain Wisconsin election officials directed the casting of absentee ballots, asserting they adopted and implemented particular procedures in violation of Wisconsin law.  The respondents implore this court to reject the challenge because, they argue, declaring the law at this point would "retroactively change the rules" after the election.  It is THE LAW that constitutes "the rules" of the election and election officials are bound to follow the law, if we are to be governed by the rule of law, and not of men.

Under the Wisconsin Constitution, "all governmental power derives 'from the consent of the governed' and government officials may act only within the confines of the authority the people give them. Wis. Const. art. I, § 1."  Wisconsin Legislature v. Palm, 2020 WI 42, ¶66, 391 Wis. 2d 497, 942 N.W.2d 900 (Rebecca Grassl Bradley, J., concurring).  The Founders designed our "republic to be a government of laws, and not of men . . . bound by fixed laws, which the people have a voice in making, and a right to defend."  John Adams, Novanglus: A History of the Dispute with America, from Its Origin, in 1754, to the Present Time, in Revolutionary Writings of John Adams (C. Bradley Thompson ed. 2000) (emphasis in original).  Allowing any person, or unelected commission of six, to be "bound by no law or limitation but his own will" defies the will of the people.  Id.

The importance of having the State's highest court resolve the significant legal issues presented by the petitioners warrants the exercise of this court's constitutional authority to hear this case as an original action.  See Wis. Const. Art. VII, § 3.  "The purity and integrity of elections is a matter of such prime importance, and affects so many important interests, that the courts ought never to hesitate, when the opportunity is offered, to test them by the strictest legal standards."  State v. Conness, 106 Wis. 425, 82 N.W. 288, 289 (1900).  While the court reserves this exercise of its jurisdiction for those original actions of statewide significance, it is beyond dispute that "[e]lections are the foundation of American government and their integrity is of such monumental importance that any threat to their validity should trigger not only our concern but our prompt action."  State ex rel. Zignego v. Wis. Elec. Comm'n, 2020AP123-W (S. Ct. Order issued June 1, 2020 (Rebecca Grassl Bradley, J., dissenting)).

The majority notes that an action "may be filed by an aggrieved candidate in circuit court. Wis. Stat. § 9.01(6)."  Justice Hagedorn goes so far as to suggest that § 9.01 "constitutes the 'exclusive judicial remedy' applicable to this claim."  No statute, however, can circumscribe the

constitutional jurisdiction of the Wisconsin Supreme Court to hear this (or any) case as an original action.  "The Wisconsin Constitution IS the law—and it reigns supreme over any statute." Wisconsin Legislature v. Palm, 391 Wis. 2d 497, ¶67 n.3 (Rebecca Grassl Bradley, J., concurring).  "The Constitution's supremacy over legislation bears repeating:  'the Constitution is to be considered in court as a paramount law' and 'a law repugnant to the Constitution is void, and . . . courts, as well as other departments, are bound by that instrument.'  See Marbury [v. Madison], 5 U.S. (1 Cranch) [137] at 178, 180 [1803])."  Mayo v. Wis. Injured Patients and Families Comp. Fund, 2018 WI 78, ¶91, 383 Wis. 2d 1, 914 N.W.2d 678 (Rebecca Grassl Bradley, J., concurring).  Wisconsin Statute § 9.01 is compatible with the constitution.  While it provides an avenue for aggrieved candidates to pursue an appeal to a circuit court after completion of the recount determination, it does not foreclose the candidate's option to ask this court to grant his petition for an original action.  Any contrary reading would render the law in conflict with the constitution and therefore void.  Under the constitutional-doubt canon of statutory interpretation, "[a] statute should be interpreted in a way that avoids placing its constitutionality in doubt."  Antonin Scalia & Brian A. Garner, Reading Law:  The Interpretation of Legal Texts 247.  See also Wisconsin Legislature v. Palm, 391 Wis. 2d 497, ¶31 ("[W]e disfavor statutory interpretations that unnecessarily raise serious constitutional questions about the statute under consideration.").

    While some will either celebrate or decry the court's inaction based upon the impact on their preferred candidate, the importance of this case transcends the results of this particular election.  "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy."  Purcell v. Gonzalez, 549 U.S. 1, 4 (2006).  The majority takes a pass on resolving the important questions presented by the petitioners in this case, thereby undermining the public's confidence in the integrity of Wisconsin's electoral processes not only during this election, but in every future election.  Alarmingly, the court's inaction also signals to the WEC that it may continue to administer elections in whatever manner it chooses, knowing that the court has repeatedly declined to scrutinize its conduct.  Regardless of whether the WEC's actions affect election outcomes, the integrity of every election will be tarnished by the public's mistrust until the Wisconsin Supreme Court accepts its responsibility to declare what the election laws say.  "Only . . . the supreme court can provide the necessary clarity to guide all election officials in this state on how to conform their procedures to the law" going forward.  State ex rel. Zignego v. Wis. Elec. Comm'n, 2020AP123-W (S. Ct. Order issued January 13, 2020 (Rebecca Grassl Bradley, J., dissenting)).

