---

DONALD J. TRUMP, MICHAEL R. PENCE,
AND DONALD J. TRUMP FOR PRESIDENT,

        Petitioners,

    v.

ANTHONY S. EVERS, Governor, in his
official capacity, the WISCONSIN
ELECTIONS COMMISSION, ANN S.
JACOBS, Chair, in her official capacity,
SCOTT MCDONELL, Dane County Clerk,
in his official capacity, ALAN A. ARNSTEN,
Member, Dane County Board of Canvassers,
in his official capacity, JOYCE WALDROP,
Member, Dane County Board of Canvassers,
in her official capacity, GEORGE L.
CHRISTENSON, Milwaukee County Clerk,
in his official capacity, TIMOTHY H.
POSNANSKI, Member, Milwaukee Board of
Canvassers, in his official capacity, RICHARD
BASS, Member, Milwaukee County Board
of Canvassers, in his official capacity and
DAWN MARTIN, Member, Milwaukee
Board of Canvassers, in her official capacity,

        Respondents.

---

PETITION FOR ORIGINAL ACTION
IN THE WISCONSIN SUPREME COURT

---

**RESPONSE OF RESPONDENTS
WISCONSIN ELECTIONS COMMISSION AND
COMMISSIONER ANN JACOBS**

---

JOSHUA L. KAUL
Attorney General of Wisconsin

COLIN R. STROUD
Assistant Attorney General
State Bar #1119457

THOMAS C. BELLAVIA
Assistant Attorney General
State Bar #1030182

COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

Attorneys for Wisconsin Elections
Commission and Commissioner
Ann Jacobs

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 261-9224 (CRS)
(608) 266-8690 (TCB)
(608) 264-6219 (CTR)
(608) 294-2907 (Fax)
stroudsr@doj.state.wi.us
bellaviatc@doj.state.wi.us
rothct@doj.state.wi.us

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................1

ARGUMENT .........................................................................2

I. This case is an inappropriate candidate for this Court's original jurisdiction because Petitioners' exclusive remedy is the recount appeal mechanism under Wis. Stat. § 9.01(6). ...........................................2

    A. The exclusive remedy to pursue a recount appeal is Wis. Stat. § 9.01(6). ................................................3

    B. Federal law anticipates and incorporates such recount proceedings, and the Governor's signing of a certification of a determination is no hindrance to those proceedings. .....................................6

II. This case is an inappropriate candidate for this Court's original action jurisdiction because a petition for recount cannot achieve the exclusion of ballots based on belated legal challenges to how election officials conducted the election. ..................................... 10

    A. Laches bars Petitioners' effort to use challenges to officials' construction of voting statutes as a way to selectively disenfranchise voters. .............................. 12

    B. Constitutional due process bars Petitioners' efforts to invalidate votes where the voters relied in good faith on officials' voting process. ................................................... 19

III. The Petition is an inappropriate candidate for this Court's original action jurisdiction because the remedy Petitioners seek would violate the equal protection rights of voters in the recounted counties. ............................................. 22

CONCLUSION ........................................................................ 26

# TABLE OF AUTHORITIES

**Cases**

*Baber v. Dunlap*,
349 F. Supp. 3d 68 (D. Me. 2018) ....................................... 21

*Bennett v. Yoshina*,
140 F.3d 1218 (9th Cir. 1998) ............................................ 20

*Blankenship v. Blackwell*,
103 Ohio St. 3d 567, 817 N.E.2d 382 (2004) ..................... 18

*Bush v. Gore*,
531 U.S. 98 (2000) ........................................... 19, 22, 23, 25

*Carlson v. Oconto Cty. Bd. of Canvassers*,
2001 WI App 20, 240 Wis. 2d 438, 623 N.W.2d 195 ........... 3

*Donald J. Trump for Pres., Inc. v. Boockvar*,
-- F. Supp. 3d --, 2020 WL 6821992 (M.D. Pa. 2020) ........ 19

*Ford v. Tennessee Senate*,
No. 06-2031, 2006 WL 8435145
(W.D. Tenn. Feb. 1, 2006) .................................................. 21

*Fulani v. Hogsett*,
917 F.2d 1028 (7th Cir. 1990) ................................ 13, 16, 17

*Griffin v. Burns*,
570 F.2d 1065 (1st Cir. 1978) ...................................... 20, 21

*Hawkins v. Wisconsin Elections Comm'n*,
2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877................. 17

*Hendon v. N.C. State Bd. of Elections*,
710 F.2d 177 (1983) ........................................................... 13

*Hunter v. Hamilton Cty. Bd. of Elections*,
635 F.3d 219 (6th Cir. 2011) ............................................. 25

*In re Price*,
191 Wis. 17, 210 N.W. 844 (1926) ............................... 12, 17

*Kelly v. Pennsylvania*,
No. 68 MAP 2020, 2020 WL 7018314
(Pa. Nov. 28, 2020) ............................................................ 17

*League of Women Voters of Ohio v. Brunner*,
548 F.3d 463 (6th Cir. 2008) ................................ 25

*Lee v. Paulson*,
2001 WI App 19, 241 Wis. 2d 38, 623 N.W.2d 577 ........... 11

*Liddy v. Lamone*,
398 Md. 233, 919 A.2d 1276 (2007) ................................. 18

*Marsh v. Holm*,
238 Minn. 25, 55 N.W.2d 302 (1952) ................................ 18

*Northeast Ohio Coalition for Homeless v. Husted,*
696 F.3d 580 (6th Cir. 2012) ...................................... 21, 22

*Wright v. Sumter Cty. Bd. of Elections & Registration*,
361 F. Supp. 3d 1296, 1301 (M.D. Ga. 2018) .............. 20–21

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) ................................................................ 19

*Republican Nat. Comm. v. Democratic Nat. Comm.*,
140 S. Ct. 1205 (2020) ....................................................... 16

*Reynolds v. Sims*,
377 U.S. 533 (1964) ............................................................ 12

*Roth v. Lafarge School Dist. Bd. of Canvassers*,
2004 WI 6, 268 Wis. 2d 335, 677 N.W.2d 599.................. 18

