# STATE OF WISCONSIN
## *ELECTIONS COMMISSION*

### COMPLAINT FORM

**Please provide the following information about yourself:**

Name: (1) Bartholomew R. Williams; and (2) Jean M. Bury Weymier

Address: ████████████████████████████████████████

Telephone Number ████████████████████████████████████

E-mail ██████████████████████████████████████

#### State of Wisconsin
#### Before the Elections Commission

The Complaint of (1) Bartholomew R. Williams, and (2) Jean M. Bury Weymier

_____, Complainant(s) against

Claire Woodall-Vogg, Executive Director, and Brenda Wood

_____, Respondent, whose

address is Milwaukee Election Commission, City Hall, 200 E. Wells St., Rm. 501, Milwaukee, WI 53202.

This complaint is under chptrs. 6 (e.g., 6.87), 5, & others (Insert the applicable sections of law in chs. 5 to 10 and 12 and other laws relating to elections and election campaigns, other than laws relating to campaign financing)

I, (1) Bartholomew R. Williams, and (2) Jean M. Bury Weymier , allege that:

The U.S. Constitution (Art. II & Amndmt. XII), Wisconsin Constitution, and relevant sections of Wisconsin Statutes (e.g., 6.87, 5.05,

5.06) govern elections in Wisconsin. Despite our and other election observers' objections, Ms. Woodall-Vogg and Ms. Wood

allowed without authority: tens of thousands of ballots to be tampered with by red-ink cross-outs by election staff of the certificate's

"10 days before the election" and writing in by staff of "28" days (in violaton of S.S. 6.87(2)); staff to look up, assume without verifi-

cation, & tamper with by writing in an unconfirmed address of the alleged ballot witness (in violation of S.S. 6.87(6d) and 6.87(9)) on

many ballots; and no physical or readable access to 67-75% of all ballots by observers, in violation of free & fair elections. See our

attached 7-page & 3-page declarations. Please throw out 67-75% of ALL ballots & all ballots tampered with, & fire the Respondents.

Exhibit 33

(Set forth in detail the facts that establish probable cause to believe that a violation has occurred. Be as specific as possible as it relates to dates, times, and individuals involved. Also provide the names of individuals who may have information related to the complaint. Use as many separate pages as needed and attach copies of any supporting documentation.)

Bartholomew R. Williams

Date: **November 16, 2020**

Jean M Bury Weymier
Complainant's Signature

Bartholomew R. Williams

I, Jean M Bury Weymier , being first duly sworn, on oath, state that I personally read the above complaint, and that the above allegations are true based on my personal knowledge and, as to those stated on information and belief, I believe them to be true.

Bartholomew R. Williams
Jean M Bury Weymier
Complainant's Signature

STATE OF WISCONSIN

County of WASHINGTON ,
(county of notarization)

Sworn to before me this 16th day of

NOVEMBER , 20 20 .

(Signature of person authorized to administer oaths)

My commission expires_____, or is permanent.

Notary Public or _____
(official title if not notary)

**Please send this completed form to:**

Mail: Wisconsin Elections Commission
P.O. Box 7984
Madison, WI 53707-7984

Fax: (608) 267-0500

Email: elections@wi.gov

**EL -1100** | Rev 2016-08 | Wisconsin Elections Commission, 212 E. Washington Ave., 3rd Floor, P.O. Box 7984, Madison, WI 53707-7984 |
| 608-261-2028 | web: elections.wi.gov | email: elections@wi.gov |

Case 2:20-cv-01785-BHL   Filed 12/09/20   Page 2 of 13   Document 117-33

## DECLARATION

1.  My name is Bartholomew R. Williams. I am over the age of 18. All the facts stated herein are true and based on my personal knowledge.

2.  I am a resident of Wisconsin and live at ███████████████████████

3.  I was appointed as a watcher for Central Count in Milwaukee, 501 W. Michigan St., Milwaukee, WI 53203, as an independent election/poll observer.

4.  I arrived at the above address at 6:00 a.m. on Tuesday, November 3, 2020 but was not allowed to go to the Central Count area/floor until 7:00 a.m. Then, I had to wait in line, present photo identification, sign in, and await instructions from the ballot processing/counting leadership/staff. As a result, I was not able to actually start observing ballot processing/counting until at least 7:30 a.m., and therefore, I was excluded from the first full 30 minutes of observing the ballot processing/counting.

5.  I did not enter or attempt to enter restricted places at Central Count. I did not interfere in any way with the process of ballot processing/counting, nor mark or alter any official election record.

