



Home    Clerks Panl Page    Education/Training

# Election Observers

Observers are an important part of Wisconsin's open and transparent elections process. The State of Wisconsin allows people to observe at polling places on election day, subject to certain rules.

Please consult the publications below.

- **Wisconsin Election Observers Rules-at-a-Glance**
- **2018 Letter to Election Observer Groups**
- **Form EL-109**: Election Observers Log

## Search

Search

## Resources

Calendar

Complaints

Contact Us

FAQs

Forms

Legal Resources

Links

https://elections.wi.gov/clerks/education-training/election-observers[12/8/2020 1:29:21 PM]

WEC 000047

News and Notices

Public Records

Publications

Statistics

Training

## Upcoming Elections

2021 Spring Election
04/06/2021

## Upcoming Events

WEC 000048





# Summary of Wisconsin Weapons/Physical Security Laws and Applicability to Polling Places

Priority
Timely Attention Required

Date
October 23, 2020 - 9:45am

To
Wisconsin County Clerks
Wisconsin Municipal Clerks
City of Milwaukee Election Commission
Milwaukee County Election Commission

From
Meagan Wolfe, Administrator

| Attachment | Size |
|---|---|
| Weapons_Polling Place Memo 10-23-2020.pdf | 242.41 KB |

## Overview

The Wisconsin Elections Commission ("WEC") and its municipal, state, and federal partners have received an influx of questions in advance of the November 3, 2020, General Election relating to firearms in the polling place and other physical security issues. This communication will provide guidance on this complicated subject, specifically addressing the most relevant areas of the law and several common questions. In short, Wisconsin law does not expressly prevent the carry of weaponry in polling places unless certain factors are met, and any prohibition on the possession of weapons is a decision that needs to be made at the municipal level. Additionally, chief elections inspectors retain fairly broad statutory protections in their ability to monitor and respond to incidents which disrupt

WEC 000049

Case 2:20-cv-01785-BHL    Filed 12/09/20    Page 3 of 23    Document 117-74

elections processes.

In large part, Wisconsin's only universal prohibition of weapons in a certain class of facilities relates to K-12 schools. Wisconsin expanded on various federal laws by specifically extending K-12 weapon prohibitions to include lawfully licensed parties in/on school grounds as well (e.g. those with a concealed carry license). Wis. Stat. § 948.605(2). There are several other classes of buildings in which the carry of firearms is prohibited, but these are unlikely to be polling places (e.g. correctional institutions, secured mental health facilities, airport facilities beyond security checkpoints, courthouses, and law enforcement stations). Wis. Stat. § 175.60(16). Election officials will want to consult their municipal attorney or corporation counsel if a K-12 school or other restricted facility serves as a polling place in your district, or other similar questions about weapons or facilities arise. This memo will also detail the applicability of laws related to other weapons and facilities, as well as personal restrictions that may be applied to specific individuals.

Please download the attachment to read the entire memo.

clerks

## Search

Search

## Resources

Calendar

Complaints

Contact Us

FAQs

Forms

Legal Resources

Links

News and Notices

Public Records

Publications

Statistics

Training

WEC 000050

## Upcoming Elections

2021 Spring Election
04/06/2021

## Upcoming Events

WEC 000051

Case 2:20-cv-01785-BHL   Filed 12/09/20   Page 5 of 23   Document 117-74



# Wisconsin Elections Commission

212 East Washington Avenue | Third Floor | P.O. Box 7984 | Madison, WI 53707-7984
(608) 266-8005 | elections@wi.gov | elections.wi.gov

**DATE:** July 31, 2020

**TO:** All Wisconsin Election Officials

**FROM:** Meagan Wolfe
Administrator

**SUBJECT:** **Face Coverings While Voting and Conducting Elections**

WEC staff have received questions regarding the use of face coverings while voting or conducting elections. This document provides information about many of the common questions we have received and was developed with guidance from State of Wisconsin public health officials and information available from the Centers for Disease Control (CDC).

**Update on 7/31 at 1:00 PM: Please note this communication has been amended after Governor Evers issued Executive Order 82 declaring a public health emergency and the accompanying mandate which requires facial coverings when Wisconsin citizens are in enclosed spaces or are outdoors when physical distancing is not possible.**

**1. Q: Can municipalities require voters to wear face coverings while voting at the polls on election day?**

A: No, Commission staff have advised that only the Legislature can establish individual voter qualifications. The authority of the Legislature to establish voter qualifications is rooted in the Wisconsin Constitution. The WEC, along with state agencies, county or local governing bodies and/or election officials, cannot pass ordinances or establish rules that add qualifications for an eligible elector to cast a ballot. The Executive Order issued by the Governor on July 30, 2020 that requires face coverings in certain situations does not apply to voters. No voter should be refused a ballot for lack of wearing a face covering.

Clerks may establish procedures to allow for voters without facial coverings to cast a ballot safely on election day. This may involve using designated areas of the polling place for these voters or assigning poll workers with additional personal protective equipment (PPE) to serve these voters.

**2. Q: Is it recommended that voters and election officials wear face coverings during in-person absentee and election day voting?**

Yes, the Wisconsin Elections Commission unanimously recommends the use of face coverings by voters. The public health guidance we have developed with the assistance of public health officials from the Wisconsin Department of Health Services is that face coverings are recommended for use by voters and poll workers on election day and during in-person absentee voting or voter registration at the clerk's office or alternate site. Commission staff has updated our reference and training materials to account for this recommendation and new signs recommending face coverings are included in the signage packet you will receive with your sanitation supplies.

