UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

DONALD J. TRUMP, Candidate for President of the United States of America,

    Plaintiff,

v.

THE WISCONSIN ELECTIONS COMMISSION, and its members, ANN S. JACOBS, MARK L. THOMSEN, MARGE BOSTELMANN, DEAN KNUDSON, ROBERT F. SPINDELL, JR., in their official capacities, SCOTT MCDONELL in his official capacity as the Dane County Clerk, GEORGE L. CHRISTENSON in his official capacity as the Milwaukee County Clerk, JULIETTA HENRY in her official capacity as the Milwaukee Election Director, CLAIRE WOODALL-VOGG in her official capacity as the Executive Director of the Milwaukee Election Commission, MAYOR TOM BARRETT, JIM OWCZARSKI, MAYOR SATYA RHODES-CONWAY, MARIBETH WITZEL-BEHL, MAYOR CORY MASON, TARA COOLIDGE, MAYOR JOHN ANTARAMIAN, MATT KRAUTER, MAYOR ERIC GENRICH, KRIS TESKE, in their official capacities; DOUGLAS J. LA FOLLETTE, Wisconsin Secretary of State, in his official capacity, and TONY EVERS, Governor of Wisconsin, in his official capacity.

    Defendants.

Case No.:20CV1785

## GOVERNOR EVERS REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

# INTRODUCTION

President Trump's complaint and motion for "expedited declaratory and injunctive relief" purport to protect the rights of the Wisconsin Legislature to determine the manner for choosing electors under Article II of the Constitution. In fact, the Legislature long ago made that determination, mandating that Wisconsin's voters choose electors. *See* Wis. Stat. § 5.10 The relief here sought—disenfranchising millions of Wisconsin voters—would be antithetical to the governing principle underlying all Wisconsin election laws and American democracy itself. Under § 5.01 of the Election Laws, the Wisconsin Legislature has provided the unambiguous mandate that all election laws are to be construed to "give effect to the will of the voters." Wis. Stat. § 5.01(1). The President offers no authority for reversing the dictates of the Wisconsin legislature and instead assigning the State's electors to him. Nor does he offer any explanation of how this could plausibly be done in any manner that could comport with the fundamental rights of Wisconsin voters. Neither, consistent with the Eleventh Amendment, could a federal Court conceivably direct the Governor of this State to issue a new "certificate of determination consistent with, but only consistent with, the appointment of electors by the Wisconsin legislature." Dkt. 109 at 41.[1]

Plaintiff's brief scarcely mentions voters at all, let alone the fact that his complaint seeks to disenfranchise nearly 3.3 million voters. He suggests that Wisconsin election officials administering an election with Wisconsin law somehow violated the "civil rights" of the President

---

[1] Apart from the Eleventh Amendment issue, Plaintiff's use of the term of art "certificate of determination" is, indeed, odd. Under 3 U.S.C. § 6, a "certificate of determination" may be issued if an election dispute is resolved in a state *after* the Election College has convened and may then be delivered to Congress before it meets in January to count the Electoral College votes. Essentially, Plaintiff seems to be asking the Court to direct state officials' future administration of issues that have not materialized, and that will only arise after the ongoing recount procedures in state court are completed.

of the United States in violation of 42 U.S.C. §1983. But he shrugs aside the massive due process and equal protection violations that would result from the requested relief—*i.e.*, a final judgment casting aside nearly 3.3 million votes because, he asserts the results "likely" would have been different if different rules had been in place on Election Day. And based on that claim, offered without any foundation beyond pure speculation, he asks the Court to encourage the Wisconsin Legislature to appoint a separate slate of electors supporting him and direct the Governor to deliver a conforming certificate. He does so by dismissing absentee voting as a "mere privilege," ignoring that privilege implicates the fundamental right to vote once it has been exercised in reliance on the guidance provided by state officials.

Fundamentally, however, all elections are about the rights of voters to select their representatives. As Judge Bibas recently ruled in rejecting President Trump's challenge to the Pennsylvania election results, "Votes, not lawyers, choose the president. Ballots, not briefs, decide elections." *Donald J. Trump for President, Inc. v. Sec'y of the Commonwealth of Pa.*, No. 20-3371, 2020 WL 7012522, at *20 (3d Cir. Nov. 27, 2020)[2].

