# Exhibit D

2017 WL 3223915
Only the Westlaw citation is currently available.
United States District Court, M.D.
Alabama, Northern Division.

Treva THOMPSON, et al., Plaintiffs,
v.
State of ALABAMA, et al., Defendants.

CASE NO. 2:16-CV-783-WKW
|
Signed 07/28/2017

**Attorneys and Law Firms**

Aderson B. Francois, Institute for Public Representation, Danielle Lang, Joseph Gerald Hebert, Campaign Legal Center, Jessica Ring Amunson, Jenner & Block LLP, Patrick D. Llewellyn, Public Citizen Litigation Group, Washington, DC, Armand Derfner, Derfner & Altman LLC, Charleston, SC, James Uriah Blacksher, Attorney at Law, Birmingham, AL, Joseph Mitchell McGuire, McGuire & Associates LLC, Montgomery, AL, Pamela Karlan, Stanford Law School, Stanford, CA, for Plaintiffs.

Andrew L. Brasher, Misty Shawn Fairbanks Messick, James William Davis, State of Alabama Office of the Attorney General, Montgomery, AL, for Defendants.

### MEMORANDUM OPINION AND ORDER

W. Keith Watkins, CHIEF UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

*1 Alabama citizens lose their right to vote if they are "convicted of a felony involving moral turpitude." Ala. Const., Art. VIII, § 177(b) (1996). Disenfranchisement of felons, for more than two decades, has hinged on the meaning of "moral turpitude." But what does "moral turpitude" mean? Because the Alabama Constitution did not define this nebulous standard, "[n]either individuals with felony convictions nor election officials ha[d] a comprehensive, authoritative source for determining if a felony conviction involve[d] moral turpitude and [was] therefore a disqualifying felony." Ala. Code § 17-3-30.1 (eff. Aug. 1, 2017). But that dilemma for felons and election officials appears to have resolved on May 25, 2017, at least prospectively, with the enactment of the Felony Voter Disqualification Act, Alabama Laws Act 2017-378 ("HB 282"), which for the first time established a specific and inclusive list of felonies "involving moral turpitude." HB 282, codified as § 17-3-30.1 of the Alabama Code, has an effective date of August 1, 2017.

This lawsuit originally was not about HB 282; it could not have been because its commencement preceded HB 282's enactment by eight months. Rather, Plaintiffs filed this proposed class action against the State of Alabama and its officials, seeking in part to invalidate § 177(b) of Article VIII of the Alabama Constitution of 1901 on federal constitutional grounds, including vagueness.

HB 282 changed the course of this lawsuit significantly. Acknowledging that HB 282 "seeks to put an end to" a system that required "individual county registrars to make subjective and contradictory determinations of citizens' eligibility to vote on an ad hoc basis" (Pls.' Mot. Prelim. Inj., at 7), Plaintiffs filed a motion for preliminary injunction thirty-seven days after HB 282's enactment. Plaintiffs do not challenge the provisions of HB 282 itself. Instead, they ask for a preliminary injunction mandating Defendants to take specified steps to implement HB 282.

The urgency of the motion, according to Plaintiffs, is the upcoming special election for the United States Senate seat in Alabama, and more specifically, the voter registration deadline, which is July 31, 2017. The special primary election is August 15, 2017; the special runoff election is September 26, 2017; and the special general election is December 12, 2017. Plaintiffs contend that, "[a]bsent immediate relief from this Court, thousands of eligible voters risk losing the opportunity to vote in yet another election." (Pls.' Mot. Prelim. Inj., at 8.) The preliminary injunction motion "seeks relief solely for those voters whose voting rights under Section 177 of the Constitution have been affirmed by HB 282." (*Id.*) The motion refers to these potential voters as "HB 282 voters." (*Id.*)

In their motion, Plaintiffs ask for a preliminary injunction mandating Defendants to take the following actions prior to the voter registration deadline on July 31, 2017: (1) to provide notice of HB 282's voting eligibility standards on the electronic Alabama Voter Registration Form on the Alabama Secretary of State's website; (2) to post notice of HB 282's voting eligibility standards on the Alabama Secretary of

State's website and at county registrars and DMV offices; (3) to submit a request to the federal Election Assistance Commission to provide notice of HB 282's voting eligibility standards in Alabama's state-specific instructions on the Federal Voter Registration Form; and (4) to reinstate HB 282 voters—voters whose registration applications were denied or who were struck from the voter registration rolls in the last two years, but whose eligibility was affirmed by HB 282—to the voter registration rolls and provide them with individualized notice of their eligibility to vote.[1]

**\*2** Defendants oppose the motion, arguing that Plaintiffs have not met "the high bar for an emergency mandatory injunction and [that] the equities clearly outweigh granting one." (Defs. Resp., at 2 (Doc. # 58).) Defendants further represent that the Alabama Secretary of State is responsible for the unanimous passage of the Act and "fully supports the new law and is implementing it in a deliberate fashion." (*Id.* at 8.) The record contains briefing and evidence in support of and in opposition to the motion, and the parties presented additional evidence and arguments at the hearing held on July 25, 2017.

For the reasons that follow, Plaintiffs have not demonstrated that they are entitled to preliminary injunctive relief, and Plaintiffs' motion (Doc. # 56) is due to be denied.

## II. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue.

## III. BACKGROUND

### A. The Relevant Parties and Claims

Plaintiffs seek a preliminary injunction on some, but not all, counts. Only those parties and claims that are the subject of the preliminary injunction are set out here.

#### 1. *Parties*

Plaintiffs filed this lawsuit on September 26, 2016. The ten individual Plaintiffs are Alabama citizens who, on the basis of their felony convictions, have been removed from the voter registration list, have been denied applications to vote, or have not registered to vote in this state based on the uncertainty of whether they have been convicted of a disqualifying felony involving moral turpitude. The organizational Plaintiff, Greater Birmingham Ministries, whose central goal is "the pursuit of social justice in the governance of Alabama," expends financial and other resources to help individuals with felony convictions determine whether they are eligible to vote or to have their voting rights restored. (Compl. ¶ 62 (Doc. # 1).) Defendants are the State of Alabama, the Secretary of State of Alabama, the Chair of the Board of Registrars for Montgomery County, and a Defendant class consisting of "[a]ll voter registrars in the State of Alabama." (Compl. ¶ 68.) The individual Defendants are sued in their official capacities only.

