# EXHIBIT B

FILED
12-09-2020
John Barrett
Clerk of Circuit Court
2020CV007092

STATE OF WISCONSIN     CIRCUIT COURT     MILWAUKEE COUNTY

| | |
|---|---|
| DONALD J. TRUMP, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN, *et al.*<br><br>    Defendants. | Milwaukee County Case No. 20-CV-7092<br>Dane County Case No. 20-CV-2514<br><br>Consolidated |

## JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW BY JOSEPH R. BIDEN, KAMALA D. HARRIS, THE DANE COUNTY DEFENDANTS AND MILWAUKEE COUNTY DEFENDANTS

Defendants, Joseph R. Biden, Kamala D. Harris, Milwaukee County Clerk George L. Christensen, Milwaukee County Elections Commission (named herein as the Milwaukee County Board of Canvassers), Dane County Clerk Scott McDonnell, and Dane County Board of Canvassers, by their undersigned counsel, submit these Joint Proposed Findings of Fact and Conclusions of Law for the Court's consideration.

### PROPOSED FINDINGS OF FACT

**A.     Procedural History and Background**

1.     The 2020 Presidential election was conducted on November 3, 2020.

2.     On November 17, 2020, the initial Wisconsin county canvasses of the election results were completed. The canvass results showed Joseph R. Biden and Kamala D. Harris won the State of Wisconsin by 20,427 votes.

3.     On November 18, 2020, Plaintiffs filed a Recount Petition with the Wisconsin Elections Commission ("WEC") (Doc. 36).[1] Despite alleging that "mistakes and fraud were

---

[1] "Doc." refers to the e-filing document number associated with electronic filings in this consolidated case.

committed throughout the state of Wisconsin," the petition sought recounts in just two of Wisconsin's 72 counties—Milwaukee and Dane Counties.

4.      Plaintiff's Recount Petition (Doc. 36) alleged, on information and belief, that the following errors occurred in the two counties:

    a.  Municipal clerks improperly completed missing information on absentee ballot envelopes related to witness addresses (Recount Petition, ¶ 4);

    b.  In-person absentee voters did not submit written applications for an absentee ballot (Recount Petition, ¶ 5); and

    c.  Voters who were not indefinitely confined claimed "indefinitely confined" status for the purposes of obtaining an absentee ballot without having to show photo identification (Recount Petition, ¶ 6).

5.      While not raised in the Petition, Plaintiffs at the Dane County recount took issue with the City of Madison's Democracy in the Park program, during which election officials collected properly sealed and witnessed absentee ballots.

6.      The recount process lasted from November 20, 2020 to November 29, 2020.

7.      During the recount and on this appeal, the Trump Campaign seeks to disenfranchise no fewer than 221,323 voters in the two counties. Trump Proposed Findings (Doc. 62), ¶¶ 93-96. If the Trump Campaign's grounds for attempting to disqualify these ballots were applied throughout the state, more than 700,000 ballots cast by Wisconsin voters would potentially be affected. (Def. App. 8-9).[2]

8.      In both Dane and Milwaukee counties, the Trump Campaign challenged and sought to disqualify votes in the following categories, with the following result:

---

[2] "Def. App." refers to the Defendants' Joint Appendix filed herewith.

a.  Ballots cast which had an absentee envelope where a witness address, or a portion of a witness address, had been completed by a clerk (e.g., where the ballot envelope was initially submitted with a witness address that was missing the state).

    i.  The Milwaukee County Board of Canvassers moved to accept ballots from envelopes with witness addresses that had been completed by clerks consistent with specific guidance by the WEC, which the Board viewed as consistent with Wis. Stat. § 6.87(6d). (Milwaukee 11/20/20 126:23-128:17) (Doc. 37, pp. 126-128). The WEC guidance provides: "The WEC has determined that clerks **must** take corrective actions in an attempt to remedy a witness address error." (emphasis in original) (Def. App. 50).

    ii.  The Dane County Board of Canvassers also declined to "exclude envelopes that had a witness address added by the clerk." (Dane 11/20/20 65:1-15) (Doc. 49, p. 17).

b.  All ballots cast by electors designating themselves as "indefinitely confined" after March 25, 2020.

    i.  The Milwaukee County Board of Canvassers found that "a designation of an indefinitely confined status is for each individual voter to make based upon their current circumstances" and that "no evidence of any voter in Milwaukee County [was] offered that has abused this process and voted through this status…not even an allegation that there was a single voter who abused this process to vote without providing proof of their ID, but eliminating proof that anyone did so. So there's no allegation…no proof…no evidence." (Milwaukee 11/21/20 145:2-146:2) (Doc. 39, pp. 14-

15). The Board voted to overrule any challenge to a voter with the status of "indefinitely confined." (*Id*. 146:9-147:19) (Doc. 39, pp. 15-16).

    ii. The Dane County Board of Canvassers also rejected the Trump Campaign's challenge that would have required invalidating the ballots of all electors in Dane County who declared indefinitely confined status. The Board specifically declined to separate or "draw down"[3] the ballots cast by electors who declared indefinitely confined status. (Dane 11/20/20 65:18-66:9) (Doc. 49, pp. 17-18).

c. In Milwaukee County, all ballots cast through absentee in-person voting that, according to Plaintiffs, were obtained without a "written application."

    i. The Milwaukee County Board of Canvassers determined that there are multiple forms of application for an absentee ballot that can be made by absentee in-person voters and that the absentee ballot envelope provided to absentee in-person voters – which has the word "application" stated on it and must be completed by the voter – is an application for an absentee ballot. The Milwaukee Board thus rejected the Trump Campaign's challenge to ballots cast by in-person absentee voters. (Milwaukee 11/21/20 183:15-187:10) (Doc. 39, pp. 52-56).

d. In Dane County, every absentee ballot on the basis that the Trump Campaign was not allowed to review the written absentee ballot applications during the recount

---

[3]     When an absentee ballot envelope is rejected during a recount, the statutory remedy is to "randomly draw one absentee ballot" from the entire pool of absentee ballots and set it aside from the count. Wis. Stat. § 9.01(1)(b)(4)b. The process is random because ballots are not marked to correspond to individual voters, consistent with Wisconsin's right to privacy in voting. *See* Wis. Const. Art. III, Section 3. Thus, the remedy sought by the Trump Campaign would randomly disenfranchise hundreds of thousands of voters in the two targeted counties.

process, and also to all absentee in-person absentee ballots that, according to Plaintiffs, were obtained without a "written application."

    i. The Dane County Board of Canvassers voted not to exclude or draw down any absentee ballots on the basis that they "do not have an attached or identifiable application." (Dane 11/20/20 38:1-40:25) (Doc. 49, p. 11). The Dane County Board of Canvassers concluded that review of absentee ballot applications is not a part of the statutory recount process under Wis. Stat. § 9.01(1)(b) and therefore the applications were not relevant to the recount.

