# EXHIBIT C

STATE OF WISCONSIN      CIRCUIT COURT  MILWAUKEE COUNTY
--------------------------------------------------------

DONALD J. TRUMP, et al.,

              Plaintiffs,

    -vs-                          Case No. 20CV007092

JOSEPH R. BIDEN, et al.,

              Defendants.
--------------------------------------------------------
                MOTION HEARING AND DECISION
--------------------------------------------------------

December 11, 2020          Hon. Stephen A. Simanek
                                Presiding


                     APPEARANCES

James Troupis and George Burnett, Attorney at Law,
appeared on behalf of the Plaintiff/Petitioners, Donald
Trump and Vice President Michael Pence.

John Devaney, Attorney at Law, appeared on behalf of
President Elect Joseph Biden and Vice President Elect
Kamala Harris.

Matt O'Neill, Attorney at Law, appeared on behalf of
President Elect Joseph Biden and Vice President Elect
Kamala Harris.

Andrew Jones, Attorney at Law, appeared on behalf of the
Milwaukee County Clerk, George Christenson, and the
Milwaukee County Elections Commission.

David Gault, Dane County Corporation Counsel, appeared on
behalf of the Dane County Clerk and the Dane County Board
of Canvassers.

Steven Kilpatrick, Assistant Attorney General with the
Wisconsin Department of Justice, appeared on behalf of the
Wisconsin Elections Commission and its chairperson, Ann
Jacobs.


     Kristin Menzia, RMR, CRR, Official Court Reporter

```
 1                  P R O C E E D I N G S
 2              THE COURT:  Calling Case 2020CV-
 3     007092.  Donald J. Trump, et al., versus Joseph
 4     R. Biden, et al.  This matter's set for a
 5     hearing.  Counsel, your appearances, please.
 6              ATTORNEY TROUPIS:  This is James
 7     Troupis on behalf of the Plaintiff/Petitioners,
 8     Donald Trump and Vice President Pence.
 9              ATTORNEY DEVANEY:  Good morning, Your
10     Honor.  John Devaney on behalf of President Elect
11     Biden and Vice President Elect Harris.
12              ATTORNEY O'NEILL:  Good morning, Your
13     Honor.  Matt O'Neill, also on behalf of President
14     Elect Biden and Vice President Elect Harris.
15              ATTORNEY JONES:  Good morning, Your
16     Honor.  Andrew Jones of Hansen Reynolds on behalf
17     of the Milwaukee County Clerk, George
18     Christenson, and the Milwaukee County Elections
19     Commission.
20              ATTORNEY GAULT:  Good morning, Your
21     Honor.  David Gault, Dane County Corporation
22     Counsel, on behalf of the Dane County Clerk and
23     the Dane County Board of Canvassers.
24              ATTORNEY KILPATRICK:  Good morning,
25     Your Honor.  My name is Steven Kilpatrick,
```

```
 1      Assistant Attorney General with the Wisconsin
 2      Department of Justice, representing the Wisconsin
 3      Elections Commission and its chairperson, Ann
 4      Jacobs.
 5              THE COURT:  Mr. Burnett I think is
 6      last.  Have we heard from him?
 7              THE CLERK:  We have not.
 8      Mr. Burnett, can you please state your
 9      appearance?
10              ATTORNEY BURNETT:  George Burnett on
11      behalf of the Plaintiffs.
12              THE COURT:  I think that's everyone.
13      Okay.  Everyone has made their appearances.  This
14      matter is the continuation of a hearing pursuant
15      to the statute with regard to the recounts in
16      Dane County and Milwaukee County.
17              The paperwork has been filed.
18      There's been a complaint filed.  Answers have
19      been filed.  Issue is joined.  Before we begin on
20      oral argument, which is what we have left to do
21      on this summary-type proceeding, there are a
22      couple of housekeeping matters that have to be
23      taken care of.
24              I was advised by the Clerk that a
25      number of parties wish to file amicus briefs, and
```

```
 1     there was at least one request to participate by
 2     Zoom in this proceeding.  I will elicit any
 3     comment by counsel, but I think we have a full
 4     house already.
 5              I think the issues can be properly
 6     addressed by everyone who is presently here, and
 7     I don't see any need to muddy the waters by
 8     allowing people to intervene or file amicus
 9     documents.
10              Anyone have any objection to me just
11     outright ruling that we will not allow anyone
12     else either as an amicus or participant in the
13     Zoom hearing?  Hearing none, I will simply order
14     that those requests are hereby denied.
15              We also, since yesterday, have had a
16     motion filed with regard to excluding affidavits
17     of Meagan Wolfe and Kim Wayte.  There's been a
18     motion filed and there's been a response filed to
19     that motion.
20              Does the moving party wish to be
21     heard on that motion, motion to strike, because
22     it's outside the record?
23              ATTORNEY BURNETT:  Yes, Your Honor.
24     Very briefly.  This is George Burnett.  I think
25     in response, we would make three, possibly four
```

1    points.

2              The first is that, as the court has

3    pointed out, this is an abbreviated summary

4    procedure.  The Court's essentially sitting as an

5    appellate court, reviewing the decisions made by

6    the Milwaukee and Dane County Board of

7    Canvassers.  The statute at play here, 9.01

8    subpart eight, indicates that unless a very good

9    reason exists for taking additional facts, the

10   Court is to be confined to the facts made in the

11   record below.

12             To that point, the Wisconsin

13   Elections Commission responds indicating that it

14   was not a party to the proceedings below and

15   therefore it should have an opportunity to

16   present additional facts as well.  I would point

17   out that neither the Board of Canvassers were

18   technical parties.  They were not litigants to

19   those proceedings below, although they are also

20   parties here.  The board --  The Commission

21   received the petition and was involved in the

22   recount from the start.

23             Certainly the information that is

24   being offered now was available to the Biden

25   campaign and could have been introduced in the

1     recount proceedings.

2                And further, if you read 9.01 subpart

3     eight in context and add in subpart six, it seems

4     clear that what the statute is referring to when

5     it talks about parties is parties to the recount

6     proceeding.  The alternative is to allow the

7     Commissioner and the Boards to supplement the

8     record, which makes it near impossible for the

9     Court to review what the Board of Canvassers did

10    below.

11               The last point I would make addresses

12    the Wolfe affidavit in particular.  That

13    affidavit, especially paragraphs eight through

14    10, constitutes largely a summary, conclusions

15    drawn from data.  The data would have been

16    available for the recount proceedings and the

17    data itself is not offered, supplied or

18    available.  So there is no way to measure or test

19    the conclusions that Miss Wolfe draws from that

20    data.

21               And indeed, she talks about the

22    conclusions as being rough conclusions.  She uses

23    the word "roughly" a number of times.  In a

24    courtroom proceeding, that kind of testimony

25    would unlikely to be admitted.

```
 1              So unless the Court has any

 2    questions, our point is that 9.01 subpart eight

 3    does not authorize the admission of additional

 4    evidence like this.

 5              THE COURT:  There was a --

 6              THE REPORTER:  I'm sorry, Judge?

 7              THE COURT:  There was a response

 8    filed?  No one wants to respond?

 9              ATTORNEY BURNETT:  I think

10    Mr. Kilpatrick has authored something, Your

11    Honor.

12              ATTORNEY KILPATRICK:  Yes, Your

13    Honor.  Thank you very much.  I couldn't hear you

14    at first.  Just a quick response.

15              That the Commission certainly was not

16    a party before the Board of Canvassers.  Wasn't a

17    participant either.  And so it did not have the

18    opportunity to enter into the record any

19    evidence.  Whether the other co-defendants here

20    had such opportunity is irrelevant to the

21    Commission's inability to enter into evidence

22    before the Commission --  I'm sorry.  Before the

23    Board.

24              We were not a participant clearly,

25    the Commission or Commissioner Jacobs.
```

7

```
 1    Commissioner Jacobs and the Commission determined
 2    the election so was not participating before the
 3    Board of Commissioners -- the canvassers.
 4              Also with regard to the data in
 5    Ms. Wolfe's affidavit, that is public data.  I
 6    believe that there were other parties who had
 7    requested data regarding indefinite confined
 8    voters that could have been obtained publicly by
 9    the Plaintiffs.  And so there's really nothing
10    controversial about that data.
11              With regard to Miss Wayte's
12    affidavit, again, that goes to, as Ms. Wolfe's
13    testimony and statements, goes to the
14    Commission's defenses.  The Commission, again,
15    because it wasn't a participant before the Board,
16    had no opportunity to raise defenses.  And this
17    evidence is crucial to some of the defenses such
18    as laches and equal protection that the
19    Commission makes and raises in its brief.
20              So I believe it would be prejudicial
21    to the Commission in defending this lawsuit if
22    these affidavits and attachments were stricken.
23              THE COURT:  Any response,
24    Mr. Burnett?
25              ATTORNEY BURNETT:  Just very briefly,
```

1  Your Honor.  The Commission's role in this entire

2  proceeding is a bit unusual.  As Mr. Kilpatrick

3  correctly points out, the Commission did not play

4  an active role as a litigant in the proceedings

5  before the Board of Canvassers, nor should it

6  have.  Because the Commission obstensible is

7  supposed to be a neutral governmental agency.  It

8  should not be favoring one candidate or the

9  other.

10         That role doesn't change by virtue of

11  the fact that the statutes require the Commission

12  to be served with a notice of appeal and with a

13  complaint in this case.  If you look at the

14  complaint, the only allegations pertinent to

15  the -- certified right these election results.

16         Depending on this Court's decision,

17  it may be compelled to do something vis-a-vis

18  that certification, but its role should remain a

19  neutral governmental agency that neither -- that

20  favors neither candidate.

21         THE COURT:  As was indicated, this is

22  a summary proceeding.  It's essentially an appeal

23  being heard in a circuit court.  The statute

24  makes clear that the Court is limited to the

25  record that was made at the time of the recount.

1    The affidavits proposed here were not

2    made part of that record.  I will, therefore,

3    grant the motion of the Petitioner/Appellant to

4    strike those affidavits.  We will limit ourselves

5    to what was available, what was made available at

6    the time of the recount.  So the motion is

7    granted.

8    I believe that takes care of all the

9    housekeeping matters that we have.  It's the

10   Court's intention to allow counsel to present

11   oral argument.  I should note that I've reviewed

12   all of the pleadings, the briefs.  The briefs

13   have had extensive appendices attached to them,

14   hundreds of pages.  I reviewed hundreds of pages

15   of transcripts from the recounts and the exhibits

16   that were attached as well.  So I expect counsel

17   can relatively briefly present their oral

18   arguments.

