# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

January 15, 2021

To:     Gina M. Colletti
        UNITED STATES DISTRICT COURT
        Eastern District of Wisconsin
        Milwaukee , WI 53202-0000

| | |
|---|---|
| No. 20-3414 | DONALD J. TRUMP, <br> Plaintiff - Appellant <br><br> v. <br><br> WISCONSIN ELECTIONS COMMISSION, et al., <br>  Defendants - Appellees |
| **Originating Case Information:** ||
| District Court No: 2:20-cv-01785-BHL <br> Eastern District of Wisconsin <br> District Judge Brett H. Ludwig ||

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

| | |
|---|---|
| AMOUNT OF BILL OF COSTS (do not include the $): | 588.50 |
| | |
| DATE OF MANDATE OR AGENCY CLOSING LETTER ISSUANCE: | 01/15/2021 |

RECORD ON APPEAL STATUS:　　　　No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**　　　　　　　　　　　　　　　**Received by:**

01/15/2021　　　　　　　　　　　　　　s/ Jelena Vekic
_____　　　　　　_____

form name: **c7_Mandate**(form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## BILL OF COSTS

January 15, 2021

Taxed in Favor of: **Appellee Tony Evers ; Appellee Wisconsin State Conference NAACP**

| No. 20-3414 | DONALD J. TRUMP, Plaintiff - Appellant<br><br>v.<br><br>WISCONSIN ELECTIONS COMMISSION, et al., Defendants - Appellees |
|---|---|
| **Originating Case Information:** | |
| District Court No: 2:20-cv-01785-BHL<br>Eastern District of Wisconsin<br>District Judge Brett H. Ludwig | |

The mandate or agency closing letter issued in this cause on January 15, 2021.

BILL OF COSTS issued in the amount of: $588.50.

|   |   | Cost of Each Item | Total Cost Each Item |
|---|---|---|---|
| 1. | For docketing a case on appeal or review or docketing any other proceeding: | | |
| 2. | For reproduction of any record or paper, per page: | | |
| 3. | For reproduction of briefs: | | $588.50 |

TOTAL:     $588.50

form name: **c7_BillOfCosts**(form ID: **140**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**FINAL JUDGMENT**

December 24, 2020

| Before: | JOEL M. FLAUM, *Circuit Judge* |
| | ILANA DIAMOND ROVNER, *Circuit Judge* |
| | MICHAEL Y. SCUDDER, *Circuit Judge* |

| No. 20-3414 | DONALD J. TRUMP, *Plaintiff-Appellant,* v. WISCONSIN ELECTIONS COMMISSION, et al., *Defendants-Appellees.* |

| **Originating Case Information:** |
| District Court No: 2:20-cv-01785-BHL |
| Eastern District of Wisconsin |
| District Judge Brett H. Ludwig |

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: c7_FinalJudgment(form ID: 132)



CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-3414

DONALD J. TRUMP,

                          *Plaintiff-Appellant*,

v.

WISCONSIN ELECTIONS COMMISSION, *et al.*,

                          *Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:20-cv-1785 — **Brett H. Ludwig**, *Judge*.

_____

SUBMITTED DECEMBER 21, 2020[*] — DECIDED DECEMBER 24, 2020

_____

Before FLAUM, ROVNER, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Two days after Wisconsin certified the results of its 2020 election, President Donald J. Trump invoked the Electors Clause of the U.S. Constitution and sued

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

the Wisconsin Elections Commission, Governor, Secretary of State, and several local officials in federal court. The district court concluded that the President's challenges lacked merit, as he objected only to the administration of the election, yet the Electors Clause, by its terms, addresses the authority of the State's Legislature to prescribe the manner of appointing its presidential electors. So, too, did the district court conclude that the President's claims would fail even under a broader, alternative reading of the Electors Clause that extended to a state's conduct of the presidential election. We agree that Wisconsin lawfully appointed its electors in the manner directed by its Legislature and add that the President's claim also fails because of the unreasonable delay that accompanied the challenges the President now wishes to advance against Wisconsin's election procedures.

I

A

On November 3, the United States held its 2020 presidential election. The final tally in Wisconsin showed that Joseph R. Biden, Jr. won the State by 20,682 votes. On November 30, the Wisconsin Elections Commission certified the results, the Governor signed an accompanying certification, and Wisconsin notified the National Archives that it had selected Biden's ten electors to represent the State in the Electoral College.

