2015 WL 13776226
Only the Westlaw citation is currently available.
United States Bankruptcy Court,
W.D. Arkansas, Fayetteville Division.

IN RE: VEG LIQUIDATION, INC., f/k/
a Allens, Inc. and All Veg, LLC, Debtors
D & E Farms, Inc., H.C. Schmieding Produce
Co., Inc., and Hartung Brothers, Inc., Plaintiffs
v.
Freeborn & Peters LLP and
Greenberg Traurig, LLP, Defendants
D & E Farms, Inc., H.C. Schmieding Produce
Co., Inc., and Hartung Brothers, Inc., Plaintiffs
v.
Alvarez & Marsal North America, LLC
and Jonathan Hickman, Defendants
D & E Farms, Inc., H.C. Schmieding Produce
Co., Inc., and Hartung Brothers, Inc., Plaintiffs
v.
Lazard Freres & Co. LLC and Lazard
Middle Market LLC, Defendants

No. 5:13-bk-73597 Jointly Administered, No. 5:15-ap-07026, No. 5:15-ap-07029, No. 5:15-ap-07042
|
Signed 09/15/2015

**Attorneys and Law Firms**

Stanley V. Bond, Bond Law Office, Fayetteville, AR, Gregory A. Brown, Mccarron & Diess, Melville, NY, Rickard Hood, Hood & Stacy, PA, Bentonville, AR, for Plaintiffs.

Steven M. Hartmann, Elizabeth L. Janczak, Freeborn & Peters, LLP, Chicago, IL, Rickard Hood, Hood & Stacy, PA, Bentonville, AR, Robert Justin Eichmann, Lucas T. Regnier, Harrington Miller Kieklak Eichmann Brown, Springdale, AR, Gregory E. Garman, Garman Turner Gordon, LLP, Brigid M. Higgins, Gordon Silver, Las Vegas, NV, for Defendants.

### ORDER ON MOTIONS TO DISMISS

Ben Barry, United States Bankruptcy Judge

*1 D & E Farms, Inc., H.C. Schmieding Produce Co., Inc., and Hartung Brothers, Inc. [collectively, the PACA creditors] filed three adversary complaints in successive order: against Freeborn & Peters LLC and Greenberg Traurig, LLP on March 20, 2015; [1] against Alvarez & Marsal North America, LLC [Alvarez & Marsal] and Jonathan C. Hickman on March 25, 2015; and against Lazard Freres & Co. LLC and Lazard Middle Market LLC [Lazard entities] on April 1, 2015. Subsequently, the defendants in each of the adversary proceedings filed motions to dismiss. The Court heard the motions on July 29, 2015, and took the matters under advisement. For the following reasons, the Court denies each of the motions to dismiss.

The PACA creditors' complaints assert that each of the defendants received funds from the debtor that are PACA trust assets. The defendants performed services for the debtor prior to and during the debtor's bankruptcy and were paid for those services by the debtor. According to the PACA creditors' complaints, the defendants have received the following amounts from the debtor's estate: Greenberg Traurig received $ 1,427,412.20; Freeborn & Peters received $ 50,000.00; Alvarez & Marsal received $ 2,311,806.25; and the Lazard entities received what the PACA creditors estimate as being more than $ 1,800,000.00. Based on a remaining balance owed to the PACA creditors for their allowed PACA claims, which the PACA creditors believe will not be recoverable from the debtor's estate, they seek to disgorge from the defendants amounts sufficient to pay the remainder of their PACA claims in full.

At the hearing on the motions to dismiss, counsel for Alvarez & Marsal, Jonathan Hickman, and the Lazard entities presented collective arguments on behalf of all of the defendants. In addition to joining the mutual defenses of the other defendants, counsel for Freeborn Peters presented arguments for dismissal of the 28 U.S.C. § 1927 action asserted only as to it. The motions to dismiss were brought under Federal Rule of Civil Procedure 12(b)(1) and (b)(6), made applicable here by Federal Rule of Bankruptcy Procedure 7012, for lack of subject matter jurisdiction, lack of standing, and failure to state a claim. Generally, the defendants challenge the legal viability of the PACA creditors' causes of action. Each of the defendants' arguments in favor of dismissal is addressed below.

