UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

DONALD J. TRUMP, Candidate for President of the United States of America,

    Plaintiff,

v.

THE WISCONSIN ELECTIONS COMMISSION, and its members ANN S. JACOBS, MARK L. THOMSEN, MARGE BOSTELMANN, DEAN KNUDSON, JULIE M. GLANCEY, ROBERT F. SPINDELL, JR., in their official capacities, SCOTT MCDONNELL in his official capacity as the Dane County Clerk, GEORGE L. CHRISTENSON in his official capacity as the Milwaukee County Clerk, JULIETTA HENRY in her official capacity as the Milwaukee Election Director, CLAIRE WOODALL-VOGG in her official capacity as Executive Director of the Milwaukee Election Commission, MAYOR TOM BARRETT, JIM OWCZARSKI, MAYOR SATYA RHODES-CONWAY, MARIBETH WITZEL-BEHL, MAYOR CORY MASON, TARA COOLIDGE, MAYOR JOHN ANTARAMIAN, MATT KRAUTER, MAYOR ERIC GENRICH, KRIS TESKE, in their official Capacities, DOUGLAS J. LA FOLLETTE, Wisconsin Secretary of State, in his official capacity, and TONY EVERS, Governor of Wisconsin, in his official capacity,

    Defendants.

Case No.: 20CV1785

**DECLARATION OF JEFFREY A. MANDELL IN SUPPORT OF FEE PETITION**

Jeffrey A. Mandell hereby makes the following declaration:

1. I am a partner at the law firm of Stafford Rosenbaum LLP ("Stafford"), where I created and co-chair the firm's Election and Political Law practice group. I submit this declaration in support of the request of Defendant Governor Tony Evers for attorneys' fees and

expenses in connection with special counsel services that Stafford rendered to represent Governor Evers, and through him all Wisconsin voters, in these proceedings.

2. I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, I could and would testify to them.

**I. Background**

3. On December 2, 2020, Plaintiff filed a lawsuit challenging the validity of Wisconsin's November presidential election results and sought to overturn the election, asking that this Court, notwithstanding the will of the voters and the nearly 3.3 million votes cast statewide, declare the election void, and remand the case to Wisconsin's Legislature. As pleaded by Plaintiff, the case was historically unprecedented, factually and legally complex, high stakes, and compressed into a time schedule demanding intensive attention.

4. The case generated tremendous public and media interest, due both to Plaintiff's identity and his outrageous remedial requests. From the outset, Plaintiff pressed, consistently and forcefully, that the Court must adjudicate his claim on a highly expedited basis that required concentrated effort by all attorneys involved. This Court rose to the challenge, holding a hearing on the merits on December 10, 2020, and issuing a final judgment on December 12, 2020.

5. Plaintiff's claims were vigorously challenged and litigated by Governor Evers, the Wisconsin Elections Commission Defendants (both the Commission itself and all of the Commissioners, including Julie M. Glancey, whom Plaintiff initially omitted from the case caption), Secretary of State La Follette, and municipal Defendants named in the suit from the City of Milwaukee, Milwaukee County, the City of Madison, Dane County, the City of Green Bay, the City of Racine, and the City of Kenosha. The stakes could not have been higher: failure

by Governor Evers and other Defendants to thoroughly and zealously oppose Plaintiff's requested relief could have led to the disenfranchisement of nearly 3.3 million Wisconsin voters.

6. In representing Governor Evers on this case, I worked closely with two of my colleagues at Stafford, Rachel E. Snyder and Richard A. Manthe. We also partnered with co-counsel from out of state: Justin A. Nelson, Stephen E. Morrissey, Stephen Shackelford Jr., and Davida Brook, partners based in different offices of Susman Godfrey LLP, and Paul Smith at the Campaign Legal Center. In addition, we regularly communicated with lawyers at the Wisconsin Department of Justice who represented the Wisconsin Elections Commission Defendants and Secretary of State La Follette, with lawyers at Hansen Reynolds LLC who represented the Milwaukee County Defendants, with lawyers at the City of Milwaukee City Attorney's Office, with lawyers at Boardman & Clark LLP who represented the City of Madison and Dane County Defendants, and with lawyers at Lawton & Cates, S.C. who represented the City of Green Bay Defendants, the City of Kenosha Defendants, and the City of Racine Defendants. We also regularly communicated with counsel for the Democratic National Committee and counsel for the Wisconsin State Conference NAACP and individual voters, who participated in this case as Defendant-Intervenors. Given the compressed litigation timeline and the large number of Defendants (and counsel), I and other counsel for Governor Evers played a lead role in convening and coordinating the lawyers for Defendants and in presenting those positions shared by all Defendants to the Court.

