UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

DONALD J. TRUMP, Candidate for President of the United States of America,

      Plaintiff,

v.

THE WISCONSIN ELECTIONS COMMISSION, and its members, ANN S. JACOBS, MARK L. THOMSEN, MARGE BOSTELMANN, DEAN KNUDSON, ROBERT F. SPINDELL, JR., in their official capacities, SCOTT MCDONELL in his official capacity as the Dane County Clerk, GEORGE L. CHRISTENSON in his official capacity as the Milwaukee County Clerk, JULIETTA HENRY in her official capacity as the Milwaukee Election Director, CLAIRE WOODALL-VOGG in her official capacity as the Executive Director of the Milwaukee Election Commission, MAYOR TOM BARRETT, JIM OWCZARSKI, MAYOR SATYA RHODES-CONWAY, MARIBETH WITZEL-BEHL, MAYOR CORY MASON, TARA COOLIDGE, MAYOR JOHN ANTARAMIAN, MATT KRAUTER, MAYOR ERIC GENRICH, KRIS TESKE, in their official capacities; DOUGLAS J. LA FOLLETTE, Wisconsin Secretary of State, in his official capacity, and TONY EVERS, Governor of Wisconsin, in his official capacity.

      Defendants.

Case No. 20CV1785

## DECLARATION OF MARK M. LEITNER

MARK M. LEITNER declares under penalty of perjury as follows:

1. I am an attorney who practices law in Milwaukee, Wisconsin. I have personal knowledge of all facts stated in this declaration, unless otherwise stated, and I hold all of the opinions set forth in this declaration. If called to testify as a witness, I could and would testify to

the facts and opinions set forth in this declaration. I am not receiving any monetary or other compensation for the time I spent in reviewing documents and preparing this declaration.

2. I obtained my undergraduate education at Marquette University in Milwaukee, Wisconsin, and obtained a Bachelor of Arts (cum laude) in May 1980 with majors in Journalism and Political Science. I attended graduate school at the University of Minnesota from 1980 through 1982 and left without receiving a degree to attend law school at the University of Wisconsin-Madison. I started there in August 1982 and received my J.D. (cum laude) in May 1985. I was Senior Articles Editor of the Wisconsin Law Review and was selected to the Order of the Coif, comprised of the top 10% of my graduating class.

3. After graduating from law school, I joined the firm of Reuben & Proctor in Chicago, Illinois as an associate in May, 1985. That firm merged with Isham, Lincoln & Beale in 1986, and I remained as an associate at the post-merger firm until I left in June, 1987 to join the firm of Charne, Glassner, Tehan, Clancy & Taitelman, S.C. in Milwaukee, Wisconsin. I worked at that firm and several offshoots of it until March 1992, when I joined Kravit, Gass & Weber S.C. in Milwaukee. I became a partner in that firm in 1993, and the firm's name was changed to Kravit, Gass, Hovel & Leitner, S.C. in 1998. In February 2004, I left that firm and joined the Milwaukee office of Whyte Hirschboeck Dudek S.C. as a partner. I practiced at Whyte Hirschboeck Dudek for three years until I returned to Kravit, Hovel & Krawczyk, S.C. in February 2007. In August, 2013, along with my longtime law partner Joseph S. Goode, I left Kravit, Hovel & Krawczyk S.C. to establish the Milwaukee office of the Salt Lake City, Utah firm Pia Anderson Reynard & Moss. On August 1, 2016, Mr. Goode, Attorney Jack Laffey, and I founded the Milwaukee

2

firm of Laffey, Leitner & Goode LLC. Laffey, Leitner & Goode now has nine lawyers and a thriving practice with its office in the Third Ward.

4. From the beginning of my legal career, my practice has focused on complex commercial litigation, ranging from franchise and dealership disputes, to insurance coverage matters, to patent, copyright, and trademark infringement suits, and to disputes over the ownership and control of closely-held corporations. I regularly consult with and litigate for employees and employers on issues related to restrictive covenants and confidentiality agreements. I am one of the relatively few trial lawyers nationwide to have obtained a nine-figure jury verdict as well as a nine-figure settlement representing plaintiffs in a class action case. Citations to most of my significant cases are available in the "Reported Decisions" section of my page on our firm's Web site: https://llgmke.com/attorneys/mark-m-leitner/.