    The majority's recent pattern of deferring or altogether dodging decisions on election law controversies[4] cannot be reconciled with its lengthy history of promptly hearing cases involving

---

[4] Hawkins v. Wis. Elec. Comm'n, 2020 WI 75, ¶¶84, 86, 393 Wis. 2d 629, 948 N.W.2d 877 (Rebecca Grassl Bradley, J., dissenting) ("The majority upholds the Wisconsin Elections Commission's violation of Wisconsin law, which irrefutably entitles Howie Hawkins and Angela Walker to appear on Wisconsin's November 2020 general election ballot as candidates for President and Vice President of the United States . . . .  In dodging its responsibility to uphold the rule of law, the majority ratifies a grave threat to our republic, suppresses the votes of

voting rights and election processes under the court's original jurisdiction or by bypassing the court of appeals.[5] While the United States Supreme Court has recognized that "a state indisputably has a compelling interest in preserving the integrity of its election process[,]" Burson v. Freeman, 504 U.S. 191, 199 (1992), the majority of this court repeatedly demonstrates a lack of any interest in doing so, offering purely discretionary excuses or no reasoning at all.  This year, the majority in Hawkins v. Wis. Elec. Comm'n declined to hear a claim that the WEC unlawfully kept the Green Party's candidates for President and Vice President off of the ballot, ostensibly because the majority felt the candidates' claims were brought "too late."[6]  But when litigants have filed cases involving voting rights well in advance of Wisconsin elections, the court has "take[n] a pass,"

---

Wisconsin citizens, irreparably impairs the integrity of Wisconsin's elections, and undermines the confidence of American citizens in the outcome of a presidential election"); State ex rel. Zignego v. Wis. Elec. Comm'n, 2020AP123-W (S. Ct. Order issued January 13, 2020 (Rebecca Grassl Bradley, J., dissenting)) ("In declining to hear a case presenting issues of first impression immediately impacting the voting rights of Wisconsin citizens and the integrity of impending elections, the court shirks its institutional responsibilities to the people who elected us to make important decisions, thereby signaling the issues are not worthy of our prompt attention."); State ex rel. Zignego v. Wis. Elec. Comm'n, 2020AP123-W (S. Ct. Order issued June 1, 2020 (Rebecca Grassl Bradley, J., dissenting)) ("A majority of this court disregards its duty to the people we serve by inexplicably delaying the final resolution of a critically important and time-sensitive case involving voting rights and the integrity of Wisconsin's elections.").

[5] See, e.g., NAACP v. Walker, 2014 WI 98, ¶¶1, 18, 357 Wis. 2d 469, 851 N.W.2d 262 (2014) (this court took jurisdiction of appeal on its own motion in order to decide constitutionality of the voter identification act enjoined by lower court); Elections Bd. of Wisconsin v. Wisconsin Mfrs. & Commerce, 227 Wis. 2d 650, 653, 670, 597 N.W.2d 721 (1999) (this court granted bypass petition to decide whether express advocacy advertisements advocating the defeat or reelection of incumbent legislators violated campaign finance laws, in absence of cases interpreting applicable statutes); State ex rel. La Follette v. Democratic Party of United States, 93 Wis. 2d 473, 480-81, 287 N.W.2d 519 (1980) (original action deciding whether Wisconsin open primary system was binding on national political parties or infringed their freedom of association), rev'd, Democratic Party of United States v. Wisconsin ex rel. La Follette, 450 U.S. 107 (1981); State ex rel. Reynolds v. Zimmerman, 22 Wis. 2d 544, 548, 126 N.W.2d 551 (1964) (original action seeking to enjoin state from holding elections pursuant to legislative apportionment alleged to violate constitutional rights); State ex rel. Broughton v. Zimmerman, 261 Wis. 398, 400, 52 N.W.2d 903 (1952) (original action to restrain the state from holding elections based on districts as defined prior to enactment of reapportionment law), overruled in part by Reynolds, 22 Wis. 2d 544; State ex rel. Conlin v. Zimmerman, 245 Wis. 475, 476, 15 N.W.2d 32 (1944) (original action to interpret statutes in determining whether candidate for Governor timely filed papers to appear on primary election ballot).