*Schafer v. Wegner*,
78 Wis. 2d 127, 254 N.W.2d 193 (1977) ........................... 16

*Siskoy v. Walsh*,
22 Wis. 2d 127, 125 N.W.2d 574 (1963) ..................... 3, 7, 8

*Soules v. Kauaians for Nukolii Campaign Comm.*,
849 F.2d 1176 (9th Cir. 1988) .......................................... 12

*State ex rel. Frederick v. Zimmerman*,
254 Wis. 600, 37 N.W.2d 473 (1949) .......................... 18, 19

*State ex rel. Shroble v. Prusener*,
185 Wis. 2d 102, 517 N.W.2d 169 (1994) ........................... 3

*State ex rel. Wren v. Richardson*,
2019 WI 110, 389 Wis. 2d 516, 936 N.W.2d 587............... 12

*United States v. Classic,*
   313 U.S. 299 (1941) ............................................................ 19

*Williams v. Rhodes,*
   393 U.S. 23 (1968) ....................................................... 17, 20

*Wisconsin Small Bus. United, Inc. v. Brennan,*
   2020 WI 69, 393 Wis. 2d 308, 946 N.W.2d 101 ........... 12, 16

**Constitutional Provisions**

U.S. Const., Amendment XII ..................................................... 9

**Statutes**

3 U.S.C. § 6 ............................................................ 6, 7, 8, 9, 10
3 U.S.C. § 7 ...................................................................... 6, 7, 10
3 U.S.C. § 15 ............................................................................... 9
Wis. Stat. § 6.86(1)(ar) ........................................................... 14
Wis. Stat. § 6.86(2)(b) ............................................................ 24
Wis. Stat. § 7.70(5)(b) ................................................... 6, 7, 8, 10
Wis. Stat. § 7.75(1) ....................................................... 6, 7, 10
Wis. Stat. § 9.01 ............................................................ 2, 3, 5, 22
Wis. Stat. § 9.01(6) .................................................... 1, 2, 3, 6
Wis. Stat. § 9.01(6)–(9) ......................................................... 6, 7
Wis. Stat. § 9.01(6)(a) .......................................................... 4, 5
Wis. Stat. § 9.01(6)(b) ............................................................. 4
Wis. Stat. § 9.01(7)(a) ............................................................. 4
Wis. Stat. § 9.01(7)–(8) ......................................................... 4, 5
Wis. Stat. § 9.01(8)(c) ............................................................. 4
Wis. Stat. § 9.01(8)(d) ............................................................. 4
Wis. Stat. § 9.01(9) .................................................................. 4
Wis. Stat. § 9.01(11) ............................................................ 3, 5

**Other Authorities**

27A Am. Jur. 2d <u>Equity</u> § 124 ............................................. 16

# INTRODUCTION

After failing to prevail in the November election for President of the United States, Donald Trump sought a partial recount of two counties, Dane and Milwaukee, where voters had voted particularly heavily for his opponent, Joe Biden. Election officials in those counties duly recounted the votes and confirmed the result, with minor adjustments resulting in a slightly higher margin in his opponent's favor. On November 30, the Chair of the Wisconsin Elections Commission canvassed the results and determined that the recount results were correct.

Wisconsin law, specifically Wis. Stat. § 9.01(6), provides the exclusive remedy to appeal such a determination. The Chair's determination triggered the Trump campaign's right to bring that appeal in circuit court. Instead, the campaign filed this petition for an original action before this Court.

This Court should not accept the petition because it does not meet the criteria for this Court's original jurisdiction. Wisconsin law provides the exclusive remedy for this type of case, and Petitioners must follow that path. Further, the basis for this appeal, four untimely-raised legal disagreements with how election officials applied the election statutes during voting, are not valid reasons to overturn the results of an election where voters relied in good faith on election officials' administration of that election. And specifically in the context of this partial recount and the remedy Petitioners seek here, disenfranchising voters in only these two counties would result in one set of rules being applied to some voters and a different, less strict set applied to other voters, a result prohibited by the U.S. Supreme Court.

# ARGUMENT

**I.**   **This case is an inappropriate candidate for this Court's original jurisdiction because Petitioners' exclusive remedy is the recount appeal mechanism under Wis. Stat. § 9.01(6).**

The Petition does not meet the standard for an original action in the first instance because, as Petitioners recognize, Wis. Stat. § 9.01 provides the exclusive remedy to appeal a recount determination.

As the Petition lays out, Petitioners sought a partial recount for Dane and Milwaukee Counties. After the recount confirmed the original tally and the Chair of the Elections Commission canvassed and certified the results, the Petitioners could appeal that determination to circuit court under Wis. Stat. § 9.01(6). Indeed, their Memorandum acknowledges that that process is their "exclusive remedy." (Mem at 26/27.)

But instead of pursuing that route, they came straight to this Court, arguing either that there was not time to utilize their exclusive remedy (Mem at 27) or potentially that the Governor's signing the certificate of ascertainment was an "attempt to deny Petitioners their right to appeal the determination of the recount" (Petition at 9). Neither argument holds water.

Section 9.01 provides for expedited proceedings and makes no exception for Presidential elections. And federal law anticipates and incorporates such proceedings. The Governor's signing of the certification of ascertainment does nothing to strip a candidate of his or her right to pursue a recount appeal.

Petitioners need to follow their statutory remedy here. This Court's original action jurisdiction is not a mechanism for a litigant to ignore statutorily-required procedures.

### A.  The exclusive remedy to pursue a recount appeal is Wis. Stat. § 9.01(6).

The petition should be denied because Petitioners cannot evade the "exclusive judicial remedy" for litigation arising out of recount proceedings: a judicial review proceeding under Wis. Stat. § 9.01 that begins in the circuit court and then works its way up the appellate ladder. Nowhere does Wis. Stat. § 9.01 allow Petitioners to evade its "exclusive" requirements simply by asking this Court to invoke its original jurisdiction.