6.  As mentioned in paragraph number 4 above, Claire Woodall-Vogg, Brenda Wood, and several supervisors (none had a visible name badge nor told me their name) refused to allow me access to Central Count in Milwaukee, Wisconsin, from the time that the ballot processers/counters met prior to the opening of Central Count at 7:00 a.m. until approximately 7:30 a.m.; refused to allow me to remain in an unobtrusive area of the ballot-processing/counting location from which I reasonably could see and hear what was occurring for the vast majority (at least two-thirds) of the tables being used for ballot processing/counting; stopped allowing me to keep a list of voters – beyond the five I logged – with ballot defects that I genuinely believe were tampered with (in

1

violation of the State of Wisconsin Constitution and/or applicable *Wisconsin Statues*) by the ballot

processing/counting leadership and/or staff; refused to allow me to challenge several of the

qualifications of a legal, valid, and complete ballot (including proper, accurate, and complete voter

certification and required witness information) for any ballot; and refused to require the ballot

processors/counters to announce the names of electors in a way that allowed me to hear each name

and ballot number.  In addition, it is my genuine belief Ms. Woodall-Vogg, Ms. Wood, and other

members of their supervisory staff violated numerous other applicable laws, regulations, and/or other

rules – as well as reasonable intent – associated with the ability and rights of election

observers/watchers to have meaningful physical and visually-close [i.e., close enough for an average

person to see the ballot details such as whether or not the voter signed the ballot, whether or not all

required voter certification and witness information (including signature and address) was present,

whether or not any pre-printed ballot information (e.g., the number of days (for example, 10 vs. 28

days) the voter certified he/she was a resident of the district he/she voted in), etc.] access to all the

ballots.  Also, I believe Ms. Woodall-Vogg, Ms. Wood, and other supervisors deliberately, seriously,

and repeatedly violated my rights and/or access as an election observer/watcher in the numerous

other ways (for example, since the ballot processing/counting is a highly manual process subject to

significant variation (i.e., substantial differences in the process) – and other election

observers/watchers and I were not allowed to access/inspect the vast majority of the ballots – we

therefore were truly not allowed to observe most of the process) included in the three-page document

entitled, "Continuation Pages of Bartholomew R. Williams' Declaration as an Election

Observer/Watcher at Central Count in Milwaukee, WI on November 3, 2020," and a sketch of some

table configurations at Central Count referred to therein, both of which together are an integral part of

this Declaration (Affidavit) and are incorporated herein by reference.

2

7.     As a result of Claire Woodall-Vogg's, Brenda Wood's, and other supervisors' acts, I was unable to fulfill my responsibilities or exercise my rights to meaningful observation as an election/ballot-processing/counting observer/watcher.

8.     I declare under penalty of perjury pursuant to that the forgoing is true and correct. (28 U.S.C. § 1746).

Executed on  *November 16*, 2020.

*Bartholomew R. Williams*
Signature of Declarant (Bartholomew R. Williams)

3

**Continuation Pages of Bartholomew R. Williams' Declaration as an Election Observer/Watcher at Central Count in Milwaukee, WI on November 3, 2020**

1. <u>My partial sketch of the table configuration at Central Count</u> (see the top sketch of **observation #1** of the attachment to this Continuation Pages document, is an integral part of it, and is hereby incorporated by reference) shows how Claire Woodall-Vogg (Executive Director of the Central Count operation), Brenda Wood, and maybe others made it difficult for election observers to truly observe all ballots being processed at all times. First, they only allowed one chair for every four tables, and if more than one person was at that chair (standing or siting), Claire, Brenda, or one of the supervisors under them made us go to the edge of the bank of tables (i.e., even further away). One would have to have eyes in the back of her/his head to continuously monitor all four tables at ones. Second, we were restricted from observing entire rows of tables two and three deep [please note that the third row of tables is <u>not</u> included in my attached sketches due to limited space in the small notebook I had with me, but they existed and were actively used throughout my shift for ballot processing/counting at Central Count in Milwaukee on 11/3/2020] from where we were allowed to observe, which was at least 6' from the inner (closest) edge of the nearest (first row) of tables. We were repeatedly not allowed to access observing the second and third rows deep of tables away from our observation line. Those tables were **at least** 22-24' and 32'-34' (and possibly even further) from where we were allowed to observe from, respectively. We (and anyone with average eyesight) could not possibly see any of the ballot or ballot envelope details from those distances. In the top diagram (observ. #1), from that chair, I could only see ballot and envelope details at the four nearest tables to/around me. Looking to the upper right, I could not see (it was too far away) ballot and envelope details at Pod 9's Table 9 (in the second row of tables deep, away from us), the next (third row) of tables after that (not pictured in my diagram because I could not even see the Pod and Table # details from that distance, let alone any ballot and ballot envelope details). I listed the wards those tables were working on at the time of my observations, but as you know, the wards change as the tables finish working those ballots. Overall, since ballot processing is a highly manual process, there is real variation in how each of the pairs of ballot processes were doing their jobs. <u>My best estimate of the total percentage of all ballots that we were not allowed to observe either because we physically could not access them (i.e., second and third rows of tables deep away from us) and/or could not see them because they were too far away (due to being at the second and third row of tables deep away from us, and when we not the one person allowed to access the one chair in the middle of the four tables in the first row of tables) is between 67% and 75%, at least.</u>