*Wisconsin Elections Commissioners*
Ann S. Jacobs, chair | Marge Bostelmann | Julie M. Glancey | Dean Knudson | Robert Spindell | Mark L. Thomsen

*Administrator*
Meagan Wolfe

WEC 000444

Case 2:20-cv-01785-BHL Filed 12/09/20 Page 6 of 23 Document 117-74

**3. Q: What about during in-person absentee voting at the clerk's office or alternate site?**

A: We do not believe face coverings can be required during in-person absentee voting, but it is recommended that local election officials and voters use face coverings in these situations. The legal analysis does not change, and state agencies, county or local jurisdictions cannot add additional voter qualifications that are not set forth in the statutes, even if voters choose to exercise their right using the absentee voting process. Public health guidance issued by the Wisconsin Department of Health Services states: "Everyone should wear a cloth face cover in public settings and when around people who don't live in your household, especially when other social distancing measures are difficult to maintain."

**4. Q: Our county or municipality has a public health order or governing body mandate that requires face coverings. How does that impact the guidance for in-person voting?**

A: A county or municipal public health order that requires face coverings is not a reason to deny a voter a ballot during in-person absentee or polling place voting. The legal analysis does not change, and county or local jurisdictions cannot add additional voter qualifications that are not set forth in the statutes, whether the voter chooses to exercise their right using the in-person absentee voting process or voting at a polling location.

**5. Q: Can municipalities require poll workers to wear face coverings as a condition of serving?**

A: Yes, Commission staff believe municipalities have the authority to determine and train their poll workers on "changes in laws, rules and procedures affecting the performance of their duties." Wis. Stat. § 7.15(1)(e). The Commission also determined that the Governor's Executive Order requiring face coverings in public applies to poll workers. If face coverings are required, municipal clerks' training for their poll workers should instruct them that one of the new procedures being implemented for health and safety of both voters and fellow inspectors is that everyone is required to wear a face covering when they work. This change would be considered part of an overall strategy to incorporate public health procedures during the COVID-19 pandemic into previously established election procedures, like wiping down equipment, providing single use pens, using social distance markings on the floor, or modified line management to keep voters appropriately spaced out. If a municipality chooses to require a face covering for its poll workers, it should be part of the new procedures implemented and trained on by the clerk.

Clerks should discuss the importance of public health procedures developed and implemented to protect the health and safety of election officials and voters. If necessary, poll workers who refuse to follow procedures and instructions provided by the clerk or chief election inspector would be neglecting their official duties and may be removed from their positions. Wis. Stat. § 7.15(1)(f) provides municipal clerks with the authority to discharge election officials for improper conduct or willful neglect of duties. Wis. Stat. § 7.30(6)(c) provides further guidance on the removal of elections officials, specifically stating that if any election official lacks the statutory qualifications, fails to attend training sessions, neglects official duties, or commits official misconduct, the municipal clerk shall remove the official from office.

**6. Q: What about poll workers appointed from a list provided by one of the political parties?**

A: Yes, those poll workers are subject to any health or safety procedures adopted by the clerk or municipality for a polling location. While state law allows the two main political parties to make appointments to the election inspector list submitted in November of an odd-numbered year, and the clerk is required to use appointees from the list, those workers must still follow the same rules and procedures that are in place for

WEC 000445

inspectors who are unaffiliated. The Commission also determined that the Governor's Executive Order requiring face coverings in public applies to poll workers.

**7. Can a municipality require election observers to wear a face covering while observing at an in-person absentee ballot location or a polling location on Election Day?**

A: Yes, if there is a state or local health order or directive from a municipality requiring a face covering at the locations in which voting is occurring either in-person absentee or at a polling location. Wisconsin Statute § 7.41 provides members of the public access to observe the public aspects of voting. The Commission also believes the Governor's Executive Order applies to observers as well. While Wis. Stat. § 7.41 is silent as to measures that could be implemented to maintain the health and safety of those present at an in-person absentee or polling location, Commission staff believe municipalities can regulate conduct on their property and require masks as long as it does not interfere with the right to vote. Additionally, inspectors have the authority to preserve order and issue lawful commands or orders. They may also remove individuals for disruptive behavior or failure to comply with such lawful orders. Wis. Stat. § 7.37(2).

**8. Q: May voters be asked to remove their face covering to verify they 'reasonably resemble' the photo on their photo ID?**

A: Most voters will not have to remove their face covering to verify they reasonable resemble the photo on their ID. The requirement is that the photo on the ID must 'reasonably resemble" the voter, and Commission staff believe this verification can be done in most instances without face covering removal. There may be rare instances where a poll worker may request the brief removal or rearrangement of the face covering during this process, but these instances would be the exception. Election inspectors assigned to verify the photo ID should be reminded of the "reasonably resemble" standard set forth in the statute and be mindful of this standard when conducting this comparison at the polls. The Governor's Executive Order specifies that face covering removal is allowed to conf9rm a person's identity.

**9. Q: Are we getting face coverings for use by poll workers with the supplies the State has acquired and will be distributing through the counties?**

A: Yes, we have provided each municipality with enough face coverings for use by poll workers for both the August and November 2020 elections. They will be included with the supplies we have provided to county clerks for distribution to the municipalities by early August.

**10. Q: What accommodations do we need to consider with regard to face covering usage and communication with voters who rely on lip reading to communicate?**

A: In this situation, consider using a clear face covering, if possible. If a clear face covering is not available, consider whether you can use written communication to interact. It may be easier for voters who rely on reading lips to communicate more easily with a poll worker or election official if a face covering is removed or relaxed during these interactions. We recommend that these interactions take place using plexiglass barriers or shields from at least a 6-foot distance between the parties. The Governor's Executive Order allows for mask removal when communicating with an individual who is deaf or hard of hearing and communication cannot be achieved through other means.

**11. Q: What kind of face coverings are appropriate for use by voter and election officials?**

WEC 000446

A: The CDC has noted that surgical masks and N95 respirators are critical supplies that should be reserved for healthcare workers and other first responders. If available, these face coverings may be used by election officials and voters, but cloth face coverings and other face coverings are acceptable as well.