The sole purpose of this lawsuit is to allow Plaintiff two duplicative avenues for the same claims. He cloaks his state law claims as "constitutional violations," but in reality, he requests that this Court interpret Wisconsin law and direct the future actions of Wisconsin officials. He does so even as a Wisconsin state court simultaneously adjudicates the same legal provisions. This contravenes the basic fundamentals of federalism that Plaintiff has espoused, and is why federal courts defer to state courts on issues of state law.

---

[2] Pursuant to Civil L. R. 7(j)(2), all unpublished cases, orders, and dispositions cited are filed in conjunction with this brief.

While this is all inconsistent with basic principles as to what disputes can be resolved and how in a federal court, Plaintiff's opposition is also striking in another way: Rather than even addressing several of Governor Evers' independently dispositive arguments, Plaintiff ignores them altogether. Governor Evers' argued, without any response from Plaintiff that:

- Plaintiff failed to state a claim in compliance with Fed. R. Civ. P. (8)(a)(2).
- The exclusive remedy of 9.01(11) barred Plaintiff's claims.
- Plaintiff requests that the Court to issue an advisory opinion.

Governor Evers further cited authorities that Plaintiff ignored completely:

- Fed. R. Civ. P. 8(1)(2).
- *Hennings v. Grafton*, 523 F.2d 861, 862-63 (7th Cir. 1975), which holds Plaintiff's constitutional claims are barred.
- The Legislature expressly endorsed ballot-drop-boxes.
- CTCL Grants were upheld as lawful by eight federal courts.

Ignoring these arguments and authorities amounts to a concession, and the Court must accept Governor Evers' arguments as true. Consequently, those conceded arguments are fatal to Plaintiff's cause of action, and require dismissal. Under controlling law, Plaintiff's failure to respond at all to these arguments must result in dismissal with prejudice. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466–67 (7th Cir. 2010). Indeed, in the time between this Court's pretrial conference on December 9, 2020 and the filing of this brief the night of December 9, yet another court has rejected similar attempts to compel state officials to decertify the election. *See Bowyer v. Ducey*, No. 2:20-cv-2321 (D. Az. Dec. 9, 2020) (attached as Exhibit A).

**ARGUMENT**

**I. Plaintiff Has Conceded Several of Governor Evers' Arguments.**

Plaintiff did not respond to substantive and dispositive arguments raised by Governor Evers in his motion to dismiss brief. By failing to respond to these arguments, Plaintiff has conceded them. As a result, the complaint must be dismissed. *See Bonte,* 624 F.3d at 466–67 (7th Cir. 2010); *see also Keri v. Board of Trustees of Purdue University,* 458 F.3d 620, 643, n. 7 (7th Cir.2006) (overruled on other grounds). The lack of response on the substance of Governor Evers arguments further illustrates that this case is meritless, as Plaintiff will not even engage on actual issues of law.

**A. The Plaintiff has not stated any claim for relief.**

In Governor Evers' Motion to Dismiss brief, he argued that the Complaint does not contain any actual claims because he did not specify them in accordance with Fed. R. Civ. P. 8(a)(2). This was a distinct argument from the plausibility of Plaintiff's allegations. The complaint lists some three hundred allegations spanning 72 pages, but fails to offer any explanation how those alleged "facts" could constitute the essential elements any claim cognizable under the Elections and Electors clauses, Due Process, or Equal Protection, or 42 U.S.C. § 1983. Nothing in the complaints lists counts or claims—at best, the complaint asserts only general grievances about purported deprivation of the President's rights under the Elections and Electors Clause and the Equal Protection Clause. As the Court observed at the pretrial conference, it's basically "a brief."

The Seventh Circuit requires more specificity that Plaintiff provided. For instance, in *Stanard v. Nygren,* the court stated:

> As we have noted, the first complaint alleged in a wholly conclusory fashion that the defendants had violated Stanard's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Reviewing that complaint, the district court noted that "the allegations in Count III [the § 1983 count] do not permit the court to determine which of the allegations in

paragraphs 1–41 ... support the alleged violations of the five constitutional amendments referred to in Count III.

658 F.3d 792, 800 (7th Cir. 2011). Applying the holding of *Stanard*, the Northern District of Illinois addressed a pleading resembling the one here, noting that "Count I fails to comply with Rules 8(a)(2), 8(d)(1), and 10(b). It fails to provide Defendants with even basic notice of the grounds for each constitutional claim, particularly because it lumps together four or five different constitutional amendments with little explanation of how Defendants allegedly violated each amendment." *Kole v. Vill. of Norridge*, 941 F. Supp. 2d 933, 942 (N.D. Ill. 2013).