The Complaint seeks to certify a class of Plaintiffs defined as: "All unregistered persons otherwise eligible to register to vote in Alabama who are now, or who may in the future be, denied the right to vote because they have been convicted of a felony." (Compl. ¶ 50.) The Complaint also enumerates nine subclasses of Plaintiffs.

The motion for preliminary injunction also contains its own class, namely, "those voters whose voting rights under Section 177 of the [Alabama] Constitution have been affirmed by HB 282." (Pls.' Mot. Prelim. Inj., at 8 (Doc. # 56).)

#### 2. *Claims*

Section 177(b)'s phrase "moral turpitude" is at the forefront of twelve of the Complaint's fifteen counts challenging the constitutionality of § 177(b) of the Alabama Constitution. Only Counts 6–10 are relevant to the motion for preliminary injunction. These counts seek injunctive and declaratory relief.

Counts 6 and 7 allege that § 177(b)'s failure to define which Alabama felonies involve moral turpitude "imposes an unconstitutional burden on the right to vote of eligible Alabama voters with felony convictions in violation of the Equal Protection Clause" (Count 6) and the First Amendment (Count 7), and that, therefore, § 177(b) is subject to strict scrutiny. (Compl. ¶¶ 204, 207.)

Count 8 is a Fourteenth Amendment procedural due process claim, alleging that § 177(b)'s felon-disenfranchisement provision "provides Alabama citizens with little to no pre-deprivation process before revoking their right to vote, a fundamental right protected by both the Alabama and United States Constitutions." (Compl. ¶ 210.) Count 9 alleges that the "prohibition on voting for those convicted of felonies

'involving moral turpitude' is void for vagueness under the First and Fourteenth Amendments." (Compl. ¶ 225.)

**\*3** Count 10 is a selective enforcement claim under the Fourteenth Amendment's Due Process Clause. It alleges that Defendants arbitrarily distinguish between groups of felons by administering § 177(b) with an unequal hand from county to county and that, therefore, § 177(b) cannot survive rational-basis scrutiny.

The Complaint's prayer for relief seeks certification of the Plaintiff class, of nine Plaintiff sub-classes, and of a Defendant class of county registrars. It also asks for a declaratory judgment that § 177(b) of the Alabama Constitution, on its face and as applied, violates the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

**B. HB 282**
Shortly after taking office in 2014, Alabama Secretary of State John Merrill established an exploratory committee on "voter disenfranchisement and restoration of voting rights." (*See* Ex. A, Decl. of Edward Packard ¶ 6 (Doc. # 63-1).) A subcommittee of the "voter disenfranchisement and restoration of voting rights" committee drafted proposed legislation to create an exclusive list of felonies that would qualify as felonies of "moral turpitude" for the purposes of voting. (*Id.*) After this bill was introduced in previous sessions, the Legislature ultimately enacted this proposed legislation in a modified form by a unanimous vote in the 2017 regular legislature session. (*Id.*) HB 282 sets out its purposes, which are:

> a. To give full effect to Article VIII of the Constitution of Alabama of 1901, now appearing as Section 177 of Article VIII of the Official Recompilation of the Constitution of Alabama of 1901, as amended.
>
> b. To ensure that no one is wrongly excluded from the electoral franchise.
>
> c. To provide a comprehensive list of acts that constitute moral turpitude for the limited purpose of disqualifying a person from exercising his or her right to vote.

Ala. Code § 17-3-30.1(b)(2) (eff. Aug. 1, 2017).

On May 25, 2017, Governor Kay Ivey signed HB 282 into law. Defendants estimate that some 60,000 felons could be affected by HB 282.

The effective date of HB 282 is August 1, 2017. However, because the August 15 special primary election for the U.S. Senate seat in Alabama is after HB 282's effective date, the Alabama Secretary of State has instructed registrars to use the new law to determine whether new registrants who have committed felonies are qualified to vote in the August 15 primary election. (*See* Ex. E, Decl. of George Noblin ¶ 4 (Doc. # 63-5).) The Chairman of the Montgomery County Board of Registrars, George Noblin, gave an example that, on July 17, 2017, his staff permitted an individual convicted of a felony to register to vote based upon application of HB 282. The Secretary of State's liaison with the Board of Registrars is "not aware of any registrar who has received an application to register from a felon and has not applied the new law." (*See* Ex. B, Decl. of Clay Helms ¶ 7 (Doc. # 63-2).)

The Alabama Secretary of State also is implementing statewide training to registrars. Through a contract with Auburn University, the Secretary of the State implemented a three-year training program on a variety of subjects for all of the state's registrars. The program, which commenced in June 2017, includes a course on felon disenfranchisement and the definition of "moral turpitude." (*See* Ex. B, Decl. of Clay Helms ¶ 12 & Ex. 6 (contract and course schedule).) Moreover, on June 2, 2017, which was eight days after HB 282's enactment, Secretary Merrill gave a presentation on HB 282 to the state association of registrars at their summer conference and advised them to use the list as the exclusive means of evaluating registrants. (*See id.*) And the Secretary's staff distributed a modified registrars' handbook that incorporated HB 282. (*See id.* ¶ 9 & Ex. 5.) The Secretary of State also has provided written guidance on HB 282 to all registrars via email. (Pls.' Mot. Prelim. Inj., at 9.) Based on the steps that the Alabama Secretary of State has taken to train the registrars on HB 282, Plaintiffs, at the hearing, withdrew their request for a preliminary injunction ordering that Defendants provide Alabama's 200 registrars mandatory training regarding the proper implementation of HB 282 for the upcoming special elections for the U.S. Senate seat in Alabama.

**IV. STANDARD OF REVIEW**

**\*4** A party seeking a preliminary injunction must establish four elements: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that its own injury outweighs the injury to the nonmovant; and

(4) that the injunction would not disserve the public interest." *Siegel v. LePore,* 234 F.3d 1163, 1179 (11th Cir. 2000). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four prerequisites." *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.,* 557 F.3d 1177, 1198 (11th Cir. 2009). That burden is even higher where, as here, the plaintiff seeks a mandatory preliminary injunction. *See Winmark Corp. v. Brenoby Sports, Inc.,* 32 F. Supp. 3d 1206, 1218 (S.D. Fla. 2014); *see also Meghrig v. KFC W., Inc.,* 516 U.S. 479, 484 (1996) (A prohibitory injunction "restrains" a party from acting, while a mandatory injunction requires a party to "take action."). "[T]he burden of persuasion [on a motion for preliminary injunction] becomes even greater where the relief requested is a mandatory injunction, as opposed to a prohibitory injunction."); *see also Harris v. Wilters,* 596 F.2d 678, 680 (5th Cir. 1979) ("Only in rare instances is the issuance of a mandatory preliminary injunction proper." (citing *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.,* 441 F.2d 560 (5th Cir. 1971)).