9.    In addition to the challenges listed above, in Dane County only, the Trump Campaign sought to disqualify "all ballots received in the Democracy in the Park process" that elections officials conducted in Madison on September 26, 2020 and October 3, 2020. (Dane 11/24/20 52:7-11) (Doc. 51, p. 194). This challenge was a blanket challenge to 17,271 ballots. The Dane County Board of Canvassers denied the challenge, ruling that the Democracy in the Park events were the equivalent of a human drop box and valid under the statute. (Dane 11/24/20 53:13-25, 72:21-73:16) (Doc. 51, pp. 194, 199).

10.    In Dane County, the Trump Campaign challenged nearly all of the absentee ballots in the Town of Westport (2,233 out of a total of 2,308) because the clerks failed to initial the absentee envelope reflecting that the voter submitted or showed a photo identification. The Dane County Board of Canvassers denied the challenge based on the testimony of the Town Clerk that "we check all photo ID" and "no ballots leave our office unless it has been checked." (Dane 11/23/20 50:14-51:5, 52:16-21) (Doc. 51, p. 161).

- 5 -

11.     In Milwaukee County, the Board of Canvassers instructed tabulators to take the following steps as part of the recounts to accommodate Plaintiffs' standing challenges to categories of ballots:

    a.  Set aside any absentee envelope that "has a different color on the address versus the actual witness signature;"

    b.  Set aside any absentee envelope containing an "indefinite confinement" designation; and

    c.  Set aside any envelope that is the subject of a specific challenge other than the two challenges listed above. (Milwaukee 11/20/20 66:20-67:7; 11/21/20 42:2-18) (Doc. 37, pp. 66-67; Doc. 38, p. 61).

12.     The Milwaukee County Elections Commission certified the results of its recount on November 27, 2020. (Doc. 42, pp. 162-63).

13.     The Dane County Board of Canvassers certified the results of its recount on November 29, 2020. (Doc. 51, p. 320).

14.     On November 30, 2020, Ann Jacobs, the chairperson of the WEC, certified the results of the 2020 Wisconsin Presidential Election, after the results of the Milwaukee County and Dane County recounts, pursuant to Wis. Stat. § 7.70(3)(a).  The certified results showed Joseph R. Biden and Kamala D. Harris received 1,630,866 votes, and Donald J. Trump and Michael R. Pence received 1,610,184 votes.  The final margin of victory was 20,682 votes.

15.     On December 1, 2020, Plaintiffs filed a Petition for Original Action with the Wisconsin Supreme Court seeking to exclude several categories of ballots from the presidential election results in Wisconsin.

- 6 -

16.     On December 2, 2020, President Trump sued the WEC, its members, the mayors of Wisconsin's five largest cities, multiple clerks, the Governor, and the Secretary of State in federal court, seeking a declaration that "the constitutional violations of the Defendants likely tainted more than 50,000 ballots" and that the court "remand[ ] the case to the Wisconsin legislature." *Trump v. Wisconsin Elections Commission*, E.D. Wis. Case No. 2:20-cv-01785.

17.     On December 3, 2020, the Wisconsin Supreme Court denied Plaintiffs' Petition for Leave to Commence an Original Action.

18.     On December 3, 2020, hours after the Wisconsin Supreme Court denied the petition for leave to commence an original action and pursuant to Wis. Stat. § 9.01(6), Plaintiffs filed separate Notices of Appeal from the Recounts in Dane County and Milwaukee County.  (Doc. 7, 9).

19.     On December 3, 2020, Chief Justice Patience D. Roggensack consolidated the two appeals, *Trump v. Biden*, Milwaukee County Case No. 2020-cv-7072, and *Trump v. Biden*, Dane County Case No. 2020-cv-2514, and assigned the consolidated appeal to Reserve Judge Stephen A. Simanek. (Doc. 9).

## B.  Challenged Procedures

### a.  Absentee Ballot Applications

20.     A municipal clerk may not issue an absentee ballot without receiving "a written application therefor from a qualified voter of the municipality." Wis. Stat. § 6.86(1)(ar). The statute defines "written application…for an official ballot" to include a variety of "methods," including "[b]y mail," "[i]n person at the office of the municipal clerk," on request forms, and "[b]y electronic mail or facsimile transmission."  Wis. Stat. § 6.86(1)(a).

21.     For many years, the WEC has applied this broad definition to allow online ballot requests in multiple ways, including:

- 7 -

    a.   through the MyVote website, which generates an email and prompts a clerk to mail an envelope and ballot (Milwaukee 11/20/20 50:3-11) (Doc. 37, p. 50);

    b.   by regular mail or e-mail (Milwaukee 11/20/20 49:2-4, 50:3-7, 76:6-25) (Doc. 37, pp. 49-50, 76);

    c.   if done in-person, through completion of an official WEC multi-step form, EL-122, titled "Official Absentee Ballot Application/Certification," which provides both an application and a certification. (Milwaukee 11/20/20 51:2-8) (Doc. 37, p. 51).

22.    The WEC and its predecessor agency, the Government Accountability Board ("GAB"), have used Form EL-122 since May 2010. (Affidavit of Kevin J. Kennedy, ¶ 14) (Def. App. 106-107). Since that time, Form EL-122 has been accepted as a lawful application for an absentee ballot. *Id*.

23.    Form EL-122 and its predecessor, Form GAB-122, originated from "inefficiencies experienced with in-person absentee voting" in the November 2008 presidential election. (Affidavit of Kevin J. Kennedy, ¶ 6, Exh. A) (Def. App. 104-105, 108-150).

24.    On December 17, 2009, the GAB unanimously voted to eliminate the requirement for a separate written application for in-person absentee voters, and instead to incorporate the application into the in-person process. (Affidavit of Kevin J. Kennedy, ¶ 10) (Def. App. 105-106).