19   As you well understand, time is of

20   the essence here.  In less than 100 hours, the

21   electors meet to vote, next Monday, the 14th.

22   And it's this Court's intention to wrap this

23   thing up this morning.

24   So Mr. Troupis, I think you're lead

25   counsel for the Petitioner/Appellants, go ahead.

10

```
 1      I'm not setting a hard time limit, but I expect
 2      people to be concise.
 3              ATTORNEY TROUPIS:  Yes.  Having sat
 4      in your role, Your Honor, I understand very well.
 5      First of all, I want to thank you.  This was a
 6      task you were given by the Chief Justice, and
 7      it's an enormous task.  And I think I speak on
 8      behalf of everyone in saying thank you to you.
 9              I candidly also want to thank
10      opposing counsel and I want to do that
11      publicly.  They're courteous, their civility,
12      their pleasantness is a part of being a part of
13      the Wisconsin Bar.  And whatever else goes on
14      elsewhere in the country, here the lawyers have
15      acted with extraordinary civility and courtesy.
16      And I want to thank them for their effort both
17      during the recount and during these proceedings.
18              As Your Honor mentioned just a moment
19      ago, I will limit my remarks to three items not
20      otherwise addressed in the papers.  First, I want
21      to address the laches extensions that have
22      occurred here.  Second, I want to address
23      W.E.C.'s role, which I think has been
24      misunderstood in these proceedings.  And third, I
25      want to address a statute that had not previously
```

been raised.  Section Wisconsin 227.40 which is a
declaratory judgment statute.

So let me start with the laches
question.  It's important to remember that the
role of this court is that of reviewing court.
It's stuck with the evidence.  Your Honor just
mentioned exactly that.  There's no speculation
now.  There's no guessing at what people know.
There's no guessing at what the record has.

Now, why is that important?  It's
important here because the opposing parties now
rely on an intensely factual question, laches.
Laches requires an enormous amount of proof about
what the parties knew, when the parties knew it,
what other parties relied upon.

None of that evidence is in the
record.  There's nothing in this record that was
introduced with regard to what Donald Trump or
Mike Pence knew about Wisconsin election laws or
knew about the claims that were now being made.

It's sort of a situation where
defendants or oppositions just saying, well, they
must have known.  That's not enough.  That can
never be enough.  We have a record.  Everything
in our petition, everything before the Court was

1    in front of the canvassing boards.  The parties
2    apparently knew they were gonna raise this
3    objection.  They could have put evidence in.
4              But you will look, for example, at
5    Biden findings of fact 47 to 51, which are the
6    ones dealing with laches.  And you will note
7    there is not a single substantive reference to
8    the record.  Not one.
9              Now, why is that?  Because they don't
10   have any facts that support the proposition that
11   President Trump and Vice President Pence had
12   knowledge that relied on that knowledge to the
13   detriment of another party.  For that matter,
14   there's no evidence that the Biden campaign or
15   the canvassing boards or the clerks or anyone
16   relied on the fact that Donald Trump had not
17   raised these matters.  And that's the second
18   prong.
19             So they neither satisfy the first
20   prong, which is a factual prong about our
21   knowledge, about the knowledge of the Plaintiff,
22   that he sat upon, with the intent of causing
23   harm, nor is there any evidence that other
24   parties even relied upon that.  On the contrary,
25   there's evidence they relied on other things but

```
 1        not Donald Trump's failure to raise this.

 2               What's also fascinating is whether or

 3        not the Biden campaign knew about these same

 4        problems in statutes.  The same issues that might

 5        ultimately arise in these proceedings.  My guess

 6        is with all of their legal counsel and all the

 7        brains on the other side of this proceeding, they

 8        did know about them.  They knew full well and

 9        they in fact took advantage of these things

10        throughout the campaign.  But even that's not

11        necessary and it's not in the record.

12               The point I make is that laches is

13        intensely factual.  There is no facts supporting

14        the propositions that they have asserted here,

15        and there's no reliance.  If this is important,

16        really important in an election case of this

17        type, because if you could rely on an assumption,

18        which is apparently what they're doing, there's

19        an assumption that a candidate and a candidate's

20        committee are aware of every possible legal

21        concern that might arise in a recount, we would

22        be required, if that's the law, then we would be

23        required, the Trump campaign, would be required

24        to sue 72 counties, 595 municipalities, because

25        all of them administer the laws in their
```

```
 1    jurisdictions.  And we would be required to
 2    examine every one of their processes and
 3    procedures in advance or be stuck with the idea
 4    that we couldn't raise those irregularities
 5    afterwards.  That cannot be the law.
 6              Moreover, the implication here of
 7    allowing a defense like this without any evidence
 8    whatsoever, where does it stop?  What if one is
 9    running for circuit court judge and they think
10    they're going to win but they don't?  They lose
11    by 10 votes.  Turns out 25 envelopes were
12    altered.  Well, does the circuit court judge, is
13    he required to raise those?  Obviously know about
14    them?  Well, maybe not.  Maybe not a circuit
15    court judge because that's an office we have many
16    of.
17              But what about Governor?  Well, the
18    Governor has lots of resources.  So in a
19    Governor's race, we would assume other things.
20    No facts needed, just assume it.  Well, what
21    about assembly?  What about people running for
22    assembly?  That's kind of significant.
23              The point I'm making, as a matter of
24    policy, the law requires there be facts to
25    support a laches claim.  There are no facts in
```

1    this case.  None were introduced and none are

2    even being offered.

3             We go to the second point that I

4    mentioned I'd like to go to, which is a

5    misunderstanding.  I'll call it a misunder-

6    standing.  It might be a misdirection.  But

7    either way, the question of W.E.C.'s role here,

8    that's the Wisconsin Election Commission, I think

9    there's -- the briefs of the opposition

10   misunderstand or misdirect at it because we're

11   not asserting -- the Trump campaign is not

12   asserting that W.E.C. violated a statute.  They

13   didn't.  They're not --  They just pointed out

14   they're not a party.  The municipal clerks and

15   the people who voted were the subjects of this

16   recount.  Not W.E.C.

17            Let me walk through how the claim is

18   made.  We looked at detailed records during the

19   recount, which were made available to us, of

20   absentee voting in Dane and Milwaukee County.  We

21   were provided digital records from both counties

22   early in the recount process, which we were then

23   able to analyze and determine the exact name of

24   the in-person voters.

25            This is not a claim in any way, shape

1    or form that the election as a whole in this
2    instance, for example, that these cases they cite
3    where they go, well, you can't challenge an
4    underlying referendum.  That's not what we're
5    doing.  We're challenging individual ballots cast
6    by individuals, named in the record, every single
7    one of them identified.  We took that from a
8    digital record of in-person voting.

9          Nobody disagrees on those lists now.
10   There's been no contrary evidence.  Both Boards
11   agreed, for example, when we talked about the
12   failure to have applications exact to that list.
13   Having gotten the list, we then asked the
14   question of each Board, can we look at the
15   applications?  Because applications had been
16   delivered.  Big boxes of them from the municipal
17   clerks, which is where the applications are kept.
18   You have to have an application for absentee
19   voting in Wisconsin.
20         Both Boards said no, you can't have
21   those.  We said why?  And they said, because for
22   our purposes, our clerks in Dane and Milwaukee
23   County universally chose not to have a separate
24   application.  And the Boards will find as a
25   matter of law and conclude that the EL-122, which

1    is the ballot certification envelope, not the
2    application, it's the ballot certification
3    envelope, we're gonna consider that an
4    application.  And in fact, it has application on
5    it.  And that was the conclusion of each Board.
6              So now we had the two elements of our
7    claim.  Number one, the names of individuals who
8    voted in person; and number two, we had that
9    there was no separate application.
10             Now, one can disagree, and that's the
11   subject of this litigation, on whether
12   applications are required, whether or not --
13   whether or not the ballot certification is an
14   application.  Actually there is no disagreement
15   that an application is required.  Everybody
16   agrees on that.
17             But the point here is, that was our
18   claim.  We were done.  That --  At that moment in
19   time when we knew the names of the people, when
20   we knew that there was no separate application,
21   our claim was completed.  That's the claim.
22   That's what we're making.
23             Now, what's W.E.C. role in that?
24   Well, it turns out that after our claim list
25   perfected, the Defendants argued that there isn't

```
 1      a separate application because we're taking
 2      W.E.C.'s advice.  So the claim is not that their
 3      advice was wrong.  It's a defense.  Rather it's
 4      the clerk's.

 5              It's the --  The only question posed
 6      is could the clerks rely on that advice as a
 7      defense.  We're not --  Whether the advice was
 8      right or wrong is irrelevant to our claim.  The
 9      defense is we get a sort of get-out-of-jail-free
10      card because we relied on W.E.C.'s advice.  No
11      matter what the statute said, we relied on
12      W.E.C.'s advice.

13              Now, I think that's patently
14      incorrect.  Clearly W.E.C.'s advice cannot and
15      does not supplant the law.  It cannot.  If it's
16      wrong advice, it's wrong advice.  But I'm not the
17      only one who says that.  W.E.C. itself says don't
18      rely on our advice.  You need to have separate
19      counsel.

20              In the W.E.C.'s recount manual, it
21      says, and I quote, Petitioner's candidates and
22      filing officers should seek legal counsel when
23      they're involved in a recount.  There's a
24      memorandum also cited in our briefs that says
25      ultimately the decision of the Board of
```

1    Canvassers is what is challenged in court, not

2    the advice of the Commission's staff.

3              That's the point.  You can't rely on

4    their advice because you have to follow the

5    statute, whether it's right or wrong.  But again,

6    our Supreme Court has dealt directly, directly on

7    this question.  In the last term in a now

8    relatively famous case here in Wisconsin, the

9    *SEIU* case, which we again cite, but it's

10   important to remember the words of the *SEIU* case,

11   which the Defendants don't even allude to.

12             Here's what they say about advice

13   from the Wisconsin Election Commission or any

14   other administrative agency providing advice or

15   guidance.  This is what they say.  They, the

16   guidance, are not law.  They do not have the

17   force or effect of law, and they provide no

18   authority for implementing or enforcing standards

19   or conditions.  They simply explain statutes and

20   rules or they, quote, provide guidance or advice,

21   end quote, about how the Executive Branch is,

22   quote, likely to apply a statute or rule.