Two days later, the President brought this lawsuit challenging certain procedures Wisconsin had used in conducting the election. The President alleged that the procedures violated the Electors Clause of the U.S. Constitution:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal

No. 20-3414 3

> to the whole Number of Senators and Representatives to which the State may be entitled in the Congress ….

U.S. CONST. art. II, § 1, cl. 2.

To implement the obligation imposed by the Electors Clause, Wisconsin's Legislature has directed that the State's electors be appointed "[b]y general ballot at the general election for choosing the president and vice president of the United States." WIS. STAT. § 8.25(1). It has further assigned "responsibility for the administration of … laws relating to elections and election campaigns" to the Commission. *Id.* § 5.05(1). Municipalities run the election, and each municipality's own clerk "has charge and supervision of elections and registration in the municipality." *Id.* § 7.15(1).

The President alleges that the Commission and municipal officials so misused the power granted to them by the Legislature that they had unconstitutionally altered the "Manner" by which Wisconsin appointed its electors. His allegations challenge three pieces of guidance issued by the Commission well in advance of the 2020 election. (Each guidance document is available on the Commission's website, https://elections.wi.gov.)

*First*, in March 2020, the Commission clarified the standards and procedures for voters to qualify as "indefinitely confined" and therefore be entitled to vote absentee without presenting a photo identification. See WIS. STAT. §§ 6.86(2)(a), 6.87(4)(b)2. The Commission explained that many voters would qualify based on their personal circumstances and the COVID-19 pandemic, adding that Wisconsin law established no method for a clerk to demand proof of a voter's individual situation. The Wisconsin Supreme Court endorsed the

Commission's interpretation when it enjoined the Dane County Clerk from offering any contrary view of the law. See *Jefferson v. Dane County*, 2020 WI 90 ¶¶ 8–9 (Dec. 14, 2020).

*Second*, the Commission issued guidance in August 2020 endorsing the use of drop boxes for the return of absentee ballots. The Commission explained that drop boxes could be "staffed or unstaffed, temporary or permanent," and offered advice on how to make them both secure and available to voters during the pandemic.

*Third*, four years ago, before the 2016 election, the Commission instructed municipal clerks on best practices for correcting a witness's address on an absentee ballot certificate. See WIS. STAT. § 6.87(2), (6d), (9). Clerks were able, the Commission explained, to contact the voter or witness or use another source of reliable information to correct or complete address information on an absentee ballot.

The President's complaint alleges that the Commission, in issuing this guidance, expanded the standards for "indefinitely confined" voters, invited voter fraud by authorizing the use of unstaffed drop boxes, and misled municipal clerks about their powers to complete or correct address information on absentee ballots, all contrary to Wisconsin statutory law. The President sought declaratory and injunctive relief on the view that these alleged misinterpretations of state law "infringed and invaded upon the Wisconsin Legislature's prerogative and directions under [the Electors Clause of] Article II of the U.S. Constitution."

B

After an evidentiary hearing, the district court rejected the President's claims on the merits and entered judgment for the

No. 20-3414 5

Commission and other defendants. The Electors Clause, the court determined, addressed the "Manner"—the "approach, form, method, or mode"—by which Wisconsin appointed its electors. For Wisconsin, that meant only by "general ballot at the general election," WIS. STAT. § 8.25(1), with the court further observing that any mistakes in administering the election did not change that the electors were appointed by general election.

Even if the Electors Clause was read more broadly to address the "Manner" in which Wisconsin conducted the election, the district court determined that the Legislature had authorized the Commission to issue the guidance now challenged by the President. None of that guidance, the district court reasoned, reflected such a deviation from the Wisconsin Legislature's directives as to violate the Electors Clause.

The President promptly appealed, and we expedited the case for decision.

## II

We begin, as we must, by assessing whether the President has presented a Case or Controversy over which we have jurisdiction. The inquiry turns on the doctrine of standing and, more specifically, whether the President has alleged an injury traceable to the actions of the defendants and capable of being redressed by a favorable judicial ruling. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The district court answered the question in the President's favor. We do too.