**1. Collateral attack on the February 12, 2014 sale order**
The defendants' primary argument is based on language contained within paragraph 63(ii) of the sale order, which modified section 3.2(c) of the Asset Purchase Agreement

[APA] entered into between the debtor and Sager Creek in February 2014. Paragraph 63(ii) states that

> [u]pon the closing, the Assumed PACA Claims and Post-Petition Assumed PACA Liabilities shall be secured by, and to the extent such Assumed PACA Claims become Resolved PACA claims or, in respect of a Post-Petition Assumed PACA Liability, as, when and to the extent a Post-Petition PACA Payment Obligation arises in respect thereof (a **"PACA Claims Payment Event"**), shall be paid exclusively from, the proceeds of (A) the PACA Escrow (as defined below) and (B) the PACA Claims Commitment Letter (as defined below) in accordance with section (iii) below.

**\*2** The defendants assert that this language dictates that the PACA creditors' sole source for payment of their PACA claims is Sager Creek, and that the PACA creditors do not have standing to disgorge funds from any other source to pay PACA claims. The defendants also argue that the PACA creditors acquiesced to this limitation when they did not object to the APA's language prior to the sale order being approved and entered by the Court on February 12, 2014.

The defendants' argument stands in isolation to other relevant parts of the APA that specifically limit the PACA claim liabilities Sager Creek assumed upon the sale of the debtor's assets. Paragraph 63(v) states, in part, that

> [a]t the Closing, Buyer and Seller shall prepare a schedule setting forth the amount of such Disputed PACA Claims, listing the PACA Claim holder and the amount of its Dispute PACA Claim and serve such statement on all holders of Disputed PACA Claims. *For avoidance of doubt, in no event shall Buyer become responsible for, or be deemed to assume, PACA Claims under this Agreement in excess of the PACA Claims Cap* [emphasis added].

Appendix A to the APA defines the PACA Claims Cap as $ 19,359,144.61. Counsel for Sager Creek, who helped review and draft the APA prior to its acceptance, also testified at a prior hearing before this Court that Sager Creek did not assume unlimited liability on the PACA claims.[2]

Taking the defendants' interpretation of paragraph 63(ii) in conjunction with the plain language of paragraph 63(v), the Court is left with the seemingly incompatible stance that Sager Creek assumed *exclusive* responsibility to pay all PACA claims without assuming *total* liability on the claims themselves. The Court instead holds that the language of those two paragraphs of the APA means that Sager Creek is exclusively responsible for paying up to the $ 19.4 million PACA Claim Cap, with no direction as to how PACA claims in excess would be paid.

Even if the language of the APA attempted to limit the amount of PACA claims to be paid or to bar recovery from third parties, Congress's prioritization of valid PACA claims leads the Court to conclude that a PACA trustee (such as the debtor) and a purchaser of its assets (such as Sager Creek) cannot strip the statutory rights of PACA claimants through self-serving contractual terms made between themselves. A vast body of case law, much of which is in the context of bankruptcy, recognizes a PACA creditor's right to be paid *in full* from trust assets, whether those assets are in the hands of the PACA trustee or others. *See Pac. Int'l. Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 285 (3rd Cir. 2006) (Congress's intent is to ensure that PACA trust beneficiaries are paid in full); *Sysco Food Servs. of Seattle, Inc. v. Country Harvest Buffet Rests., Inc.* (*In re Country Harvest Buffet Rests., Inc.*), 245 B.R. 650, 653 (B.A.P. 9th Cir. 2000) (PACA claimants entitled to payment from trust assets before secured and unsecured creditors are paid); *Kingdom Fresh Produce v. Bexar County* (*In re Delta Produce, LP* ), 521 B.R. 576, 587 (W.D. Tex. 2014), *appeal pending* (debtor's special PACA counsel not entitled to be paid from PACA trust assets before PACA creditors paid in full). Based on these considerations, the Court dismisses the defendants' argument that the APA deprives the PACA creditors of standing to pursue their causes of action.

### 2. 11 U.S.C. § 329 and § 330 Causes of Action

**\*3** The defendants' second argument supporting dismissal is directed at the PACA creditors' request for disgorgement of professional fees against each of the defendants under 11 U.S.C. § 329 and/or § 330. In their motions to dismiss and at the hearing, the defendants collectively argued that the PACA creditors lack standing to bring a claim belonging to the trustee and that their claims are barred by res judicata and timeliness. Alvarez and Freeborn Peters also asserted that a disgorgement action under § 330 is not applicable to entities hired under § 363, such as themselves.