7. All attorneys actively worked the case from essentially the first moment that we learned of Plaintiff's complaint. I remember that moment clearly as being around 8:15 pm CST on December 2, 2020, because I had to excuse myself from a virtual meeting of a leadership committee for my synagogue to address a bevy of text messages and emails about this new case.

From the very outset, the counsel team was deeply engaged in attempting to understand Plaintiff's complaint, investigating the factual assertions, developing relevant legal theories and strategy, researching detailed legal analysis, assessing procedural options, participating in Court hearings, and preparing briefs for this Court. Working on the extremely condensed timeline demanded by Plaintiff, despite completely baseless legal theories, required a team of attorneys to work nearly around the clock performing all the necessary research and drafting the necessary filings to litigate a motion to dismiss, Plaintiff's motion for preliminary injunctive relief, and a full merits hearing all in one week. Were it not for the assistance of co-counsel from Susman Godfrey and the Campaign Legal Center, provided on a pro bono basis, Stafford would have needed to devote more lawyers and substantially more time to this matter, concomitantly increasing the expense to Wisconsin taxpayers.

8. This case was actively litigated—in the week from when this case began to when the Court held a one-day trial, the case generated 129 docket entries—but Plaintiff's counsel demanded a schedule that precluded proceeding in any traditional or orderly fashion. Plaintiff's complaint was lengthy—exceeding 300 numbered paragraphs across more than 70 pages—but it provided far more heat than light. It did not clearly identify any cognizable cause of action, did not enumerate the essential elements of any legal claim much less attempt to meet those elements, and sought relief that amounted to an improper and unconstitutional advisory opinion. When Governor Evers and other Defendants identified those defects, Plaintiff chose not to file an amended complaint or even to defend the shortcomings of his pleading; instead, he repeatedly announced different formulations, all of which suffered from significant constitutional and logical flaws, of the relief he was seeking. Plaintiff's unorthodox litigation approach—both

4

procedurally and in terms of legal theory—multiplied the work required by Governor Evers's counsel.

9. Notwithstanding the blatant shortcomings of Plaintiff's case, the stakes of this litigation and the accelerated timeline (exacerbated by Plaintiff's dilatory filing of this lawsuit) necessitated Governor Evers's counsel litigating this case aggressively and thoroughly. Governor Evers had no choice but to oppose Plaintiff's motion for preliminary injunctive relief. At the same time, Governor Evers had to file and brief a motion to dismiss that highlighted the fundamental deficiencies of Plaintiff's complaint and articulated a panoply of arguments against this Court having jurisdiction over Plaintiff's complaint or authority to grant the relief Plaintiff sought. Among those arguments was the doctrine of laches, which this Court footnoted as likely applicable and which the Seventh Circuit relied upon in affirming this Court's dismissal order.

10. This Court dismissed Plaintiff's complaint on the morning of Saturday, December 12, 2020. Later that same day, Plaintiff appealed this case to the United States Court of Appeals for the Seventh Circuit and sought expedited review.

11. On Monday, December 14, 2020, the Seventh Circuit issued an order, providing Plaintiff-Appellant until close of business on Wednesday December 16 to file a brief; requiring Defendants-Appellees to respond in "a joint brief" by close of business on Friday, December 18; and allowing Plaintiff-Appellant to file a reply brief by 5:00 pm on Sunday, December 20. All of the named Defendants-Appellees coordinated on one joint brief and one joint appendix; Governor Evers's legal team took the lead on coordinating, finalizing, and filing that brief and appendix.

12. On Thursday afternoon, December 24, 2020, the Seventh Circuit affirmed this Court's dismissal order. Nearly a week later, on December 30, 2020, Plaintiff filed a petition for

5

a writ of certiorari and a motion for expedited consideration with the U.S. Supreme Court. In an effort to minimize expense, on January 21, 2021, Governor Evers notified the Supreme Court that he was waiving the opportunity to file a response. Other Defendants did so as well. On February 9, 2021, Plaintiff filed a supplemental brief supporting its petition for certiorari. On March 8, 2021, the Supreme Court issued an order denying Plaintiff's petition.

**II.     Qualifications of Governor Evers's counsel to litigate this case**.

13.     Stafford is a multi-disciplinary law firm with offices in Madison and Milwaukee, Wisconsin. Stafford has served clients for more than 140 years, and is well known for its sophisticated civil and appellate litigation practices, which include representing clients in complex, high-stakes civil litigation.