5. Notwithstanding my principal career focus on complex commercial litigation, from the beginning of my career I have worked on cases to protect and extend the Constitutional and civil rights of citizens, including successfully representing an organization of Black firefighters in Milwaukee against defamation claims (*Miller v. Minority Brotherhood of Fire Protection*, 158 Wis. 2d 589, 463 N.W.2d 690 (Ct. App. 1990), and pursuing race discrimination claims based on insurance practices alleged to create illegal redlining in residential neighborhoods in Southeastern Wisconsin (*NAACP v. American Family Ins. Co.*, 978 F.2d 287 (7th Cir. 1992). I taught classes in mass media and First Amendment law to undergraduates at the University of Illinois-Chicago and at Marquette University for a total of seven years. I have been appointed by judges of the United States District Court for the Eastern District of Wisconsin as counsel to represent prisoners pro bono in their civil rights claims against prison officials, and I tried one of those cases to judgment in a

bench trial and obtained a monetary settlement in another. I am currently involved in litigating or counseling clients in four cases involving the protection of their First Amendment rights, including challenges to the constitutionality of state statutes and of state agency social media practices, defending defamation claims against an animal rights activist group, and representing university students who were unlawfully punished by the administration for First Amendment-protected speech.

6. Before 2020, I had not been involved in the litigation of any voting rights cases. In March 2020, as concerns rose about whether in-person voting could be conducted safely and expeditiously amid the health crisis and uncertainty related to the COVID-19 pandemic, our firm along with several other law firms decided to get involved in working to protect voting rights. Our team filed an action the United States District Court for the Western District of Wisconsin entitled *Edwards, et al. v. Vos*, et al., Case No. 3:20-cv-340-wmc, seeking preliminary injunctive relief and damages based on the defendants' failure to make alterations in Wisconsin voting rules and procedures to accommodate voter disabilities and their failure to preserve the Constitutional right to vote under the conditions of the pandemic. The case was consolidated for pretrial proceedings with three other cases under the case title *Democratic Nat'l Committee, et al. v Bostelmann*, et al., Case No. 3:20-cv-249-wmc. The plaintiffs in these four cases, including our clients, obtained injunctive relief from the district judge expanding and enhancing voting opportunities for Wisconsin citizens. On appeal, the Court of Appeals for the Seventh Circuit vacated the injunction, and the Supreme Court denied relief. As a result, our efforts and those of the other three plaintiff groups ultimately were unsuccessful.

7. I have significant trial experience, having tried more than a dozen cases to jury verdict and twenty more to judgment in bench trials. I have also handled more than thirty high-stakes injunction matters in trade secret, restrictive covenant, unfair competition, minority shareholder oppression, and intellectual property cases.

8. I have been listed in *Best Lawyers in America* every year since 2010. In 2020, I was named Best Lawyers' "Insurance Lawyer of the Year" in Wisconsin, and I was selected as a 2020 Best Lawyer in eleven practice areas. I have also been selected as a Wisconsin Super Lawyer every year since 2006. I have written numerous book chapters and articles on legal topics ranging from free speech to the dormant commerce clause to damages in franchise disputes, and I have presented at dozens of topics at national and local continuing legal education seminars and conventions, including the American Bar Association's annual Forum on Franchising. A partial list of those publications and presentations is available in the "Published Works and Presentations" section of my page on our firm's Web site: https://llgmke.com/attorneys/mark-m-leitner/.

9. I am admitted to practice before the United States Supreme Court, the United States Court of Appeals for the Fifth, Seventh, and Eighth Circuits, and to the United States District Courts for the District of Colorado, the Northern District of Illinois (Trial Bar), the Northern District of Indiana, the Eastern District of Wisconsin, and the Western District of Wisconsin. I am licensed to practice in Wisconsin and Illinois.

10. In my nearly thirty-six years of practice in Wisconsin and elsewhere in the United States, I have developed personal knowledge of the kinds of legal skills that are required to handle complicated lawsuits, whether those lawsuits concern a "bet-the-company" case about the business practices of a franchise system, the Constitutional right to free speech or to be free

5

Case 2:20-cv-01785-BHL   Filed 03/31/21   Page 5 of 9   Document 149

from unreasonable searches and seizures, or the rights of employer and employee under a covenant not to compete. In particular, I know from my significant experience in cases seeking temporary restraining orders and preliminary injunctions that such cases invariably require the compression into a few weeks or even days of activities that would ordinarily take place over six to twelve months, if not longer. When time is short, counsel in such a case must not only perform with the utmost excellence; he or she must also know that it is as important to decide what **not** to do as it is to choose what to do – and then make the correct decision.