[6] Hawkins v. Wis. Elec. Comm'n, 2020 WI 75, ¶5, 393 Wis. 2d 629, 948 N.W.2d 877 (denying the petition for leave to commence an original action).

thereby "irreparably den[ying] the citizens of Wisconsin a timely resolution of issues that impact voter rights and the integrity of our elections." State ex rel. Zignego v. Wis. Elec. Comm'n, 2020AP123-W (S. Ct. Order issued January 13, 2020 (Rebecca Grassl Bradley, J., dissenting)). Having neglected to identify any principles guiding its decisions, the majority leaves Wisconsin's voters and candidates guessing as to when, exactly, they should file their cases in order for the majority to deem them worthy of the court's attention.

The consequence of the majority operating by whim rather than rule is to leave the interpretation of multiple election laws in flux—or worse yet, in the hands of the unelected members of the WEC. "To be free is to live under a government by law . . . . Miserable is the condition of individuals, danger is the condition of the state, if there is no certain law, or, which is the same thing, no certain administration of the law . . . ." Judgment in Rex vs. Shipley, 21 St Tr 847 (K.B. 1784) (Lord Mansfield presiding). The Wisconsin Supreme Court has an institutional responsibility to decide important questions of law—not for the benefit of particular litigants, but for citizens we were elected to serve. Justice for the people of Wisconsin means ensuring the integrity of Wisconsin's elections. A majority of this court disregards its duty to the people of Wisconsin, denying them justice.

"No aspect of the judicial power is more fundamental than the judiciary's exclusive responsibility to exercise judgment in cases and controversies arising under the law." Gabler v. Crime Victims Rights Bd., 2017 WI 67, ¶37, 376 Wis. 2d 147, 897 N.W.2d 384. Once again, a majority of this court instead "chooses to sit idly by,"[7] in a nationally important and time-sensitive case involving voting rights and the integrity of Wisconsin's elections, depriving the people of Wisconsin of answers to questions of statutory law that only the state's highest court may resolve. The majority's "refusal to hear this case shows insufficient respect to the State of [Wisconsin], its voters,"[8] and its elections.

"This great source of free government, popular election, should be perfectly pure." Alexander Hamilton, Speech at New York Ratifying Convention (June 21, 1788), in Debates on the Federal Constitution 257 (J. Elliot ed. 1876). The majority's failure to act leaves an indelible stain on our most recent election. It will also profoundly and perhaps irreparably impact all local, statewide, and national elections going forward, with grave consequence to the State of Wisconsin and significant harm to the rule of law. Petitioners assert troubling allegations of noncompliance with Wisconsin's election laws by public officials on whom the voters rely to ensure free and fair elections. It is not "impulse"[9] but our solemn judicial duty to say what the law is that compels the exercise of our original jurisdiction in this case. The majority's failure to embrace its duty (or even

---

[7] United Student Aid Funds, Inc. v. Bible, 136 S. Ct. 1607, 1609 (2016) (Thomas, J., dissenting from the denial of certiorari).

[8] County of Maricopa, Arizona v. Lopez-Valenzuela, 135 S. Ct. 2046, 2046 (2015) (Thomas, J., dissenting from the denial of certiorari).

[9] See Justice Hagedorn's concurrence.

an impulse) to decide this case risks perpetuating violations of the law by those entrusted to follow it.  I dissent.

     I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK and Justice ANNETTE KINGSLAND ZIEGLER join this dissent.

---

                                      Sheila T. Reiff
                                      Clerk of Supreme Court

Address list continued:

Andrew A. Jones
Andrew J. Kramer
James F. Cirincione
Hansen Reynolds LLC
301 N. Broadway St., Ste. 400
Milwaukee, WI 53202-2660

John W. McCauley
Hansen Reynolds LLC
10 E. Doty St. Ste 800
Madison, WI 53703

Jeffrey A. Mandell
Rachel E. Snyder
Stafford Rosenbaum LLP
222 W. Washington Avenue
Post Office Box 1784
Madison, WI 53701

Daniel R. Suhr
Liberty Justice Center
190 LaSalle St., Ste. 1500
Chicago, IL 60603

Matthew W. O'Neill
Fox, O'Neill & Shannon, S.C.
622 North Water Street, Suite 500
Milwaukee, WI 53202

Charles G. Curtis
Michelle M. Umberger
Sopen B. Shah
Will M. Conley
Perkins Coie LLP
One East Main St., Suite 201
Madison, WI 53703

Justin A. Nelson
Stephen Shackelford Jr.
Davida Brook
Susman Godfrey LLP
1000 Louisiana Street
Suite 5100
Houston, TX 77002

Paul Smith
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005

David S. Lesser
Jamie Dycus
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Page 10
December 3, 2020
No. 2020AP1971-OA     Trump v. Evers

Marc E. Elias                           Seth P. Waxman
John Devaney                            Wilmer Cutler Pickering Hale and Dorr LLP
Zachary J. Newkirk                      1875 Pennsylvania Ave., NW
Perkins Coie LLP                        Washington, DC 20006
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005