As Wis. Stat. § 9.01(11) provides, "[t]his section constitutes the *exclusive judicial remedy* for testing the right to hold an elective office as the result of an alleged irregularity, defect or mistake committed during the voting or canvassing process." *See also Carlson v. Oconto Cty. Bd. of Canvassers*, 2001 WI App 20, ¶ 7, 240 Wis. 2d 438, 623 N.W.2d 195 (describing Wis. Stat. § 9.01 as the "exclusive remedy for any claimed election fraud or irregularity"); *State ex rel. Shroble v. Prusener*, 185 Wis. 2d 102, 111, 517 N.W.2d 169 (1994) (noting legislative intent to "make[ ] the recount appeal procedure the exclusive judicial remedy for testing the right to hold elective office"). "The law is well settled that where a statutory remedy is provided, the procedure prescribed by the statute must be strictly pursued to the exclusion of others." *Siskoy v. Walsh*, 22 Wis. 2d 127, 131, 125 N.W.2d 574 (1963).

The "exclusive judicial remedy" for a recount appeal has two critical aspects that are relevant here.

First, the appeal begins in circuit court, not this Court: "Within 5 business days after completion of the recount determination . . . any candidate, or any elector when for a referendum, aggrieved by the recount *may appeal to circuit court*." Wis. Stat. § 9.01(6)(a). The supreme court's only role is for its chief justice to appoint a circuit judge to hear the appeal, where the underlying election was held in more than one judicial administrative district (as was this one). Wis. Stat. § 9.01(6)(b). After the circuit court finishes the proceedings, any appeal then proceeds to the court of appeals. Wis. Stat. § 9.01(9).

Second, the "exclusive judicial remedy" entails a specific set of statutory procedures set forth in Wis. Stat. § 9.01(7)–(8). One crucial procedure relates to the record: the reviewing circuit court must "issue an order directing each affected county, municipal clerk, or board, and the commission, to transmit immediately all ballots, papers and records affecting the appeal to the clerk of court or to impound and secure such ballots, papers and records, or both." Wis. Stat. § 9.01(7)(a).

Another key provision limits the scope of review to evidence presented and objections made during the recount: "The court may not receive evidence not offered to the board of canvassers" and "[a] party who fails to object or fails to offer evidence of a defect or irregularity during the recount waives the right to object or offer evidence before the court," with narrow exceptions. Wis. Stat. § 9.01(8)(c). Similarly, Wis. Stat. § 9.01(8)(d) creates a deferential standard of review for factual findings: "If the determination depends on any fact found by the board of canvassers . . . , the court may not substitute its judgment for that of the board of canvassers or the chairperson or designee as to the weight of the evidence on any disputed finding of fact."

Petitioners essentially ask this Court to nullify *all* these statutory requirements by accepting this matter as an original action. They ask this Court to skip the statutory requirement that recount appeals begin in the circuit court. Wis. Stat. § 9.01(6)(a). And they ask this Court to let them ignore all the important statutory procedures regarding the record and scope of review specified in Wis. Stat. § 9.01(7)–(8). It is difficult to see what remains of Wis. Stat. § 9.01's "exclusive judicial remedy" if it can be evaded as easily as this.

Respondents are not aware of any authority that allows this Court to ignore exclusive statutory review mechanisms using either its constitutional original jurisdiction under Article VII, § 3, or its general superintending power over the lower courts. Indeed, the Legislature's power to create exclusive judicial remedies would be eviscerated if someone could avoid them simply by initiating an original action like this one.[1]

At bottom, ignoring every one of Wis. Stat. § 9.01's requirements by initiating an original action—as Petitioners request here—is clearly not what the Legislature envisioned when it created "the *exclusive judicial remedy* for testing the right to hold an elective office as the result of an alleged irregularity, defect or mistake committed during the voting or canvassing process." Wis. Stat. § 9.01(11). The petition should be dismissed on that basis, alone.

---

[1] Even if this Court concluded that it could ignore Wis. Stat. § 9.01's mandate that recount appeals begin in circuit court, it should still adopt the procedures set out in Wis. Stat. § 9.01(7)–(8). Those procedures are designed to ensure the orderly review of recount disputes like this one. Without them, the parties will be left with no clear set of rules for resolving what may prove to be a complicated set of legal and factual election disputes.

## B. Federal law anticipates and incorporates such recount proceedings, and the Governor's signing of a certification of a determination is no hindrance to those proceedings.

The Petitioners assert that in order for an orderly recount appeal process to take place in the 2020 presidential election, this Court must order the Governor to withdraw the certificate of ascertainment of Wisconsin's electors that he has already issued and transmitted to the United States Archivist pursuant to Wis. Stat. § 7.70(5)(b) and 3 U.S.C. § 6, and that the Court must enjoin both the Wisconsin Elections Commission and the Governor from certifying any electors until after Petitioners' recount appeal is completed. (Petition at 25–26; Mem. at 5.) Petitioners also assert that the normal recount appeal process under Wis. Stat. § 9.01(6)–(9) cannot be followed in this election because both state and federal law require Wisconsin to certify a slate of electors in time for them to cast their electoral votes on December 14, 2020. Pet. Mem. at 26–27. *See also* Wis. Stat. § 7.75(1); 3 U.S.C. § 7.

Those assertions are wrong. There is no reason to invalidate the existing certificate of ascertainment or to enjoin the Commissioner or the Governor from certifying electors, because the issuance of a certificate of ascertainment does not impair the Petitioners' ability to obtain a meaningful recount appeal under Wis. Stat. § 9.01(6). There is also no necessity for their recount appeal to bypass the procedural requirements in Wis. Stat. § 9.01(6)–(9) because, contrary to their suggestion, neither federal nor state law requires their recount appeal to be completed before December 14.

The recount appeal process allows a recount petitioner to obtain meaningful judicial review of any procedural irregularities in the administration of an election that have

been alleged in a recount petition. *See* Wis. Stat. § 9.01(6)–(9). The availability of such review is not affected by the issuance of a certificate of ascertainment prior to the completion of such litigation.