2. Since only ONE person - i.e., a GOP, Democratic, OR independent observer - was allowed by Claire W. and Brenda Wood to be at each chair surrounded by four tables, that meant effectively no GOP observer could watch those four tables (and again, one cannot watch four tables at a time since we do not have eyes in the back of our heads) while a Democratic observer was in/at that chair. This actually happened to me, and other election observers, several times (e.g., I had to leave for a few minutes to go the bathroom, and this Democratic observer (a lady) would grab the chair and stay there for a long time). Jean Weymier (of West Bend, WI) witnessed this, too. So effectively, we were barred observation access to those four tables for as long as a non-Republican observer was at that chair. Now multiply this by all the tables thusly restricted (i.e., dozens and dozens of tables), and it is a major (and I believe unreasonable) restriction on access to observing.

3. We were only allowed 15 total Republican observers in the Central Count area per shift. I can tell you this was way too low of a number to allow anything approaching full observation access to all

1

the tables. At best, I would say we could maybe only cover (observe) 20-25% of all the tables, with 15 observers - again, at best. So, I believe this small total number of observers of each party was also a huge and illegal access restriction. Yes, it was equal (i.e., 15 for the Dems) for all affiliated observers, but truly they should have allowed many more observers of each affiliation in at the same time. I guarantee you that with more like 45-60 observers of each affiliation allowed in at one time, social distancing still could have been maintained, so I hereby dispute as false any excuse by election officials to the contrary.

4. In the bottom diagram (**observation #2**), the chair was the chair nearest the end of the tables area. From that chair, I could observe Pod 8, Table 8 - with a man closest to me and a woman on the other side of the table. However, at the next table in (second row), a man and woman were working seated next to each other at the far side of the table (I assume they live together and were exempt from social distancing). However, at that distance, neither I nor anyone else (e.g., Jean W.) could see any ballot or envelope details. Plus, they held the document up at an angle towards them (makes sense, for them) to be easier to read, but this then only allowed me to see the back of each document - completely useless for observation purposes. Again, I wrote the ward numbers they were working on at time of my observation.

5. Brenda Wood (second in charge, I believe) and a supervisor both acknowledged to me verbally that "many" of the ballots had the election staff-performed red ink cross-outs of the 10 days and red-ink write-ins of the 28 days residency requirement on the ballot envelope/certification. The best estimate by my fellow election observers of the total percentage of all ballots that had this defect is at least 20% of all ballots processed at Central Count in Milwaukee. Claire W. made a loudspeaker announcement to all early in the day that this issue is not a basis to challenge the ballot. She also made a separate similar announcement that if a witness' address was missing from the ballot envelope/certification, a ballot processor could go to the computer set up for the staff, look it up, and write it in, and they did not need to find and write in a ZIP code for the witness. Claire at no point stated that the ballot processor had to verify the witness' address with the witness or voter. She also did not address the possibility of common names (e.g., John Smith) and that there can be multiple addresses for that common-name person (i.e., which address is the correct one?). Here is a very partial list (due to the many physical and visually-observable access restrictions detailed above) of wards with this 10 vs. 28 days issue, and it is the absolute minimum in each ward (there are very likely many more; again, I believe this is at least a 20%-of-all-ballots issue):

| Ward no. | No. of ballots | |
|---|---|---|
| 187 | 23 | |
| 186 | 38 | |
| 189 | 20 | |
| 190 | 18 | |
| 211 | 4 | [I had just started observing this table near the very end of my shift.] |
| 219 | 1 | [I had just started observing this table near the very end of my shift.] |

6. I picked up a form to start tracking the voter name and ballot ID number of each ballot envelope on which I saw the situation listed above in item #5. Occasionally, I had to ask an election worker (they were talking through masks) to repeat a name or part of a name. After I documented five such instances, one of the workers got up and brought Brenda Wood over, who told me I could no longer do this because it was slowing them down. She insisted, so I could no longer document any more such instances. My best estimate of how many ballot envelopes fell in to this situation is about 20%,

and I observed for over 6 hours. Overall, Claire, Benda, and the rest of the election staff seemed hostile to our questions and observing in every interaction we had with them.