**12. Q: How do I safely put on or take off my face covering?**

A: The CDC has also provided these recommendations:

- Wash your hands before putting on your face covering
- Put it over your nose and mouth and secure it under your chin
- Try to fit it snugly against the sides of your face
- Make sure you can breathe easily
- Don't put the face covering around your neck or up on your forehead
- Don't touch the face covering, and, if you do, wash your hands or use hand sanitizer to disinfect
- Wash or sanitize your hands after removing your face covering

**13. Q: Is there anyone who is not recommended to wear a face covering?**

A: The CDC website states: "Cloth face coverings should not be placed on young children under age 2, anyone who has trouble breathing, or is unconscious, incapacitated or otherwise unable to remove the face covering without assistance."

**14. Q: How do I know how many face coverings, or other Personal Protective Equipment (PPE), I will need for election day or in-person absentee voting?**

A: The CDC has created a burn rate calculator that can be used to estimate how many face coverings or PPE you will need: https://www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/burn-calculator.html. The CDC notes this tool "is a spreadsheet-based model that will help healthcare facilities plan and optimize the use of PPE for response to coronavirus disease 2019 (COVID-19). Non-healthcare facilities such as correctional facilities may also find this tool useful." Local elections officials may find this tool useful when preparing for the remainder of the 2020 elections.



# Wisconsin Elections Commission

212 East Washington Avenue | Third Floor | P.O. Box 7984 | Madison, WI 53707-7984
(608) 266-8005 | elections@wi.gov | elections.wi.gov

**DATE:** October 13, 2020 *Updated on October 21, 2020*

**TO:** All Wisconsin Election Officials

**FROM:** Meagan Wolfe      Richard Rydecki
Administrator      Deputy Administrator

**SUBJECT:** Observers at Voting and Counting Locations for the November 3, 2020 General Election

Overview

Wisconsin state law allows that any member of the public, other than a candidate whose name appears on the ballot, can observe voting at in-person absentee voting sites, polling places and ballot processing at central count facilities. The public's right to observe is provided by Wis Stat. § 7.41 and the Wisconsin Elections Commission (WEC) has established guidelines for observers to ensure that observation does not interfere with the conduct of in-person absentee voting, voting at a polling place or the processing of absentee ballots at a central count location. Local election officials and Chief Election Inspectors should familiarize themselves with these rules so that they can effectively manage any observers present during voting or ballot processing at central count or during any canvass meetings. The updated "Election Observers at a Glance" brochure that should be provided to observers can be found here: https://elections.wi.gov/publications/brochures/observer-rules.

Setup

A designated observation area at the polling place or other location where votes are being cast, counted, canvassed or recounted should permit observers to hear instructions and to readily observe all public aspects of the process without disrupting the activities. State law requires the area to be within 3 to 8 feet of the poll book and voter registration areas of the polling place.

Due to COVID-19 concerns, and to maintain proper social distancing, Commission staff recommend that the observer area should be located at least 6 feet from these tables in order to limit proximity to poll workers and voters. The 6-foot threshold is within the allowable distance between the observation area and the poll book and registration tables. Tape can be used to mark an area on the floor to clearly identify each observer area. Chairs should be provided for observers and those seats should be spaced at least 6 feet apart, if possible. The size and location of the observation area needs to balance access to the poll book and voter registration areas while also accommodating social distancing standards.

Check-in Procedures

An observer log is used at each location where observers may be present. This form is provided on the agency website at: https://elections.wi.gov/forms/el-109. An observer should legibly print his/her full name, street address and municipality, and the name of the organization or candidate the observer represents, if any, in the

*Wisconsin Elections Commissioners*
Ann S. Jacobs, chair | Marge Bostelmann | Julie M. Glancey | Dean Knudson | Robert Spindell | Mark L. Thomsen

*Administrator*
Meagan Wolfe

WEC 000448

Election Observer Log. The observer also signs this form acknowledging that the observer understands the rules and will abide by them. Additionally, an observer will be asked to present photo identification to an election inspector which contains the observer's name and photo. Any type of photo identification is acceptable if it contains a photo of the observer and the observer's name. The photo identification requirement allows chief inspectors to keep an accurate list of individuals and their organization affiliation (if applicable) present at the polling place, in-person absentee voting site or absentee central count location.

Observers must wear a name tag or badge which reads "Election Observer." This name tag must be worn at all times the observer is inside of the polling place or other location where votes are being cast, counted, or canvassed. The name of the observer need not appear on the tag or badge. The name tag helps voters identify and eliminate confusion as to who are election officials conducting the election and who are individuals acting as an observer. Observers should be provided with the "Election Observers at A Glance" pamphlet which outlines the conduct and options for observers.

<u>Managing Observers</u>

Observers should be directed to the designated area after they check in with the Chief Election Inspector and sign in. They can observe the proceedings and may ask questions regarding the procedures being used but they should not interfere with the orderly processing of voters or cause any unnecessary disruptions. If observers are unable to hear the election inspectors and voters, they may ask for the instructions or information to be repeated. However, there is no requirement the instructions or information be broadcast at a specific volume. If space permits, observers may move within the designated observer area to better view and/or hear the interactions, but social distancing should be practiced as much as possible given the setup or space considerations of the location.

To ensure the orderly conduct of any voting or ballot counting events, and if necessary due to space limitations of the location, an election official may reasonably limit the number of observers representing the same organization or candidate. Establishing reasonable limitations for observers will be especially important due to COVID-19 concerns and to avoid overcrowding. If multiple representatives of the same political party or organization are present at a location and wish to observe, it may be necessary to establish a rotation or schedule, so each representative has the opportunity to observe without overcrowding the voting area or central count location. Party balance should be considered when making these decisions and each political party should be offered equal opportunity to observe throughout the day.

<u>Public Health Considerations</u>

All election observers are required to wear face coverings while inside the polling place, central count location or in-person absentee voting location. More information about face coverings requirements and recommendations for observers and voters can be found here: https://elections.wi.gov/node/6981. Any observer who refuses or fails to follow required public health procedures may be removed from the location where they are observing by the local election official or Chief Election Inspector in charge of that in-person absentee voting site, polling place, or central count facility.