Plaintiff's Complaint is even more egregious than *Stanard* and on par with *Kole* because he does not even label counts or claims in the Complaint. The current Complaint is only a hodgepodge of allegations without any specificity of what Plaintiff is actually claiming, and how the various allegations support the specific "claims."

### B. The exclusive remedy of 9.01(11) barred Plaintiff's claims.

Defendant Evers argued that Plaintiff's claims are barred because Wis. Stat. § 9.01(11) provides the exclusive remedy for a candidate. Plaintiff's brief does not contain a single citation to that statute, nor any explanation of exclusive remedies. Therefore, Plaintiff concedes that Wis. Stat. § 9.01(11) is his exclusive remedy and that he is barred from bringing this action.

### C. Plaintiff requests that the Court to issue an advisory opinion.

Defendant Evers argued that Plaintiff seeks an advisory opinion from this court. That argument remains unrebutted by Plaintiff. It has therefore been conceded, and the Court must accept Defendant Evers' argument as true. Since the Court cannot issue an advisory opinion, the Complaint must be dismissed because it is non-justiciable.

### D. Plaintiff ignored other consequential authorities.

Defendant Evers argued that drop-boxes comported with applicable election laws. In support of that argument, Governor Evers cited to a letter sent by legislative leadership expressly endorsing the use of drop-boxes. By failing to respond to the letter from the Legislature, Plaintiff has conceded that the Legislature endorsed drop-boxes.

Plaintiff fails to rebut any dispositive cases. Defendant Evers cited *Hennings v. Grafton*, 523 F.2d 861, 862-63 (7th Cir. 1975), which establishes that Plaintiff's constitutional claims are barred. Plaintiff does not provide so much as a footnote rebuttal to this case. Defendant Evers also cited to eight separate federal decisions upholding CTCL grants as lawful. Plaintiff does not even mention those grants in his response. The complete lack of an attempt to distinguish those cited cases from this complaint is telling. It further underscores the complete dearth of legal support for the Plaintiff's position.

### II. Plaintiff's Claims are Barred by the Eleventh Amendment.

As noted at the pretrial conference, Plaintiff's Complaint, as again reformulated in his opposition brief and at the conference, now raises yet another ground for dismissal with prejudice: Plaintiff's modified request for relief now mandates dismissal under the Eleventh Amendment. The Eleventh Amendment bars federal courts from granting "relief against state officials on the basis of state law, whether prospective or retroactive." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). This bar applies when the relief sought would require a federal court to "instruct[] state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106. It therefore precludes relief when, as here, Plaintiff has tried to disguise his state law claims as federal causes of action. Indeed, the *Bowyer* case decided this evening by the District of Arizona grants Eleventh Amendment Immunity on just such grounds. *Bowyer*, No. 2:20-cv-

6
Case 2:20-cv-01785-BHL   Filed 12/09/20   Page 7 of 11   Document 120

2321, Doc. 84, at 14-17 (granting motion to dismiss on Eleventh Immunity grounds because claims really based on state law and sought-after relief of decertifying the election is not prospective.)

As federal courts have repeatedly emphasized, if the "gravamen" of a claim is that the state has "improperly interpreted and failed to adhere" to state law, a plaintiff cannot plead around an Eleventh Amendment problem by asserting that that failure to follow state law violates the federal constitution. *S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198, 1204-05 (11th Cir. 2019); *see also Massey v. Coon*, No. 87-3768, 1989 WL 884, at *2 (9th Cir. Jan. 3, 1989) (holding state official immune where claim was brought under the Due Process and Equal Protection Clauses of the Constitution "on its face," but such "constitutional claims [were] entirely based on the failure of defendants to conform to state law"); *Balsam v. Sec'y of State*, 607 F. App'x 177, 183-84 (3d Cir. 2015) (applying the bar to claims "premised on violations of the federal Constitution"); *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 626 (E.D. Pa. 2018) (explaining that, "[e]ven when voters attempt to tie their state law claims into their federal claims, the Eleventh Amendment bars the state law claims" (quotation omitted)); *Six v. Newsom*, 462 F. Supp. 3d 1060, 1073 (C.D. Cal. 2020) (denying temporary restraining order in part because Fifth and Fourteenth Amendment claims were predicated on violations of state law); *Thompson v. Alabama*, No. 2:16-CV-783-WKW, 2017 WL 3223915, at *8 (M.D. Ala. July 28, 2017) (denying injunction putatively based on federal constitutional claims because those claims rested on premise that state officials were violating state law).