## V. DISCUSSION

Plaintiffs have not met their high burden for obtaining a mandatory preliminary injunction. They have failed to demonstrate that any of the preliminary injunction factors weighs in their favor.

### A. **Plaintiffs have not shown a likelihood of success on the merits.**

Plaintiffs argue that they are likely to succeed on their claims challenging Alabama's standardless enforcement of the "moral turpitude" provision of § 177(b) as set out in Counts 6–10 of the Complaint. Defendants assert, on the other hand, that Plaintiffs cannot succeed because HB 282 moots Counts 6–10 and because their motion for preliminary injunction seeks relief that is outside the Complaint. These arguments are addressed in turn.

#### 1. *Plaintiffs' claims are moot.*

When, during the pendency of a lawsuit, the challenged law undergoes substantial amendment "so as plainly to cure the alleged defect, ... there is no live controversy for the Court to decide." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.,* 508 U.S. 656, 670 (1993) (O'Connor, J., dissenting). "Such cases functionally are indistinguishable from those involving outright repeal: Neither a declaration of the challenged statute's invalidity nor an injunction against its future enforcement would benefit the plaintiff, because the statute no longer can be said to affect the plaintiff." *Id.* The Eleventh Circuit has recognized that both it and the United States Supreme Court "have repeatedly held that the repeal or amendment of an allegedly unconstitutional statute moots legal challenges to the legitimacy of the repealed legislation." *Nat'l Advert. Co. v. City of Miami,* 402 F.3d 1329, 1332 (11th Cir. 2005) (collecting cases).

"While [the] general rule is that repeal [or amendment] of a statute renders a legal challenge moot, an important exception to that general rule is that mere voluntary termination of an allegedly illegal activity is not always sufficient to render a case moot and deprive the federal courts of jurisdiction to try the case." *Id.* at 1333. As a general principle, "[a] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Doe v. Wooten,* 747 F.3d 1317, 1322 (11th Cir. 2014) (citation omitted). However, the Eleventh Circuit "gives government actors more leeway than private parties in the presumption that they are unlikely to resume illegal activities"; this leeway translates to a "rebuttable presumption" or a "lesser burden." *Id.* (citations omitted).

**\*5** Before the presumption can attach, a defendant's termination of the challenged conduct must be "absolutely clear." *Id.* at 1322. Three factors guide that analysis: (1) "whether the termination of the offending conduct was unambiguous"; (2) "whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction"; and (3) "whether the government has 'consistently applied' a new policy or adhered to a new course of conduct." *Id.* at 1323. The government's repeal or amendment of a challenged statute is "often a clear indicator of unambiguous termination." *Id.* at 1322.

When the presumption attaches, "the controversy will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Id.* (citation omitted). Stated differently, only "when a court is presented with evidence of a 'substantial likelihood' that the challenged statute will be reenacted, the litigation is not moot and the court should retain jurisdiction." *Nat'l Advert. Co.,* 402 F.3d at 1334. "[T]he cases are legion from this [circuit] and other courts where the repeal of an allegedly

unconstitutional statute was sufficient to moot litigation challenging the statute." *Id.* at 1333–34.

Defendants argue for application of the general rule—that HB 282 is a clarifying amendment that moots Counts 6–10. Plaintiffs contend that the voluntary-cessation exception keeps this case alive.

The court begins with an analysis of the three *Doe* factors to determine whether HB 282 makes it "absolutely clear" that Defendants have ceased the challenged conduct. To begin, there is no serious debate that HB 282 resolves Plaintiffs' challenge to § 177(b)'s vagueness. (*See, e.g.*, Pls. Counsel's Letter to Andrew Brasher (Doc. # 56-1), in which counsel acknowledges that "HB 282 is most relevant to Counts 6–10," which challenge "the prior standardless system for determining who could vote," and that "HB 282 is an important step to remedying the harms we alleged in those counts of the complaint").) At the heart of Counts 6, 7, 8, 9, and 10's constitutional challenge is that § 177(b)'s phrase "moral turpitude" is so vague that it fails to provide reasonable guidelines for determining whether a felony conviction "involves moral turpitude." (*See, e.g.*, Compl. ¶ 198 ("The failure [of the State of Alabama] to define ... crimes of moral turpitude imposes an unconstitutional burden on those qualified to vote under Alabama law but who have been convicted of felonies." (Count 6)); Compl. ¶ 207 (incorporating ¶ 198 into Count 7); Compl. ¶ 211 ("[T]he risk of erroneous deprivation [of procedural due process] is high" because county registrars, with no legal training, must interpret § 177(b) in order to determine a citizen's eligibility to vote (Count 8); Compl. ¶¶ 222, 224, 225 § 177(b)'s "prohibition on voting for those convicted of felonies involving moral turpitude—with possible exception of those crimes listed in Alabama Code Section 15-22-36.1(g)"— is standardless, does not provide fair notice of the conduct prohibited, and is void for vagueness (Count 9); Compl. ¶ 227 ("Defendants' enforcement of Section 177(b) is not guided by a principled determination of which felonies 'involve moral turpitude' " and, thus, has resulted in a system of arbitrary disenfranchisement in violation of the Fourteenth Amendment (Count 10)).

Through the enactment of HB 282, the Alabama legislature has addressed Plaintiffs' quandary. HB 282's list of specific Alabama felonies, by crime and code section, is a definitive list of felonies involving moral turpitude under § 177(b)'s felony disenfranchisement provision. Plaintiffs now can be certain whether their convictions are disqualifying. They can review HB 282 and know whether their felony conviction involves moral turpitude. In fact, as a result of HB 282's listing of disqualifying felonies, Antwoine Giles and Laura Corley now know with certainty that they are eligible to vote because their felonies are not on the HB 282 list.[2] Counts 6–10's challenges that § 177(b)'s phrase "moral turpitude" is vague and lacks reasonably clear guidelines hardly can be said to still exist in view of HB 282. Plaintiffs have not argued that HB 282 fails to provide them with clarity as to whether their felony convictions involve "moral turpitude."