25.    The GAB thereafter amended the official absentee ballot envelope, Form GAB-122, to also act as the written application for those voters who voted absentee in-person during the "early voting" period. (Affidavit of Kevin J. Kennedy, ¶ 11) (Def. App. 106).

26.    The new Form GAB-122, entitled "Official Absentee Ballot Application/Certification," was distributed to all Wisconsin municipal clerks on May 10, 2010,

and has been in use continually throughout Wisconsin since that time. (Affidavit of Kevin J. Kennedy, ¶ 11, Exhs. B-C) (Def. App. 151-154).

27.     Consistent with statewide practice, municipalities and voters in Dane County and Milwaukee County use Form EL-122 for in-person absentee voting. The total number of in-person absentee votes cast in the state in the November 2020 Election using Form EL-122 was 651,422. WEC Absentee Ballot Report 11/3/20 General Election (Def. App. 8-9).

28.     Plaintiffs' counsel James Troupis voted early in-person using Form EL-122. (Affidavit of Devin Remiker, Exhibit A) (Def. App. 169).

29.     In Milwaukee County, when a voter requests an absentee ballot in person, the voter identifies himself or herself to the clerk, who then enters the request for the ballot into the WisVote system directly. (Milwaukee 11/20/20 46:7-21) (Doc. 37, p. 46). This generates "a record of application." (Milwaukee 11/20/20 85:14-17) (Doc. 37, p. 85). The system then generates a label for that envelope. The voter then shows the labeled envelope to an official to receive a ballot. The voter completes the ballot and signs a certification on the envelope, which a clerk witnesses. The vote is not cast until the day of the election. (Milwaukee 11/20/20 46:7-21) (Doc. 37, p. 46); (Dane Biden Exhs. 2-16; Milwaukee Biden Exhs. 798-809) (Def. App. 10-41) (affidavits of absentee in-person voters describing multi-step process).

30.     The absentee in person process in Dane follows the same or similar procedures, whereby the application portion of the envelope is completed and shown to an official before the voter receives a ballot. (Def. App. 10-20)

31.     The Dane County Board of Canvassers determined that 61,193 electors cast absentee ballots in person in Dane County using Form EL-122. (Dane 11/22/20 58:7-10). Each in-

- 9 -

person absentee voter completed an EL-122, which the Board concluded is legally sufficient to satisfy Wis. Stats. § 6.86(1)(ar). *Id*.

32.     The Milwaukee County Board of Canvassers determined that the total number of voters who voted absentee in person in Milwaukee County using Form EL-122 was 108,947. (Milwaukee 11/21/20 184:14-19) (Doc. 39, p. 53).

33.     At no time prior to the election on November 3, 2020 did the Trump Campaign assert that the use of Form EL 122 by voters and election officials in Wisconsin was in any way improper or inconsistent with Wisconsin law. The first time the Trump Campaign made that claim was in its recount petitions filed with Dane and Milwaukee counties on November 18, 2020, after election results showed that President Trump had lost the election in Wisconsin by more than 20,000 votes.

34.     The Trump Campaign did not make any allegation that a single vote was cast in either county by an ineligible voter who applied via Form EL-122.  There are no facts to support such an allegation.

35.     The Trump Campaign did not make any allegation that any fraud occurred relating to the use of Form EL-122 in either county. There are no facts to support such an allegation.

### b.  Witness Addresses

36.     An absentee voter must complete their ballot and sign a "Certification of Voter" on the absentee ballot envelope in the presence of a witness.  Wis. Stat. § 6.87(4)(b). The witness must then sign a "Certification of Witness" on the envelope, which must include the witness's address.  Wis. Stat. § 6.87.

37.     The witness-address requirement is "mandatory," *id.* § 6.84(2), and "[i]f a certificate is missing the address of a witness, the ballot may not be counted," *id.* § 6.87(6d).

- 10 -

38.    Since October 2016, the WEC has instructed municipal clerks that, while they may never add missing signatures, they "*must* take corrective action" to add missing *witness addresses* if they are "reasonably able to discern" that information by contacting the witnesses or looking up the addresses through reliable sources. 10/18/16 WEC Memo to Clerks "Missing or Insufficient Witness Address on Absentee Certificate Envelopes." (Def. App. 50-51).

39.    Since then, the WEC has repeated these instructions in multiple guidance documents, including in the WEC Election Administration Manual (Sept. 2020), at 98 (clerks "may add a missing witness address using whatever means are available," and "should initial next to the added witness address") and an October 19, 2020 guidance memo.[4]

40.    As a result, the WEC's guidance on the witness address issue has governed in *eleven* statewide races since then, including the 2016 presidential election and recount. Moreover, local election officials and voters throughout the State have relied on it, and it has never been challenged through Chapter 227 judicial review or otherwise. 11/10/20 WEC Release "Correcting Misinformation About Wisconsin's Election," No. 6 (Def. App. 55-56).

41.    In November 2016, Candidate Donald Trump won a recount in which thousands of ballots were completed based upon the same WEC guidance on witness addresses used in the November 2020 election. (Milwaukee 11/20/20 117:15-25) (Doc. 37, p. 117). Neither Candidate Trump nor anyone else raised any objections to the use of that guidance in 2016. *Id*.

42.    At no time prior to the election on November 3, 2020 did the Trump Campaign assert that the practice of election workers filling in missing, verifiable witness addresses was in any way improper or inconsistent with Wisconsin law. The first time the Trump Campaign made that claim was in its recount petitions filed with Dane and Milwaukee counties on November 18,

---

[4] Available at https://elections.wi.gov/sites/elections.wi.gov/files/2020-10/Spoiling%20Ballot%20Memo%2010.2020.pdf

2020, after election results showed that President Trump had lost the election in Wisconsin by more than 20,000 votes.

43.     As the petition for recount admits, WEC guidance on completing addresses applies *statewide*, not just in Dane and Milwaukee counties. (Recount Petition, p. 1) (Doc. 36); (Dane County Transcript, 11/29/20 11:25) (Doc. 51, p. 320).

44.     The witness address issue is not limited to situations in which absentee ballots are entirely missing address information for a witness.  Instead, for the most part, clerks corrected partial addresses, such as by completing the city, zip code, or state. (Milwaukee 11/20/20 116:2-7; 11/21/20 271:3-6, 277:13-14) (Doc. 37, p. 116; Doc. 39, pp. 140, 146).  As a result, the Trump Campaign objected to ballots that were witnessed, signed by a witness, and contained a witness' street address, but had the city, state, or zip code filled in by a clerk. (*Id.*; *see also* Milwaukee 11/20/20 125:2-5) (Doc. 37, p. 125).