23             They impose no obligations, set no

24   standards, and bind no one.  They are

25   communications about the law.  They are not the

1  law itself.  They communicate intended
2  applications of the law.  They are not the actual
3  execution of the law.  Functionally, and as a
4  matter of law, they are entirely inert.  That is
5  to say, they represent nothing more than the
6  knowledge and intentions of their authors, *SEIU*
7  *Local versus Vos*, 220 Wisconsin 67 at paragraph
8  102.
9           I read all that language because it's
10  as if all of that was forgotten in this case.
11  It's as if the primary defense, we're supposed to
12  bring actions against these regulations.  But
13  why?  The regulations have no meaning.  They have
14  no force of law.  If we'd have brought that case,
15  we'd have been kicked out in two seconds under
16  ripeness doctrines.  And the reason is because
17  the W.E.C.'s guidance is not at issue, unless
18  somehow the Defendants come up with some law that
19  we're unaware of that if the advice is contrary
20  to the statute, that's okay.  You can follow
21  either the statute of the legislature or the
22  advice of unelected bureaucrats at W.E.C.
23           When I state the proposition, I think
24  it states the conclusion.  You can't do it.
25  There's no case that's ever said that.  It

1   doesn't exist.  So either laches doesn't apply

2   and W.E.C.'s guidance is no defense at all.

3           Moreover, as we indicated in the

4   record, other places including Oconomowoc, right

5   outside Milwaukee, did this correctly under the

6   statutes.  They required the application before

7   they provided the ballot envelope, and of course

8   all the other arguments.

9           But my point here is simply, there

10  are jurisdictions -- this record indicates there

11  are only two jurisdictions in this record that

12  violated these statutes, Dane and Milwaukee.  I'm

13  not saying others didn't.  I'm just saying that's

14  what the record says.  And the record also says

15  that other places complied with the statute.

16  That's the point of the litigation from our

17  perspective.  That's the claim.

18          Now, the third problem that I wanted

19  to address that wasn't addressed in the briefs,

20  which is the statute 227.40.  It's an interesting

21  statute in that it's a declaratory relief

22  statute.  But again, because we allege nothing

23  with regard to the W.E.C.'s regulations or

24  guidance, there's nothing to declare.  There's

25  nothing to approach as a declaration.

1          We weren't required to bring

2     anything.  Because, after all, as I just said,

3     under the *SEIU* case, those guidance are

4     meaningless.  They're not law.  Moreover, some

5     jurisdictions followed the statute, some didn't.

6     We could not know of a claim until in fact the

7     election happened.  It's the ballots.  It's the

8     actions that count.  Not a formal declaration

9     around the state.

10          And again, consider that there are

11    500 plus municipalities.  Some did it

12    differently.  Some got it wrong.  Dane and

13    Milwaukee got it wrong.  We can't be obligated to

14    seek a declaration against behavior that hasn't

15    happened, under guidelines that are not binding,

16    that we know are not followed in certain areas.

17          Finally, they seem to forget

18    completely we're stuck with Wisconsin 9.01.

19    Recall we were ordered by the State Supreme Court

20    after our original action to bring our claims in

21    the exclusive jurisdiction here before Your

22    Honor.  That's what we did.

23          Under 9.01(11), it provides that all

24    actions of all irregularities are merged into

25    this action, and this is our exclusive and only

1    way to address these.  That was a conscious

2    decision by the legislature to merge election law

3    into a single place during the recount.

4    Otherwise, of course, we'd have a plethora of

5    litigation before, during or after elections.

6    There's no point in it.

7            You want to have a situation where it

8    actually makes a difference.  Where you don't

9    have to speculate that those 10 envelopes in

10   Waupaca might make a difference so you better sue

11   the Waupaca county clerk.  You don't have to make

12   that kind of decision under our statute.  It's

13   precisely written so that you aren't questioning

14   things that we don't need to question.

15           We didn't know the outcome of this

16   election last year.  No one knew the outcome of

17   the election.  No one knew that it would be this

18   close.  I'm sure that the Biden campaign thought

19   they'd win by a lot.  I'm sure that Donald Trump

20   always believes and is right thinks he's gonna

21   win by a lot.  That's good.  That's what

22   candidates do.

23           227.40 cannot usurp 9.01's obligation

24   of a candidate or a right of a candidate.

25   Because if it did, we would have nothing but

1     endless litigation over election laws.  As I

2     said, we don't have to here, because as I said,

3     everybody -- the administration for, the reasons

4     I just said.

5              But even 227 acknowledges this.

6     227.40(3) explicitly provides that in any

7     judicial proceeding other than number one and

8     two, some they refer to, in which the invalidity

9     of a rule or guidance document is material, so if

10    it were material here, I don't think it is, but

11    if it were material to that cause of action, the

12    assertion of the invalidity shall be set forth in

13    a pleading of the party maintaining the

14    invalidity during that later proceeding.

15    Exactly.

16              So if we were required to do it, we

17    could do it in these proceedings, I guess.  And

18    the Court could seek and enter a declaratory

19    judgment.  We're not barred from raising a

20    response that W.E.C. in fact gave wrong advice if

21    it's relevant.  I don't think it's relevant.  I

22    don't think it matters.  I don't think it's

23    any -- it's an affirmative defense.  The statutes

24    say what the statutes say.

25              I think they got it exactly

```
1    backwards.  The idea that W.E.C. supercedes the
2    law or that W.E.C.'s advice is an absolute
3    defense is unsupportable.  There's no support in
4    the law for that proposition of which I'm aware.
5    It is advice.  It is not law.  We are not
6    involved --  We would not be involved in endless
7    litigation guessing at what people are gonna do
8    or not do in a proceeding.
9              Your Honor, I'm glad to answer any
10   other questions either now or in the future, but
11   I appreciate that we have briefed extensively
12   many of those other issues and I addressed the
13   three I thought with some certainty I should
14   address based upon the brief.
15             THE COURT:  Thank you, Mr. Troupis.
16   Mr. Burnett, did you wish to argue on behalf of
17   Petitioners/Appellants also?
18             ATTORNEY BURNETT:  No, I do not, Your
19   Honor.
20             THE COURT:  Then with respect to the
21   Respondents, I don't know if you have among
22   yourself decided in what sequence you will argue,
23   but whatever way you want to go is fine with the
24   Court.
25             ATTORNEY DEVANEY:  Your Honor, thank
```

26

1  you.  We have spoken among us, and I will speak
2  first on behalf of President Elect Biden and Vice
3  President Elect Harris.  And I think it's hoped
4  among my colleagues that I'll address most of the
5  points.  I know my colleagues are available for
6  supplementing me or answering any questions.  So
7  if that's acceptable to Your Honor, that's how
8  we'll proceed.
9           THE COURT:  It certainly is.  Go
10  ahead.
11           ATTORNEY DEVANEY:  Your Honor, really
12  the elephant in the room here that Mr. Troupis
13  did not address and we need to be very clear
14  about is what are Plaintiffs' asking you to do
15  here.  They're asking you to throw out the votes
16  of more than 220,000 Wisconsin citizens who voted
17  in full compliance with the laws that were in
18  effect at the time of the election.
19           They are asking you to do this
20  without evidence that a single voter, not even
21  one, voted improperly or engaged in anything
22  remotely approaching voter fraud.  And even
23  worse, Your Honor, they're asking you to throw
24  out the votes of only those who live in two of
25  Wisconsin's 72 counties.  They have very

```
 1      cynically targeted the two most urban, non-white,

 2      and democratic counties, even though voters in

 3      the other 70 counties voted using the exact same

 4      procedures the Plaintiffs' claim are unlawful.

 5              Counsel for Petitioner here said

 6      there's no evidence of that.  That's not true.

 7      We have an affidavit from Mr. Kennedy in the

 8      record that demonstrates that these procedures

 9      were used statewide.  And, Your Honor, that's not

10      surprising because clerks do rely on W.E.C.

11      guidance and the guidance provided for exactly

12      the procedures that were followed in Dane and

13      Milwaukee and around the state.

14              The people of Wisconsin have spoken,

15      Your Honor.  Vice --  President Elect Biden and

16      Vice President Elect Harris won by more than

17      20,000 votes.  President Trump sought a recount.

18      That recount was performed diligently by

19      Milwaukee and Dane canvassers over a course of a

20      week to nine or 10 days.  And the outcome of that

21      was the margin of victory actually increased.

22              Your Honor, Justice Hagedorn just a

23      few days ago stated that in response to precisely

24      this type of relief, this very request for relief

25      as a matter of fact, that the loss of public
```

```
 1      trust in our constitutional order resulting from
 2      the exercise of this kind of judicial power would
 3      be incalculable.
 4              Indeed, Your Honor, the election code
 5      of Wisconsin 5.01, the first provision in it says
 6      that the election code must be construed to give
 7      effect to the will of the voters.  You are being
 8      asked to do exactly the opposite.  And that, of
 9      course, is entirely inconsistent with Wisconsin
10      law and with the Wisconsin and Federal
11      Constitutions.
12              It is not surprising, Your Honor,
13      given this extraordinary request for relief that
14      no court in the history of our country has ever
15      come close to granting that there are many
16      reasons why the relief should be denied.
17              And of course, Your Honor, you're
18      well aware of the Court's limited scope of review
19      in this circumstance.  It's not the Court's role
20      to substitute its judgment for the Canvassing
21      Boards with respect to issues of fact, nor is it
22      the Court's role to second guess questions of law
23      that were appropriately decided or consistently
24      decided with statute and guidance by the
25      Canvassing Boards.
```

1        Importantly, Your Honor, the Supreme

2   Court long ago of Wisconsin spoke to a limited

3   aspect of review by this court.  And the Court

4   said in a *Clapp v. Joint School District* board

5   case that the Court's role here is no greater

6   than the duties of the Board of Canvassers and

7   does not reach a question illegality of the

8   election as a whole.

9        In fact, what the Court's role is and

10  what the Boards of Canvassers' role was was to

11  review ballots on an individual basis and ballot

12  envelopes and to decide whether some should be

13  included -- or whether some should be excluded

14  for irregularities or not.  And that is the

15  limited role the canvassing board and Your Honor,

16  this Court's limited role as well in this

17  proceeding, giving deference to the canvassers.

18       Your Honor, I am mindful that you've

19  read our briefs and I will not delve too deeply

20  into our various arguments, but I do want to

21  highlight some of the very important points.