On the injury prong of standing, the President has alleged "concrete and particularized" harm stemming from the allegedly unlawful manner by which Wisconsin appointed its electors. *Id.* at 560. As a candidate for elected office, the President's

alleged injury is one that "affect[s] [him] in a personal and individual way." *Id.* at 560 n.1; see also *Carson v. Simon*, 978 F.3d 1051, 1058 (8th Cir. 2020) ("An inaccurate vote tally is a concrete and particularized injury to candidates."). The alleged injury-in-fact is likewise "fairly traceable" to the challenged action of the defendants, see *Allen v. Wright*, 468 U.S. 737, 751 (1984), all of whom played some role in administering the election.

The final requirement for Article III standing—that the alleged injury "likely" would be redressed by a favorable decision—presents a closer question. *Lujan*, 504 U.S. at 561. The difficulty is attributable to the gap between what the President ultimately desires (to be declared the victor of Wisconsin) on one hand, and what a court can award him on the other. But the President's complaint can be read as more modestly requesting a declaration that the defendants' actions violated the Electors Clause and that those violations tainted enough ballots to "void" the election. Were we to grant the President the relief he requests and declare the election results void, the alleged injury—the unlawful appointment of electors—would be redressed. True, our declaration would not result in a new slate of electors. But the fact that a judicial order cannot provide the full extent or exact type of relief a plaintiff might desire does not render the entire case nonjusticiable. See *Church of Scientology v. United States*, 506 U.S. 9, 12–13 (1992). A favorable ruling would provide the opportunity for the appointment of a new slate of electors. From there, it would be for the Wisconsin Legislature to decide the next steps in advance of Congress's count of the Electoral College's votes on January 6, 2021. See 3 U.S.C. § 15. All of this is enough to demonstrate Article III standing.

No. 20-3414                                                                 7

We also conclude that the President's complaint presents a federal question, despite its anchoring in alleged violations of state law. The Eleventh Amendment and principles of federalism bar federal courts from directing state officials to follow state law. See *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). But we can decide whether their interpretation of state law violated a provision of the federal Constitution, here the Electors Clause. This distinction alleviates any federalism concerns that might otherwise preclude our consideration of the President's claims.

### III

On the merits, the district court was right to enter judgment for the defendants. We reach this conclusion in no small part because of the President's delay in bringing the challenges to Wisconsin law that provide the foundation for the alleged constitutional violation. Even apart from the delay, the claims fail under the Electors Clause.

### A

The timing of election litigation matters. "[A]ny claim against a state electoral procedure must be expressed expeditiously." *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (citing *Williams v. Rhodes,* 393 U.S. 23, 34–35 (1968)). The Supreme Court underscored this precise point in this very election cycle, and with respect to this very State. See *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020). The Court's direction was clear: federal courts should avoid announcing or requiring changes in election law and procedures close in time to voting. Doing so risks offending principles of federalism and reflects an improper exercise of the federal judicial power. Even more, belated election

litigation risks giving voters "incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006); see also *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) ("Call it what you will—laches, the *Purcell* principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so."). On this reasoning, we have rejected as late claims brought too close in time *before* an election occurs. See *Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 639, 642 (7th Cir. 2020); *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1060–62 (7th Cir. 2016); *Navarro v. Neal*, 716 F.3d 425, 429 (7th Cir. 2013).

The same imperative of timing and the exercise of judicial review applies with much more force on the back end of elections. Before a court can contemplate entering a judgment that would void election results, it "*must* consider whether the plaintiffs filed a timely pre-election request for relief." *Gjersten v. Bd. of Election Comm'rs*, 791 F.2d 472, 479 (7th Cir. 1986) (emphasis added) (footnote omitted).

These very considerations underpin the doctrine of laches. At its core, laches is about timing. "Laches cuts off the right to sue when the plaintiff has delayed 'too long' in suing. 'Too long' for this purpose means that the plaintiff delayed inexcusably and the defendant was harmed by the delay." *Teamsters & Emps. Welfare Tr. of Ill. v. Gorman Bros. Ready Mix*, 283 F.3d 877, 880 (7th Cir. 2002).

The President had a full opportunity before the election to press the very challenges to Wisconsin law underlying his present claims. Having foregone that opportunity, he cannot now—after the election results have been certified as final—seek to bring those challenges. All of this is especially so given that the Commission announced well in advance of the

No. 20-3414 9

election the guidance he now challenges. Indeed, the witness-address guidance came four years ago, before the 2016 election. The Commission issued its guidance on indefinitely confined voters in March 2020 and endorsed the use of drop boxes in August.