In support of their standing argument, the defendants cite to cases and other sources that together stand for the general proposition that regulation of professional services is designed to protect the bankruptcy estate and that the trustee has certain duties as a representative of the estate. Only one case cited by the defendants, *In re Preferred Prop. Group, LLC*, actually addresses the issue of a trustee's standing to challenge professional fees. Chapter 11 Case No. 11-91764, 2015 WL 1543193, 2015 Bankr. Lexis 1015 (Bankr. C.D. Ill. March 31, 2015). The Court's own review of case law shows that in the general context of disgorgement of professional fees–where those fees will be returned to the estate to be paid to creditors for various reasons–courts have either considered actions brought by creditors or have specifically acknowledged a creditor's right to bring such actions. See *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659, 663 (6th Cir. 2004); *In re Kids Creek Partners, L.P.*, 220 B.R. 963, 978 (Bankr. N.D. Ill. 1998). In addition, § 330(a)(2) specifically states that a motion to award less compensation may be made by, among others, "any other party in interest."

The defendants also argue that the PACA creditors are barred by res judicata and timeliness from requesting disgorgement because the PACA creditors did not object to the fees previously noticed out for objection. However, the Court has an independent duty and authority to review fee applications regardless of filed objections, as reflected in § 330(a). *In re Rockaway Bedding, Inc.*, 454 B.R. 592, 596 (Bankr. D.N.J. 2011); *In re Garrison Liquors, Inc.*, 108 B.R. 561, 565 (Bankr. D. Md. 1989); *In the Matter of Paul Pothoven*, 84 B.R. 579, 583 (Bankr. S.D. Iowa 1988) (citing cases). Therefore, the Court declines to dismiss the § 329 and § 330 causes of action.

Alvarez and Freeborn Peters separately assert that the PACA creditors' § 329 and/or § 330 cause of action against each of them must be dismissed because they were hired by the debtor in the ordinary course under § 363.[3] Case law supports their general argument that funds paid by the debtor to entities in the ordinary course of business under § 363 cannot be subsequently disgorged under § 330. *In re Livore*, 473 B.R. 864, 869-70 (Bankr. D.N.J. 2012); *In re Lochmiller Indus., Inc.*, 178 B.R. 241, 249-50 (Bankr. S.D. Cal. 1995). However, in response, the PACA creditors argued at the hearing that regardless of the manner in which these entities were hired, the actual duties performed by Alvarez and Freeborn Peters were in the nature of attorney transactions or professional persons subject to § 329 or § 330. Courts use different definitions to distinguish professionals hired in the ordinary course of business (and paid under § 363) from those professionals retained under and governed by §§ 327, 328, 329, and 330. Regardless of the test adopted, however, the determination is a question of fact. *In re Bartley Lindsay Co.*, 137 B.R. 305, 308 (D. Minn. 1991). The fact that Alvarez and Freeborn Peters may have been *retained* under § 363 does not preclude the inquiry as to whether the parties acted in a different capacity and are subject to § 329 or § 330.

**\*4** For these reasons, the Court denies the defendants' request for dismissal of the § 329 and/or § 330 actions against each of them.

### 3. 28 U.S.C. § 1927 action against Freeborn Peters

Freeborn Peters separately seeks dismissal of the PACA creditors' 28 U.S.C. § 1927 cause of action against it. Under § 1927, "[a]ny attorney or other person admitted to conduct cases ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." In their complaint against Freeborn Peters, the PACA creditors allege that Freeborn Peters pursued objections to each of the PACA creditors' PACA claims that "were not warranted by existing law, and were frivolous." Complaint, 5:15-ap-07026, ¶ 55.

As a result, the "PACA creditors were required to engage in extensive discovery and participate in multi-day evidentiary hearings before their claims were eventually deemed Allowed PACA Claims virtually in their entirety" and the resulting delay prevented the PACA creditors from being paid from the debtor's estate. Complaint, 5:15-ap-07026, ¶¶ 54, 57.

Freeborn Peters alleges three grounds for dismissal of the § 1927 action. First, that the § 1927 action is untimely based on Freeborn Peters' allegation that the PACA creditors knew or should have known of the alleged misconduct at various points during the case but failed to assert a § 1927 action earlier. The PACA creditors filed their adversary proceeding against Freeborn Peters seeking sanctions under § 1927 on March 20, 2015, a little more than two weeks after the district court entered orders dismissing the appeals of this Court's three rulings on the PACA creditors' PACA claims.[4] Freeborn Peters' argument of untimeliness is based on a single case in which the Seventh Circuit held that a § 1927 motion is too late if filed after the resolution of an appeal. *Overnite Trans. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789 (7th Cir. 1983).