**A.   Jeffrey A. Mandell**

14.     I have been practicing civil litigation for more nearly 15 years, the last 5-plus of those at Stafford.

15.     I attended the University of Chicago Law School, where I graduated with high honors, served on the editorial board of the University of Chicago Law Review, and won several honors in the moot court competition.

16.     Immediately after law school, I served for one year as a law clerk to the Honorable A. Raymond Randolph, a judge on the United States Court of Appeals for the District of Columbia Circuit.

17.     When I finished clerking, I returned to Chicago, where I spent several years practicing trial litigation at Bartlit Beck Herman Palenchar & Scott LLP. During my time at Bartlit Beck, *The American Lawyer* recognized the firm as best litigation boutique in the nation. When my family decided to move east, I joined the Issues and Appeals practice in the

6

Washington, D.C. office of Jones Day. In 2015, my family and I relocated to Madison, joining Stafford, where I am an equity partner. At Stafford, I have founded new practice groups focused on appellate law and election law; I currently lead both groups and previously served as co-chair of the litigation practice group.

18. In the past three years, I have argued five cases at the Wisconsin Supreme Court (and briefed at least that many more). I have also litigated major issues about election law and government structure before the Wisconsin Elections Commission, as well as state and federal courts, all the way up to the Supreme Court of the United States. These matters include: *Sickel v. Hitt*, No. EL 21-13 (Wis. Elections Comm'n) (pending); *Knudson v. Evers*, No. EL 20-28 (Wis. Elections Comm'n) (pending); *In re Rule Petition 20-03, for Proposed Rule to Amend Wis. Stat. § 809.70 (Relating to Redistricting)*, No. 20-03 (Wis.) (pending); *Jefferson v. Dane Cnty.*, 2020 WI 90, 394 Wis. 2d 602, 951 N.W.2d 556; *Feehan v. Wis. Elections Comm'n*, --- F. Supp. 3d ---, 2020 WL 7250219 (E.D. Wis. Dec. 9, 2020), *vacated on remand after appeal dismissed as moot*, No. 20-cv-1771-PP, ECF No. 95 (E.D. Wis. Mar. 16, 2021), *petitions for extraordinary relief denied*, No. 20-859 (U.S. Mar. 1, 2021); *Wis. Voters Alliance v. Wis. Elections Comm'n*, No. 2020AP1930-OA (Wis. Dec. 4, 2020); *Trump v. Evers,* No. 2020AP1971-OA (Wis. Dec. 3, 2020); *Brent v. West*, No. EL 20-31 (Wis. Elections Comm'n Aug. 27, 2020), *aff'd sub nom. West v. Wis. Elections Comm'n*, No. 2020CV812 (Brown Cty. Cir. Ct. Sept. 11, 2020); *Arntsen v. Wis. Green Party*, No. EL 20-32 (Wis. Elections Comm'n Aug. 21, 2020), *rev. denied sub nom. Hawkins v. Wis. Elections Comm'n*, 2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877; *Swenson v. Bostelmann & Gear v. Bostelmann*, Nos. 20-cv-258-wmc & 20-cv-459-wmc, --- F. Supp. 3d ---, 2020 WL 5627186, *stay denied sub nom. Democratic Nat'l Comm v. Bostelmann*, No. 20-2835 & 20-2844, 2020 WL 5807297 (7th Cir. Sept. 27, 2020), *question certified on*

*reconsideration*, 973 F.3d 764 (7th Cir. Sept. 29, 2020), *certified question answered*, 2020 WI 80, 394 Wis. 2d 33, 949 N.W.2d 423, *stay granted after certified answer*, 977 F.3d 639 (7th Cir. Oct. 8, 2020), *motion to vacate denied*, 141 S. Ct. 644 (U.S. Oct. 26, 2020); *Judge v. Bd. of Canvassers for the City of Madison*, No. 2020CV2029 (Dane Cnty. Cir. Ct. Oct. 23, 2020); *State ex rel. Zignego v. Wis. Elections Comm'n*, 2020 WI App 17, 391 Wis. 2d 441, 941 N.W.2d 284, *review granted and decision pending*; *Koschkee v. Taylor*, 2019 WI 76, 387 Wis. 2d 552, 929 N.W.2d 600; and *League of Women Voters of Wis. v. Evers*, 2019 WI 75, 387 Wis. 2d 511, 929 N.W.2d 209. All of this is in addition to my active and varied commercial litigation and appeals practice in state and federal courts across Wisconsin and beyond.