11. Over those thirty-six years of practice, I have also developed personal knowledge of the hourly rates charged by lawyers both locally in Southeastern Wisconsin and throughout the United States. The geographical and subject-matter breadth of my practice has given me the experiences necessary to learn the different rates charged by lawyers who practice in various areas of law as well as the rates typically charged in many different georgraphic areas. Based on that experience, I am confident that I have a solid factual foundation to opine about the reasonableness of a lawyer's and a law firm's hourly rate and about the quality of their work, especially when it is a lawyer and law firm whose work I have observed in a case first-hand.

12. My standard hourly rate is $450 per hour. I set this rate based on my experience, skill, and track record of success over nearly thirty-six years of practice. I suspect that I could charge and receive a higher rate but I do not want to price my services out of range of the family-owned businesses that comprise a decent share of our firm's client base. Less senior lawyers in our firm charge standard hourly rates between $375 and $250 per hour.

Paralegals charge $175 per hour. We regularly charge these rates to clients, and our clients regularly pay them.

13. Along with a five-lawyer team from the Lawyers' Committee for Civil Rights Under Law ("Lawyers' Committee"), our firm's election law team from the *Edwards* case was asked after the Presidential election in November 2020 to prepare to participate in challenges to the election result brought by an unsuccessful candidate or campaign or by aggrieved voters. We agreed to do so, and later learned that we would likely be representing the Wisconsin Branch of the NAACP and possibly some of its members, either as intervening parties or as amici curiae. Ultimately, our firm and the Lawyers' Committee team represented the NAACP and several of its members in several state court matters and in two federal court lawsuits challenging the award of Wisconsin's 10 electoral votes to then-President-Elect Joseph R. Biden, Jr. and then-Vice President-Elect Kamala D. Harris.

14. We became involved in the above-captioned case shortly after it was filed in early December 2020. On behalf of the Wisconsin State Conference-NAACP and its members Dorothy Harrell, Wendell J. Harris, Sr., and Earnestine Moss, we moved to intervene as defendants, and the Court granted that motion. After that, our team served as counsel for parties in the case, filing briefs, attending the hearing, and participating in closing argument, although our work was in no way comparable to the much more extensive efforts undertaken by counsel for the named defendants.

15. Through my participation as one of the lawyers for the NAACP parties, I read the briefs and other filings of Attorney Mandell and his firm on behalf of Governor Evers, and although I did not myself appear on behalf of our clients, I listened to the trial proceedings. The written work product of Attorney Mandell and his colleagues was uniformly excellent,

presenting easily-understood analyses of complicated legal issues and identifying incorrect positions taken by then-President Trump in his briefs. At the trial, Mr. Mandell was an outstanding advocate, focusing the Court on the deficiencies in the opposition's proof, emphasizing the legal authority supporting measures taken before the election to provide citizens with safer and more extensive opportunities to vote, and reminding the Court of the presumptions of validity and regularity that attend election results that are tallied and certified under state laws.

16. In preparation for writing this declaration, I also reviewed a document provided to me by Attorney Mandell entitled "Trump Fee Allocation." Based on my experience in complex injunction litigation, I believe the time logged by Attorney Mandell, Attorney Snyder, and Attorney Manthe for their work in defending against the claims of then-President Trump before this Court and before the Seventh Circuit and the United States Supreme Court is eminently reasonable. This case had all the hallmarks of a difficult, complex injunction matter: extremely high stakes, severe time pressure, an aggressive opponent, significant work that was necessary to understand the opposing arguments and prepare the facts and law necessary to defeat them, work to coordinate with other defense counsel and to prepare stipulated facts with counsel for the plaintiff, and – significantly – the result achieved: total victory. The work descriptions provide more detail than I have seen in legal bills submitted to and paid without objection by Fortune 500 companies. I am confident that the total amount of work reflected on the bill is reasonable, as is the allocation of work among the members of the Stafford Rosenbaum legal team.

17. I am also confident that the hourly rates of $500 for Attorney Mandell and $350 for Attorney Snyder and Attorney Manthe are more than reasonable under any circumstances.

In a case involving all of the difficulties confronted by the Evers team that I list in Paragraph 16, known to all at the outset of the case, I would expect that attorneys might seek, and clients gladly would pay, a premium over regular hourly rates. These rates are at the very low end of what I would consider reasonable for the circumstances presented.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 31, 2021.

/s/Mark M. Leitner