In a Presidential election, once a certificate of ascertainment has been prepared showing the results of the canvass of the Presidential election and the names of the chosen electors, the Governor is required to sign the certificate, affix the great seal of the state to it, and send it to the U.S. administrator of general services. Wis. Stat. § 7.70(5)(b); 3 U.S.C. § 6. In addition, the Governor must prepare six duplicate originals of the certificate of ascertainment and deliver them to one of the chosen presidential electors. *Id.* Those steps must be completed on or before the first Monday after the 2nd Wednesday in December (this year, December 14), which is the federally prescribed date on which the electors must convene and cast their electoral votes. *Id.* That statutory deadline ensures that Wisconsin's electors will receive their certificates from the Governor in time for them to perform their duty to convene and cast their electoral votes on December 14. *See* Wis. Stat. § 7.75(1); 3 U.S.C. § 7. The procedure under Wis. Stat. § 7.70(5)(b) exactly parallels the first part of the corresponding federal statute, 3 U.S.C. § 6, with the addition that the federal provision requires a state governor to transmit the certificate of ascertainment not only on or before the first Monday after the 2nd Wednesday in December, but also "as soon as practicable" after the identity of the chosen electors has been ascertained through the state canvassing process. 3 U.S.C. § 6.

The second part of 3 U.S.C. § 6, however, provides an additional procedure for reporting the outcome of any election contest that may take place in state court. Specifically, if there shall have been any final determination

of a proceeding under state law for contesting the appointment of any or all of the state's electors, then the executive of the state is required, as soon as practicable, to send a "certificate of such determination" to the U.S. Archivist. 3 U.S.C. § 6. Then, prior to the first meeting of Congress thereafter, the U.S. Archivist must transmit copies of the certificate of determination to each House of Congress. *Id.*

The two-part structure of 3 U.S.C. § 6 thus provides that a state governor, in some circumstances, might issue both a certificate of "ascertainment," which is based on the results of state election canvassing, and a certificate of "determination" that reports the final outcome of any state election contest proceeding that may have been subsequently completed. The plain language of 3 U.S.C. § 6 anticipates the possibility of more than one certificate, because it requires that "copies in full of *each and every such certificate*" received by the Archivist must be transmitted to the two houses of Congress. 3 U.S.C. § 6 (emphasis added).

In addition, the language of 3 U.S.C. § 6 also impliedly indicates that a certificate of determination may be issued after the electors have convened and cast their electoral votes on the first Monday after the 2nd Wednesday in December. The certificate of ascertainment, which is expressly required to be issued on or before that date, is also required to be sent to the electors themselves—presumably so that they have their certificates when they convene and vote on that date. *See* 3 U.S.C. 6; Wis. Stat. § 7.70(5)(b). The certificate of determination, in contrast, is not required to be sent to the electors themselves, but rather is only required to be sent to the U.S. Archivist, who in turn must send it to Congress. *See* 3 U.S.C. § 6. That procedure reflects the fact that a certificate of determination may be issued after the electors have already convened and voted. Therefore, even if

a state court reaches a final decision on an election contest after the originally certified electors have convened and voted, the certificate of determination ensures that Congress will be advised of the state court decision when it convenes in joint session on January 6, 2021, for the purpose of counting the electoral votes from all the states. *See* U.S. Const., Amendment XII; 3 U.S.C. § 15.

A fairly recent and significant historical precedent illustrates the different functions a certificate of ascertainment and a certificate of determination under 3 U.S.C. § 6. On November 26, 2000, Florida Governor Jeb Bush issued a certificate of ascertainment based on the initial certification of the election by the Florida Elections Canvassing Commission. Later, on December 13, 2000, Governor Bush issued a second Certificate of Final Determination of Contests Concerning the Appointment of Presidential Electors, which conveyed the final outcome of litigation in multiple courts contesting the initial election outcome that had been reflected in the original certificate of ascertainment. Therefore, when Congress met in joint session on January 6, 2001, it had the benefit of both certificates from Florida.[2]

Similarly, here, Wisconsin has already issued issue a certificate of ascertainment based on the initial state canvass of the presidential election, and would be required by 3 U.S.C. § 6 to submit a certificate of determination based on the subsequent outcome of a recount appeal in the

---

[2] An archived version of the two Florida 2000 certificates can be found at https://web.archive.org/web/20041203233758/http://www.archives.gov/federal_register/electoral_college/2000_ce rtificates/ascertainment_florida.html.

Wisconsin state courts. Both certificates would then be presented to Congress for its ultimate decision.

For similar reasons, it is not necessary to super-expedite state court proceedings in order to complete them by December 14. Petitioners assert that if this Court does not immediately take this case, Wisconsin is at serious risk of having no representation in the Electoral College on December 14. (Pet. Mem. at 27.) That is simply false. Under both 7.70(5)(b) and 3 U.S.C. § 6, the Governor must issue a certificate of ascertainment to one slate of electors on or before that date. That slate of electors then must convene and vote on December 14. *See* Wis. Stat. § 7.75(1); 3 U.S.C. § 7. As long as these state and federal statutes are followed, there is no possibility that Wisconsin could end up without representation in the electoral college.

The only way that unlawful and completely unacceptable outcome could happen would be if this Court were to grant the Petitioners' request to enjoin the Governor from certifying a slate of electors by December 14, as required by both Wis. Stat. § 7.70(5)(b) and 3 U.S.C. § 6. As long as the Court does not interfere in the way requested by the Petitioners, there is zero risk that Wisconsin will have no electoral votes on December 14. The procedure prescribed by Congress accommodates Petitioners' right to a meaningful recount appeal.

II. **This case is an inappropriate candidate for this Court's original action jurisdiction because a petition for recount cannot achieve the exclusion of ballots based on belated legal challenges to how election officials conducted the election.**

The Petition is also an inappropriate candidate for this Court's original action jurisdiction because Petitioners' disagreement with the recount determination is based

entirely on legal disagreements with how election officials interpreted the voting laws in preparing for and carrying out the election. These challenges come too late and would unconstitutionally punish voters who relied in good faith on election officials' guidance.

Petitioners complain that people applied to absentee vote using form EL-122[3], a form created by the Elections Commission and long in use[4]; that election officials relied on longstanding advice from the Elections Commission on correcting witness addresses (Memorandum at p.15 n.6); that local officials failed to take unspecified steps to ensure that voters who had self-identified as "indefinitely confined" had done so in compliance with the law; and that Dane County should not have collected absentee ballots to assist voters and should instead have required them to use U.S. Mail.[5] Petitioners were aware that officials were applying the laws in each of these ways prior to the election.