7. The election officials had told us not to expect that many "skinny" or express ballots, but there many. I would estimate they comprised 25-35% of the ballots I saw. I asked and was told by a supervisor (wearing orange vests) that express ballots came from one of two places - the Ziedler building and one other place (she did not say). She said they were for people who had a hard time writing. They could use a special keyboard/machine at one of those two buildings to generate an express ballot. This seems suspicious to me - unlikely there were that many people who have a hard time writing. Plus, two supervisors acknowledged there were a lot more express ballots than they expected.

Sincerely/signed,

*Bartholomew R. Williams*

Bartholomew R. Williams



[In interior]

[observation #1]



[observation #2]

**JURAT WITH AFFIANT STATEMENT**

State of _Wisconsin_ } ss.

County of _Washington_

☑ See Attached Document (Notary to cross out lines 1–7 below)
☐ See Statement Below (Lines 1–7 to be completed only by document signer[s], not Notary)

~~1~~

~~2~~

~~3~~

~~4~~

~~5~~

~~6~~

~~7~~

_Signature of Document Signer No. 1_      _Signature of Document Signer No. 2 (if any)_

Subscribed and sworn to (or affirmed) before me

this **16th** day of **November**, **2020**, by
    Date        Month      Year

**Bartholomew Williams**
         _Name of Signer No. 1_

CHRISTIAN NOVALES
Notary Public
State of Wisconsin

_Name of Signer No. 2 (if any)_

_Signature of Notary Public_

**My Commission Expires**
**March 29, 2022**

_Place Notary Seal/Stamp Above_     _Any Other Required Information_
_(Residence, Expiration Date, etc.)_

──────────── **OPTIONAL** ────────────

_This section is required for notarizations performed in Arizona but is optional in other states. Completing this_
_information can deter alteration of the document or fraudulent reattachment of this form to an unintended document._

**Description of Attached Document**

Title or Type of Document: _Declaration of Bartholomew R. Williams, Continuation Pages, Sketches_

Document Date: _November 16, 2020_     Number of Pages: _7_

Signer(s) Other Than Named Above: _none_

©2018 National Notary Association

**DECLARATION**

1. My name is __Jean M. Bury Weymier_____. I am over the age of 18. All the facts stated herein are true and based on my personal knowledge.

2. I am a resident of ___████████████████████████████___ and live at [address].

3. I was appointed as a watcher for Precinct **Central Count**, located at,**501 W Michigan Street, Milwaukee, WI 53203** and was named as 'Independent'.

4. I arrived at the above address at **6:00 a.m.** and checked in at 7:00 a.m.

5. I did not enter or attempt to enter restricted places within **Central Count.** I did not interfere in any way with the process of voting, nor mark or alter any official election record.

6. **Claire Woodall-Vogg, Brenda Wood and other supervisors who were not identified refused to allow me physical and visual-inspection access to the vast majority of ballots; did not allow an adequate number of observers to cover all of the ballot processing tables; stated that certain ballot defects were acceptable; and did not allow writing down of our specific objections or even ask name, address and ballot number of the particular ballot. See the two-page document entitled, "Jean M. Bury Weymier – key points of affidavit regarding being an election observer at Central Count in Milwaukee, WI on election day (11/3/2020)," which is an integral part of this Declaration and is incorporated herein by reference.**

7. As a result, of Claire Woodall-Vogg's and Brenda Wood's and other supervisors' acts, I was unable to fulfill my responsibilities and/or exercise my rights to meaningful observation as a poll Watcher.