<u>Conduct of Observers</u>

Observers may silently use cell phones in the polling area. Observers may not use cell phones to take or make voice calls (ringer should be silenced) inside the observation area. Any voice calls should be made outside of the polling location, central count location, or in-person absentee location to avoid disrupting the process. Observers may not take photographs or videos in the polling place as Commission staff believe those actions

are inherently intimidating to voters. The chief inspector may prohibit an observer from using a cell phone if it is deemed disruptive.

Observers are prohibited from electioneering or interfering with the orderly conduct of the election and/or election administration event. Any observer who engages in disruptive behavior with other observers or voters that the election official believes threatens the orderly conduct of the activity or interferes with voting may receive a warning from the election official. If a warning has been issued, and the offending observer continues the disorderly behavior, the chief inspector should order the offending observer to depart the location. If the offending observer declines or otherwise fails to comply with the chief inspector's order to depart, the chief inspector should summon local law enforcement to remove the offending observer.

In the event that the chief inspector orders an observer to leave a location, the chief inspector should provide a written order to the observer (EL-110) which includes the reason for the order and the signatures of the chief inspector as well as another election inspector and an election official representing the opposite political party, if available. The chief inspector has sole authority to order the removal of an observer, but another election inspector may note his or her concurrence or disagreement with the decision on the Inspectors' Statement (EL-104).

When an EL-110 is completed, the municipal clerk or board of election commissioners should notify the WEC of the incident within seven days. This notification should include a copy of the EL-110, if available, and the portion of the Inspectors' Statement which documents the incident. WEC staff will use this information to provide a summary to the Commission after each election of all reported incidents.

<u>Allowable Observer Activities</u>

Observers may ask questions of election officials regarding procedures being used to check in voters, register voters, issue and process ballots. Observers may examine the poll list so long as they do not interfere with election official responsibilities. The election official determines when it is an appropriate time to allow an observer to examine or photograph the poll list. If voters are standing in line to have their names recorded and to receive a ballot, it is not an appropriate time to allow observers to view the poll lists. The poll list must always remain under the control of election officials.

Observers may interact with voters only at the request of the voter and may answer questions about the voting process. These conversations should take place outside of the voting area and should not violate the prohibition on electioneering.

Under Wisconsin state law, election observers are allowed to challenge the qualifications of a voter but may not challenge a voter's ballot based on their compliance with voting procedures. Challenges that may be brought by any qualified elector of the state, including election observers, are as follows:

1. Citizenship
2. Age
3. Residency
4. Felony Status
5. Competency to Vote
6. Bet or Wager on the Outcome of the Election
7. Voted Previously at the Same Election

If a challenge is made by an observer for one of these reasons, they are placed under oath and asked to make a sworn statement giving the reason for the challenge. The observer has the ability to withdraw their challenge after the challenged voter provides their answer to the challenge. Challenges cannot be brought for reasons outside of the ones listed above and observers should not be permitted to make frivolous challenges designed to interfere with the orderly processing of voters or ballots. Election Inspectors should consult the Commission's challenge documentation (EL-104c) to ensure that all challenges are conducted uniformly and in accordance with applicable statutes.

<u>Prohibited Activities of Observers</u>

The poll list may not be handed to the observers and observers are prohibited from viewing the confidential portion of the poll list. Observers are not permitted to make a photocopy of or take photographs or video of proof of residence documents and voted ballots. Observers are not permitted to handle an original version of any official election document, including absentee ballot certificate envelopes, voter registration forms and/or proof of residence documents while voters are registering.

Observers may not conduct any of the following disorderly activities while monitoring the conduct of the election and/or election administration event:

1. Wear clothing or buttons related to candidates, parties, or referenda that are intended to influence voting at the election.
2. Interact with voters, except when asked by an elector for assistance with marking their ballot or to answer voting questions.
3. Watch voters mark their ballots.
4. Have conversations about candidates, parties, or ballot questions.

<u>Gatherings Outside of the Voting or Counting Location</u>

Large gatherings outside of the polling place, in-person absentee site or central count facility should be monitored to ensure electioneering restrictions are being followed and voters are able to freely enter and exit the building. The 100-foot electioneering-free zone should be enforced and no behavior that violates electioneering laws should be allowed. Please note that electioneering is defined as any activity intended to influence voting at an election, including specific references to candidates or issues on the ballot for this election. The Chief Election Inspector retains the same statutory authority to remove an individual that is electioneering in violation of Wis. Stat. §§ 12.03 and 12.035.

It may be difficult for the Chief Election Inspector or local election officials to monitor the exterior of the in-person absentee site, or polling place or central count facility on election day, so a greeter or other election official can be used for this purpose. Gatherings that restrict the ability for voters to enter or exit the polling place or in-person absentee voting site or that violate electioneering law should not be allowed. It may be necessary to contact local law enforcement for assistance with dealing with any potential issues outside of these locations. Clerks should contact law enforcement officials prior to the start of in-person absentee voting or election day to discuss these potential issues, share contact information, and establish protocols for handling any potential situations for which engagement of law enforcement may be necessary to maintain order.



# Wisconsin Elections Commission

212 East Washington Avenue | Third Floor | P.O. Box 7984 | Madison, WI 53707-7984
(608) 266-8005 | elections@wi.gov | elections.wi.gov

**DATE:** October 20, 2020

**TO:** All Wisconsin Election Officials

**FROM:** Meagan Wolfe
Administrator

**SUBJECT:** Summary of Wisconsin Weapons/Physical Security Laws and Applicability to Polling Places

## Overview

The Wisconsin Elections Commission ("WEC") and its municipal, state, and federal partners have received an influx of questions in advance of the November 3, 2020, General Election relating to firearms in the polling place and other physical security issues. This communication will provide guidance on this complicated subject, specifically addressing the most relevant areas of the law and several common questions. In short, Wisconsin law does not expressly prevent the carry of weaponry in polling places unless certain factors are met, and any prohibition on the possession of weapons is a decision that needs to be made at the municipal level. Additionally, chief elections inspectors retain fairly broad statutory protections in their ability to monitor and respond to incidents which disrupt elections processes.