Plaintiff's response brief, and statements in this Court, make clear this is exactly what Plaintiff wants the Court to do. The Plaintiff now demands that the court "issue a certificate of determination consistent with, and only consistent with, the appointment of electors by the Wisconsin [L]egislature." (Dkt. 109 at 41). This is an express request to "instruct[] state officials

on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106. And its allegations of state law violations are not ongoing.

The relief Plaintiff seeks thus "conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst*, 465 U.S. at 106.

### III.    Granting Plaintiff's Relief Would Violate Due Process.

Even if Plaintiff was not barred from bringing his claims, and even if the Court did find violations of Wisconsin state law, Plaintiff's proposed relief would violate the due process rights of millions of Wisconsin voters who relied on WEC's guidance, and through no fault of their own, would have their votes invalidated.

While a state legislature may prospectively amend laws affecting the method of casting a ballot, it may not do so retroactively, and accordingly, due process prohibits the Court from enforcing post-election rule changes that Plaintiff demands. *See Griffen v. Burns*, 570 F.2d 1065, 1079 (1st Cir. 1978) (retractive invalidation of absentee ballots violated due process).

A due process violation occurs when: "(1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in election procedures." *Bennet v. Yoshina*, 140 F.3d 1218, 1227 (9th Cir. 1998). Plaintiff's proposed relief will unequivocally disenfranchise the millions of voters who relied upon the procedures created prior to the election. The Court should avoid granting Plaintiff's bizarre request for a "remand" because the remedy itself will create a constitutional violation. *See Wright v. Sumter Cty. Bd. of Elections & Registration*, 361 F. Supp. 3d 1296, 1301 (M.D. Ga. 2018) (declining to adopt remedial redistricting plan proposed by plaintiff, and noting "the obligation of the Court to ensure that a remedial plan is constitutional"), *aff'd*, No. 18-11510, 2020 WL 6277718 (11th Cir. Oct. 27, 2020);

*Baber v. Dunlap*, 349 F. Supp. 3d 68, 77-78 (D. Me. 2018) (observing "a certain degree of irony because the remedy Plaintiffs seek could deprive more than 20,000 voters of what they understood to be a right to be counted with respect to the contest between [two candidates]," and that "such a result would [raise equal protection concerns about "valuing one class of voters . . . over another"); see also *Ford v. Tennessee Senate*, No. 06-2031, 2006 WL 8435145, at *14 (W.D. Tenn. Feb. 1, 2006) ("Voters whose right to vote is challenged must be afforded minimal, meaningful due process to include, notice and opportunity to be heard before they can be disenfranchised").

Plaintiff knew of these procedures months in advance, and even conducted a campaign under some of these rules in 2016, yet he now wants to invalidate the results of the election even though voters followed the procedures at the time. Plaintiff's remedy would not only deprive voters of a constitutional right, but punish them for complying with what their government allowed them to do.

### IV. The Recent *Bowyer* Decision Provides Further Bases for Dismissal.

In *Bowyer*, the court dismissed a complaint by potential electors for Plaintiff here. As relevant here, the court found that their claims were barred by (1) standing; (2) abstention; (3) the Eleventh Amendment, *see supra* Part II; (4) laches; and (5) mootness. Ex. A at 4-22. It also found that the requested injunctive relief "would greatly harm the public interest" because seeks to "supplant[] the will supplanting the will of nearly 3.4 million voters reflected in the certified election results." *Id.* at 28. This rationale is equally applicable here.

Respectfully submitted this 9th day of December 2020.

/s/ Davida Brook
Justin A. Nelson
Stephen E. Morrissey
Stephen Shackelford Jr.
Davida Brook
SUSMAN GODFREY L.L.P.

1000 Louisiana St., Suite 5100
Houston, TX 77002
(713) 651-9366
jnelson@susmangodfrey.com
smorrissey@susmangodfrey.com
sshackelford@susmangodfrey.com
dbrook@susmangodfrey.com

Jeffrey A. Mandell
Rachel E. Snyder
Richard A. Manthe
STAFFORD ROSENBAUM LLP
222 W. Washington Ave., Suite 900
Madison, WI 53701-1784
Telephone: 608-256-0226
Email: jmandell@staffordlaw.com
Email: rsnyder@staffordlaw.com
Email: rmanthe@staffordlaw.com

Paul Smith
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
psmith@campaignlegalcenter.org

*Attorneys for Defendant, Governor Tony Evers*