**\*6** Additionally, although Plaintiffs are not content with the progress of HB 282's implementation, the preponderance of the evidence shows that registrars are abiding by and applying HB 282 when registering felons to vote. More specifically, at the state association of registrars conference in June 2017, the Alabama Secretary of State advised registrars to use HB 282's list as the exclusive means of evaluating registrants. Registrars also have received an amended registrars' handbook that has been updated to incorporate the legislation. (Ex. B, Decl. of Clay Helms ¶¶ 8, 9.) And, in Montgomery County, a felon was permitted to register to vote under the new law, whose felony would have been disqualifying under the old law. (Ex. E, Decl. of George Noblin ¶ 4.) The Secretary of State's liaison with the Board of Registrars is "not aware of any registrar who has received an application to register from a felon and has not applied the new law." (Ex. B, Decl. of Clay Helms ¶ 7.) These facts demonstrate that HB 282, through its enactment and application, unambiguously terminated the offending conduct. The first factor is satisfied.

As to the second factor, there is no evidence, argument, or suggestion that HB 282 was an attempt to manipulate this court's jurisdiction over this lawsuit. There is no evidence suggesting that the Alabama legislature intends to repeal HB 282 after this lawsuit concludes. To the contrary, the record reveals that the passage of HB 282 is the culmination of several years of work initiated by the Alabama Secretary of State. (*See* Ex. C, Decl. of Brent Beal ¶ 2 (Doc. # 63-3).) Defendants' evidence establishes that, shortly after taking office in 2014, Secretary of State Merrill established an exploratory committee on "voter disenfranchisement and restoration of voting rights." (Ex. A, Decl. of Edward Packard ¶ 6.) A subcommittee of the "voter disenfranchisement and restoration of voting rights" committee drafted proposed legislation to create an exclusive list of felonies that would qualify as felonies of "moral turpitude" for the purposes of voting. (*Id.*) Ultimately, after this bill was introduced

in previous sessions, the Alabama Legislature enacted this proposed legislation in a modified form by a unanimous vote in 2017. (*Id.*) These facts show that substantial deliberation undergirded HB 282's enactment. The second factor is met.

Finally, with respect to the third factor, Defendants are applying HB 282 and are in the midst of implementing programs to educate registrars, voters, and other officials on the new law. There is no evidence that any eligible HB 282 voter has been denied the right to register to vote. This evidence, together with the unanimous vote for the law in both chambers of the legislature, demonstrates Defendants' commitment to abide by the new law and its "adhere[nce] to a new course of conduct." *Doe*, 747 F.3d at 1323.

In sum, the State of Alabama's enactment of HB 282 is "a clear indicator of unambiguous termination" of the allegedly unconstitutional conduct. *Id.* at 1322. Accordingly, Defendants are entitled to a rebuttable presumption that "they are unlikely to resume illegal activities." *Id.* Plaintiffs have failed to rebut that presumption; they have presented no evidence, for example, that the Alabama Legislature intends that HB 282's repeal will follow on the heels of the conclusion of this lawsuit. The absence of this sort of evidence is not surprising, given that the state legislature passed HB 282 unanimously and that the state's extensive training efforts on HB 282 already are underway.

Based on the foregoing, the enactment of HB 282, which clarifies for Plaintiffs whether their convictions are felonies "involving moral turpitude" under § 177(b), moots a legal challenge to the vagueness of § 177(b)'s moral turpitude phrase. The claims' mootness is a jurisdictional flaw that precludes the court from reaching the merits of these claims. Because Counts 6, 7, 8, 9, and 10 are moot, Plaintiffs cannot demonstrate a likelihood of success on the merits.[3]

### 2. *The requested preliminary injunctive relief is unlike the relief sought in the Complaint.*

**\*7** A preliminary injunction is not appropriate when it is based on relief that "is not of the same character [as that requested in the complaint], and deals with a matter lying wholly outside the issues in the suit." *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997) (per curiam), *amended on reh'g on other grounds by* 131 F.3d 950 (11th Cir. 1997). *See also Westbank Yellow Pages v. BRI, Inc.*, No. 96-1128, 1996 WL 255912, at \*1 (E.D. La. May 13, 1996) ("A preliminary injunction is not an appropriate vehicle for trying to obtain relief that is not even sought in the underlying action."). The relief requested here is problematic, both for what it seeks and for whom it is sought.

First, the relief requested in the motion for preliminary injunction is of a different nature than that pleaded in the Complaint. The Complaint seeks a declaratory judgment that § 177(b)'s moral-turpitude standard is unconstitutional and a permanent injunction enjoining Defendants from enforcing § 177(b), for example, by preventing Defendants "from denying any voter registration applications on the basis of felony convictions." (Compl., at 56.) The motion for preliminary injunction changes the focus of the relief to HB 282. (Pls.' Mot. Prelim. Inj., at 28.) As Plaintiffs admit, the motion for preliminary injunction asserts "new facts relevant to the passage of HB 282," (*id.* at 2), and asks the court to order the Secretary to provide notice of HB 282 in a specified manner and to automatically reinstate certain HB 282 voters. These remedies are not the remedies that the Complaint requests should Plaintiffs succeed in their underlying suit challenging the constitutionality of § 177(b).[4]

Moreover, to be clear, the subject matter of both the Complaint and the motion for preliminary injunction concerns the voting rights of felons. But the Complaint focuses on felons who, under § 177(b), could not vote, either because the state explicitly had taken away that right or because of the uncertainty § 177(b) created as to whether a conviction arose from a felony involving moral turpitude. The motion for preliminary injunction, on the other hand, turns attention to felons who now undeniably can vote by virtue of HB 282. Felons whose voting rights have been "affirmed" in that they now are eligible to register to vote (the subject of the motion for preliminary injunction) are not felons whose voting rights have been denied because of a felony conviction (the subject matter of the Complaint).