45.     In completing witness addresses, the City of Milwaukee "do[es]n't make guesses" if there are multiple persons with the name of a witness. In that situation, clerks do not fill in any missing witness address information. Instead, they contact the voter or mail the ballot back to the voter in an attempt to have the voter contact the witness and provide the missing information. (Milwaukee 11/20/20 117:1-7).

46.     It is "very common" that an envelope will have a street address but that the address will not be "fill[ed] out completely." (Milwaukee 11/20/20 117:8-11) (Doc. 37, p. 117).

47.     There is no evidence establishing beyond a reasonable doubt that adding missing witness address information to any particular voter's envelope was improper or in violation of Wisconsin law and thus no evidence establishing beyond a reasonable doubt that any absentee

ballots associated with envelopes containing added witness address information are improper or in violation of Wisconsin law.

### c. "Indefinitely Confined" Voters

48.    Voters who self-certify that they are "indefinitely confined because of age, physical illness or infirmity or…disabled for an indefinite period" are not required to submit photocopies of their photo IDs with their absentee ballot applications. Wis. Stat. §§ 6.86(2)(a), 6.87(4)(b)(2).

49.    Voters who certify they are indefinitely confined and who do not provide proof of identification must submit with their ballot "a statement signed by the same individual who witnesses voting of the ballot which contains the name and address of the elector and verifies that the name and address are correct."  Wis. Stat. § 6.87(4)(b)2.

50.    In contrast, if a voter is not indefinitely confined and has not previously submitted voter identification, they must submit such identification. *See* Wis. Stat. § 6.87(1).

51.    After the COVID-19 pandemic hit Wisconsin in March 2020 and the State issued a "Safer-at-Home Order" on March 24, 2020, the Dane County Clerk stated in a Facebook post that pursuant to the Safer-At-Home Order all Dane County voters could meet the definition of "indefinitely confined" for purposes of voting absentee in the April 7 spring election. Wis. Sup. Ct. Order, p. 2, *Jefferson v. Dane Cty.*, No 2020AP557-OA (Mar. 31, 2020) (Def. App. 65).

52.    The WEC was also considering the indefinite confinement issue in the context of COVID-19 and the Safer-At-Home Order prior to the April 7 election. On March 29, 2020, the WEC issued a guidance memorandum to all clerks, stating in relevant part:

> 1. Designation of indefinitely confined status is for each individual voter to make based upon their current circumstance. It does not require permanent or total inability to travel outside of the residence. The designation is appropriate for electors who are indefinitely confined because of age, physical illness or infirmity or are disabled for an indefinite period.

- 13 -

2. Indefinitely confined status shall not be used by electors simply as a means to avoid the photo ID requirement without regard to whether they are indefinitely confined because of age, physical illness, infirmity or disability.

March 29, 2020 WEC Guidance for Indefinitely Confined Voters (Def. App. 61).

53. The WEC's guidance goes on to explain:

> We understand the concern over the use of indefinitely confined status and do not condone abuse of that option as it is an invaluable accommodation for many voters in Wisconsin. ***During the current public health crisis, many voters of a certain age or in at-risk populations may meet that standard of indefinitely confined until the crisis abates.*** We have told clerks if they do not believe a voter understood the declaration they made when requesting an absentee ballot, they can contact the voter for confirmation of their status. They should do so using appropriate discretion as voters are still entitled to privacy concerning their medical and disability status. Any request for confirmation of indefinitely confined status should not be accusatory in nature.

March 29, 2020 WEC Guidance for Indefinitely Confined Voters (Def. App. 62).

54. Consistent with Wisconsin's decades-long legislative policy of taking voters at their word concerning indefinite confinement, the WEC's guidance emphasizes the importance of avoiding any "proof" requirements: "Statutes do not establish the option to require proof or documentation from indefinitely confined voters. Clerks may tactfully verify with voters that the voter understood the indefinitely confined status designation when they submitted their request, but they may not request or require proof." (Def. App. 62).

55. In a March 31, 2020 order, the Wisconsin Supreme Court granted the Republican Party of Wisconsin's motion for a temporary restraining order, directing the Dane County Clerk to "refrain from posting advice as the County Clerk for Dane County inconsistent with the above quote from the WEC guidance." *Jefferson v. Dane Cty.*, No 2020AP557-OA (Mar. 31, 2020) (Def. App. 64-66).

- 14 -

56.     The Wisconsin Supreme Court's Order stated: "We conclude that the WEC's guidance quoted above provides the clarification on the purpose and proper use of the indefinitely confined status that is required at this time." *Id*. at p. 2 (Def. App. 65).

57.     Voters claiming "indefinite confinement" status increased significantly in 2020, during the COVID-19 pandemic, as compared to voters claiming that status in 2016 when there was no pandemic.  The increases in voters designating themselves as indefinitely confined occurred statewide, not only in Dane and Milwaukee counties. *See* Dane County Board Exh. 2 (Def. App. 214-215).

58.     Neither the WEC nor the Wisconsin Supreme Court provided further guidance about the criteria for voters to claim indefinitely confined status before the November 3, 2020 election, meaning the guidance in place for the election was the WEC guidance approved by the Wisconsin Supreme Court. (Def. App. 65). The Wisconsin Supreme Court heard oral argument in *Jefferson* on September 29, 2020, and has not issued a decision, which means the WEC guidance quoted above remains in place.

59.     At no time prior to the election on November 3, 2020 did the Trump Campaign assert that the WEC guidance relating to indefinitely confined status was in any way improper or inconsistent with Wisconsin law. The first time the Trump Campaign made that claim was in its recount petitions filed with Dane and Milwaukee counties on November 18, 2020, after election results showed that President Trump had lost the election in Wisconsin by more than 20,000 votes.

60.     Statewide, voters who indicated that they were indefinitely confined received a form letter from a municipal clerk stating: "Identifying as an indefinitely confined voter is an individual choice based on your current situation and it does not require you to be permanently confined." The letter then gave the voter an option to (1) continue to claim indefinite confinement

- 15 -

status, (2) to opt out of the parameters of indefinitely confinement but still continue to receive absentee ballots for the remainder of 2020, or (3) cancel the voter's request to be designated as indefinitely confined. (Dane County Board of Canvassers Exh. 3) (Def. App. 200) (Dane 11/29/20 7:3-6).