22       I'll begin with the laches, equitable

23  estoppel, and unclean hands argument that we have

24  made.  And it's very clear, Your Honor, that

25  President Trump has been on notice of the

1  provisions that he is challenging in this
2  proceeding.
3         In 2016, President Trump ran for
4  President in Wisconsin.  These very provisions
5  that are being challenged now were in effect at
6  that time.  He went through a recount.  These
7  very provisions were at issue in that recount.
8  This is in the record the fact that President
9  Trump ran in 2016.  That there was a recount in
10  2016.  To suggest that President Trump does not
11  have notice of this guidance from the W.E.C. is
12  just ignoring the record, ignoring reality.
13         Of course President Trump had notice
14  of the fact that, for example, the absentee
15  in-person ballot application has been in use for
16  more than a decade.  It was in use when he ran in
17  2016.  Likewise, the witness address information
18  guidance from the W.E.C. and the command that
19  clerks should fill in pieces of missing witness
20  addresses has been in effect for more than four
21  years and was in effect when President Trump ran
22  for the presidency in 2016.
23         Similar, the indefinitely confined
24  guidance from the Wisconsin Election Commission
25  has been in effect for something like more than

1    40 years, Your Honor.  And the particular

2    guidance at issue here has been in effect since

3    last March, and there was a Wisconsin Supreme

4    Court decision that interpreted and affirmed that

5    language.

6             And likewise, the Democracy in the

7    Park initiative that President Trump challenges

8    was noticed more than a month and a half before

9    the election.  And so to argue that there wasn't

10   notice and that President Trump couldn't have

11   known to have challenged these provisions before

12   the election just simply defies reality and

13   common sense and the facts in the record.

14            Your Honor, whether call laches,

15   equitable estoppel, or some other equitable

16   notion, the case law in Wisconsin and around the

17   country establishes that any relief, much less

18   the drastic relief that President Trump seeks

19   here, cannot be granted where a party has slept

20   on its rights in the way that has occurred here.

21            It's established by the case law

22   cited in our brief, this principle applies with

23   particular force in the context of elections

24   where challenges are brought after the election

25   and the challenges would disenfranchise voters.

```
 1      Plaintiffs' delay here could not be more

 2      prejudicial to the 220,000-plus voters affected

 3      by this request for relief.  The prejudice is

 4      outright disenfranchisement and a denial of their

 5      right to vote.

 6                  So, Your Honor, the equitable

 7      estoppel, laches argument applies powerfully here

 8      under Wisconsin law and law from other

 9      jurisdictions around the country.

10                  Second, Your Honor, is the issue of

11      voter reliance, which provides another basis for

12      rejecting this challenge.  As we discussed in our

13      briefs, that is, all the Defendants, Wisconsin

14      like states throughout the country, protect

15      voters who rely on the law as it exists at the

16      time that they voted.

17                  Consistent with the sacred right of

18      the constitutional right to vote, Wisconsin

19      courts have long made it clear that any error in

20      the administration of an election and, by the

21      way, Your Honor, there were no errors here, but

22      even if there had been, such an error should not

23      result in the exclusion of any votes where voters

24      relied on the law and the actions of election

25      officials.
```

1     Here, Plaintiffs' entire claim rests

2  on the assertion that voters should not have

3  relied on the guidance of the W.E.C. and the way

4  in which election officials administered the

5  election.  There is not a single allegation and

6  no evidence that any voter did anything improper.

7     Your Honor, in this circumstance,

8  discarding a single vote, much less 220,000,

9  would violate Wisconsin law and the strong policy

10  reflected in 5.01 that says we must respect and

11  honor the will and intent of the voters.  I'll

12  elaborate upon a little further -- in a little

13  more detail in a few minutes.  It also would

14  violate the constitutional rights of these

15  voters, the 1st and 14th Amendment, due process

16  rights, and the right to vote.

17     Third, Your Honor, this is the third

18  reason why this challenge must be rejected, is

19  9.01, which counsel for President Trump has

20  discussed.  Plaintiffs' broad challenges to the

21  W.E.C. guidance and the request to discard broad

22  categories of ballots are simply a misuse of

23  9.01.

24     Once again, the *Clapp* case I cited

25  earlier decided decades ago, the Wisconsin

1   Supreme Court made it clear that administrative
2   irregularities underlying election process or
3   alleged administration irregularities are not a
4   proper subject for a 9.01 recount proceeding.
5   The Court's been clear about that since the early
6   1960s, Your Honor.
7               These recount procedures in 9.01
8   establish that ballots will be viewed on an
9   individual basis.  If any individual ballot is
10  excluded because it is improperly cast, the
11  remedy is a random draw-down where one ballot is
12  then removed from the total collection of
13  ballots.
14              And as the Wisconsin Department of
15  Justice very capably explains in its brief, there
16  is no anchoring in evidence that ties the
17  challenges here to broad categories of ballots to
18  the individual ballots that are the exclusive
19  focus of a recount under 9.01.  And for this
20  additional reason, the relief Plaintiff is
21  seeking is entirely improper in the context of
22  this recount proceeding.
23              And the truth of the matter, Your
24  Honor, is notwithstanding counsel's contention to
25  the contrary, President Trump is actually

seeking -- is actually asking you to rule on what
is in effect a collateral challenge to the W.E.C.
guidance and election practice.  As we describe
in our brief, challenges to W.E.C. guidance, and
any agency guidance, are governed by Wisconsin
Statute 227.41, which provides the exclusive
means of judicial review of the validity of
guidance issued by a state agency.

And specifically, that provision
provides that it is the exclusive means of
judicial review of an agency's guidance document,
and that such review shall be through an action
for declaratory judgment brought in the circuit
court.  The Supreme Court has held that this
exclusive review provision is not permissive but
rather than -- but is mandatory.  And for that
we -- I refer you to the cases as cited on page
21 of our brief.

Moreover, the only permissible relief
when challenging agency guidance, such as
President Trump is doing here, is prospective in
response to a ruling on a declaratory judgment.
Not retrospective in a way that would
disenfranchise hundreds of thousands of voters,
as being requested here.

1          Your Honor, next, the reason for
 2     another -- the additional reasons for rejecting
 3     these challenges are on the merits.  And I know
 4     Your Honor is familiar with the facts relating to
 5     the four broad challenges.  I won't delve too
 6     deeply into them, but there are a few points that
 7     I think must be made to make sure that the
 8     Court's fully aware of the weakness of the
 9     challenges.  The first relates to --  And also
10     the evidence in the record to support the
11     Canvassing Board's determination.
12          And the first one is, of course, the
13     absentee in-person application and the challenge
14     to hundreds of thousands of votes on that basis
15     or more than a hundred thousand I believe the
16     number is.  As Defendants describe in our briefs,
17     every in-person early voter applied for an
18     absentee ballot by completing form EL-122
19     entitled official absentee ballot application.
20     That is the name of it.  It says application on
21     it.  And it requires voters to complete
22     information that other voters complete when
23     submitting a separate application for an absentee
24     ballot, such as through the mail.
25          Now, that application on EL-122 must

be completed before a voter receives a ballot.
And the record evidence shows exactly how that
process works.  And as I mentioned before, Your
Honor, this process has been in place for more
than a decade.  It was implemented after the 2008
presidential election, as demonstrated by the
record in this case, to increase -- to address
inefficiencies that were experienced with
in-person absentee voting in the November 2008
presidential election.

And the way it works, Your Honor,
is -- and this is in the record in the evidence
as cited in our brief, a voter must show -- shows
up in a clerk's office.  He or she shows an ID,
requests a ballot in person.  The request for a
ballot is entered to the Wis-Vote System.  That
system generates a record of application and a
label for an envelope.

The voter shows the label -- the
label envelope to the official, the clerk before
receiving a ballot.  And then the voter signs the
certification on the envelope that the clerk
witnesses.  So you have to go -- you have to
apply for the application -- for the ballot, you
do so in the presence of the clerk, you receive

```
1    it, and then you complete it.  So there is an
2    application.  And to suggest otherwise is just
3    ignoring the reality of the situation and 11
4    years of practice with precisely this procedure.

5              No one has ever before objected to
6    these practices or to the use of form EL-122.
7    And one of the great ironies here, Your Honor, is
8    that this form was used in 2016.  And it was used
9    to help President Trump himself get elected.
10   Plaintiffs offer no excuse for not challenging
11   this longstanding practice before now.

12             And Your Honor, the last point I'll
13   make on this particular issue is there is no
14   evidence that any person, not a single person who
15   used this process of early in-person voting voted
16   improperly or was not qualified to vote.  And
17   again, going back to 50.01, respecting the will
18   of the voter, honoring the will of the voter,
19   every voter who used this method was lawful.  And
20   his or her vote should be honored in the way it
21   was cast.

22             Second, Your Honor, the provision of
23   witness address information.  An absentee voter
24   must complete her ballot and sign a certification
25   of voter on the absentee ballot envelope in the
```

```
 1    presence of a witness.  And the witness must then
 2    sign a certification of witness on the envelope,
 3    which must include the witness's address.
 4              Now, since 2016, October 2016, the
 5    W.E.C. has instructed clerks that they must take
 6    corrective action to fill in any missing witness
 7    address information if they are reasonably able
 8    to discern that information.  That guidance was
 9    approved by the Wisconsin Department of Justice
10    under the leadership of Wisconsin Republican
11    Attorney General Brad Schimel, it was unanimously
12    approved by the W.E.C.'s Commissioners, and, as I
13    said, has been followed for four years-plus since
14    then, including in 11 statewide elections.  It
15    has never been challenged until now.
16              And President Trump won the 2016
17    election and a recount using precisely this
18    practice.  And to suggest, therefore, that he
19    didn't know about it and couldn't have challenged
20    it before this November is just in complete
21    defiance of those facts.
22              In the evidence established, the Dane
23    and Milwaukee election officials completed this
24    information reliably by contacting voters, by
25    relying on public sources to obtain witness
```

1    address information when it was missing.  There's
2    not a single piece of evidence, Your Honor, that
3    any address added or any address information
4    added was wrong.
5              And moreover, adding the address
6    information is consistent with the purpose of the
7    witness's requirement, which is to verify the
8    identity of voters -- of witnesses.  It
9    facilitates contacting a witness, which is the
10   purpose of the witness requirement.  So you
11   can -- an official can contact a witness to
12   verify that a voter was who he or she said that
13   she was.
14             And, Your Honor, I just have a few
15   more minutes and then I will wrap up.  The
16   indefinitely confined issue.  As I said earlier,
17   it's been in place for more than 40 years and it
18   was modified in March because of the pandemic.
19   And the W.E.C. guidance issued on March 29th says
20   that the indefinitely confined exception during
21   the pandemic will be as follows.  And it sets
22   forth the ability of a voter to designate him or
23   herself as indefinitely confined because of age,
24   physical illness or infirmity or being disabled.
25   It does not require permanent or total inability

1    to travel outside one's residence.