Allowing the President to raise his arguments, at this late date, after Wisconsin has tallied the votes and certified the election outcome, would impose unquestionable harm on the defendants, and the State's voters, many of whom cast ballots in reliance on the guidance, procedures, and practices that the President challenges here. The President's delay alone is enough to warrant affirming the district court's judgment.

B

The President would fare no better even if we went further and reached the merits of his claims under the Electors Clause.

Defining the precise contours of the Electors Clause is a difficult endeavor. The text seems to point to at least two constructions, and the case law interpreting or applying the Clause is sparse. This case does not require us to answer the question, as the Commission's guidance did not amount to a violation under the two most likely interpretations.

Recall that the Electors Clause requires each State to "appoint, in such Manner as the Legislature thereof may direct," presidential electors. U.S. CONST. art. II, § 1, cl. 2. By its terms, the Clause could be read as addressing only the manner of appointing electors and thus nothing about the law that governs the administration of an election (polling place operations, voting procedures, vote tallying, and the like). The word "appoint" is capacious, "conveying the broadest power

of determination," including but not limited to the "mode" of popular election. *McPherson v. Blacker*, 146 U.S. 1, 27 (1892). Historically, the states used a variety of manners for appointing electors, such as direct legislative appointment. See *id.* at 29–33. For its part, the Wisconsin Legislature has consistently chosen a general election to appoint its electors. See WIS. STAT. § 8.25(1) (2020); WIS. STAT. §§ 6.3, 7.3 (1849). The complaint does not allege that the Commission's guidance documents shifted Wisconsin from a general election to some other manner of appointing electors, like those used in other states in the past. On this reading of the Electors Clause, the President has failed to state a claim. See FED. R. CIV. P. 12(b)(6).

But perhaps the better construction is to read the term "Manner" in the Electors Clause as also encompassing acts necessarily antecedent and subsidiary to the method for appointing electors—in short, Wisconsin's conduct of its general election. Even on this broader reading, the President's claims still would fall short. In his concurring opinion in *Bush v. Gore*, Chief Justice Rehnquist suggested that the proper inquiry under the Electors Clause is to ask whether a state conducted the election in a manner substantially consistent with the "legislative scheme" for appointing electors. 531 U.S. 98, 113 (2000) (Rehnquist, C.J., concurring). We would not go further and ask, for example, whether Wisconsin's officials interpreted perfectly "[i]solated sections" of the elections code. *Id.* at 114.

The Wisconsin Legislature expressly assigned to the Commission "the responsibility for the administration of … laws relating to elections," WIS. STAT. § 5.05(1), just as Florida's Legislature had delegated a similar responsibility to its Secretary of State. See *Bush*, 531 U.S. at 116 (Rehnquist, C.J., concurring). Florida's legislative scheme included this "statutorily

No. 20-3414 11

provided apportionment of responsibility," *id.* at 114, and three Justices found a departure from that scheme when the Florida Supreme Court rejected the Secretary's interpretation of state law. See *id.* at 119, 123. And it was the Minnesota Secretary of State's lack of a similar responsibility that prompted two judges of the Eighth Circuit to conclude that he likely violated the Electors Clause by adding a week to the deadline for receipt of absentee ballots. See *Carson*, 978 F.3d at 1060. By contrast, whatever actions the Commission took here, it took under color of authority expressly granted to it by the Legislature. And that authority is not diminished by allegations that the Commission erred in its exercise.

We confine our conclusions to applications of the Electors Clause. We are not the ultimate authority on Wisconsin law. That responsibility rests with the State's Supreme Court. Put another way, the errors that the President alleges occurred in the Commission's exercise of its authority are in the main matters of state law. They belong, then, in the state courts, where the President had an opportunity to raise his concerns. Indeed, the Wisconsin Supreme Court rejected his claims regarding the guidance on indefinitely confined voters, see *Trump v. Biden*, 2020 WI 91 ¶ 8 (Dec. 14, 2020), and declined to reach the rest of his arguments on grounds of laches.

For our part, all we need to say is that, even on a broad reading of the Electors Clause, Wisconsin lawfully appointed its electors in the manner directed by its Legislature.

For these reasons, we AFFIRM.