The Third, Fourth, and Tenth Circuits have declined to follow the Seventh Circuit's holding cited by Freeborn Peters. *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101-03 (3rd Cir. 2008); *Hicks v. S. Md. Health Sys. Agency et al.*, 805 F.2d 1165, 1166-67 (4th Cir. 1986); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1223 (10th Cir. 2006). This Court does the same. As the Tenth Circuit stated, "the application of § 1927 may become apparent only at or after the litigation's end, given that the § 1927 inquiry is whether the proceedings have been unreasonably and vexatiously multiplied." *Steinert*, 440 F.3d at 1223. This may be especially true, as the Fourth Circuit points out, where the outcome of an appeal either bolsters or dispels § 1927 allegations of unwarranted litigation.

> [W]here, as here, the defendants characterize the plaintiffs' claims as entirely baseless, the appropriateness of the characterization is unsettled as long as there is a pending appeal in which the plaintiffs, with apparent earnestness, assert that there are real issues of disputed fact .... There is some reason to think that such uncertainty should be clarified before counsel and the district judge should be called upon to consider the appropriateness of a fee award and assess the amount.

*5 *Hicks*, 805 F.2d at 1167. This Court finds that the PACA creditors acted within a reasonable time by filing their § 1927 claim against Freeborn Peters approximately two weeks after the appeals were dismissed. It is logical for the Court to consider allegations of unwarranted litigation once that litigation has been reduced to final judgment.

Freeborn Peters' second ground for dismissal is that the PACA creditors are collaterally estopped from pursuing a § 1927 action because the Court previously denied a motion for sanctions against the debtor's counsel. The motion for sanctions was filed on July 7, 2014, by Hartung Brothers, one of the three PACA creditors referenced collectively in this order. The sanctions request was combined with a demand for immediate payment of a portion of Hartung's PACA claim.

In its September 15, 2014 ruling on the combined motion, the Court predicated its denial of the motion on the fact that it had not yet ruled on the debtor's objection to Hartung's PACA claim. In fact, the debtor's objection to Hartung's claim was under advisement at that time and the Court did not issue its ruling on the objection until October 9, 2014, almost one month after its oral ruling on the motion for sanctions and immediate payment. The Court was unwilling to address in detail what it viewed as a "side skirmish" to a larger issue still under advisement. The Court made the statement from the bench that it did not believe there was "ill, inappropriate treatment by debtors' counsel," but it also made clear its reluctance to decide the matter at that juncture of the case. Knowing its own mindset when it made the September 15, 2014 ruling, the Court denies Freeborn Peters' collateral estoppel argument. Additionally, the breadth of the PACA creditors' collective § 1927 action against Freeborn Peters exceeds the matter for which Hartung individually requested sanctions in its previous motion.

Freeborn Peters' third ground for dismissal of the § 1927 action is that the statute applies only to individual attorneys. The circuits are divided as to whether the statute also applies to law firms, based on § 1927's language directing sanctions at "[a]ny attorney or other person ... who so multiplies the

proceedings in any case unreasonably and vexatiously." See *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 147 (2d Cir. 2012) (court's inherent powers to sanction law firm encompasses § 1927); *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (affirming § 1927 sanctions against law firm); *In re MJS Las Croabas Props., Inc.*, 530 B.R. 25, 42 (Bankr. D. P.R. 2015) (Rule 11 and court's inherent powers permits sanctions against law firm under § 1927); but see *BDT Products, Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010) (law firm is not a "person" under § 1927); *Claiborne v. Wisdom*, 414 F.3d 715 (7th Cir. 2005) (noting that circuits are divided and finding that § 1927 is inapplicable to law firms); *Sangui Biotech Int'l., Inc. v. Kappes*, 179 F.Supp.2d 1240, 1245 (D. Col. 2002) (citing cases and finding that law firms are not subject to § 1927). The Eighth Circuit, while not specifically addressing the issue, has affirmed at least one case in which sanctions were awarded against a law firm under § 1927. See *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443 (8th Cir. 2001). At least one court within the Eighth Circuit has also sanctioned a law firm under § 1927, recognizing the Eighth Circuit's *Lee* opinion as an implicit green light to do so. See *Gurman v. Metro Hous. and Redev. Auth.*, 884 F.Supp.2d 895, 905 (D. Minn. 2012). Based on this split, as well as the Eighth Circuit's ruling, the Court cannot find that the § 1927 action should be dismissed as a matter of law.

 **\*6** For all of these reasons, the Court finds that dismissal of the PACA creditors' § 1927 action against Freeborn Peters is not warranted.