19. I regularly write and speak about developments in the law, both in Wisconsin and beyond. My legal commentary has been published by the Wisconsin Bar, as well as in *Wisconsin Lawyer*, the *University of Wisconsin Law Review*, the *Wisconsin Examiner*, *CNN Opinion*, *Law360, U.S. Law Week*, and on Stafford Rosenbaum's Appellate Practice Blog. I am a co-author of the leading treatise on the Wisconsin Fair Dealership Law and of chapters in State Bar treatises on civil procedure and on the law of damages. I am often invited to speak about legal developments before programs organized by the State Bar, the Dane County Bar Association, the James E. Doyle Inn of Court, the Federalist Society, and other organizations. I serve as the founding president of the American Constitution Society's Madison Lawyer Chapter.

**B. Rachel E. Snyder**

20. Rachel Snyder is a senior associate at Stafford who has been practicing law for more than six years. She graduated from the University of Wisconsin Law School in December of 2014, *cum laude*. While in law school, she gained significant experience in administrative law matters, holding internships with the Wisconsin Department of Public Instruction, the Wisconsin

Department of Agriculture, Trade, and Consumer Protection, and with an administrative law judge for the Wisconsin Department of Administration's Division of Hearings and Appeals.

21. After law school, Rachel was employed by the Wisconsin Legislative Council for five years, serving as nonpartisan legal counsel to the Wisconsin Legislature. In that role, Rachel advised legislative committees and legislators on a variety of issue areas including legislative procedure, statutory and administrative rule drafting and interpretation, tax, education, local government affairs, state-tribal relations, housing and real estate, and tourism.

22. Since joining Stafford, Rachel has developed specialized expertise in election-related matters, including recounts, recalls, and state and federal campaign finance law. She has advised municipalities on election-related issues and successfully defended the Town of Omro against an election complaint filed with the Wisconsin Elections Commission. *Seaman et al. v. Noe, et al – Town of Omro*, No. EL 20-21 (Wis. Elections Comm'n Jan. 27, 2021). She has also been involved in litigating several election-related lawsuits, including *Knudson v. Evers*, No. EL 20-28 (Wis. Elections Comm'n) (pending); *Feehan v. Wis. Elections Comm'n*, -- F. Supp. 3d --, 2020 WL 7250219 (E.D. Wis. Dec. 9, 2020), *vacated on remand after appeal dismissed as moot*, No. 20-cv-1771-PP, ECF No. 95 (E.D. Wis. Mar. 16, 2021), *petitions for extraordinary relief denied*, No. 20-859 (U.S. Mar. 1, 2021); *Wis. Voters Alliance v. Wis. Elections Comm'n*, No. 2020AP1930-OA (Wis. Dec. 4, 2020); *Trump v. Evers,* No. 2020AP1971-OA (Wis. Dec. 3, 2020); *Judge v. Bd. of Canvassers for the City of Madison*, No. 2020CV2029 (Dane Cnty. Cir. Ct. Oct. 23, 2020); *Brent v. West*, No. EL 20-31 (Wis. Elections Comm'n Aug. 27, 2020), *aff'd sub nom. West v. Wis. Elections Comm'n*, No. 2020CV812 (Brown Cty. Cir. Ct. Sept. 11, 2020); and *Arntsen v. Wis. Green Party*, No. EL 20-32 (Wis. Elections Comm'n Aug. 21, 2020), *rev.*

*denied sub nom. Hawkins v. Wis. Elections Comm'n*, 2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877.

### C. Richard A. Manthe

23. Rick Manthe is a senior associate at Stafford who has been practicing law for more than six years. He graduated from the University of Wisconsin Law School in December of 2014, *cum laude*. Rick has assisted in litigating complex local government and administrative law matters throughout Wisconsin.

24. Rick has advised municipalities regarding election-related issues for four years, and has developed specialized expertise in Wisconsin's election laws. Rick has been involved in litigating other election-related lawsuits, including *In re Rule Petition 20-03, for Proposed Rule to Amend Wis. Stat. § 809.70 (Relating to Redistricting)*, No. 20-03 (Wis.) (pending); *Feehan v. Wis. Elections Comm'n*, --- F. Supp. 3d ---, 2020 WL 7250219 (E.D. Wis. Dec. 9, 2020), *vacated on remand after appeal dismissed as moot*, No. 20-cv-1771-PP, ECF No. 95 (E.D. Wis. Mar. 16, 2021), *petitions for extraordinary relief denied*, No. 20-859 (U.S. Mar. 1, 2021); *Judge v. Bd. of Canvassers for the City of Madison*, No. 2020CV2029 (Dane Cnty. Cir. Ct. Oct. 23, 2020); and *Hawkins v. Wis. Elections Comm'n*, 2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877.