Such disagreements cannot form the basis of a recount appeal, especially where the issues were known to the campaign prior to the election and where voters relied in

---

[3] https://elections.wi.gov/forms/el-122.

[4] While this Response does not undertake to explain the many flaws in Petitioners' understanding of the voting laws, their dislike of EL-122 is a good example. Nothing in Wisconsin's election law requires a voter to request an absentee ballot on a separate piece of paper rather than using the same paper used as a ballot envelope. The case they cite, *Lee v. Paulson*, 2001 WI App 19, 241 Wis. 2d 38, 623 N.W.2d 577, has nothing to do with this situation: that case dealt with voters who had made no written request.

[5] Petitioners assert that the parks where ballots were collected were not "ballot sites." (Pet. 60.) This is simply incorrect; voters were dropping off absentee ballots, not voting.

good faith on election officials' administration of the election. Laches bars these claims because Petitioners could have challenged them before the election occurred and in time for the people of Wisconsin to adjust. Due process principles also bar the exclusion of ballots as Petitioners request because it would deprive voters of their right to vote when they reasonably relied on election officials' administration of the election.

### A. Laches bars Petitioners' effort to use challenges to officials' construction of voting statutes as a way to selectively disenfranchise voters.

Laches is an equitable defense premised on the simple proposition that "equity aids the vigilant, and not those who sleep on their rights to the detriment of the opposing party." *State ex rel. Wren v. Richardson*, 2019 WI 110, ¶ 14, 389 Wis. 2d 516, 936 N.W.2d 587 (internal quotations omitted); *see also Reynolds v. Sims*, 377 U.S. 533, 585 (1964) (noting that court called upon to grant relief in election cases "should act and rely upon general equitable principles"). In Wisconsin, laches may properly bar a party's claims where the balance of equities favors its application and where the party asserting laches establishes three elements: (1) unreasonable delay in bringing a claim; (2) the defending party's lack of knowledge that the first party would raise the claim; and (3) prejudice to the defending party caused by the delay. *Wisconsin Small Bus. United, Inc. v. Brennan*, 2020 WI 69, ¶ 12, 393 Wis. 2d 308, 946 N.W.2d 101.

Laches plays an important role in, and is routinely applied to, election-related matters. *E.g., In re Price*, 191 Wis. 17, 210 N.W. 844, 845–46 (1926) (finding petitioner challenging county canvass "guilty of laches" and noting that delay in seeking relief left inadequate time to remedy alleged defect without disruption to election process); *Soules*

*v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1180 (9th Cir. 1988) (noting that laches may bar post-election challenges "in order to create an appropriate incentive for parties to bring challenges to state election procedures when the defects are most easily cured"). As one court explained, the enforcement of laches in the election context prevents perverse, undemocratic outcomes: "[F]ailure to require pre-election adjudication would permit, if not encourage, parties who could raise a claim to lay by and gamble upon receiving a favorable decision of the electorate and then, upon losing seek to undo the ballot results in a court action. *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (1983) (internal quotations omitted); *see also*

As set out above, the four legal challenges raised by Petitioners turn entirely on state election procedures that could have been challenged months or, in some cases years, ago. Petitioners' challenges focus on: (1) the requirement that in-person absentee voters request a ballot by written application (Pet. 20); (2) the counting of absentee ballots accompanied by a witness certification that election officials wrote on (Pet. 21); (3) absentee voting by electors who designated themselves as "indefinitely confined" after March 25, 2020 (Pet. 23); and (4) the collection of absentee ballots at "democracy in the park" events in Dane County (Pet. 26).

Petitioners' belated claims regarding these issues satisfy each and every element for applying laches.

First, Petitioners unreasonably delayed in bringing these claims. "In the context of elections, . . . any claim against a state electoral procedure must be expressed expeditiously." *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990). Here, Petitioners can offer no excuse that would justify failing to present *before* the election their claims, premised as they are on procedures established *before* the

election to carry out the election in accordance with Wisconsin law. Petitioners waited to challenge widely known procedures until after millions of voters cast their ballots in reliance on those procedures. That delay is unreasonable under both the law and common sense.

To understand the extent Petitioners' lack of diligence, consider each challenge in turn. With regard to requesting an absentee ballot by written application under Wis. Stat. § 6.86(1)(ar), although Petitioners allege that officials in Dane and Milwaukee counties "did not require [in-person absentee] voters to submit a written application," their true contention is that the application method those officials used was insufficient. (Pet. 20.) What Petitioners do not mention is that it has long been apparent that the Commission has advised election officials that the combined absentee certificate envelope/application can be used to satisfy the application requirement for in-person absentee voters. *See* Wisconsin Elections Commission, <u>Form EL-122 Official Absentee Ballot Application/Certification</u> (revised Aug. 2020) (available at https://elections.wi.gov/forms/el-122). As one example, the Commission published guidance in January 2016 advising that, for in-person absentee voters, "the combination application/certification certificate envelope will suffice as the absentee application." *See* Wisconsin Election Commission, <u>Overview of Absentee Voting Rule</u> at 11 (Jan. 26, 2016) (available at https://elections.wi.gov/publications/manuals/absentee-voting-overview).

Regarding the propriety of clerks filling in missing address information for absentee ballot witness certificates, the Commission's guidance to local election officials has been in place for over four years. *Compare* Wisconsin Elections Commission, *Am. Memo. Re Absentee Certificate Envelopes*, dated Oct. 18, 2016 (available at https://elections.wi.gov/node/4188) *with* Wisconsin Elections Commission,

*Memo. Re Spoiling Absentee Ballot Guidance*, dated Oct. 19, 2020 (available at https://elections.wi.gov/node/7190). Again, this issue could have been ironed out *years* before the 2020 general election, without any risk of disenfranchising voters who already cast their ballots in reliance on the Commission's advice.