8. I declare under penalty of perjury pursuant to that the forgoing is true and correct. (28 U.S.C. § 1746). Executed on _November 16_____, 2020

Jean M. Bury Weymier

DAVID R. BEINE
NOTARY PUBLIC
PERMANENT COMMISSION
NOVEMBER 16, 2020

**\*\*Jean M. Bury Weymier – key points of affidavit regarding being an election observer at Central Count in Milwaukee, WI on election day (11/3/2020)**

1. Claire Woodall-Vogg (Executive Director of the Central Count operation), Brenda Wood, and maybe others made it difficult for election observers to truly observe all ballots being processed at all times. First, they only allowed one chair for every four tables, and if more than one person was at that chair (standing or sitting), Claire, Brenda, or one of the supervisors under them made us go to the edge of the bank of tables (i.e., even further away). Second, we were restricted from observing entire rows of tables two and three deep from where we were allowed to observe, which was at least 6' from the inner (closest) edge of the nearest (first row) of tables. We were repeatedly not allowed to access observing the second and third rows deep of tables away from our observation line. Those tables were **at least** 22-24' and 32'-34' (and possibly even further) from where we were allowed to observe from, respectively. We (and anyone with average eyesight) could not possibly see any of the ballot or ballot envelope details from those distances

2. Since only **one** person - i.e., a GOP, Democratic, OR independent observer - was allowed by Claire W. and Brenda Wood to be at each chair surrounded by four tables, that meant effectively no GOP observer could watch those four tables while a Democratic observer was in/at that chair. Bart Williams (of West Bend, WI) witnessed this, too as we worked in close proximity of each other. We were barred observation access to those four tables for as long as an observer of a different party was at that chair. Multiply this by all the tables thusly restricted (i.e., dozens and dozens of tables), and it is a major, and unreasonable, restriction on access to observing. I feel that there should have been one Democrat and one Republican at each table (or pair of tables) observing.

3. We were only allowed 15 total Republican observers, 15 Independent and 15 Democrat in the Central Count area per shift. This was way too low of a number to allow anything approaching full observation access to all the tables. We could maybe observe 20-25% of all the tables, with 15 observers - at best. I believe this small total number of observers of each party was also a huge and illegal access restriction. Yes, it was equal (i.e., 15 for the Dems) for all affiliated observers, but truly they should have allowed many more observers of each affiliation in at the same time. With more like 45-60 observers of each affiliation allowed in at one time, social distancing still could have been maintained, so I hereby take issue with any election officials claiming otherwise.

4. There were a few **announcements made to the whole room**. 1) If there were any **addresses missing**, they were to **take the ballot to the computer in the back of the room and look up the address and fill it in.** We were told to disregard any red marks on the envelope such as the spot where they say how long they have lived at an address. Everything we were trained to be watching for they told us to ignore – that it didn't make a difference. These other Democrat observers kept bullying us and 'telling' on us whenever we wanted to hear a name or address again so that we could challenge what we were seeing on the envelope. (see below)

5. Brenda Wood and a supervisor both acknowledged to both me, and Bart, verbally that "many" of the ballots had the election staff-performed red ink cross-outs of the 10 days and red-ink write-ins of the 28 days residency requirement on the ballot envelope/certification. The best estimate by my fellow election observers of the total percentage of all ballots that had this defect is at least 20% of all ballots processed at Central Count in Milwaukee. Even with that, the poll workers covered the envelopes with their hands so it was very difficult to see anything. Claire W. **made a loudspeaker announcement to all** early in the day that this issue (the red marks) is not a basis to challenge the ballot. She also made a separate similar announcement that if a witness' address was missing from the ballot envelope/certification, a ballot processor could go to the

computer set up for the staff, **look it up, and write it in,** and **they did not need to find and write in a ZIP code for the witness. Claire at no point stated that the ballot processor had to verify the witness' address with the witness or voter.** She also did not address the possibility of common names (e.g., John Doe) and that there can be multiple addresses for that common-name person (i.e., which address is the correct one?). Here is a very partial list (due to the many physical and visually-observable access restrictions detailed above) of wards with this 10 vs. 28 days issue, and it is the absolute minimum in each ward (there are very likely many more; again, I believe this is at least a 20%-of-all-ballots issue):

6. Occasionally, I had to ask an election worker (they were talking through masks) to repeat a name or part of a name. After hearing me ask the poll worker, one of the democrat observers got up and brought Brenda Wood over, who told me I could no longer do this because it was slowing them down. She insisted, so I could no longer document any more such instances. My best estimate of how many ballot envelopes fell in to this situation is about 20%, and I observed for at least 6 hours. Overall, Claire, Benda, and the rest of the election staff, including the Democrat poll observers, seemed hostile to our questions and observing in every interaction we had with them. Since Bart and I worked closely together in this same room, we were addressed at the same time by both Brenda and Claire. We were definitely in a hostile environment and we were discouraged in any way to be able to complete the job we were there to do. We were purposely delayed until 7:00 a.m. after arriving at 6:00 a.m. to go up to the room where the poll watching would take place. By the time they started the process we were then delayed another half hour so they could explain their rules. We ended up missing the first half hour of poll watching. **(END)**

**Jean M. Bury Weymier**