In large part, Wisconsin's only universal prohibition of weapons in a certain class of facilities relates to K-12 schools. Wisconsin expanded on various federal laws by specifically extending K-12 weapon prohibitions to include lawfully licensed parties in/on school grounds as well (*e.g.* those with a concealed carry license). Wis. Stat. § 948.605(2). There are several other classes of buildings in which the carry of firearms is prohibited, but these are unlikely to be polling places (*e.g.* correctional institutions, secured mental health facilities, airport facilities beyond security checkpoints, courthouses, and law enforcement stations). Wis. Stat. § 175.60(16). Election officials will want to consult their municipal attorney or corporation counsel if a K-12 school or other restricted facility serves as a polling place in your district, or other similar questions about weapons or facilities arise. This memo will also detail the applicability of laws related to other weapons and facilities, as well as personal restrictions that may be applied to specific individuals.

## Firearms

*Concealed Carry*

- Prohibited in K-12 schools
- May be prohibited by property owners
- Facilities must post signage
- Consult an attorney

*Wisconsin Elections Commissioners*
Ann S. Jacobs, chair | Marge Bostelmann | Julie M. Glancey | Dean Knudson | Robert Spindell | Mark L. Thomsen

*Administrator*
Meagan Wolfe

WEC 000452

Case 2:20-cv-01785-BHL   Filed 12/09/20   Page 14 of 23   Document 117-74

Any person who carries a concealed or dangerous weapon is guilty of a Class A misdemeanor unless they are law enforcement, former law enforcement, a concealed carry licensee, or an out-of-state licensee. Wis. Stat. §§ 175.60, 941.23(2). Several other restrictions may impact an election official's decision to restrict firearms in an otherwise unrestricted polling place. For instance, it is unlawful to carry a firearm while intoxicated or using controlled substances, point a firearm at another person, intentionally discharge a firearm into a vehicle/building, discharge a firearm from a vehicle, or endanger the safety of another person by the negligent operation or handling of a dangerous weapon. Wis. Stat. § 941.20. It is also unlawful, under Wis. Stat. §§ 941.29, 948.60, for a person who is a felon, minor—under 21 years old for concealed carry, mentally ill, or under an abuse/harassment injunction to possess a firearm.

Wisconsin's criminal trespass statutes act as a guidepost for firearm prohibition questions when a universal ban is not otherwise imposed on the specific voter or facility. The law generally allows a property's owner (including tenants/lessees) to set restrictions on that property. These prohibitions include openly carried or concealed firearms. Wis. Stat. §§ 943.13, 943.14.

The law relating to the concealed carry of a firearm on private property is further distinguished by residences (single-family and multifamily), nonresidential buildings, special events, state/local governments units, universities/colleges, and vacant land. Polling places are almost exclusively confined to nonresidential and government buildings, but it can also be argued that an election may represent a special event.

The prohibition of firearms in a nonresidential building (*e.g.* community centers, business, churches, etc.) requires the posting of a sign in prominent places near all entrances where an entrant can be reasonably expected to see the posting. The restriction cannot be applied to a designated parking area/facility if the firearm remains in the vehicle. As such, it is reasonable to ask a voter in the parking lot, or generally on the building's grounds, to return their firearm to a vehicle or move to nearby public property, provided a firearm prohibition exists at the site. Government facilities are also required to post signage near all entrances where an entrant can be reasonably expected to see the posting, in any part of the building that is owned, occupied, or controlled by the governmental unit. Again, a firearm prohibition cannot apply to parking areas/facilities, provided the firearm remains in the vehicle driven to or parked in the lot. Wis. Stat. § 943.13.

Local government units may also restrict the right to carry concealed weapons in polling places, even if the election site or voter is not otherwise restricted as provided above, by relying on the special event provisions of the Trespass to Land statutes. Wis. Stat. § 943.13(1m)(c)3. A special event is an event open to the public for a duration of not more than three weeks. The event must also have designated entrances to and from the event that are locked when the event is closed, or be an event that requires admission. Wis. Stat. § 943.13(1e)(h). Organizers of special events, in this case the local governing body, may prohibit access to persons with concealed weapons.

These decisions are outside of the purview of WEC and must be made by the local officials, whether relating to permanent decisions for properties under the officials' control, or through the designation of a temporary prohibition for the election only. It is recommended that any such decision be made in advance of the election, adequately posted, and passed through an approved resolution/ordinance. This area of the law is also nuanced and highly charged. It is in the interest of local officials to discuss this with their municipal attorneys or corporation counsel.

WEC 000453

*Open Carry*

- Open carry is generally legal if the person is not otherwise prohibited from possessing a firearm
- Prohibited in K-12 schools
- May be prohibited by property owners
- Facilities should post signage to ensure compliance
- Consult an attorney

The open carry of firearms is legal for any person at least eighteen years of age, when that person is not otherwise prohibited from possessing a firearm or using it in violation of the law (*e.g.* intoxication, reckless misuse of the weapon, felons, minors, the mentally ill, those under an abuse/harassment injunction from possessing a firearm, etc.). Additionally, the same absolute building prohibitions apply to the open carry of a firearm as they do to concealed carry (*e.g.* correctional institutions, secured mental health facilities, airport facilities beyond security checkpoints, courthouses, and law enforcement stations). Another unique consideration is that state preemption statutes were enacted for both the concealed and open carry of firearms.