Second, Plaintiffs request preliminary injunctive relief for a new putative class of felons. In their brief in support of their motion for preliminary injunction, Plaintiffs ask for "relief solely for those voters whose rights under Section 177 of the [Alabama] Constitution have been affirmed by HB 282." (Pls.' Mot. Prelim. Inj., at 8.) It appears that Plaintiffs have formulated a class of felons—those who previously were denied voting rights or were unsure of their eligibility to vote under § 177(b) (and therefore did not attempt to register), but who now are eligible to vote and are certain of that eligibility because HB 282 has clarified that their felonies are

not disqualifying. But this class is not a part of the class or nine sub-classes alleged in the Complaint.

**\*8** The Complaint's class and sub-classes share a common factual denominator. Each includes unregistered voters who have been denied the right to vote because either their voting applications were denied, their names were purged from the voting registration rolls, or they cannot be legally certain whether their felony convictions are felonies involving moral turpitude. As Plaintiffs point out, the Complaint could not have alleged a purported class of HB 282 voters because HB 282 was non-existent at the initiation of this suit. But this point ignores that adding classes (and claims) in briefs circumvents the letter and spirit of the orderly procedures established by the Federal Rules of Civil Procedure for the efficient administration of a lawsuit. *See Gyenis v. Scottsdale Ins. Co.*, No. 8:12-CV-805-T-33AEP, 2013 WL 3013618, at \*1 (M.D. Fla. June 14, 2013) ("The Federal Rules of Civil Procedure are necessary for the orderly and efficient running of this Court and to ensure that in the interests of justice, everyone is on a level playing field. The Rules cannot be ignored or overlooked."); *see, e.g.*, Fed. R. Civ. 15(a), (d) (governing pre-trial amendments to pleadings and supplemental pleadings); *cf. Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

Plaintiffs have not moved to amend the Complaint or to supplement the pleadings in order to redefine the claims for relief or the purported class. These pleading deficiencies, which expand the litigation highway outside the Complaint's roadmap, present yet another reason for denying the motion for preliminary injunction.

### 3. *Plaintiffs have a* Pennhurst *problem.*

The Eleventh Amendment prevents a federal court from issuing an injunction against state officials solely to require them to adhere to state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106–07 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). To avoid the *Pennhurst* problem, Plaintiffs' new claims challenging Defendants' implementation of HB 282 may only proceed in federal court if a provision of federal law creates a right to the enforcement of HB 282.

Plaintiffs argue that *Pennhurst* is inapposite because they seek an injunction against state officials to "remedy the harms caused by their *unconstitutional* behavior" under federal law. (Doc. # 59, at 4 (emphasis in original).) Plaintiffs' attempt to differentiate *Pennhurst* from this case is not convincing.

Plaintiffs express no dissatisfaction with HB 282 itself; they advance no argument that HB 282 violates the federal constitution. Rather, Plaintiffs complain that, since May 25, 2017, Defendants have refused to implement HB 282 in a manner that would maximize notice to HB 282 voters and give more opportunities to HB 282 voters to vote in the August 15 special election for the U.S. Senate seat in Alabama.[5] (*See* Pls.' Mot. Prelim. Inj., at 28, in which Plaintiffs argue that they seek "full implementation of governing Alabama law"). What Plaintiffs really appear to be asking is that this court supervise and direct these state Defendants in how they should carry out their responsibilities under HB 282, a state law. The true nature of this "remedy" sounds in state law. Plaintiffs fail to persuade the court, at this juncture, that *Pennhurst* is not prohibitive of what they are asking this court to do. At the very least, *Pennhurst* presents another reason why Plaintiffs have not demonstrated a substantial likelihood of success on the merits.

### B. **Plaintiffs have not shown a substantial threat of irreparable injury.**

Plaintiffs contend that "[e]ligible HB 282 voters plainly face irreparable injury if the State does not take the[ ] [requested] commonsense steps to implement HB 282, correct recent unlawful voter registration purges and application denials, and educate voters about HB 282's eligibility requirements." (Pls.' Mot. Prelim. Inj., at 26–27.) The argument is illogical on many levels.

**\*9** "A showing of irreparable injury is the sine qua non of injunctive relief." *Siegel*, 234 F.3d at 1176 (citations omitted). "[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Id.* (citations omitted). Here, for the most part, the asserted injuries are not actual.

An actual injury is imperceptible under these facts. An "HB 282 voter," as Plaintiffs explain it, is an individual whose felony offense does not appear on the list of offenses in HB 282 and, thus, who is *not* disqualified to vote on the basis of a felony involving moral turpitude. The injuries alleged in Counts 6–10 focus on the harm to Plaintiffs —the inability to discern whether their felony convictions

render them unable to vote—caused by § 177(b)'s "failure to define or list disqualifying crimes or crimes of moral turpitude." (Compl. ¶ 198.) HB 282 has alleviated that harm. It is no longer problematic for Plaintiffs to determine whether they are eligible to vote. All a Plaintiff needs to know is the offense resulting in his or her conviction. If that felony is on the HB 282 list, he or she cannot vote; if it is not on that list, he or she can vote. Plaintiffs do not deny that HB 282's "comprehensive list of crimes that 'involve moral turpitude' " provides the clarity they sought for § 177(b).[6] (Pls.' Mot. Prelim. Inj., at 7.)

Having acknowledged that the alleged unconstitutional scheme (and thus necessarily the injury) of which Plaintiffs allege in the Complaint is "in the past" because of HB 282 (Prel. Inj. H'rg, June 25, 2017), Plaintiffs are left to argue that Defendants are not doing enough to get the word out on HB 282 to all felons, who were previously disenfranchised under Alabama's old § 177(b) scheme, but who now are eligible to vote by reason of HB 282.[7] They want this court to direct the Alabama Secretary of State to post notice about HB 282's voting eligibility standards on its website and to update state and federal voter registration forms.[8] Plaintiffs go so far as to insist that as to those felons, who in the past two years were denied voter registration or were struck from the voter registration rolls, Defendants should automatically reinstate them on the voter registration rolls and provide them with individualized notice of their automatic registration and right to vote. Having reconstructed their injuries in their motion for preliminary injunction, Plaintiffs contend that, post HB 282, they have suffered injuries as a result of Defendants' failure to take these affirmative steps to provide notice and automatic reinstatement.