61.     The Milwaukee County Board of Canvassers did not determine how many voters cast ballots while indefinitely confined that had not previously submitted an ID within the past year.

62.     The Dane County Board of Canvassers did not determine how many voters cast ballots while indefinitely confined that had not previously submitted an ID within the past year.

63.     No facts were presented to the Milwaukee County Board of Canvassers that any voter in the county cast a ballot as indefinitely confined that did not qualify as indefinitely confined. Specifically, "no evidence of any voter in Milwaukee County [was] offered that has abused this process and voted through this status…not even an allegation that there was a single voter who abused this process to vote without providing proof of their ID, but eliminating proof that anyone did so. So there's no allegation…no proof…no evidence." (Milwaukee 11/21/20 145:2-146:2) (Doc. 39, pp. 14-15).

64.     No facts were presented to the Milwaukee County Board of Canvassers that any voter relied upon any statement made by County Clerk George Christensen to determine their eligibility as indefinitely confined. (Milwaukee 11/21/2020 136:8-16; 145:18–146:8) (Doc. 39, pp. 5, 14-15).

65.     The Trump Campaign presented the Dane County Board with a list of "eight or nine Facebook posts" allegedly by persons whose names were also names of persons who had voted absentee as "indefinitely confined." (Dane 11/28/20 14:19-25) (Doc. 51, p. 288).

- 16 -

66.    The Trump Campaign did not challenge the ballots of these voters or seek a factual determination as to their indefinitely confined status. The Trump Campaign also did not provide evidence concerning whether the election clerk already had each voter's photo ID on file. Accordingly, no finding was alleged, requested, or made that any voter had improperly invoked indefinitely confined status.

67.    There is no evidence establishing beyond a reasonable doubt that any voter cast a vote as indefinitely confined who did not qualify as indefinitely confined.

    **d.    "Democracy in the Park"**

68.    On two Saturdays before the November 3, 2020 general election (September 26, 2020 and October 3, 2020), the City of Madison held "Democracy in the Park" events in 206 Madison parks. The events were designed to create a safe way for voters to personally deliver absentee ballots to the City of Madison Clerk during the pandemic. (Affidavit of Maribeth Witzel-Behl, ¶¶ 4-6) (Def. App. 209).

69.    No absentee ballots were distributed, and no absentee ballot applications were accepted or distributed at Democracy in the Park. (Affidavit of Michael Haas, ¶ 4) (Def. App. 202).

70.    At the events, sworn city election inspectors collected sealed and properly witnessed absentee ballots that the voters had previously received.  (Haas Aff., ¶ 4) (Def. App. 202).

71.    At the events, city election inspectors served as witnesses for absentee electors only if the elector brought an unsealed, blank ballot with them.  (Haas Aff., ¶ 4) (Def. App. 202).

72.    The Madison City Attorney emphasized in a letter to counsel for the Legislature that:

> The procedures that the City Clerk has established to secure ballots [at the Democracy in the Park events] are equivalent to the procedures used to secure all absentee ballots. … Sworn election

- 17 -

officials will retrieve ballots that have already been issued and will
ensure that ballots are properly witnessed and are secured and sealed
in absentee ballot envelopes and ballot containers with tamper-
evident seals, to be tabulated on Election Day.  The election officials
will maintain a chain of custody log that is open to public inspection.
No new ballots will be issued in the parks.

(Def. App. 204-205).

73.     Neither the Madison City Attorney nor any other City official received any
response to the letter to the counsel for the Legislature "and no further legal concerns regarding
the Democracy in the Park program were communicated to [him]."  (Haas Aff., ¶ 6) (Def. App.
203).

74.     The City Clerk for the City of Madison designed the Democracy in the Park event
"to comply with all applicable election laws." (Witzel-Behl Aff., ¶ 4) (Def. App. 209). There is no
evidence that the Democracy in the Park events violated any Wisconsin election laws or resulted
in any improper votes being cast.

75.     In creating the program, the City Clerk for the City of Madison "sought to
accommodate the unprecedented demand for absentee ballots, address concerns about the capacity
of the U.S. Postal Service to deliver ballots by Election Day, and provide City of Madison voters
with a secure and convenient means of returning their completed ballots and obtain a witness if
necessary." (Witzel-Behl Aff., ¶ 4) (Def. App. 209).

76.     Voters relied on the City of Madison's determination that the Democracy in the
Park events complied with Wisconsin laws, and they cast their votes at the events based on that
reliance. *See, e.g.*, Affidavit of Michael Martin Walsh ("I dropped off my ballot based on the
assurance from the City of Madison that doing so was legal and proper") (Biden Exh. 253) (Def.
Aff. 93).

- 18 -

77.     The City of Madison invited both major political parties to observe the entire process at the Democracy in the Park events. (Haas Aff., Exh. B) (Def. App. 204).

78.     According to the City Clerk of the City of Madison, a total of 17,271 absentee ballots were collected during the Democracy in the Parks events. (Witzel-Behl Aff., ¶ 7) (Def. App. 210).

79.     The Democracy in the Park events did not function as in-person absentee voting sites.  Voters could not obtain and vote ballots there; they could only return absentee ballots they had previously received in the mail.  At the events, city election inspectors "collected completed, sealed, and properly witnessed absentee ballots." (Witzel-Behl Aff., ¶ 6) (Def. App. 209).

80.     The 206 staffed locations were not "alternate absentee ballot sites" regulated under Wis. Stat. § 6.855.   Instead, they were ballot return locations governed under Wis. Stat. § 6.87(4)(b)1 ("The envelope shall be mailed by the elector, or delivered in person, to the municipal clerk issuing the ballot or ballots.").

81.     The WEC has interpreted Wis. Stat. § 6.87(4)(b)1 to allow the use of secured ballot drop boxes in a variety of locations and circumstances.  These include book slots at public libraries, mail slots used for payment of taxes and other government fees, "staffed temporary drive-through drop offs," and "unstaffed 24-hour ballot drop boxes." August 19, 2020 WEC Guidance re Absentee Ballot Drop Box Information. (Def. App. 71-72).