2              And the guidance goes on to explain

3    that during the current public health crisis,

4    many voters of a certain age or at-risk

5    populations may meet the standard of indefinitely

6    confined until the crisis abates.  That makes

7    sense.  During this pandemic, there's much more

8    risk for voters.  The W.E.C. recognized that.

9    The Supreme Court of Wisconsin considered this

10   language.  That case is still pending before the

11   Court but it left that language in place and no

12   one challenged it until now.

13             Now, in their brief, President Trump

14   claims that there is a sort of suspicious spike

15   in the number of people who claimed indefinitely

16   confined status and that something is amiss

17   because of that.  But the truth of the matter,

18   Your Honor, is the record shows the percentage of

19   people who claim that status is consistent,

20   entirely consistent with past elections.

21             The reason the numbers have increased

22   is because, one, we're facing a once-in-a-century

23   pandemic.  And two, the number of people who

24   voted, the raw number of people who voted

25   absentee increased.  So it's not surprising at

```
1      all that the number of people who claimed
2      indefinitely confined status also increased.  And
3      again, there's not a single piece of evidence in
4      this record that a single voter improperly
5      claimed indefinitely confined status.
6                   In sum on that issue, Your Honor, the
7      guidance is consistent with the statute.  There's
8      no evidence of impropriety and Plaintiffs
9      improperly challenged the guidance and
10     implementation of it after the election.
11                  And the final on-the-merits point
12     with these four issues, Your Honor, is Democracy
13     in the Park.  And just as with the other three
14     rulings from the Boards rejecting the Trump
15     campaign challenges, the Board's ruling on this
16     issue is fully supported by substantial evidence
17     in the record.
18                  That evidence establishes that the
19     Madison clerk designed the event of Democracy in
20     the Park to comply with all applicable election
21     laws.  The event was for the purpose of
22     accommodating unprecedented demand for absentee
23     ballots, to address the very real concerns about
24     the postal service's ability to deliver ballots
25     in a timely way, and to provide Madison voters
```

1    with a secure and convenient means of returning
2    their completed ballots.

3              A careful chain of custody of the
4    ballots was established, as is demonstrated by
5    the evidentiary record in this case.  And again,
6    there is no evidence that any ballots delivered
7    at these events, the two days that they were
8    held, not a single one was improper or any way
9    unlawful.

10             The evidence also shows, Your Honor,
11   that both major political parties were invited to
12   the event.  And that after the lawyer for the
13   City of Madison explained to the legislature's
14   counsel the lawfulness of this event, no one
15   objected to it.  It was permitted to go forward.
16   And of course, there was no pre-election
17   challenge to it.

18             The evidence also shows, Your Honor,
19   going back to my point earlier about voter
20   reliance, that voters relied on the lawfulness of
21   this program as represented by Madison --
22   accurately represented by Madison city
23   officials.  We have affidavits in the record from
24   voters saying that they cast their votes at these
25   events in reliance upon representations that the

1     events were appropriate and lawful, and that
2     reliance must be respected and protected.
3             Your Honor, the claim of the -- of
4     President Trump is that the Democracy in the Park
5     events constituted early in-person voting under
6     Wisconsin Statute Section 6.855.  But that
7     statute does not apply at all to this situation.
8     The only thing voters could do, Democracy in the
9     Park, is return sealed, completed ballots.  They
10    could not obtain or apply for ballots at that
11    event and, therefore, 6.855 does not apply.
12            This was not early in-person voting.
13    Instead, these events were governed by
14    6.87(4)(b)1, which is the provision that allows
15    for ballot return locations.  The Commission, the
16    Election Commission, has interpreted this
17    provision to allow the use of secure ballot drop
18    boxes in a variety of circumstances and
19    locations.  This was one of those circumstances.
20    These were staffed drop boxes in parks, and they
21    were functionally identical to the staffed and
22    unstaffed drop boxes that have been used for many
23    years in Wisconsin.
24            Your Honor, last point on this is the
25    statute provides that for delivery of these

1    ballots, delivery in-person to the municipal

2    clerk, is permissible under 6.87(4)(b)1 and

3    that's exactly what happened here.  These ballots

4    were delivered to agents of the clerk in the

5    parks, entirely consistent with the expressed

6    language of the statute.

7              And the Boards, therefore, properly

8    concluded the ballots cast in these events were

9    lawful.  And once again, there's not evidence

10   that a single person who delivered their ballots

11   at these events voted improperly or unlawfully.

12              Your Honor, my final two points, and

13   I'll be very brief on these, goes to the

14   constitutional violations that would result from

15   granting the relief that Plaintiff, President

16   Trump, seeks here.  And I'll focus first on due

17   process and second on equal protection.

18              The procedural substantive due

19   process issues here cry out for attention.

20   What's being asked here is to change the rules

21   after the game has been played.  And fundamental

22   due process prohibits that.  Voters were not on

23   notice that the rules would be changed in this

24   way, of course.  And it goes to the heart of due

25   process that you cannot do that after the fact

1    and disenfranchise hundreds of thousands of
2    voters.

3                 I just refer you to our brief on due
4    process, without getting into case law, but Your
5    Honor I'm sure is very well aware, well-versed to
6    due process law.  But this would be one of the
7    ultimate violations of both procedural and
8    substantive due process to have the changes after
9    the election that President Trump is seeking.

10                And then finally, Your Honor, is
11   equal protection.  I made the point earlier that
12   the relief being sought here is targeted at two
13   out of 72 counties.  In the other 70 counties as
14   I -- as the record demonstrates, voters voted in
15   the same way.  They relied upon indefinitely
16   confined.  They relied upon W.E.C. guidance, the
17   clerks did, with respect to adding witness
18   information.

19                Voters throughout the state used the
20   form for in-person absentee voting just as the
21   voters in Dane and Milwaukee did.  And under the
22   equal protection clause, Your Honor, it would be
23   an egregious violation to discount just the votes
24   of voters in Dane and Milwaukee as being
25   requested here.

1          In *Bush v. Gore,* the Supreme Court

2     said that the fundamental nature of the right to

3     vote means equal weight afforded to each vote and

4     the dignity, equal dignity owed to each other.

5     Here, if the relief Plaintiffs seek were granted,

6     220,000 Wisconsin citizens would have no weight

7     afforded to their vote and certainly would not be

8     afforded the equal dignity that voters in 70

9     other counties are receiving.

10          Your Honor, for all those reasons,

11    Plaintiffs' or President Trump's challenges and

12    requests for relief should be denied.  We

13    respectfully ask that the Court do so.

14          THE COURT:  Thank you, Mr. Devaney.

15    Have you consulted and agreed on who goes next?

16    Mr. Kilpatrick's raising your hand.  Let me just

17    check with the reporter.  You're okay on the

18    time?

19          THE REPORTER:  Yes.

20          THE COURT:  Mr. Kilpatrick, go ahead.

21          ATTORNEY KILPATRICK:  Thank you, Your

22    Honor.  I will be brief.  I just wanted to say

23    that the Election Commission does not take sides

24    in the election.  The side of the Election

25    Commission in this appeal is to defend its

1    decisions.  And I ask that the Court, if it would

2    take judicial notice of those Election Commission

3    memos that were attached to Administrator Wolfe's

4    affidavit.  Those are public documents and they

5    can be taken judicially noticed of.  They're all

6    on the website.

7              That also goes to the laches argument

8    in that it is clear that the Plaintiffs had

9    knowledge and notice of the Commission's

10   guidance.  These were all publicly-available

11   guidance.  They were distributed throughout the

12   state to all the clerks.  All the candidates and

13   political parties had knowledge of those for

14   years.

15             For example, the guidance regarding

16   the application, it actually was created, the

17   EL-122, approved unanimously by the Government

18   Accountability Board, the predecessor agency of

19   the Elections Commission, in 2009.  The

20   application began use in May of 2010 and has been

21   used ever since.  And so any challenge could have

22   been brought literally years before.

23             With regard to the indefinitely

24   confined aspect, again, the Plaintiffs were on

25   notice of that.  As this Court is aware and the

1  briefs make clear, there was a pre-election suit
2  brought by a political party before the Wisconsin
3  Supreme Court in March about a local official's
4  statement.  So it is unpersuasive that the
5  Plaintiffs argue that they could not have brought
6  any suit prior to the recount.  It's clear in
7  Wisconsin that that did happen months before this
8  November election.

9          And I also would like to note with
10  regard to the indefinitely confined issue is that
11  the Wisconsin Supreme Court approved in a
12  preliminary relief order the guidance that the
13  Commission issued and had no problem with that
14  back in March.

15          That's all I have to say.  I think
16  Mr. Devaney did a fine job providing a defense
17  altogether with the Defendants.  Thank you.

18          THE COURT:  Who wishes to proceed
19  next?  Mr. Jones?

20          ATTORNEY JONES:  Yes, Your Honor.
21  I'm not sure if I was supposed to go next, but
22  not seeing Mr. Gault raise his hand, I will go
23  next.

24          And like other counsel on this side
25  of the table, I am mindful of the voluminous

submissions that are in front of Your Honor and
Your Honor's statements at the beginning of
argument, so I too will keep it succinct, or at
least try to.  I know lawyers say they will and
often don't, but I will do my best.

There's really just a few points I
want to make.  Picking up on some of the things
that have been said in argument, and particular
by Mr. Troupis, and then just to highlight a
couple of other points on the various defenses
that have been raised.

With respect to the laches issue, I
would point Your Honor back to just the elements
of that defense in Wisconsin, those elements
being three.  Unreasonable delay in bringing a
claim; two, a lack of knowledge by the party
who's asserting that defense that the other party
would assert the claim; and prejudice.

And the argument that I think I hear
coming from opposing counsel really goes to the
unreasonable delay element.  And I think the
facts here, the record that was in front of these
two Boards, are very clear on the issue of
unreasonable delay.

And I think what opposing counsel is

trying to do now is characterize these claims or
these challenges that are being brought via the
recount really is being about particular voters.
And of course, now at this point in the
proceedings, President Trump is aware of how many
voters fit into a particular category or
categories as a result of the recount that
occurred.

But this is not a challenge to
particular voters or particular ballots. And I
think that's obvious for a number of reasons, not
the least of which being the way that the recount
petition itself was framed. The petition was
framed in terms of alleged statewide errors in
the administration of the election.