**4. Action asserting unjust enrichment; request for attorney fees, costs, and interest**

The PACA creditors allege that each of the defendants was unjustly enriched by receiving PACA trust assets while PACA creditors remained unpaid. The defendants request dismissal on the basis that unjust enrichment is an equitable remedy that is only available where no other remedy is available–and that the PACA creditors' true remedy is under the PACA statute. Freeborn Peters also argues that unjust enrichment cannot be applied in the case of an express contract. Freeborn Peters points to the express contract for legal services that existed between itself and the debtor.

None of the defendants provided the Court with any case law to support the proposition that unjust enrichment is per se incompatible with any action brought under or related to PACA. In addition, Freeborn Peters' argument regarding an express contract between itself and the debtor is wholly irrelevant–no such express contract exists between the parties to this litigation (the PACA creditors and Freeborn Peters). As alleged by the PACA creditors, the defendants have acquired property to which they are not entitled, to the detriment of the PACA creditors. These facts are generally applicable to the remedy of unjust enrichment, and in balancing further considerations–including the defendants' respective duties and obligations in their professional capacities and their alleged knowledge of the requirements of PACA–the Court is unwilling to dismiss the PACA creditors' unjust enrichment causes based on the defendants' arguments currently before it.

Finally, with respect to attorney fees, costs, and interest, the defendants argue that the PACA creditors have failed to state a claim upon which relief can be granted under Rule 12(b)(6) because no contractual or statutory basis exists for the PACA creditors to collect these amounts against the defendants. However, this Court has previously ruled that "sums owed in connection with" a produce transaction that make up a PACA claim include a contractual right to interest (limited by state law as to interest rate). This Court likewise has found that a contractual right to attorney fees and costs also constitutes "sums owed in connection with" a produce transaction and, thus, are part of a valid PACA claim.[5] Therefore, to the extent that each of the PACA creditors reserved the right to be paid attorney fees, costs, and interest by contract with the debtor, the PACA creditors' valid PACA claims include attorney fees, costs, and interest that continue to accrue. The PACA creditors may proceed in their causes of action against the defendants to recover the portion of their valid PACA claims that remain unpaid.

 **\*7** For the foregoing reasons, the Court denies the defendants' respective motions to dismiss.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2015 WL 13776226

## Footnotes

| | |
|---|---|
| 1 | A third defendant, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C, was named in the complaint but later was dismissed without prejudice by the plaintiffs on May 1, 2015. |
| 2 | On February 20, 2015, at the hearing on the PACA creditors' Rule 60(b) motion for relief from the sale order, Sager Creek counsel Scott Rutsky answered questions regarding the APA:<br>Q: In the APA that was filed with the Court on February 7th, did the [sic] Sager Creek agree to assume unlimited PACA liability?<br>A: No. Consistent with our initial bid, it contained a cap on the PACA claims, cap of 19.359 million dollars. |
| 3 | In regard to Alvarez, on November 27, 2013, the Court entered an order at docket entry [256] authorizing its employment by the debtor under § 105(a) and § 363(c). Freeborn Peters' status is less clear according to docket entries made in the case, despite its argument that the record "undisputably" shows that it was hired under § 363. The umbrella *Application of the Debtors for Order Authorizing Retention and Employment of Certain Professionals Utilized by the Debtors in the Ordinary Course of Business*, which included Freeborn Peters, cited bankruptcy code sections §§ 105(a), 327, 328, 330, and 363 and included the statement that the debtor "*believe[d]* that the Ordinary Course Professionals are not 'professionals' as that term is used in sections 327 or 328 of the Bankruptcy Code [emphasis added]." Nevertheless, the order entered on December 13, 2013, at docket entry [286] specifically cited §§ 105(a), 327, 328, and 330 as the basis of employment for "Ordinary Course Professionals" such as Freeborn Peters. Attorneys from Freeborn Peters also have maintained a prominent and sometimes visibly central role in the matters heard in connection with this bankruptcy case. |
| 4 | The district court entered three orders of dismissal on March 3, 2015, for the appeals related to each of the three PACA creditors (D & E Farms, H.C. Schmieding, and Hartung). |
| 5 | See the Court's orders on the *Debtor's Omnibus Objection to PACA Claims* as to the PACA claims of the PACA creditors in bankruptcy case 5:13-bk-73597: as to D & E Farms, Inc. entered on July 30, 2014, at docket entry [1045]; as to H.C. Schmieding entered on August 20, 2014, at docket entry [1068]; and as to Hartung entered on October 9, 2014, at docket entry [1151]. |