**III.    Recording and valuing the time Stafford devoted to this matter.**

25. The procedure by which Stafford and I routinely maintain records of the time expended on a given case is as follows:

    a.    Each client and each matter for each client are assigned a unique number in our firm's filing, billing, and accounting program.

    b.    For each matter, on a daily basis, I and all other attorneys enter the amount of time expended, in increments of a tenth of an hour, and a description of the work we

10

Case 2:20-cv-01785-BHL   Filed 03/31/21   Page 10 of 13   Document 146

performed. We enter those items into the firm's billing and accounting software program. The firm's accounting office maintains the central database of information regarding time entries and out-of-pocket costs, all of which is stored digitally.

 c. At the end of each month and otherwise as appropriate and necessary, my administrative assistant and the firm's accounting office generate a draft bill in each of my active client matters for my review. Both my administrative assistant and I review every entry on every bill and edit each entry for accuracy and reasonableness. On more complex matters, as with the instant case, I ask other lawyers who have worked on the case to review the draft bill for reasonableness and accuracy to ensure that, before the bill is finalized and sent to the client, it accurately reflects the nature of the work performed and the time spent on each case.

 d. After my administrative assistant incorporates all changes, Stafford's accounting office generates a final invoice, which I review once more for any final corrections, and Stafford then sends to the client.

26. For the purpose of preparing this declaration in support of the fee petition, my administrative assistant, in conjunction with Stafford's accounting office, prepared a single, multi-month document containing all of the time entries and descriptions of service that were found on all the monthly invoices for this case through March 28, 2021. I again reviewed all the activity descriptions and the time entries associated with the described tasks.

27. A spreadsheet reflecting the services Stafford provided to Governor Evers and the expenses incurred in that representation is attached to this declaration as Exhibit A.

28. It is my opinion, based on my 15 years of litigation experience and my observations of attorneys from other firms with which I have co-counseled or opposed, that all of

11

Case 2:20-cv-01785-BHL Filed 03/31/21 Page 11 of 13 Document 146

the services described on Exhibit A were necessary and reasonable for the defense of this case. Likewise, in my opinion, the time associated with the services described on Exhibit A was reasonable. The total number of hours of legal work shown on Exhibit A is 347.6.

29. Based on my years of experience practicing law in Wisconsin and my general knowledge of charges levied by attorneys in other law firms in Madison, Wisconsin, it is my opinion that in the instant litigation, $500 is a reasonable hourly rate for my time, and $350 is a reasonable hourly rate for the time of Attorneys Snyder and Manthe. I handle complex commercial litigation matters at a higher hourly rate, both for my own time and for senior associate time.

30. This opinion finds support in the declarations of several other attorneys filed in conjunction with this one. It also finds support in the engagement letters between the Wisconsin Legislature and attorney Misha Tseytlin for the litigation of *League of Women Voters of Wisconsin v. Evers*, attached to this declaration as Exhibit B. In that litigation, Mr. Tseytlin represented the Wisconsin Legislature, which paid him an hourly rate of $500 from public funds. The engagement letters further reflect Mr. Tseytlin's assertion that such a rate was below market rates at that time, more than two years ago. Mr. Tseytlin and I both completed law school in 2006, both clerked for federal appellate judges, and have both focused our careers on complex and appellate litigation.

31. Multiplying the hours of service performed by the reasonable hourly rates detailed above yields the following total for Stafford's litigation of this case on behalf of Governor Evers: $144,610.

12

Case 2:20-cv-01785-BHL   Filed 03/31/21   Page 12 of 13   Document 146

32. In addition, Stafford incurred out-of-pocket expenses in the amount of $564.90, as reflected on Exhibit A. In my opinion, the expenses were reasonable and necessary for this litigation.

33. The aggregate total of the fees and expenses incurred for Stafford's work in this case that are sought to be recovered totals $145,174.90.

34. I anticipate that Governor Evers's motion for the award of attorneys' fees and reasonable expenses will require me to respond with co-counsel to briefs and other submissions from Plaintiff. If so, and assuming that the Court awards Governor Evers his fees and expenses through the date of this declaration, Governor Evers will submit a supplemental invoice to his request for attorneys' fees and expenses for its additional fees and expenses. I will submit a supplemental affidavit in support of that supplemental request.

This declaration is made under penalty of perjury.

Respectfully submitted this 31st day of March 2021.

/s/ Jeffrey A. Mandell
Jeffrey A. Mandell
STAFFORD ROSENBAUM LLP
222 W. Washington Ave., Suite 900
Madison, WI 53701-1784
Telephone: 608-256-0226
Email: jmandell@staffordlaw.com

*Attorney for Defendant, Governor Tony Evers*