As for Petitioners' challenge to voters who claimed to be "indefinitely confined," that issue was litigated almost *eight months* ago. On March 27, 2020, Mark Jefferson and the Republican Party of Wisconsin filed a petition for an original action with this Court to address the issue. *See* Pet. for Original Action, date March 27, 2020, Supreme Court of Wisconsin, No. 2020AP000557-OA. This Court reviewed the Commission guidance on indefinite confinement to local officials and concluded that it "provides the clarification on the purpose and proper use of the indefinitely confined status that is required at this time." (Pet.-App. at 236 (Supreme Court March 31, 2020 Order).) And it also enjoined the Dane County clerk from dispensing his advice about indefinite confinement during the Governor's Safer at Home emergency order. (Pet.-App. at 236-237 (Supreme Court March 31, 2020 Order) (enjoining County Clerk for Dane County from "posting advice . . . inconsistent with . . . WEC guidance" regarding voters claiming indefinitely confined status and finding the WEC guidance "provides the clarification . . . that is required at this time").)

Given that litigation, Petitioners obviously could have pressed this indefinite confinement issue in the many months between when it emerged and the November general election, thus allowing Wisconsin voters to adjust accordingly.

The Petitioners' objections to "democracy in the park" events could, likewise, have been raised well before the November 3 election given that they were widely publicized

in advance and that they concluded on October 3. (Pet.-App. 163-184.) Indeed, the Wisconsin legislature was sufficiently aware of the event that, in the days before the first scheduled event, it sent a letter to the Madison City Clerk asking that she cancel the event.[6] *See* Letter from Misha Tseytlin to Maribeth Witzel-Behl, Sept. 25, 2020 (*available at* https://www.wpr.org/sites/default/files/september_25_2020_letter_to_city_clerk_witzel-behl.pdf).

The second laches requirement—lack of notice to Respondents—is also met here. The Petitioners' failure to present these claims when they would reasonably be expected to do so—that is, before the election—is sufficient to satisfy the second laches element. *See Brennan*, 393 Wis. 2d 308, ¶ 18 n.10 (noting that failure to bring claim within reasonable time supports conclusion that party asserting laches lacked knowledge); *Schafer v. Wegner*, 78 Wis. 2d 127, 133, 254 N.W.2d 193 (1977) (same); *see also* 27A Am. Jur. 2d <u>Equity</u> § 124 (noting that focus of this element is on whether party asserting laches "acted in good faith belief that the right had been abandoned"). In the context of election litigation, where arrangements must be made and procedures put in place well before an election so that electors can effectively exercise their right to vote, it is expected that legal challenges will be presented with sufficient time to adjust course. *See Fulani*, 917 F.2d at 1031 ("[A]ny claim against a state electoral procedure must be expressed expeditiously."); *cf. Republican Nat. Comm. v. Democratic Nat. Comm.*, 140 S. Ct. 1205, 1207 (2020) (observing that the Supreme Court has "repeatedly emphasized" that courts should not alter election rules "on

---

[6] The legislature never pursued any further action to enjoin or otherwise challenge the event.

the eve of an election"). Petitioners, who are no strangers to pre-election litigation, made no such effort here.

Lastly, the prejudice caused by Petitioners' delay is obvious and profound. Petitioners sat on their claims, allowing the Commission and local officials to carry out the state election in accordance with their understanding of the law, allowing millions of Wisconsinites to vote in reliance on those procedures, only to attack those decisions after they became irreversible. *See Fulani*, 917 F.2d at 1031 ("As time passes, the state's interest in proceeding with the election increases in importance as . . . irrevocable decisions are made."). This is precisely the type of prejudice the laches doctrine exists to prevent.

Many courts—including this one—have recognized that impermissible prejudice occurs when a party unreasonably delays in pursuing an election challenge. *See*, e.g.*, Hawkins v. Wisconsin Elections Comm'n*, 2020 WI 75, ¶ 5, 393 Wis. 2d 629, 948 N.W.2d 877 ("[I]t is too late to grant petitioners any form of relief that would be feasible and that would not cause confusion and undue damage to both the Wisconsin electors who want to vote and the other candidates in all of the various races on the general election ballot."); *In re Price*, 191 Wis. 17, 210 N.W. 844, 845–46 (1926) (finding petitioner challenging county canvass "guilty of laches" and noting that delay in seeking relief left inadequate time to remedy alleged defect while complying with election deadlines).[7]

---

[7] *See also Williams v. Rhodes*, 393 U.S. 23, 34–35 (1968) (upholding denial of equitable relief to litigant seeking ballot access, noting that delay in pursuing claim created potential for "serious disruption of election process"); *Kelly v. Pennsylvania*, No. 68 MAP 2020, 2020 WL 7018314, at *1 (Pa. Nov. 28, 2020)

The equities weigh heavily in favor of applying laches here. Nothing less than the right of every Wisconsinite to have their vote for President counted is at stake if Petitioners' requests are granted. It is difficult to imagine an equitable consideration favoring Petitioners that could outweigh so fundamental a right. *See State ex rel. Frederick v. Zimmerman*, 254 Wis. 600, 613, 37 N.W.2d 473 (1949) ("The right of a qualified elector to cast a ballot for the election of a public officer . . . is one of the most important of the rights guaranteed to him by the constitution."); *see also Roth v. Lafarge School Dist. Bd. of Canvassers*, 2004 WI 6, ¶ 19, 268 Wis. 2d 335, 677 N.W.2d 599 ("Wisconsin courts have consistently noted that they do not want to deprive voters of the chance to have their votes counted.").

As the U.S. Supreme Court has recognized, "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy."

---

("[I]t is beyond cavil that Petitioners failed to act with due diligence . . . . Equally clear is the substantial prejudice arising from Petitioners' failure to institute promptly a facial challenge to the mail-in voting statutory scheme, as such inaction would result in the disenfranchisement of millions of Pennsylvania voters."); *Liddy v. Lamone*, 398 Md. 233, 245, 919 A.2d 1276 (2007) (noting in context of challenges to state election procedure claims must be pursued "without unreasonable delay, so as to not cause prejudice to the defendant" and collecting cases); *Blankenship v. Blackwell*, 103 Ohio St. 3d 567, 572–74, 817 N.E.2d 382 (2004) ("If relators had acted more diligently, the Secretary of State would have had more time to defend against relators' claims . . . ."); *Marsh v. Holm*, 238 Minn. 25, 55 N.W.2d 302 (1952) ("One who intends to question the form or contents of an official ballot to be used at state elections must realize that serious delays, complications, and inconvenience must follow any action he may take and that, unless a reasonable valid excuse be presented, . . . he should not be permitted to complain.").

*Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). "If citizens are deprived of th[e] [right to vote], which lies at the very basis of our Democracy, we will soon cease to be a Democracy." *Frederick*, 254 Wis. at 613. One could not shake the public's confidence in our electoral process more vigorously than by allowing unforeseeable post-election legal challenges to nullify an entire state's election for President.

In light of Petitioners' inexcusable delay, equitable considerations must bar the relief Petitioners seek—the categorical disenfranchisement of thousands of Wisconsin voters. *See Donald J. Trump for Pres., Inc. v. Boockvar*, -- F. Supp. 3d --, 2020 WL 6821992, \*1 (M.D. Pa. 2020) ("Plaintiffs ask this Court to disenfranchise almost seven million voters. This Court has been unable to find any case in which a plaintiff sought such a drastic remedy in the contest of an election . . . .").

### B. Constitutional due process bars Petitioners' efforts to invalidate votes where the voters relied in good faith on officials' voting process.

Even if laches did not bar Petitioners' claims, the remedy they seek—the exclusion of hundreds of thousands of absentee ballots—would be unlawful because it would violate Wisconsinites' federal due process rights by retroactively overriding election procedures that those voters relied on.

Once a state legislature has directed that the state's electors are to be appointed by popular election, the people's "right to vote as the legislature has prescribed is fundamental." *Bush*, 531 U.S. at 104 (per curiam). That fundamental right to vote includes "the right of qualified voters within a state to cast their ballots and have them counted." *United States v. Classic*, 313 U.S. 299, 315 (1941).

Thus, the power that Article II vests in the state legislature is necessarily "subject to the limitation that [it] may not be exercised in a way that violates other specific provisions of the Constitution," including provisions that protect the fundamental right to vote. *Williams v. Rhodes*, 393 U.S. 23, 29 (1968). And while Article II unquestionably allows a state legislature to change the method for choosing the state's electors, it cannot make changes in such a manner or under circumstances that would violate the Due Process Clause of the Fourteenth Amendment. So while the Wisconsin Legislature could seek to amend the existing Wisconsin statutes to provide in *future* presidential contests for direct legislative appointment of presidential electors, the guarantee of due process forbids this Court from enforcing the type of post-election rule changes the Petitioners seek. *See Griffin v. Burns*, 570 F.2d 1065, 1079 (1st Cir. 1978) (retroactive invalidation of absentee ballots violated due process).

In general, a due process violation exists where two elements are present: "(1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in the election procedures." *Bennett v. Yoshina*, 140 F.3d 1218, 1227 (9th Cir. 1998). As relevant here, Wisconsin voters who reasonably relied on the established voting procedures that Petitioners only now challenge will be disenfranchised by the thousands, raising serious concerns of a due process violation. This Court should avoid granting a remedy that will create a constitutional violation. *See Wright v. Sumter Cty. Bd. of Elections & Registration*, 361 F. Supp. 3d 1296, 1301 (M.D. Ga. 2018) (declining to adopt remedial redistricting plan proposed by plaintiff, and noting "the obligation of the Court

to ensure that a remedial plan is constitutional"), *aff'd*, No. 18-11510, 2020 WL 6277718 (11th Cir. Oct. 27, 2020); *Baber v. Dunlap*, 349 F. Supp. 3d 68, 77-78 (D. Me. 2018) (observing "a certain degree of irony because the remedy Plaintiffs seek could deprive more than 20,000 voters of what they understood to be a right to be counted with respect to the contest between [two candidates]," and noting that "such a result would [raise equal protection concerns about "valuing one class of voters . . . over another"); *see also Ford v. Tennessee Senate*, No. 06-2031, 2006 WL 8435145, at *14 (W.D. Tenn. Feb. 1, 2006) ("Voters whose right to vote is challenged must be afforded minimal, meaningful due process to include, notice and opportunity to be heard before they can be disenfranchised").

Federal courts have exhibited sensitivity to the reliance interests of voters in considering injunctive relief in response to election challenges. For example, in *Griffin*, the First Circuit held that a Rhode Island Supreme Court decision unexpectedly changed state law after voters had relied on their absentee ballots being counted, and that "due process is implicated where the entire election process including as part thereof the state's administrative and judicial corrective process fails on its face to afford fundamental fairness." 570 F.2d at 1078.

Similarly, in *Northeast Ohio Coalition for Homeless v. Husted*, the Sixth Circuit considered a case in which wrong-precinct and deficient-affirmation provisional ballots were disqualified because of poll-worker error that caused the ballot deficiencies. 696 F.3d 580, 585 (6th Cir. 2012). The court noted that the Due Process Clause protects against "extraordinary voting restrictions that render the voting system fundamentally unfair," *id.* at 597, and concluded that "[t]o disenfranchise citizens whose only error was relying on poll-worker instructions appears to us to be fundamentally

unfair," *id.* at 597. Accordingly, the Sixth Circuit affirmed a preliminary injunction entered by the district court that required ballots cast incorrectly as a result of poll-worker error to be counted. *Id.* at 589-90.

Because Petitioners made no effort to pursue these challenges earlier, thousands of Wisconsinites cast their votes in reliance on the procedures dictated to them by election officials. Widespread disenfranchisement for following the rules does not comport with due process or a healthy democracy.

\* \* \* \* \*

Petitioners say they care about how these laws are applied in future elections (Petition at 24). They can pursue such clarification from the courts through a declaratory judgment action. But they cannot raise them as a way to disenfranchise voters who relied in good faith on election officials' advice.