Wisconsin's preemption law was implemented without exceptions for the presence of firearms in public places. Some states have outright bans on firearms in polling places, while others have preemption statutes that do allow municipal governing bodies to regulate firearms in a more restrictive manner than state law does. Wisconsin's statutes provides that, "no political subdivision may enact or enforce an ordinance or adopt a resolution that regulates the sale, purchase, purchase delay, transfer, ownership, use, keeping, possession, bearing, transportation, licensing, permitting, registration, or taxation of any knife or any firearm or part of a firearm, including ammunition and reloader components, unless the ordinance or resolution is the same as or similar to, and no more stringent than, a state statute." Wis. Stat. § 66.0409(2). As such, local laws cannot undermine or be more restrictive than state firearms laws. Some municipal governments have already enacted broader restrictions on weapons, but it is unlikely that these would remain enforceable unless the law is the same, or similar to, state law. Wis. Stat. § 66.0409(4)(b).

The open carry of firearms is not as obviously restricted as concealed carry (*i.e.* many concealed carry regulations and requirements were specifically spelled out in statute and are quite clear). Local elections officials are not without options, though. Officials can lawfully place limits on the open carry of firearms in the polling place should they deem it necessary, despite the fact that the processes for doing so are not as plainly delineated.

The law states that, "Any person who goes armed with a firearm in any building owned or leased by the state or any political subdivision of the state is guilty of a Class A misdemeanor." Wis. Stat. § 941.235(1). This again excludes current/former law enforcement officers and qualified licensees (*e.g.* those with a concealed carry license), but does apply broadly to those voters considering the open carry of a firearm in a government owned or leased building. This statute formally puts individuals on notice that the open carry of firearms in government buildings is prohibited, but it is still recommended that a sign be properly posted at all entrances, clearly putting entrants on notice. The signs can indicate that both the concealed and open carry of firearms is restricted, or it can simply indicate that there is a complete ban on firearms. Open carry is further complicated by the fact that many polling places are not in government buildings, and some polling places are not formally leased by the respective government entity. In other instances, a local governing unit may have opted not to prohibit the carrying of a firearm on government premises despite the statute (*i.e.* a less restrictive law). This is where the lack of proscribed processes and restrictions on open carry can be troublesome.

WEC 000454

That said, local elections officials would be able to work with the property's owner to temporarily or permanently designate the site as a firearm-free zone (*e.g.* if the building is leased or privately owned). Officials could also temporarily prohibit firearms in a government building that has been designated as open to firearms.

Generally, the open or concealed carry of a firearm does not constitute disorderly conduct. A person may not be charged with an ordinance-based or criminal offense of disorderly conduct for going armed with a concealed or openly carried firearm unless the facts and circumstances indicate a malicious or criminal intent. Wis. Stat. §§ 947.01(2), 66.0409(6).

*Polling Place Disruption*

- Chief Inspectors have broad powers if they believe an individual is creating a disruption
- Individuals should be given the opportunity to remedy the disruptive behavior
- Inspectors should exercise their good judgement to avoid creating a greater disruption

Election inspectors also have certain authority to maintain order and enforce obedience to their lawful orders during the election and canvass processes. Specifically, "If any person refuses to obey the lawful commands of an inspector, or is disorderly in the presence or hearing of the inspectors, interrupts or disturbs the proceedings, they may order any law enforcement officer to remove the person from the voting area or to take the person into custody." Wis. Stat. § 7.37(2). Thus, an election inspector could command a person to exit the polling place immediately, or contact law enforcement for the purposes of an arrest, if the individual is preventing the official from maintaining order, regardless of prohibitions on open/concealed carry. It would be advisable to give that person the opportunity to remedy the behavior before they are ever removed. Removal would deny the disruptive voter their right to vote, but a situational analysis would need to be performed by the chief inspector in each instance.

Again, criminal trespass, disorderly conduct, or other statutory/ordinance-based violations (*e.g.* voter intimidation, etc.) do not occur simply because an individual possesses a firearm or other weapon in a Wisconsin polling place. The person would likely need to brandish the weapon or act in a way that constitutes such a violation. This would ultimately become a fact-specific analysis and judgment that needs to be carried out by law enforcement and the judicial system. This does not mean that elections officials are unable to use their own judgment to assess the situation and act accordingly, although caution should be exercised.

Wisconsin Statute § 12.13(3)(x) also provides that no person may, "Refuse to obey a lawful order of an inspector made for the purpose of enforcing the election laws; engage in disorderly behavior at or near a polling place; or interrupt or disturb the voting or canvassing proceedings. This and other laws prevent fraud and intimidation that could apply if a person were brandishing a weapon to influence voters or otherwise disrupt processes.

Chief inspectors or municipal clerks may also prohibit election observers from carrying a weapon if doing so disrupts the operation of the polling place, clerk's office, or alternate absentee ballot site. The chief inspector or municipal clerk can take this a step further and order the removal of any observer if that individual commits an overt act that disrupts the operation of the polling place or clerk's office. Wis. Stat. § 7.41(3).

## Other Weapons

- Knives and other edged weapons are prohibited at K-12 schools
- Carrying a knife is generally lawful if the individual is not otherwise prohibited from carrying a weapon
- As with firearms, Chief Inspectors may assess if the conduct is disruptive

Wisconsin recently removed restrictions on the carry of all knives, including switchblades or automatic knives (*i.e.* the law now also allows the open and concealed carry of knives). 2015 Assembly Bill 142. Switchblades had previously been criminalized under the now-repealed Wis. Stat. § 941.24. The state's concealed carry law specifically excludes knives from the definition of "dangerous weapon" as it relates to the additional requirements for concealing a weapon. Wis. Stat. § 941.23(1)(ap). That said, those prohibited from carrying a concealed firearm may also be prohibited from carrying a concealed knife. Wis. Stat. § 941.231. The statute prohibiting dangerous weapons other than firearms on school property has defined "dangerous weapon" in the broadest terms of Wisconsin law, which includes knives and other items, so knives would be prohibited on K-12 school property. Wis. Stat. § 948.61. In addition, the preemption laws discussed above have been expanded to includes knives as well as firearms, so some local ordinances cannot exceed state law, and some ordinances may have been thus nullified (*e.g.* laws restricting blade length).