*10 But, at bottom, these alleged injuries are misdirected. It is true that, once the August 15 special primary election passes, "there can be no do-over" for an unconstitutionally disenfranchised voter. *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). But the HB 282 voters do not contend that they have been disenfranchised. To quote Plaintiffs, HB 282 has "affirmed" these individuals' right to vote. It would be an entirely different matter if Defendants were refusing to allow felons to register to vote where their offense of conviction was not on the HB 282 list. There is no evidence, however, that Defendants have denied any eligible HB 282 voter's application to register to vote or have engaged in any type of prohibitive tactic. Instead, the evidence demonstrates that the county registrars, at the direction of the Alabama Secretary of State, are adhering to HB 282 and are permitting individuals to register whom HB 282 does not disqualify. Plaintiffs, who are eligible HB 282 voters, cannot claim irreparable harm when they have been granted the right to vote.[9]

Moreover, as to the different forms of notice Plaintiffs request—a posting on the Alabama Secretary of State's website; updated state and federal registration forms; and individualized notice—Plaintiffs have presented no evidence that either named Plaintiff suffered any injury based upon a lack of notice. There is no evidence that Mr. Giles or Ms. Corley do not know that they can go to their respective county registrars office and register to vote. There is no evidence that imminent injury will occur to Mr. Giles or Ms. Corley if the requested forms of notice are denied to them.

Moreover, as a matter of general observation on public notice rather than a finding, HB 282 and Alabama's felon disenfranchisement laws have received widespread news coverage at the local, county, state, and national levels through broadcast news, the internet, and print media. Exhibits, submitted by both Plaintiffs and Defendants, include compilations of the coverage on these issues and confirm that there have been no less than thirty-five sources of publicity about Alabama's laws on felon disenfranchisement, with most of those sources also reporting on HB 282. Notwithstanding Plaintiffs' contention that Defendants have failed to provide adequate notice of HB 282 to the targeted felon pool of eligible HB 282 voters, it is relevant for the equitable equation that the press has assisted in notifying the public about HB 282.[10]

As to the putative class members of eligible HB 282 voters, the following represents the nature of Plaintiffs' evidence. There is a declaration from a Greater Birmingham Ministries employee, who "think[s] many of these [eligible HB 282] voters may never discover that they have the right to vote" unless they receive "individual notification" of HB 282. (Shearer Decl. ¶ 10 (Doc. # 66-6).) She explains that many of the eligible HB 282 voters "are poor and do not have regular access to computers and the internet," and, thus, "website notification alone would be insufficient." (*Id.* ¶ 11.) There also are two declarations from individuals who are eligible HB 282 voters, but who say that they would have been "unaware of the new law and [their] ability to register to vote" if they had not been contacted by the Campaign Legal Center. (Brio Richardson Decl. ¶ 8 (Doc. # 66-9)); (Willie Goldsmith Decl. ¶ 4 (Doc. # 66-10).)

**\*11** Individualized notice, along with automatic reinstatement on the voter registration rolls, is what the putative class really seeks because Plaintiffs, in effect, concede that a posting on the Secretary's website on HB 282 would not effectively reach eligible HB 282 voters. These affirmative steps, if Defendants were ordered to take them, would not give HB 282 voters any more voting rights than they have today.[11] They, like their proposed class representatives, can register to vote in their respective counties; there is no question as to their eligibility to vote after HB 282.

Plaintiffs contend, though, that *Hobson v. Pow*, 434 F. Supp. 362 (N.D. Ala. 1977), requires individualized notice and reinstatement to the voter registration rolls of the eligible HB 282 voters. In that case, the district court enjoined the State of Alabama from disenfranchising men convicted of "wife-beating," which it found to be an impermissible gender-based classification, and ordered registrars to "either publish the notice [of the court's order] or send notice to each person purged by first-class mail." *Id.* It also ordered some counties to take the extra step of "reinstat[ing] all voters purged" for wife-beating. *Id.* at 368. *Hobson* is distinguishable for at least two reasons.

First, in *Hobson*, the plaintiffs secured the right to vote through litigation and a federal court order. Here, the State changed the law through legislation, which "everyone is presumed to know" and of which everyone "is bound to take notice." *See Meacham v. Halley*, 103 F.2d 967, 972 (5th Cir. 1939). Second, *Hobson* found that it was a violation of equal protection to disqualify a discrete group of male felons (and not their female counterparts). The relief the court granted was prospective declaratory and injunctive relief compelling state officials to comply with federal law. There is no federal constitutional claim by the HB 282 voters; these voters have secured their right to vote. The relief they request arises under state law and seeks enforcement of state law. Again, the HB 282 voters' claims in this lawsuit succumb to *Pennhurst*. Because their alleged injuries have no federal law grounding in this court, they cannot be said to be actual, irreparable, or imminent.

Finally, Plaintiffs' delay in seeking preliminary injunctive relief undercuts their argument of irreparable injury. Under Eleventh Circuit law, "[a] delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).

Here, two significant events preceded Plaintiffs' preliminary injunction motion. First, Plaintiffs have known since April 18, 2017, when Governor Kay Ivey signed a proclamation, of the dates for the special election for the United States Senate seat in Alabama. Yet, Plaintiffs delayed filing a preliminary injunction motion until nearly two-and-a-half months later on June 30, 2017. Second, Plaintiffs have been on notice since May 25, 2017, when HB 282 was enacted, of the bill's effect on current felons' eligibility to vote, but they still waited more than a month to file their preliminary injunction motion. The court is mindful of the efforts Plaintiffs say they made to reach an agreement with the State without the need for court intervention. But with a July 31 voter registration deadline for the special primary election looming and given the multitude of steps that the State must take to get ready for the election, the delay nevertheless cuts against the premise that these HB 282 voters needed urgent action to protect their rights.

**\*12** For all of these reasons, Plaintiffs have not shown a substantial threat of irreparable injury if the requested relief is not granted.

### C. **Plaintiffs have not shown that the threatened injury to them outweighs the harm an injunction may cause the defendant.**

Plaintiffs argue that Defendants will not be harmed by their relief because "[i]t falls squarely within the Secretary of State's responsibilities to update the voter registration forms, [the website], and all other voter education materials, both to reflect current Alabama law and to provide registrars with 'uniform guidance' on the administration of the Election Code." (Pls.' Mot. Prelim. Inj., at 27.) Plaintiffs contend that the important "principle of election law ... that, because of the risk of voter confusion, courts as a general rule should be reluctant to allow last-minute changes to the status quo" is inapplicable in this case because their motion for a preliminary injunction is intended to eliminate confusion. *Hall v. Merrill*, 212 F. Supp. 3d 1148, 1157 (M.D. Ala. 2016) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)).