82.     The drop-offs that were used in the Democracy in the Park events were functionally identical in all respects to the "staffed" and "unstaffed" drop boxes endorsed by the WEC and Wisconsin legislature. Thus, deposit of a sealed ballot envelope in one of the drop boxes staffed by duly designated agents of the clerk constituted "deliver[y] in person, to the municipal clerk" within the meaning of Wis. Stat. § 6.87(4)(b)1.

- 19 -

83.     No allegations were made, and the Dane County Board of Canvassers did not find, that a single vote cast at Democracy in the Park was cast by an ineligible voter.

## PROPOSED CONCLUSIONS OF LAW

1.     Voting is a fundamental right:

> The right of a qualified elector to cast a ballot for the election of a public officer, which shall be free and equal, is one of the most important of the rights guaranteed to him by the constitution. If citizens are deprived of that right, which lies at the very basis of our Democracy, we will soon cease to be a Democracy. For that reason no right is more jealously guarded and protected by the departments of government under our constitutions, federal and state, than is the right of suffrage.

*State ex rel. Frederick v. Zimmerman*, 254 Wis. 600, 613, 37 N.W.2d 473, 480 (1949).

**A.     Standard of Review on Wis. Stat. § 9.01 Appeal**

2.     Unless the court finds grounds for setting aside or modifying the determination of the Board of Canvassers, it must affirm the Board's determination. Wis. Stat. § 9.01(8)(c).

3.     The court must separately treat disputed issues of procedure, interpretations of law, and findings of fact. Wis. Stat. § 9.01(8)(b).

4.     The court will set aside or modify the determination of the Board of Canvassers only if it finds that the Board of Canvassers has erroneously interpreted a provision of law and a correct interpretation compels a particular action. Wis. Stat. § 9.01(8)(c).

5.     If the determination depends on any fact found by the Board, the court may not substitute its judgment for that of the Board as to the weight of the evidence on any disputed finding of fact. The court shall set aside the determination if it finds that the determination depends on any finding of fact that is not supported by substantial evidence. Wis. Stat. § 9.01(8)(c).

6.     The Court will review questions of law *de novo*. *Clifford v. Sch. Dist. of Colby*, 143 Wis. 2d 581, 585, 421 N.W.2d 852, 853 (Ct. App. 1988).

- 20 -

7.      But, when a party tries to change the results of an election by disqualifying the votes of certain voters, the challenger must "demonstrate beyond a reasonable doubt that the person does not qualify as an elector or is not properly registered." *Logerquist v. Board of Canvassers for Town of Nasewaupee*, 150 Wis. 2d 907, 917, 442 N.W.2d 551, 555-56 (Ct. App. 1988).

8.      Wisconsin courts have established a general rule that, in order to successfully challenge an election in a subsequent judicial appeal, the challenger must show that the outcome of the election would have been changed absent the challenged irregularity. *See Carlson v. Oconto County Board of Canvassers*, 2001 WI App 20, ¶ 10, 240 Wis. 2d 438, 444-45, 623 N.W.2d 195 ("Under the outcome test, to successfully challenge an election, the challenger must show the probability of an altered outcome, in the absence of the challenged irregularity…our supreme court has approved the outcome test for most election irregularities.").

9.      Wisconsin courts have historically protected the right to vote and declined to disenfranchise voters for clerical errors by election officials where the voter acted in good faith. *See e.g. Ollmann v. Kowalewski*, 238 Wis. 574, 578, 300 N.W. 183, 186 (1941) ("The voter would not knowingly be doing wrong. And not to count his vote for no fault of his own would deprive him of his constitutional right to vote. ... A statute purporting so to operate would be void, rather than the ballots."); *Sommerfeld v. Bd. of Canvassers of City of St. Francis*, 269 Wis. 299, 304, 69 N.W.2d 235, 238 (1955) (rejecting "purely technical" "complaint as to the delivery of the ballots"); *Lanser v. Koconis*, 62 Wis. 2d 86, 93, 214 N.W.2d 425, 428 (1974) ("[W]e are not inclined to disenfranchise these voters who acted in conformance with the statutory requirements. There is absolutely no evidence from which it could be inferred that the method of delivery by the municipal clerk in any way affected their vote."); *Matter of Hayden*, 105 Wis. 2d 468, 478, 313 N.W.2d 869,

873–74 (Ct. App. 1981) (construing mandatory language about delivery of ballots as directory because "[o]nly when the municipal clerk appears to have solicited voters, or when there is any evidence of fraud, will voters who acted in good faith be disenfranchised."); *Roth v. La Farge Sch. Dist. Bd. of Canvassers*, 2001 WI App 221, ¶ 27, 247 Wis.2d 708, 726, 634 N.W.2d 882, 889 ("A statute which merely provides that certain things shall be done in a given manner and time without declaring that conformity to such provisions is essential to the validity of the election should be construed as directory.") (quoting *Matter of Hayden*, 105 Wis. 2d at 483).

10.    While the provisions in Wis. Stat. §§ 6.86, 6.87 (3)-(7) and 9.01 (1) (b) 2. and 4 shall be construed as mandatory, the reason is "to prevent the potential for fraud or abuse; to prevent overzealous solicitation of absent electors who may prefer not to participate in an election; to prevent undue influence on an absent elector to vote for or against a candidate or to cast a particular vote in a referendum; or other similar abuses." Wis. Stat. § 6.84 (1)-(2).

11.    But where fraud or impropriety is not alleged, outside of §§ 6.86, 6.87 (3)-(7) and 9.01 (1) (b) 2. and 4, the will of the voter controls. *See, e.g.*, *Lanser v. Koconis*, 62 Wis. 2d 86, 93-94, 214 N.W.2d 425, 429 (1974) (holding that technical noncompliance with a statutory provision for delivery of absentee ballots and signature requirement did not render the ballots invalid and that voters were entitled to have their votes counted).

12.    Except as otherwise provided, the Wisconsin Election Code shall be construed to give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to comply fully with some of its provisions. Wis. Stats. § 5.01 (1). In this context, the Wisconsin Supreme Court has "quite consistently" held mandatory language to in fact be permissive. *Id*. This is particularly true for absentee ballots. *Sommerfeld v. Bd. of Canvassers of City of St. Francis*, 269 Wis. 299, 302, 69 N.W.2d 235, 237 (1955) ("The

- 22 -

number of absentee ballots is increasing rather than decreasing. Where possible our statute should be interpreted to enable these people to vote."). *See also Ollman v. Kowalewski*, 238 Wis. 574, 578, 300 N.W. 183, 185 (1941) (where a clerk erroneously placed his initials on ballots when initials from two clerks were required: "The voter would not knowingly be doing wrong. And not to count his vote for no fault of his own would deprive him of his constitutional right to vote. Any statute that purported to authorize refusal to count ballots cast under the instant circumstance would be unconstitutional. A statute purporting so to operate would be void, rather than the ballots.").