I would point Your Honor to
paragraphs 4-B, 5-B, 6-C and 6-E of the recount
petition. Those paragraphs all allege statewide
misadministration of the election. The Trump
campaign knew going into the election that those
alleged problems in the administration of the
election were out there. It's not about
individual voters or individual ballots. And the
facts relating to those alleged, and I underscore
alleged, errors in administration are obviously

1    all facts, matters of public record for reasons

 2    that the briefs explain, that Mr. Devaney and

 3    Mr. Kilpatrick have already emphasized for Your

 4    Honor.  It's very clear on the record that there

 5    was unreasonable delay here.

 6              Another point that I'd like to

 7    emphasize for Your Honor that I think is implicit

 8    in what the other defense counsel have already

 9    said, but that is that part of this strong public

10    policy in Wisconsin that favors the counting of

11    all votes, which is expressed in section 5.01(1)

12    of the Wisconsin statutes and cases such as the

13    *Zimmerman* case from the Wisconsin Supreme Court

14    in 1949 cited by the parties, but part of that

15    strong public policy or part of the way that

16    policy has been enforced by the Courts is this

17    idea that we don't throw out votes in Wisconsin

18    when the error at issue is official error or

19    error by election officials, rather than error or

20    misconduct or perhaps even fraud by individual

21    voters.

22              And I won't go through all those

23    cases, but I would simply reemphasize that point

24    and point Your Honor to the cases that we cited

25    in our brief at pages 11 and 12.  That's a line

of cases that goes back over 100 years.  And I
don't think there really can be any argument that
what the Petitioners here are contending is that
there was error by the election officials.

There is no allegation, there
certainly isn't any proof of voter error or voter
fraud.  And I think on the strength of that line
of cases, the Court really is not in a position
where it can throw out votes for the reasons that
are being asserted here.

I have only two brief points I want
to make in terms of the merits of the claims with
respect to Wisconsin election law.  One relating
to the in-person absentee ballots specific to
Milwaukee County, and the other about the
indefinitely confined absentee voter issue.

The first being that the Board in
Milwaukee certainly reached the conclusion that
the almost 109,000 ballots that the Petitioners
are challenging, those all being in-person
absentee ballots, were supported by a written
application in that each and every single one of
those absentee voters filled out this combined
application certification form, the EL-122.  So
without question, there was a written application

1    in that form.

2                The Board also addressed, however,

3    the fact that the way it works in Milwaukee

4    County for all of those 19 municipalities is that

5    when someone walks into the clerk's office to

6    vote in-person absentee, the clerk, checking

7    their ID, inputs the fact that the voter is

8    requesting a ballot, an absentee ballot, into the

9    my -- the My Vote system, if I've got the name

10   right.

11               So in that moment when the voter is

12   present, asking for a ballot, the clerk is

13   essentially doing online what hundreds of

14   thousands of other Wisconsin voters did in

15   requesting absentee ballots through the online

16   system.  There is then a written record of that

17   transaction, so to speak, that's created just

18   like there is a record of every other voter who

19   applied for an absentee ballot online in that

20   way.

21               The Petitioners are not challenging

22   those hundreds of thousands of voters who went

23   online and asked for an absentee ballot in that

24   way, and there is absolutely no reason to treat

25   any of the 109,000 Milwaukee County voters who

1    went in and asked for a ballot in person but

2    through that process essentially also applied

3    online, there's no reason to treat them any

4    differently and to throw out those 109,000

5    ballots.

6              The last point I'd like to make, Your

7    Honor, again, on indefinitely confined, certainly

8    the arguments made in the briefs go to the fact

9    that the guidance that was at issue, issued by

10   the W.E.C. in March, was essentially 100 percent

11   correct under the law.  And the Wisconsin Supreme

12   Court said so.

13             But I think an even more fundamental

14   point for Your Honor to consider is the fact that

15   it's really nothing but supposition or

16   speculation that the Petitioners are relying on

17   to suggest that any or, as they argue, all of

18   those voters in Milwaukee County, almost 20,000,

19   were not entitled to claim indefinite confinement

20   status.

21             And the argument is, well, the

22   numbers went up, therefore, some or all of them

23   must have been invalid or inappropriately

24   claiming that status.  But the fact of the matter

25   is, the burden of proof was on the Petitioners at

```
1      the recount to present evidence that any of those
2      voters inappropriately claimed that status.
3      There was no such proof.  Not any proof of a
4      single Milwaukee County voter who should not or
5      could not or was not entitled to claim that
6      status.  Certainly not proof beyond a reasonable
7      doubt as the law requires with respect to any
8      individual voter.  They had the burden of proof,
9      they failed to meet it, there is absolutely no
10     basis to throw out any of those ballots.
11              I'm going to rely on the arguments in
12     the briefs as to the curing of witness address
13     information on the absentee ballot envelopes.
14              I think that to wrap up or to close,
15     certainly it's understood that the legislature
16     intended that absentee voting in this state be
17     closely watched, regulated.  That's clear in
18     Section 6.84 of the statutes.
19              But it's also clear that this appeal
20     does not truly serve that legislative purpose.
21     That purpose is not served by over-technical,
22     formalistic reading of the statutory requirements
23     for absentee ballots.  And I think it's clear,
24     based on the submissions, that that is what is
25     being advocated by the Petitioners.
```

```
 1              That purpose, that legislative
 2    purpose, is not served by speculation about
 3    wrongdoing on the part of voters.  And that's
 4    absolutely what is being advocated with respect
 5    to the indefinitely confined voters, if not the
 6    other categories as well.  And that purpose in
 7    6.84, that legislative purpose, does not require
 8    Your Honor to abandon the strong, longstanding
 9    public policy of the state to give effect and
10    meaning to the right to vote and to honor the
11    will of the electorate.
12              And I think being faithful to that
13    public policy purpose, while still respecting the
14    intent of the legislature regarding absentee
15    voting, requires Your Honor, requires this Court,
16    to uphold the determinations of the Milwaukee and
17    Dane County Boards and to dismiss this appeal.
18    Thank you.
19              THE COURT:  Yes.  Mr. Gault.
20              ATTORNEY GAULT:  Thank you, Your
21    Honor.  I'm gonna try to be really, really brief.
22    My primary concern in this case was two issues
23    that were somewhat centered to Dane County and
24    that was the indefinitely confined issue and
25    Democracy in the Park.  I think those issues have
```

```
 1    been fully addressed by the briefs as well as
 2    argument by Mr. Devaney and don't need anymore
 3    attention here.
 4            I do briefly just want to touch on
 5    one issue raised by Mr. Troupis this morning, and
 6    that is the role of the Board of Canvassers in
 7    reviewing absentee ballot application.  And I
 8    wrote down a couple quotes here by Mr. Troupis.
 9    One was that the Board of Canvassers had an
10    obligation to follow the statute; and number two,
11    that the statutes say what they say.  And I agree
12    wholeheartedly with that.
13            I also agree that the Board of
14    Canvassers was required to seek their own
15    independent legal counsel and not file -- not
16    just follow the Election Commission's guidance on
17    that.  And I can tell you, with respect to Dane
18    County, they did because I was the one who gave
19    them the independent legal counsel.
20            And what I would tell you, Your
21    Honor, is that Wisconsin Statute Section
22    9.01(1)(b) sets forth a very specific procedure
23    for the Board of Canvassers to follow in
24    conducting the recount.  It lists step by step
25    what the Board of Canvassers are to do.  It says
```

1    the recount shall proceed for each board and
2    municipality as follows, and then those steps are
3    listed.
4                As to absentee ballots, the Board of
5    Canvassers has an obligation to examine the
6    absentee ballot envelopes.  And then there is
7    very specific guidance on when an absentee ballot
8    is defective.  There is no mention of a review of
9    the absentee ballot applications as part of the
10   recount process.  It simply is not something that
11   the legislature told the Board of Canvassers they
12   were supposed to do as part of the recount
13   process.
14               And that was the advice that was
15   given to the Dane County Board of Canvassers in
16   conducting their canvass.  I suspect they got the
17   same guidance in Milwaukee County.  And I just
18   wanted to correct that, because there was an
19   issue raised that somehow the Board of Canvassers
20   didn't follow the statute by not reviewing those
21   applications, and that's simply not the case.
22               Other than that, I believe all the
23   issues have been fully briefed and those were
24   covered, and we would rest on the briefs
25   submitted and the other arguments of counsel.

1   Thank you, Your Honor.

2               THE COURT:  Anyone else from the
3   Respondents?  If not, then Mr. Troupis, any
4   rebuttal?

5               ATTORNEY TROUPIS:  Yes.  On a couple
6   of items that I think are just misstated.  Let me
7   begin with the idea that there's somehow proof in
8   this record that the clerks elsewhere in the
9   state did things exactly like Dane and Milwaukee
10  County.  And for that, they cite the only piece
11  of evidence apparently they have now, the Kennedy
12  affidavit.  I'm looking at the Kennedy affidavit.
13  Kevin says nothing, nothing, about what goes on
14  elsewhere in the state.  Not a word.  He is
15  talking about the processes they went through in
16  issuing various memoranda.

17              Mr. Devaney is simply wrong.  There
18  is no evidence except the evidence we introduced
19  that in fact other counties and clerks understood
20  these rules and they followed them and they
21  didn't in Dane and Milwaukee County.

22              Second, they completely mislead this
23  court when they say look to the will of the voter
24  in deciding this case.  No.  It is of course true
25  we want the will of the voter, but that's not the

```
 1    issue.  Every case they cited, every one, 100

 2    percent that they cited on that did not deal with

 3    absentee voting or they dealt with absentee

 4    voting before 1984.

 5              Clapp, Zimmerman, are all cases

 6    before the legislature stepped in in 1984 and

 7    passed explicitly, explicitly, why absentee

 8    voting ought to be regulated much more carefully.

 9    We -- And it's important to remember the words.

10    The words are the legislature finds, this is

11    their finding, that voting by absentee ballot is

12    a privilege exercised wholly outside the

13    traditional safeguards of the poling place.  The

14    legislature finds that the privilege of voting by

15    absentee ballot must be carefully regulated to

16    prevent potential for fraud or abuse, to prevent

17    overzealous solicitation of absentee electors who

18    may prefer not to participate, to prevent undue

19    influence.

20              Why is that important?  Because then

21    they go on and say these provisions in 6.842 must

22    be construed as mandatory and ballots cast in

23    contravention, I'm reading from the statute of

24    these procedures specified, may not be counted

25    and may not be included in certified results.
```

So all that is wonderful, wonderful
to think about about the voters and the way that
they're talking about maybe elsewhere in the
country.  But in Wisconsin, we understood the
very problem this court and we all face which is
the difficulty, mere impossibility, of examining
every single person who votes and determining
after the fact whether they are eligible voters,
whether they in fact were entitled to vote,
whether they in fact cast that ballot.