**III. The Petition is an inappropriate candidate for this Court's original action jurisdiction because the remedy Petitioners seek would violate the equal protection rights of voters in the recounted counties.**

Leaving aside the exclusive recount remedy in Wis. Stat. § 9.01 and Petitioners' unreasonable attempt to disenfranchise voters by waiting to bring these claims until *after* the election, the piecemeal relief they seek would create an equal protection violation of the kind recognized in *Bush v. Gore*, 531 U.S. 98 (2000). In a nutshell, Petitioners ask this Court to invalidate votes cast in Dane in Milwaukee counties but not votes cast in the same manner elsewhere in the state. Counting a vote cast in Green Bay but not one cast in an equivalent way in Madison or Milwaukee would deny Wisconsin voters the equal protection of the law.

In *Bush*, the U.S. Supreme Court reversed a decision of the Florida supreme court in the 2000 general election that, during a recount much like the one here, resulted in "arbitrary and disparate treatment [of] voters in . . . different counties." *Id.* at 107. One kind of "uneven treatment" on which the court frowned was "counties us[ing] varying standards to determine what was a legal vote." *Id.* These county-by-county differences violated the Fourteenth Amendment's requirement that "[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id.* at 104–05. The only way to avoid those problems during a recount would have been to "adopt[ ] . . . statewide standards for determining what is a legal vote." *Id.* at 110.

Petitioners' request to invalidate votes only in Dane and Milwaukee counties would violate these basic equal protection principles recognized in *Bush*. Each category of allegedly "illegal" votes they identify rests either on statewide guidance or on conduct that surely occurred statewide. But Petitioners, presumably for partisan reasons, have picked only two counties in which to invalidate votes.

First, consider Petitioners' assertion that election officials in Dane and Milwaukee should not have considered absentee ballot envelopes to be the necessary written applications. (Pet. ¶¶ 19–20, 29–38.) But WEC's statewide guidance indicates that "[t]here should be a written application for each absentee ballot envelope *except those issued in-person in the clerk's office*." (Pet. App. 195 (emphasis added).) It is therefore almost certainly true that other counties and municipalities across Wisconsin took the same approach as Dane and Milwaukee counties, meaning that Petitioners' legal argument would affect many other absentee votes outside these two counties. But granting

Petitioners their relief would leave such ballots untouched anywhere in Wisconsin *except* Dane and Milwaukee counties, where they would be invalidated.

Second, Petitioners attack absentee ballots in Dane and Milwaukee counties in which election officials filled out missing address information in the witness certification. (Pet. ¶¶ 21–22, 39–45.) Again, however, WEC gave statewide guidance to this effect:

> [C]lerk[s] should attempt to resolve any missing witness address information prior to Election Day if possible, and this can be done through reliable information (personal knowledge, voter registration information, through a phone call with the voter or witness). The witness does not need to appear to add a missing address.

*See* Wisconsin Elections Commission, *Spoiling Absentee Ballot Guidance*, Oct. 19, 2020, *available at* https://elections.wi.gov/node/7190. So, there are surely many more absentee ballots across Wisconsin where election officials filled out missing witness address information; but, again, Petitioners would have all those votes count, unless they were cast in Dane and Milwaukee counties.

Third, Petitioners seek to invalidate ballots cast in Dane and Milwaukee counties by certain voters who claimed indefinite confinement status. (Pet. ¶¶ 23–24, 46–57.) They contend that many such voters were not, in fact, indefinitely confined as defined in Wis. Stat. § 6.86(2)(b). Even if some Wisconsin voters had improperly claimed this status, there is no reason to think they resided only in Dane and Milwaukee counties. Yet Petitioners ask this Court to throw out these votes only in two counties, leaving all others in place.

Finally, Petitioners challenge absentee ballots that were witnessed and dropped off at various parks in Madison

before election day. (Pet. ¶¶ 26, 58–60.) Ballots dropped off at these so-called "Democracy in the Park" locations are not meaningfully different from those deposited in absentee ballot drop boxes that proliferated across Wisconsin to handle the expected surge in absentee ballots.[8]

Invalidating votes in these four categories only in Dane and Milwaukee counties would result in the kind of "arbitrary and disparate treatment [of] voters in . . . different counties" rejected in *Bush*, 531 U.S. at 107. Invalidating, for instance, an absentee ballot cast in Dane or Milwaukee County without a separate written application but not one cast similarly elsewhere would impermissibly result in "uneven treatment" through "varying standards to determine what [is] a legal vote" from county to county. *Id.*; *see also Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 242 (6th Cir. 2011) (citing *Bush* for the proposition that "[s]tatewide equal-protection implications could arise" when equivalently situated votes are counted in some counties but not others); *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008) (a state may not "arbitrarily deny [residents] the right to vote depending on where they live").

The Fourteenth Amendment requires Wisconsin to apply "statewide standards for determining what is a legal vote." *Bush*, 531 U.S. at 110. Because Petitioners' requested relief would instead impose a patchwork of rules that vary depending solely on the county where a voter lives, it would be unconstitutional.

---

[8] *See, e.g.*, https://www.wbay.com/2020/10/10/five-absentee-ballot-drop-boxes-activated-in-green-bay/;
https://www.wisconsinwatch.org/2020/10/wisconsin-absentee-ballot-drop-box-search/.

# CONCLUSION

Respondents Wisconsin Elections Commission and its Chair ask this Court to deny the petition for original jurisdiction.

Dated this 1st day of December 2020.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

COLIN R. STROUD
Assistant Attorney General
State Bar #1119457

THOMAS C. BELLAVIA
Assistant Attorney General
State Bar #1030182

COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

Attorneys for Wisconsin Elections
Commission and Commissioner
Ann Jacobs

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 261-9224 (CRS)
(608) 266-8690 (TCB)
(608) 264-6219 (CTR)
(608) 294-2907 (Fax)
stroudsr@doj.state.wi.us
bellaviatc@doj.state.wi.us
rothct@doj.state.wi.us

# CERTIFICATION

I hereby certify that this response conforms to the rules contained in Wis. Stat. § (Rule) 809.19(8)(b) and (c) for a response produced with a proportional serif font. The length of this response is 7183 words.

Dated this 1st day of December 2020.

COLIN R. STROUD
Assistant Attorney General