As discussed with firearms, disorderly conduct or other legal violations do not occur simply because a person is armed with a knife or other weapon. The facts and circumstances must indicate a malicious or criminal intent. Wis. Stat. §§ 947.01(2), 66.0409(6). Beyond the considerations evaluated here, the law can be varied from weapon to weapon, and circumstance to circumstance. (*e.g.* "dangerous weapon" is defined to include firearms, electric weapons, metallic knuckles, and many other specific items for the purposes of weapons prohibitions for individuals under eighteen years of age, other statutes may define "dangerous weapons" differently based on the purpose of the law, etc.).

This memorandum has provided guidance on the primary types of weapons and situations that may be encountered, but the main focus of the chief inspector should be whether or not a disruption or other unlawful behavior is occurring (*i.e.* as it relates to chief inspector's statutory obligations to lawfully, safely, and without disruption manage the polling place). Again, the chief inspector retains the right to ask the person to refrain from the disruptive behavior, remove an individual from the premises if a lawful order is not obeyed or the disruption continues, or contact law enforcement to determine if a criminal law is being violated. Regardless of the legality of the specific weapon, a person does not have the right to use it in a manner that violates the provisions of state elections or criminal laws, or to infringe upon the rights of other voters in an unreasonable or illegal manner.

## Law Enforcement

- Law enforcement is generally permitted at polling places
- Municipal clerks should coordinate with law enforcement before election day

Wisconsin law does not expressly prohibit local law enforcement from having a presence in the polls. In fact, some WEC guidance specially allows for it (*e.g.* a police officer is often used as the "end of line officer" after the polls close).

WEC 000456

Chief inspectors and election official will want to consider the potential impact of such a presence carefully, though, and maintain an open line of communication with local law enforcement. Uniformed and non-uniformed officers in some wards have been known to occasionally check in at the polls to ensure the chief inspector has not seen anything concerning or does not otherwise require assistance. Officers are often present to cast their own vote as well. This relationship certainly plays an important part in the operation of a safe election process, but it also requires the chief inspector to walk a fine line in creating a polling place environment that does not disenfranchise or otherwise concern certain voters (*e.g.* some lawful voters are simply made uncomfortable by the presence of an armed official in the polling place).

Careful planning by election officials can minimize any voter concerns, ensure all laws are followed, and maintain order. Pre-planning with law enforcement can be critical to the effective operations of polls (*e.g.* examining the threat landscape, drafting an incident action plan, getting direct lines to communicate if needed, assigning resources to the polls if needed, etc.). Some chief inspectors have even asked for plain-clothes officers to be assigned to their polling place, or they have positioned an officer at the ready in a nearby space.

Chief inspectors also have the right to change these plans if it is believed that a law enforcement presence is disrupting the polling place or otherwise impacting the voting experience. Again, the chief inspector retains statutory rights to ask individuals to leave if it presents a disruption to the polling place.

## Military

- National Guard members serving voluntarily or under state authority are permitted
- Armed and uniformed federal military forces are generally prohibited from polling places

Recent events such as the COVID-19 pandemic have resulted in a "military presence" in the polling places, most notably through the lawful order that National Guard troops provide individual augmentation working at short-staffed locations. There is no prohibition on non-uniformed military servicemembers voluntarily serving as an election official.

An armed and uniformed military presence at the polling place is more directly forbidden unless that presence is necessary to repel armed enemies. 18 U.S.C. § 592. (*see also* 18 U.S.C. §§ 593, 595) Recent national discussions have centered on the use of law enforcement and military to ensure polling place activities are not otherwise compromised (*e.g.* prevention of election fraud), but without evidence of widespread fraud or armed enemies, there should be no such presence. Chief inspectors are responsible for ethical/lawful poll operations and would have the authority to question such a presence without a valid reason for the placement.

There are additional protections in the law, such as *posse comitatus*, that also generally prohibit this type of activity by federal military forces. 18 U.S.C. § 1385. This provision details criminal penalties for anyone that willfully uses any part of federal military or law enforcement forces to execute the law in cases or circumstances that were not expressly authorized by Congress or the Constitution.

## Militias

- Unauthorized private militias are prohibited by Wisconsin law
- Chief Inspectors may assess if conduct is disruptive

WEC 000457

A militia is defined under federal law as a group of able-bodied residents within certain age limits who may be called forth by the government to defend the United States or a specific state (*e.g.* Organized Militias: National Guard, Naval Militia; Unorganized Militia: Other members of the militia). 10 U.S.C. § 246. Groups of armed individuals that engage in paramilitary activity or law enforcement functions without being called forth by a state or federal government, and without reporting to any government authority, are thus considered to be unauthorized private militias. The Second Amendment of the United States Constitution does not protect private militias or prevent the prohibition of private paramilitary organizations. All fifty states prohibit private, unauthorized militia activity. *Fact Sheet: Unlawful Militias in Wisconsin*, Institute for Constitutional Advocacy and Protection, Georgetown Law.

The Wisconsin Constitution forbids private military units from operating outside state authority, providing that, "The military shall be in strict subordination to the civil power." Wis. Const. art. I, § 20. Wisconsin Statutes also provide that it is a felony for a person to act in an official capacity or perform an official function, when that party knowingly is not a public officer or employee that should be performing such functions, or is otherwise not qualified to act in that capacity. Wis. Stat. § 946.69. There are also laws prohibiting a person from making false statements about current/past military service. Wis. Stat. § 946.78. This may not be relevant, as many militia members represent themselves as their own military organization, rather than that of the government, but it still constitutes a violation if someone is falsely representing themselves as a member of the military to disrupt polling place activities.

Wisconsin law does not proscribe how many individuals are required for an unorganized or illegal militia. That said, even a small group meeting the definitions of a militia can be removed or reported to law enforcement if they are engaged in activity that violates any of the laws or protections described in this memorandum (*e.g.* voter intimidation, an attempt to control or influence election activities, illegal possession of firearms, etc.).