Contrary to Plaintiffs' position, the requested preliminary injunction, if granted, would alter the status quo. Defendants would have to divert essential resources needed to prepare for and conduct the election in order to fulfill the many last-minute tasks that Plaintiffs want them to perform. Plaintiffs are requesting, for example, the court to order Defendants to

send individualized notice to a sub-group of the approximate 60,000 felons who were removed from voter rolls or denied registration over an indeterminate time frame. Defendants have demonstrated, at the very least, that identifying the dates of conviction, the specific felonies committed, and whether new felonies had been committed would be an arduous, case-by-case task. With an election looming and only six employees in the Secretary of State's Election Division, just the task of preparing the mass mailings to provide individualized notice to potential HB 282 voters in 67 counties and potentially 3,487 precincts would be massive, and likely impossible. Considering cumulatively Plaintiffs' requests for preliminary injunction, completion of those tasks by Defendants so close to an election would harm Defendants.

Moreover, the harm to Defendants from this court's meddling with the state's election law is not inconsequential, particularly here, where Plaintiffs ask this court to oversee Defendants' implementation of state law. The Eighth Circuit's observations on principles of federalism are fitting:

> The value of decentralized government is recognized more clearly today than it has been for decades. This recognition, born of experience, enables us (and not only us) to see that federal judicial decrees that bristle with interpretive difficulties and invite protracted federal judicial supervision of functions that the Constitution assigns to state and local government are to be reserved for extreme cases of demonstrated noncompliance with milder measures. They are last resorts, not first.

*Ass'n of Cmty. Organizations for Reform Now (ACORN) v. Edgar*, 56 F.3d 791, 798 (7th Cir. 1995).

**\*13** Overall, Plaintiffs have not shown that the threatened injury to them outweighs the harm an injunction may cause Defendants.

### D. Plaintiffs have not demonstrated that a preliminary injunction would serve the public interest.

Finally, the public interest militates against the granting of the preliminary injunction motion. The HB 282 voters can have a voice in the election for the U.S. Senate seat in Alabama; all of them are, by Plaintiffs' definition of the putative class, eligible to register to vote and to cast a vote in the special election. The grant of a preliminary injunction will not give these voters additional voting rights. HB 282 has advanced, therefore, the public interest in protecting voting rights from erroneous disenfranchisement, and, thus, there is little for the public to gain by granting Plaintiffs' preliminary injunctive relief.

At the same time, "there is a strong public interest in smooth and effective administration of the voting laws that militates against changing the rules in the hours immediately preceding the election." *Summit Cty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 551 (6th Cir. 2004). Plaintiffs contend that they only are seeking enforcement of the new HB 282, not a change in the law, so as to avoid voter confusion. Even so, the diversion of the state's resources to fulfilling Plaintiffs' requested tasks, when balanced against the multitude of hurdles Plaintiffs face as to the other elements for obtaining injunctive relief and the steps Defendants have taken to implement HB 282, weighs heavily against granting preliminary injunction relief.

### VI. CONCLUSION

HB 282 offered long-needed and sought-after clarification to the conundrum in the Alabama Constitution's disenfranchising provision, § 177(b), when it defined a "felony involving moral turpitude." HB 282 did not exist when Plaintiffs filed this lawsuit challenging § 177(b) on federal constitutional grounds, but after its enactment, Plaintiffs filed a motion for preliminary injunction asking this court to tell Alabama's state officials how to implement the law. Plaintiffs' motion, however, is based on claims that HB 282 has mooted; raises new claims, new requests for relief, a new putative class of voters who were ineligible to vote prior to HB 282, but now are eligible; seeks to alter the status quo; and raises serious concerns about federal intrusion into state election law. The motion for preliminary injunction is due to be denied for all these reasons and more. Plaintiffs satisfy none of the elements for granting a preliminary injunction.

Accordingly, based upon careful consideration of Plaintiffs' motion for preliminary injunction, Defendants' opposition, the evidentiary hearing, and the oral arguments, and the record, it is ORDERED that the motion (Doc. # 56) is DENIED.

DONE this 28th day of July, 2017.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3223915

Footnotes

1     At the July 25, 2017, hearing on the motion for preliminary injunction, Plaintiffs orally narrowed their written requests for preliminary injunctive relief. These are the modified requests.

2     Mr. Giles alleges that his name was purged from the Montgomery County voter registration list after his 2006 Alabama conviction for stalking in the first degree. Because that felony is not on the HB 282 list, he now is eligible to register to vote. Ms. Corley alleges that she received conflicting information from state agencies as to whether her 2015 Alabama convictions for possession of controlled substances disqualified her from voting, and, thus, she was uncertain whether she could register to vote in Jefferson County. Because the felony underlying Ms. Corley's convictions is not on the HB 282 list, she now knows with certainty that she is qualified to vote.

3     Although the court's decision on mootness obviates the necessity to delve into the merits of Counts 6–10, it is nonetheless important to clear up a misconception in Plaintiffs' briefing. Plaintiffs contend that, because "Alabama's system of disenfranchisement unquestionably ... led to the arbitrary deprivation of *fundamental rights*, Plaintiffs are likely to succeed" on Count 6–10. (Pls.' Mot. Prelim. Inj., at 19 (emphasis added).)

Felons do not have a fundamental right to vote protected by strict scrutiny (absent allegations that a disenfranchisement classification discriminates on the basis of race or other suspect criteria). A state's decision to deprive some convicted felons, but not others, of voting rights is not subject to a strict scrutiny standard. In *Richardson v. Ramirez*, 418 U.S. 24 (1974), the Supreme Court upheld a California statute disenfranchising felons convicted of "infamous crimes," holding that, notwithstanding the guarantee of equal protection in Section 1 of the Fourteenth Amendment, the reduced-representation clause in Section 2 permitted the state to disenfranchise felons. *See id.* at 52–55. The Court rejected the petitioners' argument that the statute limiting their voting rights was subject to strict scrutiny. It reasoned that states can disenfranchise felons on the "demonstrably sound proposition that § 1, in dealing with voting rights as it does, could not have been meant to bar outright a form of disenfranchisement which was expressly exempted from the less drastic sanction of reduced representation which § 2 imposed for other forms of disenfranchisement." *Id.* at 55.