**B.    Plaintiffs' Legal Challenges to WEC Statewide Guidance are Not Within the Scope of a Recount Under Wis. Stat. § 9.01.**

13.    Post-election challenges under Wis. Stat. § 9.01 are limited in scope. This court may not wade into alleged statewide procedural irregularities underlying the election process itself. *Clapp v. Joint School Dist. No. 1*, 21 Wis. 2d 473, 478, 124 N.W.2d 678, 681-82 (1963) ("The statute does not contemplate a judicial determination by the board of canvassers of the legality of the entire election but of certain challenged ballots. ... True, there is an appeal from the board of canvassers to the circuit court but the scope of that appeal is no greater than the duties of the board of canvassers and does not reach a question of the illegality of the election as a whole.").

14.    WEC is an agency of the executive branch. *See State ex rel. Zignego v. Wisconsin Elections Commission*, 2020 WI App 17, ¶ 38, 391 Wis. 2d 441, 463, 941 N.W.2d 284.

15.    Among other duties, WEC administers all of Wisconsin's election laws.  Wis. Stat. § 5.05(1).

16.    Each one of the categories of absentee ballots challenged by Plaintiffs was accepted by the municipal clerks in reliance on published guidance documents issued by the WEC.  The categories and associated WEC guidance documents include:

- 23 -

a. <u>In-Person Absentee Voting Using EL-122 as the Written Application</u>: WEC Form EL-122 has been in use since May 2010. WEC's Form EL-122 (in use since 2010) and Election Administration Manual, p. 91 (Sept. 2020) provide that the absentee certificate envelope itself constitutes an in-person absentee voter's written absentee ballot application.

b. <u>Correcting Missing Witness Address Information</u>: The WEC's October 18, 2020 Memo to Clerks re: "Missing or Insufficient Witness Address on Absentee Certificate Envelopes" states that municipal clerks "must take corrective action" to add missing witness address information if they are "'reasonably able to discern'" that information. (Def. App. 50). The WEC Election Administration Manual states at p. 99 that: "Clerks may add a missing witness address using whatever means are available."

c. <u>Indefinitely Confined Voters</u>: The WEC's March 29, 2020 guidance (approved by the Wisconsin Supreme Court on March 31, 2020) stated that to claim "indefinitely confined" status, a voter need not suffer from a "permanent or total inability to travel outside of the residence"; that the decision "is for each individual voter to make based upon their current circumstance"; and that "many voters of a certain age or in at-risk populations may meet that standard of indefinitely confined until the [pandemic] crisis abates."

d. <u>Democracy in the Park</u>: The WEC's "Absentee Ballot Drop Box Information" guidance dated August 19, 2020 expressly recommended "outdoor" "staffed" ballot drop boxes like those used in Madison's Democracy in the Park events.

17.    Plaintiffs only avenue to challenge a procedure contained in a WEC guidance document is pursuant to Wis. Stat. § 227.40. Wis. Stat. § 227.40(1) provides that "the exclusive means of judicial review of the validity of a[n] [agency's] rule or guidance document" shall be in the form of "an action for declaratory judgment . . . brought in the circuit court for the county where the party asserting the invalidity of the rule or guidance document resides . . ." These exclusive review provisions "are not permissive, but rather are mandatory." *Richards v. Young*, 150 Wis. 2d 549, 555, 441 N.W.2d 742 (1989); *see State v. Town of Linn*, 205 Wis. 2d 426, 449, 556 N.W.2d 394 (Ct. App. 1996).

18.    The WEC documents attacked as "illegal" by the Plaintiffs are "guidance" documents under Chapter 227. *See* Wis. Stat. § 227.01(3m) (defining "guidance document" to include "any formal or official document or communication issued by an agency, including a manual, handbook, directive, or informational bulletin, that does any of the following: (1) Explains the agency's implementation of a statute or rule enforced or administered by the agency, . . . [or] (2) Provides guidance or advice with respect to how the agency is likely to apply a statute or rule enforced or administered by the agency, if that guidance or advice is likely to apply to a class of persons similarly situated.").

19.    The Court therefore has no jurisdiction under Wis. Stat. § 9.01 to reject broad categories of ballots based upon Plaintiffs' contention that the WEC's statewide guidance was inconsistent with the statutes the agency is statutorily required to administer.

- 25 -

### C.    Plaintiffs' Challenges to Voters Relying on the WEC's Guidance Fail on the Merits.

#### 1.    Absentee Ballot Applications

20.    Wis. Stat. § 6.86(1)(ar) states: "Except as authorized in s. 6.875(6), the municipal clerk shall not issue an absentee ballot unless the clerk receives a written application therefor from a qualified elector of the municipality."

21.    No election statute requires any absentee application to take any particular form or structure.

22.    WEC Form EL-122 is entitled "Official Absentee Ballot Application/Certification." When completed by a voter during the in-person absentee voting period, Form EL-122 operates as the voter's "written application" for an absentee ballot. *See* WEC Election Administration Manual (Sept. 2020), pp. 90-91 ("The applicant does not need to fill out a separate written request if they only wish to vote absentee for the current election. The absentee certificate envelope doubles as an absentee request and certification when completed in person in the clerk's office.").

23.    WEC's use of Form EL-122 as the written application for in-person absentee voters is consistent with WEC's "responsibility for the administration of chs. 5 to 10 and 12 and other laws relating to elections." Wis. Stat. § 5.05(1).

24.    Plaintiff's position that Form EL-122 does not constitute a "separate written application" for an absentee ballot has no basis in Wisconsin's election laws. Form EL-122 is a separate document from the absentee ballot itself.

25.    There is no statutory or other basis upon which to overturn either Board's finding that the Trump Campaign's objections to the use of Form EL-122 should be overruled.

- 26 -

## 2.    Adding Missing Witness Address Information

26.    WEC guidance in place for more than four years permits—and in some instances even requires—the practice of curing missing witness addresses based on reliable information.