All of those things are well
regulated on the day of election.  But in
advance, none of that happens.  And that's the
reason why the statute is explicit and requires
that you must comply with these things.

Take for example the application
requirement, which is made light of here.  Well,
just do it at the same time.  But isn't it
precisely to avoid undue influence, to avoid
marching people into the clerk's office at the
last minute to vote, that you require an
application prior to getting the absentee votes?
That's a perfectly rational and, in fact,
mandatory provision of the statute.  It's
explicit.  It's not --  It's not implicit.

Folks, you --  Folks who like to argue this tend
to forget the difference between those two types
of votes, and all the federal courts have
accepted that there is a difference and there are
different rules that apply.  And they are
mandatory in Wisconsin.

Last item, draw-down.  And it is.  It
feels harsh.  It's what the legislature said has
to be done because there's no other way to deal
with individual ballots.  We've complied
specifically with the statute by doing that.

Now, W.E.C. makes a fascinating
argument in this regard.  They seem to argue that
on the one hand --  Well, with regard to draw-
down and due process, on the one hand, we had to
comply with the statute and we could elect for
two counties.  But on the other hand, W.E.C. now
believes the statute's unconstitutional.  Well,
that's an odd position for a state agency that's
supposed to be administering a statute to say,
but so it goes.

But remember, the Biden campaign had
the absolute option, and I expect W.E.C. did as
well, to count the rest of the state.  They
wanted seven million dollars for us to have a

recount of the rest of the state.  Three million
to do these two counties.  We selected those two
counties, and the statute explicitly says they
could select any other ones they wanted.  They
chose not to.

The draw-down process is explicit in
the statute.  The question was raised and it only
apply when there's certain types of ballots.
Well, of course that's not true.  If you look at
9.01 and its a lengthy citation, but it
eventually is sub (e), it provides that you must
equalize the ballots and the poling -- the roles.

When you do that, we call that a
draw-down.  You can call it whatever you'd like.
But you have to -- you have to equalize those.
That's the system that we have in Wisconsin.
It's the only system.  To suggest we haven't done
it, which was another comment we heard, well,
that's -- that's just untrue.  I have not been in
a recount nor has anybody here who participates
in them has not had draw-downs of any
significance.  You have draw-downs throughout the
process.  It's the way we do it.  And *Lee versus
Paulson* stands as a case under the absentee
voting statute where that is the only, only

1    remedy that you can have of -- under absentee

2    voting for it to be equalized much.  So the

3    reality is that's what the statutes provide.

4    That's apparently the only option that we have.

5            There is an assumption here

6    underlying the defendant's argument, and that is

7    that you can change the statute at will.  That

8    W.E.C. has a good idea so why not just do it.

9    That's not the way the law works.  The statutes

10    must be complied with.  Absentee voting is

11    subject to enormous fraud.  That's why this state

12    made the choices it did, and that's why the

13    complaint must be granted and the notice of

14    appeal allowed and reverse the Boards of

15    Canvassers.  Your Honor, I thank you very much

16    again.

17            THE COURT:  Mr. Kilpatrick, you wish

18    to respond to Mr. Troupis?

19            ATTORNEY KILPATRICK:  Yes.  Thank

20    you, Your Honor.  I just have to respond to one

21    thing that was just said, and maybe it was a

22    mistake or I misunderstood.  But the Commission

23    has never in this litigation asserted that the

24    recount statute is unconstitutional.  I just want

25    to make that clear.

1    I think what maybe was considered by
2    Mr. Troupis is, yes, our brief in the argument
3    has said that there are equal protection possible
4    violations if this court were to issue a remedy
5    in which ballots were thrown out in two counties
6    but not thrown out in other counties because of
7    Commission guidance.  So that is the only type of
8    constitutional argument that we made.  We
9    certainly didn't say that the recount statute was
10   unconstitutional.  Maybe that was in some other
11   brief or not.  But, no, the Commission has never
12   said the recount statute was unconstitutional.

13        But I also want to ask the Court to
14   reconsider its denial of our -- or reconsider,
15   yes, our position that the affidavits shouldn't
16   be stricken, or at least with regard to Miss
17   Wayte.  Mr. Troupis just said that there is
18   nothing in the record about what other clerks did
19   across the state.  That's exactly what Miss
20   Wayte's affidavit says and that's what we tried
21   to get into this record, and that was denied.

22        So on one hand, Plaintiffs say
23   there's nothing in the record and on the other
24   hand say and it shouldn't get in what other
25   clerks do.  So I do ask respectfully that the

1    Court reconsider its earlier decision striking at
2    least the affidavit of Kim Wayte.
3             THE COURT:  Okay.  That appears to be
4    it.  As I indicated earlier, the Court intended
5    to rule from the bench when all the material that
6    is appropriately provided to the Court has been
7    provided and considered.  I am now prepared to
8    rule from the bench.
9             Clearly the election laws in
10   Wisconsin starting with Section 501, entitled
11   scope, say except as otherwise provided, Chapters
12   5 through 12 shall be construed to give effect to
13   the will of the electors, if that can be
14   ascertained from the proceedings, notwithstanding
15   informality or failure to fully comply with some
16   of their provisions.  So the bottom line here is
17   that the Court should do everything to ensure
18   that the will of the voters prevail.
19            There was a hotly-contested election
20   in Wisconsin and across the nation.  In
21   Wisconsin, it resulted in a Biden/Harris ticket
22   receiving more votes than the Trump/Pence ticket.
23   As a result, the Petitioners here, the Trump/
24   Pence ticket, asked for a partial recount, a
25   recount in two of the 72 counties.  It was not a

1    request to recount all of the votes in the State

2    of Wisconsin.  That recount occurred making minor

3    changes to the totals but not changing the

4    outcome as originally reported.

5             Section -- Section 9.01 deals with

6    appeals to that recount, and that's what we're

7    here for today.  I won't go through the

8    procedural aspects.  We addressed that at the

9    time of the scheduling order.  But the case is

10   properly venued in this court, the Court has

11   jurisdiction to make a determination on the

12   appeal of the recount.

13            The right to vote at a poling place

14   on election day is guaranteed in the

15   Constitution.  Early absentee voting is a

16   privilege created by the legislature.  Because

17   early absentee voting is done outside the

18   controlled environment of a poling place and

19   therefore subject to potential fraud or abuse,

20   the legislature can impose limitations,

21   restrictions and regulations on how it is

22   exercised.

23            Wisconsin has enacted early absentee

24   voting with restrictions and limitations.  In

25   dispute today is whether those restrictions were

1    properly applied and enforced when recounting the

2    votes from Dane County and Milwaukee County in

3    the November 3rd, 2020, election.

4             The Wisconsin Elections Commission

5    adopts rules and guidelines in accordance with

6    the statutes, as did its predecessor, the

7    Government Accountability Board.  Those rules and

8    guidelines must conform to the underlying early

9    absentee voting statutes.  Petitioners/Appellants

10   allege and argue that erroneous interpretations

11   of the law were used by the canvassers during the

12   recounts.  Respondents argue that the rules and

13   guidelines correctly interpret the underlying

14   election law.  That's the dispute we have before

15   us.

16            901.08 sets forth the scope of the

17   review.  I have to review only the recount in the

18   two counties that were recounted.  In those two

19   counties, approximately 220,000 ballots were

20   challenged by the Petitioners/Appellants.  Those

21   ballots were counted by the canvassers over the

22   challenges and objections of the Petitioner/

23   Appellants.

24            The job of this Court is only to

25   determine issues relating to that particular

```
 1    recount.  In doing so, 9.01(8)(b) says the Court

 2    shall separately treat disputed issues of

 3    procedure, interpretations of law and findings of

 4    fact.  The Court shall set aside or modify the

 5    determination of the Board of Canvassers or the

 6    Commission chairperson or the chairperson's

 7    designee if it finds that the Board of Canvassers

 8    or the chairperson or chairperson's designee has

 9    erroneously interpreted a provision of law and

10    that a correct interpretation compels a

11    particular action.

12              Sub (8)(a) says, unless the Court

13    finds a ground for setting aside or modifying the

14    determination of the Board of Canvassers or the

15    Commission chairperson, or chairperson's designee

16    it shall affirm the determination.

17              So really the job of this court is

18    quite limited.  I'm not here to make

19    determinations on broad constitutional issues

20    with regard to any potential remedies that have

21    been requested or may be provided for.

22              With regard to what our issues in

23    dispute here, really these are not procedural

24    issues with regard to the recall itself, unlike

25    where problems may have occurred in other states.
```

```
1      The COVID protocols were provided here.  It made
2      it difficult for the count to proceed, for it to
3      be observed.  But there's no real dispute here
4      the observers were able to properly challenge
5      ballots they thought should not have been
6      counted.  The parties reached agreement early on
7      for a standing objection to broad ranges of
8      ballots in the four categories that are in
9      dispute here.
10              I believe the recount was transparent
11     and open.  I believe it may have even been
12     live-streamed.  There is no dispute in that
13     regard.  And I wish to thank those involved in
14     the recounts in Dane and mad -- Dane and
15     Milwaukee County, the canvassers, the observers,
16     the clerks, the attorneys, everyone involved
17     because it went rather smoothly and
18     transparently.
19              There again is no real dispute with
20     regard to factual issues.  Allegations of fact
21     were made in the complaint on this appeal.  The
22     answers essentially did not deny those
23     allegations.  The real dispute here is whether or
24     not there were erroneous interpretations of law
25     used in the recount in making the determination
```

```
 1      whether a ballot should be counted or not
 2      counted.
 3               As I indicated earlier, I've reviewed
 4      all the pleadings, briefs.  I've reviewed the
 5      record, the transcripts, the exhibits.  And now I
 6      have had the benefit of oral argument.
 7               Taking all that into account, because
 8      the Court is satisfied the rules and guidelines
 9      applied in each of the disputed areas are
10      reasonable and a correct interpretation of the
11      underlying early absentee voting laws, the
12      certification of the results of the 2020
13      Wisconsin Presidential Election, after the Dane
14      County and Milwaukee County recounts, is
15      affirmed.
16               The certified results show Joseph
17      Biden and Kamala Harris received 1,630,866 votes,
18      and Donald Trump and Michael Pence received
19      1,610,184 votes.  A difference or margin of
20      victory of 20,682 votes in favor of Biden and
21      Harris.
22               The determination of the Court is
23      that the Petitioner/Appellant here have not
24      demonstrated that an erroneous interpretation of
25      Wisconsin early voting laws happened here.  And
```

in the complaint, there really is no allegation
here of widespread fraud. That's not the issue.
There is no credible evidence of any misconduct
or wide-scale fraud.