Much of this analysis with become a situational assessment by the chief inspector of the applicable polling place (*e.g.* are the individuals armed, carrying signs/flags/uniforms/hate symbols, is electioneering occurring, are voters leaving at the sight of these individuals, are the individuals talking to voters, etc.). That analysis will help to determine whether the group is simply exercising their own rights, or unlawfully infringing on the rights of others. There are also proactive measures that a chief inspector can take to prepare in advance of the elections (*e.g.* advance planning with law enforcement, direct lines of communication to law enforcement for election day, draft an incident action plan, speak to local threat landscape experts, research hate group and other risk-based databases, etc.).

WEC 000458

# Wisconsin Election Observer Log

Today's Date: _____     Election Date: _____     Municipality: _____     Page Number: _____

Site: ☐ Polling place, ward # _____   ☐ Clerk's office   ☐ Central count location   ☐ Residential Care Facility or Retirement Home   ☐ Other (specify) _____

With their signatures below, the signees attest to the following statement:

**"I understand Wisconsin's rules for election observers, as set out in *Wisconsin Election Observers Rules-at-a-Glance*, and agree to abide by those rules while observing this election or election administration event."**

| Printed Name | Signature | Street Address | Municipality, State | Representing | Photo ID Verified |
|---|---|---|---|---|---|
| | | | | | ☐ |
| | | | | | ☐ |
| | | | | | ☐ |
| | | | | | ☐ |
| | | | | | ☐ |
| | | | | | ☐ |
| | | | | | ☐ |
| | | | | | ☐ |
| | | | | | ☐ |
| | | | | | ☐ |

**EL-109** | Rev 2014-09 | Wisconsin Elections Commission, P.O. Box 7984, Madison, WI 53707-7984  608-261-2028 | elections.wi.gov | elections@wi.gov

WEC 000459

## At the Polling Place, an Election Observer must:

- ✓ Notify the chief election inspector she/he is at the polling place to observe
- ✓ Follow the directives of the chief election inspector or designee
- ✓ Provide photo identification
- ✓ Complete and sign an election observer log
- ✓ Wear an Election Observer tag or badge
- ✓ **Must** wear a face covering



## Remember:

- The chief election inspector is in charge of the polling place. All inquiries should be made of the chief election inspector or designee
- Challenges to voters must be filed with the chief election inspector or designee. Follow the process outlined by Wisconsin Administrative Rule EL Chapter 9
- Candidates are allowed in the polling place only after it has closed at 8:00 p.m.
- Polling places in Wisconsin are open from 7:00 a.m. until 8:00 p.m.

## Viewing documents

Observers are not entitled to view registration forms, proof of residence documents or the observer log on Election Day. Observers may ask the chief inspector or designee to view other documents, such as the poll list, that are available when doing so will not delay or disrupt the process, but this may not be possible when polls are busy, and they may not view confidential information. The chief inspector or designee has sole discretion to determine whether such documents may be viewed or photographed during voting hours.

## Election Observers may not:

- Engage in electioneering*
- Video and still cameras are not allowed
- Handle official election documents
- Have conversations about candidates, parties or ballot questions
- Make calls / use cell phones for voice calls inside the polling area (texting or other silent usage is acceptable if it is not disruptive)
- Wear clothing or buttons related to candidates, parties or referenda that is intended to influence the election
- Interact with voters, except when requested
- View confidential information on the poll list.
- Enter vehicles of curbside voters

*\* Electioneering is defined in Wisconsin law as any activity which is intended to influence voting at an Election. Wis Stat. § 12.03*

## Communications Media:

Observers from communications media organizations shall identify themselves and the organization they represent to the chief inspector upon arriving at the polling place. The inspector shall record the information on the EL-104, Inspectors Statement. Video and still cameras are allowed if their use is not disruptive or show how an elector has voted.

## Capacity and COVID-19 Issues:

All observers are required to wear face coverings while inside the polling place, in-person absentee location or central count facility.

Due to polling place space constraints a nd public health procedures needed to address COVID-19 concerns the Chief Election Inspector may need to limit the number of observers in the voting areas at any specific time.

A rotation or schedule may be established if there are more observers than the voting area or central count location can accommodate.

WEC 000460

## Election Observation at Other Locations:

### Municipal Clerk's Office

Observers may be present during absentee voting in the clerk's office (if it's in a public location). The municipal clerk is in charge, and observers shall follow the clerk's directives. Video and still cameras are not allowed.

### Residential Care Facilities & Nursing Homes

Only observers appointed by the two major political parties may be present during absentee voting in residential care facilities and nursing homes. The special voting deputies are in charge, and observers shall follow the deputies' directives. Video and still cameras are not allowed. **Please note this program is suspended for the 2020 November General Election.**

### Central Count

Observers may be present during absentee voting in a centralized vote counting location. The municipal clerk is in charge, and observers shall follow the clerk's directives. Video and still cameras are allowed if their use is not disruptive or show how an elector has voted.

### Recounts

Observers may be present during election recounts, including candidates and their counsel. The board of canvassers is in charge, and observers shall follow the board's directives. Video and still cameras are allowed if their use is not disruptive or show how an elector has voted.

---

### Contact Information
### Wisconsin Elections Commission

#### TELEPHONE/FAX

WEC Help Desk: 608-261-2028
Fax: 608-267-0500

#### STREET ADDRESS

212 East Washington Avenue, Third Floor
Madison, Wisconsin 53703

#### MAILING ADDRESS

Wisconsin Elections Commission
Post Office Box 7984
Madison, Wisconsin 53707-7984

#### INTERNET ADDRESS

http://elections.wi.gov

#### EMAIL ADDRESS

elections@wi.gov



---

# Wisconsin Election Observers

# Rules-at-a-Glance

The State of Wisconsin permits individuals to observe voting and the election administration process at polling places on Election Day. It also permits observers to view the absentee voting process in the municipal clerk's office, central count processes, recounts, and voting in residential care facilities and nursing homes.

These **Rules-at-a-Glance** outline the Wisconsin Elections Commission's interpretation of statutes governing the conduct of election observers.



October 2020