The Third, former Fifth, Sixth, and Ninth Circuits have interpreted *Richardson*'s analysis of the interplay between Sections 1 and 2 of the Fourteenth Amendment as immunizing felon-disenfranchisement provisions from strict scrutiny under the Equal Protection Clause. In *Owens v. Barnes*, 711 F.2d 25 (3d Cir. 1983), which addressed a challenge that Pennsylvania's law disenfranchising convicted felons during their incarceration violated equal protection, the Third Circuit held that *Richardson* compelled the conclusion that "the right of convicted felons to vote is not fundamental." *Id.* at 27 (citing *Richardson*, 418 U.S. at 654). It held that "the state cannot only disenfranchise all convicted felons but it can also distinguish among them provided that such distinction is rationally related to a legitimate state interest." *Id.* Pennsylvania could have rationally concluded that one of the losses attendant to incarceration should be the loss of "participation in the democratic process" and that incarcerated and un-incarcerated felons did not stand on equal footing for purposes of voting rights. *Id.* at 28. The Sixth Circuit aligned with *Owens*, holding that "[i]t is undisputed that a state may constitutionally disenfranchise convicted felons," *id.* (citing *Richardson*, 418 U.S. at 24), and that "the right to vote is not fundamental," *id.* (citing *Owens*, 711 F.2d at 27).

The Ninth Circuit emphasized that, as for their equal protection claim, the plaintiffs could not "complain about their loss of a fundamental right to vote because felon disenfranchisement is explicitly permitted under the terms of *Richardson*, 18 U.S. at 55." *Harvey v. Brewer*, 605 F.3d 1067, 1079 (9th Cir. 2010). It explained that it would "not apply strict scrutiny as [it] would if plaintiffs were complaining about the deprivation of a fundamental right." *Id.* Finally, in *Shepherd v. Trevino*, 575 F.2d 1110, 1114–15 (5th Cir. 1978), the former Fifth Circuit applied the rational-basis test, rather than strict scrutiny, to a state statutory scheme that disenfranchised all convicted felons, but that provided a mechanism for the restoration of voting rights only to those who were convicted in state court, not federal court.

All that said, the Supreme Court has not immunized all felon disenfranchisement laws from constitutional review. In *Hunter v. Underwood*, 421 U.S. 22 (1985), the Court held that the 1901 Alabama Constitution's provision that disenfranchised individuals convicted of misdemeanors involving moral turpitude was racially discriminatory. The Court explained: "We are confident that [Section] 2 [of the Fourteenth Amendment] was not designed to permit the purposeful racial discrimination attending the enactment and operation of [the state constitutional provision] which otherwise violates [Section] 1 of the Fourteenth Amendment. Nothing in our opinion in *Richardson v. Ramirez* suggests the contrary." *Id.* at 233. This is the claim Plaintiffs bring in Count 1, which will be addressed in a separate opinion in the context of Defendants' pending motion to dismiss.

States cannot make arbitrary classifications between felons. *See, e.g., Richardson*, 418 U.S. at 56 (remanding a claim that "there was such a total lack of uniformity in county election officials' enforcement of the challenged state laws as

|   |   |
|---|---|
|   | to work a separate denial of equal protection"); *Owen v. Barnes*, 711 F.2d 25, 27 (3d Cir. 1983) (noting in dicta that a state "could not disenfranchise similarly situated blue-eyed felons but not brown-eyed felons"); *Shepherd v. Trevino*, 575 F.2d 1110, 1114 (5th Cir. 1978) ("[S]elective disenfranchisement or reenfranchisement of convicted felons ... must bear a rational relationship to the achieving of a legitimate state interest." (internal citations omitted)). |
| 4 | Because the relief Plaintiffs seek in their motion for preliminary injunction arises from the passage of HB 282, which occurred eight months after the commencement of this action, that relief could not have been encompassed in the Complaint. |
| 5 | There is irony in this argument because HB 282 is not effective until August 1, 2017. However, because HB 282 voters will be able to vote in the August 15, 2017 special primary election, should they choose to register to vote, Defendants are applying the law now so that these individuals can meet the July 31 voter registration deadline. |
| 6 | At this phase of litigation, the parties have not argued, and the court does not address, felony convictions outside Alabama law. As alleged in the Complaint, all of the named Plaintiffs have Alabama felony convictions. |
| 7 | Of the named Plaintiffs, Mr. Giles and Ms. Corley fit within this new class of HB 282 voters Plaintiffs have identified. |
| 8 | There is no dispute that the Alabama Secretary of State's website includes an electronic state voter registration form and that the Secretary has modified the instructions on the electronic form by including a hyperlink that lists the HB 282 felonies. (*See* Ex. B, Decl. of Clay Helms ¶ 13.) Plaintiffs want this court to order the Alabama Secretary of State to attach the list generated by that hyperlink and attach that list to the PDF of the registration form. This additional step, says Plaintiffs, would give voters access to the HB 282 crimes list on the downloaded voter registration form. |
| 9 | Alabama has in place statutory procedures for disenfranchised felons to request restoration of voting rights. There is no evidence that the State of Alabama is requiring an eligible HB 282 voter to apply to have his or her rights restored before he or she can register to vote. |
| 10 | The media coverage is not referenced here for the truth of the matter asserted, but rather to demonstrate that the news industry is reporting on HB 282 in and outside this state in multiple media formats. *See, e.g., United States v. Michtavi*, 155 Fed.Appx. 433, 435 (11th Cir. 2005) (observing that "the Government did not offer the newspaper articles to prove the truth of the matter asserted therein—the occurrence of the drug bust—but rather to show that newspaper articles reporting a New York drug bust existed, and thereby rehabilitate Cohen's testimony"). |
| 11 | It can be assumed that a prominent posting about HB 282 on the Alabama Secretary of State's website would provide the possibility of more opportunities, for an individual who previously was denied or purged from the voting list, to learn about his or her eligibility to register to vote under HB 282. It is just a possibility on this record, though, where one declarant claims it would be inadequate alone, no Plaintiff contends that such a notice would be adequate, and where the supposition is that most HB 282 voters do not have internet access. This requested relief is too speculative to warrant preliminary injunctive relief. |

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.