27.    The WEC's guidance to clerks to cure missing witness address information is not unlawful. On the contrary, the WEC's guidance is grounded in a reasonable interpretation of the Election Code. While Wis. Stat. § 6.87(9) states that a clerk "may" return an absentee ballot with an improperly completed certificate, the statute does not preclude a clerk from remedying a witness address deficiency herself. In addition, the statute is not mandatory.  *See* Wis. Stat. § 6.84(2).

28.    The law does not direct who may add or correct a witness's address on an envelope.

29.    Plaintiffs' generalization that even corrected envelopes, where clerks filled in only the municipality, the state or the zip code in red ink, are "missing" an address is inconsistent with the plain language of Wis. Stat. § 6.87(6d), which states: "if a certificate is missing **the address** of a witness, the ballot may not be counted." (emphasis added). Wisconsin Statutes, court forms, and tax forms all treat one's "address" as distinct from the city, state or zip code. *See e.g.* Wis. Stats. § 801.095(1) (form of summons listing "Address, city, state, zip code"); *Acuity Mut. Ins. Co. v. Olivas*, 2007 WI 12, ¶ 158, 298 Wis. 2d 640, 697, 726 N.W.2d 258, 287 (describing Form 1099 which asks for "Payer's name, street address, city, state, ZIP code, and telephone no."). And the absentee ballot envelope in question itself treats address, city, state, and zip code as distinct and in separate boxes for the voter's information in the top half the application. (Def. App 7). So too, does Form EL-121, which Plaintiffs endorse. (P. App. 24). To read into the statute that "missing the address" means missing a city, state, or zip code defies principles of statutory construction, internal consistency, and common sense. *State v. Kozel*, 2017 WI 3, ¶ 39, 373 Wis. 2d 1, 21-22, 889 N.W.2d 423, 433 (Court would not "require a specific type or degree of direction where the statute at issue does not so specify. We will not read into the statute a limitation the plain language

- 27 -

does not evidence.") (internal quotation omitted). Doing so ignores Wis. Stat. § 5.01, which requires giving effect to the will of the elector, which requirement is not overridden—even if § 6.87(6d) is mandatory—where an address but not a zip code or state appears and that zip code or state is readily ascertainable. See Wis. Stat. § 5.01 (1).

30.    That an absentee envelope's witness address was completed by a clerk is not a statutory basis for objecting to or invalidating a vote during a recount. Wis. Stat. § 9.01(1)(b)2 ("An absentee ballot envelope is defective only if it is not witnessed or if it is not signed by the voter or if the certificate accompanying an absentee ballot that the voter received by facsimile transmission or electronic mail is missing.").

31.    No allegation has been made and the court cannot find that any corrected witness address involved any fraud, impropriety or abuse by a municipal clerk, or allowed ineligible votes to be cast.

32.    Therefore, the Milwaukee Elections Commission and the Dane County Board of Canvassers properly rejected the Plaintiffs' challenges to ballots where a clerk added missing witness address information.

### 3.    "Indefinitely Confined" Voters

33.    The substantive provision allowing absentee voting for "indefinitely confined" electors has been in place for more than forty years, and the relevant text of Wis. Stat. § 6.82(2)(a) has been unchanged since 1985. *See* Wis. Stat. § 6.86(2) (1985); 1985 Wisconsin Act 304.

34.    On March 29, 2020, the WEC issued guidance on applying the "indefinitely confined" exemption during the pandemic.

35.    On March 31, 2020, in considering a challenge to informal guidance provided on social media by certain county election officials, the Wisconsin Supreme Court held that the WEC's March 29, 2020 guidance "provide[d] the clarification on the purpose and proper use of

- 28 -

the indefinitely confined status that is required at this time." *Jefferson v. Dane Cnty.*, No. 2020AP557-OA, at 2 (Mar. 31, 2020).  The WEC's guidance has remained unchanged since then and was effective for the 2020 general election.

36.　　During the recount proceedings, Plaintiffs submitted two pieces of evidence regarding indefinitely confined voters: (a) a spreadsheet with nineteen (19) names of voters and links to Facebook posts by each identified voter; and (b) a November 25, 2020 affidavit of Kyle Hudson attaching seven (7) purported "social media posts" by voters registered as "indefinitely confined" that show the individuals outside of their homes. None of the posts related to Milwaukee County electors.

37.　　Plaintiffs' evidence lacks proper foundation regarding the identity of the individual voters, whether they are the same persons with the social media accounts, the particular circumstances of the individuals at the time they registered as indefinitely confined and at the time of the election, and the posts are hearsay.  *See* Wis. Stat. § 906.02 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); § 908.01(3) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'").

38.　　The court cannot draw any conclusions based upon this tenuous and inadmissible evidence and cannot extrapolate from the evidence a conclusion that over 28,000 Dane and Milwaukee County residents fraudulently identified themselves as indefinitely confined.

39.　　Ballots from voters who claimed indefinite confinement status in reliance of WEC rules and the Wisconsin Supreme Court's order are therefore lawful.

- 29 -

40.     The Milwaukee Elections Commission and Dane County Board of Canvassers properly denied Plaintiffs' challenges to indefinitely confined voters.

#### 4.     "Democracy in the Park"

41.     Wis. Stat. § 6.87(4)(b)1 states that an absentee ballot envelope "shall be mailed by the elector, or delivered in person, to the municipal clerk issuing the ballot or ballots."  The statute does not restrict the manner in which a voter can return an absentee ballot to a municipal clerk.

42.     The Democracy in the Park events conducted by the City of Madison were for the express purpose of allowing voters to deliver absentee ballots in person to the municipal clerk.

43.     The affidavits of Maribeth Witzel-Behl and Michael Haas establish that the Democracy in the Park events were properly staffed by employees of the City of Madison Clerk, and that proper procedures were used to ensure the security of the ballots so delivered. (Def. App. 201-210).

44.      The Democracy in the Park events were not "early voting" as Plaintiffs allege, because no absentee ballots were requested or issued at the events. *See* Wis. Stat. § 6.86(1)(b); Dane 11/24/20 53:14-19 (Doc. 51, p. 194). *See also* Haas Aff., ¶ 4 (Def. App. 202).

45.     Plaintiffs do not allege and submitted no evidence that any ballot delivered to the City of Madison during the Democracy in the Park events was tampered with or cast by an ineligible voter.

46.     The court therefore finds no statutory basis to disqualify more than 17,000 ballots personally delivered to the City of Madison Clerk at the Democracy in the Park events.