At issue here simply is whether or
not the recount occurred in compliance with the
Wisconsin election laws. This Court adopts pages
one through 30 of the proposed findings of facts
and conclusions of law of Joseph Biden, Kamala
Harris, the Dane County Defendants, and Milwaukee
County Defendants, and incorporates them into
this judgment of affirmance.

I have excluded from that everything
after page 30 because those are arguments
relating to laches, equitable estoppel and equal
protection. It's not the role of this Court to
determine the constitutionality of proposed
remedies. The Court is simply charged with the
obligation of determining whether or not the
recount properly applied a correct interpretation
of Wisconsin's early voting laws.

So I'm not gonna sit here and read
the 30 pages of findings of fact and conclusions
of law because time truly is of the essence here,
as I indicated earlier. I think this is the last

1    litigation going on.  Wisconsin's the only state
2    that apparently missed the safe-harbor rules.
3    And because my determination, this Court's
4    determination can be appealed further and the
5    Electoral College is scheduled to vote in less
6    than 100 hours, I think it's important to wrap
7    this up as quickly as possible.
8            But I just wanted to make some
9    summary comments with regard to where the basic
10   disputes arose.  The first was approximately
11   5,500 dollars -- 5,500 ballots that had defective
12   or missing witness addresses.  6.87(6d) was
13   interpreted -- (6d) provides that a clerk may
14   return a ballot to a voter under those
15   circumstances.  It's not mandatory, but the clerk
16   can do so.  In 20 --  It's not an exclusive
17   remedy.
18            In 2015, the Wisconsin Elections
19   Commission set down guidance for clerks to use to
20   have -- to look at various sources to remedy or
21   cure an incomplete or missing witness address.
22   We're not dealing with signatures of voters or
23   signatures of witnesses.  Simply an address of a
24   witness which was required so that if there were
25   issues of validity, the witness could be

1    contacted.

2              The statute is silent with regard to

3    what the Commission can do in curing a defect in

4    a ballot.  It certainly does not prohibit the

5    clerks from doing so.  Adding, the requisite

6    information by the clerk has been in effect since

7    before the 2016 election.  The election which

8    Trump prevailed in Wisconsin, I believe, after a

9    recount.  It's longstanding, I believe it's not

10   prohibited by law, and it is therefore a

11   reasonable interpretation to make sure, as the

12   Court indicated earlier, that the will of the

13   electors, the voters, are brought to fruition.

14             The second broad category where there

15   is an issue involves approximately 170,000

16   ballots in the two counties is the claim by the

17   Petitioners/Appellants that there was no written

18   application for a ballot.  We're dealing with

19   6.86(1)(ar) of the statutes.  More than 10 years

20   ago, the administrative agency in charge of

21   election law developed form EL-122.  It's

22   entitled official absentee ballot application

23   slash certification.  It has been in use

24   continuously in elections since that time.  It

25   came into effect after the 2008 election with

1    regard to early absentee voting in order to
2    streamline the process.

3            Many methods for obtaining a ballot
4    are authorized under the law.  There can be an
5    online application, the website My Vote, it can
6    be regular mail application, e-mail application,
7    or in-person application.  Whenever in-person
8    application is used, form EL-122 is used.  And as
9    was indicated, on its face it is designated
10   official absentee ballot application
11   certification.

12           The only thing that happened after
13   the 2008 election and the adoption of EL-122 is
14   that two steps were combined into one on the
15   form.  It's been in continuous use since then as
16   I believe it is a correct, allowable
17   interpretation and application of 6.86(1)(ar).

18           The third area in dispute is the
19   indefinitely confined issue under 6.87 two and
20   four.  It affects approximately 28,000 votes.
21   This statute's been in effect for more than 30
22   years.  It allows voters to self-identify as
23   qualifying as indefinitely confined.  There is no
24   proof needed.  You don't need a doctor's excuse.
25   An issue arose here in the spring when the Dane

1    County clerk apparently made Facebook postings
2    implying that because of the safer at home orders
3    in effect, anyone could use this particular
4    section in order to early vote.
5              The problem is that this section does
6    not require the voter ID requirements that are
7    applicable in other sections.  The Republican
8    party immediately sued for injunctive relief.
9    The case was *Jefferson versus Dane County*, 2020
10   Appellate, I believe, 557.
11             As a consequence of that litigation,
12   the Commission established guidance indicating
13   that it is the individual choice of the elector
14   to utilize that section.  That it should not be
15   used to avoid voter ID requirements.  And the
16   language in that guidance essentially was
17   approved by the Wisconsin Supreme Court.
18             I recognize that litigation is
19   ongoing, but to infer that people utilized and
20   voted under that section to evade the voter ID
21   requirements, it is no basis for not counting
22   those votes.  It's far more likely because of the
23   ongoing pandemic that people were very concerned,
24   especially those who have compromised systems, to
25   go out in public, to not want to stand in line

```
 1    for potentially hours at a poling place in order
 2    to cast a ballot.  I certainly could not strike
 3    those ballots based on an inference which is not
 4    really supported in law.  Or in --  Excuse me.
 5    Supported in fact.
 6              The last category in dispute
 7    amounting to approximately 17,000 votes are the
 8    Democracy in the Park provisions.  Petitioners/
 9    Appellants argue that 6.855 applies and that this
10    was an inappropriate or improper interpretation
11    of law creating a clerk's office for voting.  I
12    believe the correct application is 6.87(4)(b)1,
13    the governing provisions relating to drop boxes
14    or the ability to deposit a vote with the clerk.
15              Those drop box provisions, again,
16    have been in use and were used around the state.
17    The distinction here being a potential voter
18    could not obtain a ballot at any such location.
19    It's not an extension of the clerk's office for
20    voting.  It is simply an extension to allow a
21    voter to deliver a completed ballot in a
22    socially-distanced way.  It certainly is an
23    appropriate and correct interpretation of law to
24    allow that to happen.
25              Because the Court has determined that
```

Case 2:20-cv-01785-BHL   Filed 12/11/20   Page 80 of 85   Document 132-3

1    there has been no reliance on an erroneous
2    interpretation of Wisconsin's early voting
3    absentee laws, I indicated I'd enter judgment in
4    favor of the Respondents.  The Court will issue
5    an order confirming the results as I've
6    indicated, the certification that I've indicated
7    earlier.
8              I will assess costs as required by
9    law.  I'm not familiar with the process here with
10   respect to who drafts the order.  I will sign
11   either a paper copy of the order affirming the
12   determination or I will e-sign one.  That has to
13   be done, I believe, immediately because, as I
14   have indicated earlier, sub (9) of 9.01 says that
15   within 30 days after the entry of the order of
16   the circuit court, a party aggrieved by the order
17   may appeal to the Court of Appeals.
18             I want to sign an order and have it
19   in effect yet this morning.  So can we agree on
20   who does that?  I have to ask the clerk whether
21   normally the successful party drafts it.  Who
22   wants to take the lead?  Mr. Devaney?
23             ATTORNEY DEVANEY:  Your Honor, unless
24   others on the defense side would like to do it,
25   we'd be happy to do it.

1        ATTORNEY TROUPIS:  We just wanted --

2   I'm speaking from the Trump campaign, obviously a

3   one sentence order is what's appropriate.  I

4   mean, I don't --

5        THE COURT:  Yeah.  Yeah.  Just

6   saying, hey, the earlier determination is

7   affirmed.

8        ATTORNEY TROUPIS:  And that's really

9   all it needs to say with the magic language for

10  appeal, because obviously the Supreme Court is

11  expecting to hear from us shortly.

12        ATTORNEY O'NEILL:  Your Honor, the

13  ordinary practice in Milwaukee is that the

14  successful party drafts the order.  I agree with

15  Mr. Troupis in this case.  It's best a simple

16  order that says for the reasons stated on the

17  record, the determinations of the Board of

18  Canvassers as confirmed.  This is an appealable

19  form in order of right.  You can draft that.  I

20  will send it to Mr. Troupis and Mr. Burnett for

21  their approval and we --

22        THE COURT:  I will expect it within

23  five minutes, Mr. O'Neill.  And then I will sign

24  it electronically.  We've got to keep this ball

25  rolling.

1    ATTORNEY TROUPIS:  Appreciate it very
2    much, Your Honor.  And thank you again for the
3    speed with which you've handled this.  And again,
4    I appreciate, Matt, and all of defense counsel's
5    assistance and courtesies throughout.
6    ATTORNEY KILPATRICK:  Your Honor?
7    THE COURT:  Yes.
8    ATTORNEY KILPATRICK:  Your Honor,
9    just housekeeping, just want to make sure we dot
10   our I's and cross our T's.  In the order will
11   there be a reference to the granting of the
12   motion to strike?  And I think I made an oral
13   request for reconsideration.  I did like the
14   Court to address that also so that everything is
15   ready for this appeal.
16   THE COURT:  Well, the record will
17   show that.  Mr. O'Neill, just draft a simple one
18   or two sentence order as you indicated, file it
19   electronically, I'll sign it electronically, and
20   the clock will start running for any potential
21   appeal.
22   ATTORNEY TROUPIS:  Thank you.
23   ATTORNEY O'NEILL:  Your Honor, the
24   only thing I suspect everyone will want an
25   immediate transcript, as immediate as immediate

1    can be.  I'm sorry, madam clerk court reporter,
 2    but there's a little bit of pressure in all of
 3    that.
 4                THE COURT:  You have to deal, I
 5    believe, with Kristin.  You know how she can be
 6    reached.  Okay, folks.  The Court would then
 7    stand adjourned.
 8                    - - - - - -
 9                (Proceedings concluded.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1   STATE OF WISCONSIN    )
                           )   SS:
 2   MILWAUKEE COUNTY      )

 3

 4

 5

 6             I, KRISTIN MENZIA, RMR, CRR, an

 7   official court reporter in and for the Circuit Court

 8   of Milwaukee County, do hereby certify that the

 9   foregoing is a true and correct transcript of all the

10   proceedings had and testimony taken in the above-

11   entitled matter as the same are contained in my

12   original machine shorthand notes on the said trial or

13   proceeding.

14             Dated at Milwaukee, Wisconsin, this

15   11th day of December, 2020.

16

17

18

19

20

                         Kristin Menzia, RMR, CRR
21                       Official Reporter

22                       ELECTRONICALLY SIGNED

23

24

25
```