# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

DONALD J. TRUMP, Candidate for President of the
United States of America,

      Plaintiff,

      v.                             Case No.: 2:20-cv-01785-BHL

THE WISCONSIN ELECTIONS COMMISSION, and its
Members, ANN S. JACOBS, MARK L. THOMSEN,
MARGE BOSTELMANN, DEAN KNUDSON,
ROBERT F. SPINDELL, JR., in their official capacities,
SCOTT MCDONELL in his official capacity as the Dane
County Clerk, GEORGE L. CHRISTENSON in his
official capacity as the Milwaukee County Clerk,
JULIETTA HENRY in her official capacity as the
Milwaukee Election Director, CLAIRE WOODALL-
VOGG in her official capacity as the Executive Director
of the Milwaukee Election Commission, MAYOR TOM
BARRETT, JIM OWCZARSKI, MAYOR SATYA
RHODES-CONWAY, MARIBETH WITZEL-BEHL,
MAYOR CORY MASON, TARA COOLIDGE,
MAYOR JOHN ANTARAMIAN, MATT KRAUTER,
MAYOR ERIC GENRICH, KRIS TESKE, in their
official capacities; DOUGLAS J. LA FOLLETTE,
Wisconsin Secretary of State, in his official capacity, and
TONY EVERS, Governor of Wisconsin, in his official capacity,

      Defendants.

## BRIEF IN SUPPORT OF DEFENDANTS CORY MASON, TARA COOLIDGE, JOHN ANTARAMIAN, MATT KRAUTER, ERIC GENRICH, and KRIS TESKE MOTION FOR AN AWARD OF ATTORNEY FEES

      Defendants Cory Mason, Tara Coolidge, John Antaramian, Matt Krauter, Eric Genrich and

Kris Teske, in their official capacity, by their attorneys Lawton & Cates, S.C. by Daniel P. Bach,

Dixon R. Gahnz, Daniel S. Lenz, and Terrence M. Polich, submit the following Brief in Support

of their Motion for an Award of Attorney Fees pursuant to 28 U.S.C. § 1927; 28 U.S.C. § 1988;

and the Court's inherent authority. *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 953 (7th Cir. 2020)

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Complaint.

Wisconsin and the nation held the 2020 General Election on November 3, 2020. Almost 3.3 million Wisconsin citizens voted for the office of President of the United States. Joseph R. Biden, Jr. beat the plaintiff, Donald J. Trump, by 20,682 votes. Unhappy with the results, the plaintiff started a series of overlapping legal actions in state and federal venues. [*See* Dkt. No. 134, p. 10].   This was consistent with the plaintiff's unsuccessful scorched earth tactics after the election[1]. It included the Complaint in this case, in which the plaintiff claimed that defendants, a number of state and municipal officials in Wisconsin, violated his constitutional rights in the conduct of the 2020 General Election. Among the defendants were the movants: Cory Mason, Mayor of the City of Racine; Tara Coolidge, Clerk of the City of Racine; John Antaramian, Mayor of the City of Kenosha; Matt Krauter, Clerk of the City of Kenosha; Eric Genrich, Mayor of the City of Green Bay; and Kris Teske[2], Clerk of the City of Green Bay. [Dkt. No. 1].

In the course of his 72-page complaint, the plaintiff made little mention of the movants. The plaintiff's only allegations involving these defendants were (1) that the municipalities where they served used absentee drop-boxes during the elections and (2) that these municipalities also received grants from the Center for Tech and Civil Life ("CTCL")[3]. [Dkt. No. 1, ¶¶ 208-234].

The extent of the plaintiff's allegations regarding drop boxes in Green Bay, Kenosha and

---

[1] *See https://www.usatoday.com/in-depth/news/politics/elections/2021/01/06/trumps-failed-efforts-overturn-election-numbers/4130307001/*
[2] Ms. Teske no longer holds this office.
[3] The Complaint also contained vague allegations regarding poll workers or election officials correcting absentee ballots or preventing poll observers. [Dkt. No. 1, ¶ 291, 235].

2

Racine were that they were:

> 214.  The unlawful unmanned drop boxes used in Madison, Milwaukee, Racine, Kenosha and Green Bay in the 2020 Presidential Election, were an integral part of the five Mayors' plan to 'encourage higher percentages of [the Mayors'] electors to vote absentee.
>
> …
>
> 216. Recognizing "very small numbers of voters had traditionally chosen to cast ballots by mail," the five Mayors sought through their coordinated plan to "promote absentee voting,"61 including through unlawful, unmanned drop boxes, "in the midst of a global pandemic when many voters are . . . apprehensive about in-person voting.
>
> 217. Yet, the five Mayors' Voting Plan included no data or analysis supporting the claim that in-person voting with social distancing and mask wearing was any less safe than voting via curbside voting or illegal drop boxes.

 [Dkt. No. 1, ¶¶ 214, 216-217].

The plaintiff's lengthier allegations regarding Green Bay, Racine and Kenosha, however, involved their applications for and receipt of CLTC grants:

> 218. The Mayors received the entire $6,324,567 request for funding they sought from CTCL and the impact of the funding and their plan to expand absentee voting in their cities is undeniable.
>
> …
>
> 221. However, the extraordinary voter turnout in these cities was achieved via an unlawful absentee-ballot expansion plan that flouted state law limits on absentee voting, reduced barriers to fraud, and introduced manifold opportunities for abuse by rushing in an untested, unauthorized, standardless new absentee balloting process in Wisconsin.
>
> 222. Rather than seek to raise the protections surrounding mail-in ballots to address the increased risk of fraud associated with this type of voting, there was a directed effort by the five largest cities in Wisconsin to reduce the guardrails against mail-in ballot fraud and make the voting system less, rather than more, secure.
>
> 223. CTCL funding like that received by the Mayors of Wisconsin's five largest cities to promote a massive absentee ballot expansion program and opened

the doors to ballot harvesting and voter coercion, among other practices about which the Wisconsin Legislature has expressly stated its concerns, was also received by other jurisdictions across America.

…

226. In Wisconsin, the more than $6.3 million received from CTCL by the State's five largest cities for their Mayors' Voting Program nearly equaled the total of $7.2 million in total federal CARES Act funding available to the Wisconsin Elections Commission and dwarfed the $4.1 million in CARES Act funds available to the entire state to help local election officials "prepare for Fall 2020 elections amid the COVID-19 pandemic."

…

229. The partisan correlation of funding under the "Safe Voting Plan" in Wisconsin in 2020 is summarized in the following table:

| Jurisdiction/City | Grant Amount | Trump 2016 Votes | Clinton 2016 Votes | Clinton Percentage |
|---|---|---|---|---|
| Madison | $ 1,271788 | 23,053 | 120,078 | 83.89% |
| Milwaukee | $ 2,154,500 | 45,167 | 188,653 | 80.68% |
| Racine | $ 942,100 | 8,934 | 19,029 | 68.05% |
| Kenosha | $ 862,779 | 15,829 | 22,949 | 58.98% |
| Green Bay | $ 1,093,400 | 19,821 | 21,291 | 51.78% |
| Totals | $ 6,324,567 | 112,804 | 372,000 | 76.73% |

[Dkt. No. 1].

## II.     Prior CLTC Funding Lawsuit.

This case was not the first time that this Court has been asked to rule on the legality of the CLTC grant activities. Prior to the 2020 General Election, the Wisconsin Voters Alliance and several individuals sued these same municipalities and sought an order enjoining them from "accepting or using CTCL's private federal election grant and other similar private federal election

grants." *Wisconsin Voters All. v. City of Racine*, No. 20-CV-1487, Dkt. No. 1 (Sep. 24, 2020). The Court, Judge Griesbach presiding, denied the relief sought. *Wisconsin Voters All. v. City of Racine*, No. 20-CV-1487, 2020 WL 6129510, *1 (E.D. Wis. Oct. 14, 2020) (Griesbach, J.), *stay denied*, 2020 WL 6591209 (E.D. Wis. Oct. 21, 2020), *stay denied*, No. 20-3002 (7th Cir. Oct. 23, 2020), *stay denied*, No. 20A75 (U.S. Oct. 29, 2020) (Kavanaugh, J., in chambers). Judge Griesbach specifically noted that CLTC is a private organization and that it provided grants to over 100 municipalities throughout Wisconsin. *Id.*, **1-2. Judge Griesbach continued: "Plaintiffs have presented at most a policy argument for prohibiting municipalities from accepting funds from private parties to help pay the increased costs of conducting safe and efficient elections." *Id.*, *2.

### III.    Evidentiary Proceedings.

Following extensive briefing on an abbreviated schedule, on December 10, this Court conducted a final evidentiary hearing. [Dkt. No. 133]. During the hearing, the parties submitted a Stipulation of Proposed Facts and Exhibits ("Stipulation"). [Dkt. No. 127]. The Court approved the Stipulation and accepted the exhibits into evidence. [Dk. No. 133].

The Stipulation makes no reference to the movants or the cities of Green Bay, Kenosha or Racine. They are completely absent from the stipulations regarding absentee ballot drop boxes. [Dkt. No. 127, ¶¶ 11-13, 27-30]. There are no other stipulated facts specifying how the movants conducted the 2020 General Election.

Similarly, there is scant evidence even involving the movants contained within the plaintiff's 74[4] exhibits. The exhibits contain specific drop box information regarding several municipalities - including Madison, Milwaukee, Hayward, Menasha, Town of Vermont, DeForest and the Village of Boyd. [Dkt. Nos. 117-19; 117-20; 117-21; 117-22; 117-23; 117-27]. The

---

[4] The Exhibit List is numbered 1-75, but number 51 was not used. [Dkt. No. 117].

plaintiff also cited these municipalities in his complaint. [Dkt. No. 1, ¶ 201]. The plaintiff did not submit specific drop box information about Green Bay, Kenosha or Racine. The plaintiff also submitted the WEC "Drop Box List" which indicated that drop boxes were widely available in many Wisconsin municipalities, including those served by the movants. [Dkt. No. 117-18]. There was no information provided on the specific policies of these municipalities or why the plaintiff believed they had violated his constitutional rights.

The record did, however, contain information regarding the CTCL grants, the purported basis of the plaintiff's other claim involving the movants. However, the plaintiff's evidence belied his claims. The plaintiff presented a Safe Voting Plan from Green Bay, Kenosha and Racine, along with Madison and Milwaukee, outlining their experience in the April 2020 Election and needs for the 2020 General Election in November. [Dkt. No. 117-12]. The statement includes a funding request for a total of $6,324,567, and a corresponding press release from CTCL. [Dkt. No. 117-12, p. 5; 117-28]. The CTCL material provided by the plaintiff makes it clear that grant funding was open to "every local election official in the country." [Dkt. No. 117-31, p. 2]. In fact, a cursory review of the CTCL website, also part of the record, reveals that it provided grants to over a hundred municipalities throughout Wisconsin, including Waukesha, West Allis and Calumet. [Dkt. No. 101-7, pp. 24-28].

The only other evidence in the record regarding the movants are two signed statements from individuals who claim to have witnessed individual instances of election irregularity in Racine, and a single news article about Green Bay, which indicated that the election had gone fairly smoothly in that city. [Dkt. Nos. 117-39, 117-40; 117-30].

## IV.    Decision.

Following the evidentiary hearing, on December 13, 2020, this Court issued its Decision and Order, holding that the plaintiff's claims "fail as a matter of law and fact" and that Wisconsin had chosen its Electors in the manner prescribed by the Legislature. [Dkt. No. 154, p. 22]. The plaintiff appealed and on December 24, 2020, the Court of Appeals affirmed, holding not only that the plaintiff's claims failed on the merits, but that they were also barred due to plaintiff's delay in only bringing them after the election. *Trump v. Wis. Elec. Comm'n*, 983 F.3d 919, 925-926 (7th Cir. Dec. 24, 2020). The plaintiff filed a petition for a writ of certiorari, which the Supreme Court recently denied. *Trump v. Wis. Elec. Comm'n*, --- S.Ct. ----, 2021 WL 850635 (Mem) (March 8, 2021),

## V.    Participation by the Movants.

Despite the plaintiff's thin claims, the movants were compelled to respond to the plaintiff's allegations. On December 8, 2021, pursuant to this Court's order, they joined defendants from the City of Madison in moving to dismiss the plaintiff's complaint and in responding to his motion for a preliminary injunction. [Dkt. Nos. 71, 73, 75]. Counsel for the movants participated in the December 10 evidentiary proceedings and collaboratively with counsel for the co-defendants throughout the appellate process. To date, the movants have incurred $34,072.50 in attorney's fees defending this action.

## ARGUMENT

In its Decision and Order dismissing the plaintiff's complaint, the Court emphasized twice that the case was *extraordinary* and that the relief sought was "even more *extraordinary.*" (Dkt. No. 134, pp. 1, 22)(emphasis original). Indeed, the plaintiff's audacious attempt to overturn the results of the election in Wisconsin, premised as it was on wholly insufficient legal and factual

7

grounds, was astonishing. And now that the plaintiff's claims have been roundly rejected after appellate review, justice requires that the movants be fairly and reasonably compensated for having to defend against the plaintiff's meritless lawsuit.

**I.      The Movants Are Entitled to Recover Attorney Fees Pursuant to 28 U.S.C § 1988.**

The plaintiff filed claims against the movants pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. (R. 1, ¶ 23.) The Court dismissed all of the plaintiff's claims on the merits. Chapter 42, United States Code, § 1988(a) provides that in an action to enforce a provision of § 1983, a court, in its discretion, may allow the prevailing party "a reasonable attorney's fee as part of the costs" of the litigation. There is no question that the movants are the prevailing party in this case: all of the plaintiff's claims were dismissed with prejudice, the movants' motion to dismiss was granted, and the plaintiff was denied injunctive relief.

Congress enacted § 1988 not only to make it easier "for a plaintiff with limited means to bring a meritorious suit," but also "to protect defendants from burdensome litigation having no legal or factual basis." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 420, 98 S. Ct. 694 (1978). Those twin objectives are of equal importance. *Id.* Accordingly, a prevailing defendant may be awarded attorney fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421; accord *Fox v. Vice,* 563 U.S. 826, 131 S. Ct. 2205 (2011). However, an even stronger basis for awarding a defendant attorney fees will lie if a plaintiff is found to have brought or pursued a claim in bad faith. *Christiansburg,* 434 U.S. at 422.

As discussed above, the allegations in the complaint against the movants fall along two lines: 1) the use of unmanned drop boxes; and 2) the application for and receipt of CLTC grants.

A similar legal challenge to the use of CLTC grants by municipalities was rejected by Judge Griesbach on October 14, 2020, well before the plaintiff filed this lawsuit on December 2, 2020. In that case, Judge Griesbach found that the challenge to the use of CLTC funds raised, at most, a policy argument about the use of private funds to run elections. In order to establish his claims under § 1983, the plaintiff had to prove that his constitutional rights were violated. The arguable policy implications attendant to the use of CLTC funds do not even remotely provide the basis of a constitutional violation -- the violation of a specific constitutional right belonging to the plaintiff. Just weeks before filing these claims against these defendants, this Court had rejected a legal challenge to the use of CLTC funds by municipalities. Advancing plaintiff's claims on the basis of the same failed arguments rejected by Judge Griesbach weeks before this lawsuit was filed, provides ample evidence that the claims are unreasonable, without foundation and brought in bad faith.

As this Court found, the plaintiff's challenge to the use of drop boxes goes to the implementation of the Wisconsin Legislature's manner of appointing Presidential Electors. The three mayors who are among the movants here have no statutory role in the conduct of elections. That responsibility largely falls to municipal clerks. *See* Wis. Stat. § 7.15. Those clerks followed the guidance of the WEC, which in turn was acting pursuant to the authority granted it by the Legislature. The plaintiff produced no evidence that the municipal clerks in Green Bay, Racine and Kenosha acted outside the guidance provided by the WEC. Moreover, as this Court observed, "the plain meaning of the Constitutional text and common sense" defeat the plaintiff's attempt to manufacture an Electors Clause violation premised on alleged irregularities in the administration of Wisconsin's election. (Dkt. No. 134, p. 20.) The plaintiffs failed to produce any evidence of illegality and failed to sue the proper parties who allegedly engaged in the alleged conduct.

There can be no better illustration of an unreasonable claim, lacking foundation that is brought in bad faith, entitling an award of attorney fees pursuant to § 1988.

## II.    The Movants Are Entitled to Recover Costs and Attorney Fees Pursuant to 28 U.S.C § 1927.

A prevailing defendant may recover attorney fees from opposing counsel pursuant to 28 U.S.C. § 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

An award of attorney fees under § 1927 may be premised on a finding of objective bad faith. *Bell v. Vacuforce, LLC,* 908 F.3d 1075, 1081-82 (7th Cir. 2018), citing *Hunt v. Moore Bros., Inc.,* 861 F.3d 655, 659 (7th Cir. 2017). "A lawyer demonstrates objective bad faith when she 'pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound.'" *Bell,* 908 F.3d at 1082 (citations omitted). A court has broad discretion to issue sanctions under § 1927. *Hunt,* 861 F.3d at 660.

By filing the complaint in this case, counsel for the plaintiff represented that the claims set forth therein were "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Counsel also represented that the factual asserting in the complaint had evidentiary support. Fed. R. Civ. P. 11(b)(3). However, as discussed above, the claims against the movants did not set forth even arguable violations of the plaintiff's constitutional rights. The complaint pinned the plaintiff's right to relief on the farfetched assertion that the Electors Clause afforded him a constitutional right to have the election in Wisconsin administered in a particular fashion. As this Court stated in its Decision and Order, the plaintiff's claims, if accepted, would allow any disappointed loser in a

Presidential election to challenge election results based on alleged deviations from election rules. (Dkt. No. 134, p. 20.) Even if election officials had violated state laws in the conduct of the election, it is well settled that a mere failure to comply with state rules does not entitle anyone to relief under § 1983. *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir.1975).

In addition to the deeply flawed legal underpinnings of the complaint, the facts alleged with respect to the movants never garnered a shred of support in the record. The stipulated facts presented to the Court bear no mention of the movants in regard to absentee ballot drop boxes. There are no stipulated facts as to how the movants conducted the election. The exhibits did not include any drop box information about the movants. The allegations in regard to CLTC funding, misleadingly described as a "partisan correlation of funding," obscured the fact that CLTC grant funding was available to every local election official, nationwide. In sum, plaintiff's counsel provided no evidence to the Court that could possibly sustain the factual allegations made against the movants.

Finally, the objective bad faith of plaintiff's counsel in filing and litigating this action is evidenced by the scope of the relief sought and their relentless pursuit of it all the way to the United States Supreme Court, well after the election results in Wisconsin had been determined and certified. In essence, plaintiff's counsel sought to disenfranchise every Wisconsin voter. Wisconsin Supreme Court Justice Hagedorn described similar relief sought in a case before that court as a "real stunner….unprecedented in American history," and "the most dramatic invocation of judicial power I have ever seen." *Wisconsin Voters Alliance v. Wisconsin Elections Comm'n,* No. 2020AP1930-OA, pp. 2-3 (Dec. 4, 2020) (Hagedorn, J., concurring). The election was long past by the time the complaint was filed, a fact which highlighted the absurdity of suing the movants, some of whom had no role in the election process and others whose job was completed.

Despite losing their case before the trial court on the merits and not gaining any precedential support from the myriad election challenges filed by the plaintiff throughout the country, plaintiff's counsel soldiered on to the Seventh Circuit Court of Appeals and beyond. Pursuing appeals alone is not a basis for relief under § 1927, but doing so without valid legal or factual grounds to support your arguments certainly is. The movants, whose municipalities have borne the cost of defending this case, should recover all of their expenses incurred in defeating claims that no attorney should have filed.

## III. The Court Should Exercise its Inherent Power to Award Attorney Fees to the Movants.

The "American Rule" provides that in the absence of a statute or enforceable contract providing therefor, attorney fees are not recoverable. *F.D. Rich Co., Inc. v. Industrial Lumber Co.,* 417 U.S. 116, 126, 94 S. Ct. 2157 (1974). Aside from statutes and contracts, there are three exceptions to the American Rule, one of which is that a court may assess attorney fees when the losing party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons…" *Id.* at 129. These exceptions are "assertions of inherent power in the courts to allow attorneys' fees in particular situations," unless forbidden by Congress. *Alyeska Pipeline Svc. Co. v. Wilderness Soc'y,* 421 U.S. 240, 259, 95 S. Ct. 1612 (1975).

A fee award under the bad faith exception requires subjective bad faith---"some proof of malice entirely apart from inferences arising from the possible frivolous character of a particular claim." *Copeland v. Martinez,* 603 F.2d 981, 991 (D.C. Cir. 1979). Bad faith may be found "not only in the actions that led to the lawsuit, but in the conduct of the litigation." *Hall v. Cole,* 412 U.S. 1, 15, 93 S. Ct. 1943 (1973).

The plaintiff's litigation strategy – how he conducted this case and pursued his meritless claims against the movants – evinces bad faith. The most serious fault is that the core of the

plaintiff's allegations – the existence and distribution of the CTCL grants – had been fully litigated *in this Court only a few weeks before the plaintiff filed his complaint in the instant case*. The movants had already responded to an identical claim and had prevailed.

This is characteristic of the plaintiff's tactics in the post-election period, during which he and his supporters burdened state and federal courts with vexatious, overlapping grievances. [*See e.g.* Dkt. Nos. 95-2 – 95-24]. Despite being repeatedly warned of the toxic consequences of these actions, including by the Wisconsin Supreme Court, the plaintiff and his attorneys did not abandon or alter their conduct. This includes admonition regarding the nature of the relief sought, as well as the fact that the plaintiff's claims were untimely. *See e.g. Trump v. Biden*, 2020 WI 91, ¶ 32, 394 Wis. 2d 629, 951 N.W.2d 568, 577, cert. denied, No. 20-882, 2021 WL 666465 (Feb. 22, 2021) ("Election claims of this type must be brought expeditiously. The Campaign waited until after the election to raise selective challenges that could have been raised long before the election."). The plaintiff's delay until the results were in, followed by a scattershot approach that created dangerous doubt and confusion, are indicative of his bad faith in bringing and pursuing this litigation and should not be overlooked.

**IV.     The Attorney Fees Sought by the Movants are Reasonable.**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010) ("[T]he lodestar method yields a fee that is presumptively sufficient to achieve this objective."). In the context of fee-shifting under § 1988, the lodestar looks to "the prevailing market rate in the relevant community." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551, 130 S. Ct. 1662, 1672, 176 L. Ed. 2d 494 (2010), *quoting Blum v. Stenson*, 465 U.S. 886, 895, 104

13

S.Ct. 1541, 79 L.Ed.2d 891 (1984). "The reasonable hourly rate (or "market rate") for lodestar purposes is 'the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question.'" *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000), *quoting Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999).

Counsel for the movants spent a total of 154.8 hours in this case. The specific hours, broken down by attorney, are below:

| Attorney | Hours | Rate | Total |
|----------|-------|------|-------|
| Terrence M. Polich | 24.1 | $275 | $6,627.50 |
| Dixon R. Gahnz | 42.2 | $275 | $11,605.00 |
| Daniel P. Bach | 46.5 | $275 | $12,787.50 |
| Daniel S. Lenz | 42.0 | $275 | $11,550 |
| | | **Total** | $42,570 |

[Bach Dec. ¶ 30].

a. **The Time Spent by the Movants' Counsel Was Reasonable**

The time which movants' counsel spent on this case, and for which the movants seek attorney fees, was reasonable and necessary to prevail in this case, particularly considering the pace and scope of the legal work needed to defend against the plaintiff's extraordinary claims. The amount of the fee awarded turns "on the facts of each case." *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937; *See Hibma v. Odegaard,* 769 F.2d 1147, 1157 (7th Cir. 1985). In determining whether a requested fee award is reasonable, courts look to the relative difficulty or complexity

of the litigation. *Forney v. Wolke*, 483 F. Supp. 808, 809 (E.D. Wis. 1980) (discussing fee awards pursuant to § 1988). The amount of fees awarded pursuant to § 1927 are awarded to compensate he innocent party and deter the vexatious litigant. *Kapco Mfg. Co. v. C & O Enterprises, Inc*., 886 F.2d 1485, 1491 (7th Cir. 1989).

This case, brought by a losing candidate for President of the United States against approximately twenty defendants to overturn a lawful election, was litigated through a final evidentiary hearing and decision by this Court in the span of ten days.  [Dkt Nos. 1-138]. It was briefed and decided by the Court of Appeals within another ten days. [Dkt. No. 136]; *Trump v. Wisconsin Elections Comm'n*, 983 F.3d 919 (7th Cir. Dec. 24, 2020), *cert. denied Trump v. Wisconsin Elections Comm'n,* No. 20-883, 2021 WL 850635 (U.S. Mar. 8, 2021). The complaint was seventy-two pages long and contained 302 paragraphs. [Dkt. No. 1]. It was accompanied by forty-four exhibits, an emergency motion for a preliminary injunction, and a request for a hearing on that motion within forty-eight hours of filing. [Dkt. Nos. 6, 12]. The time pressures were solely the product of the plaintiff's inexcusable delay in bringing suit *after the election* and only twelve days before Wisconsin's electors were scheduled to meet and vote.

Responding to the plaintiff's allegations and motion was a complex undertaking. Not only were the plaintiff's claims confusingly drafted, but they also presented a mixture of fact and legal conclusions. [Dkt. No. 1]. The movants (and other defendants) had to present various other defenses, including: lack of subject matter jurisdiction, laches, mootness and various abstention doctrines. The case also involved specific issues of state law – particularly Wisconsin statutes governing its elections. [*See generally* Dkt. No. 70].

The movants' counsel nonetheless handled the case efficiently and judiciously, particularly given the speed, complexity and importance of the litigation, as well as the

underlying difficulties presented by the ongoing health emergency. The movants, six officials representing three municipalities, coordinated their defense with a single law firm. The movants also coordinated with similarly situated parties – namely the City of Madison and Dane County defendants – to reduce duplicative motions to dismiss and responses to the plaintiff's motion for a preliminary injunction. [Dkt. Nos. 70, 73, 75]. Similarly, during oral presentation to the Court and on appeal, the movants coordinated with other defendants to avoid duplicative work and presentation of argument.

As set forth in the Declaration of Daniel P. Bach filed herewith, counsel for the movants have reviewed the relevant time records to ensure that they do not contain duplicative, wasteful or overlapping charges. [Bach Dec. ¶ 27]. The time spent in this case was reasonable and necessary to respond to the plaintiff's frivolous, vexatious and bad-faith allegations.

**b. Movants' Counsels' Hourly Rates are Reasonable**

The hourly rate described above is also reasonable. "The reasonable hourly rate used in calculating the lodestar must be based on the market rate for the attorney's work. 'The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'" *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 519 (7th Cir.1993), *quoting Eddleman v. Switchcraft, Inc*., 965 F.2d 422, 424 (7th Cir. 1992) (internal citation omitted). The attorney's actual billing rate for comparable work is "presumptively appropriate" to use as the market rate. *Gusman v. Unisys Corp*., 986 F.2d 1146, 1150 (7th Cir. 1993). The actual rate paid by the client in the case at issue is also presumptively appropriate. *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009), *citing People Who Care v. Rockford Bd. of Educ*., 90 F.3d 1307, 1311 (7th Cir. 1996). In this case, the movants seek reimbursement for attorney fees at the actual rate paid. [Bach Dec.

¶¶ 31-32]. This is *below* the standard billing rates for movants' attorneys, all of whom are experienced attorneys with experience in election law. Movants' counsel routinely charge rates ranging from $250 to $750 per hour. [Bach Dec. ¶¶ 10, 15, 20, 25].

<u>**CONCLUSION**</u>

In addition to the foregoing, and for purposes of efficiency, the movants adopt and incorporate by reference the arguments as set forth in Sections I.A though I.G and I.I, as well as II.C, IV and V of the Argument section of Governor Evers's Brief in Support of His Petition for Attorneys' Fees and Sanctions. [Dkt No. 145]. For the reasons stated herein and in the arguments incorporated by reference, and pursuant to pursuant to 28 U.S.C. § 1927; 28 U.S.C. § 1988; and the Court's inherent authority, Defendants Cory Mason, Tara Coolidge, John Antaramian, Matt Krauter, Eric Genrich and Kris Teske, in their official capacity, respectfully request this Court to tax attorney's fees in the amount of $42,570 imposed jointly and severally against Plaintiff Donald J. Trump and his attorneys.

Respectfully Submitted on this 2nd day of April, 2021.

LAWTON & CATES, S.C.

*/s/ Daniel S. Lenz*
Dixon R. Gahnz, SBN 1024367
Daniel P. Bach, SBN 1005751
Terrence M. Polich, SBN 1031375
Daniel S. Lenz, SBN 1082058

345 West Washington Avenue, Suite 201
Madison, WI 53703
(608) 282-6200

dgahnz@lawtoncates.com
dbach@lawtoncates.com
tpolich@lawtoncates.com
dlenz@lawtoncates.com

*Attorneys for Defendants*

17

*Cory Mason, Mayor of the City of Racine,*
*Tara Coolidge, City Clerk of the City of Racine,*
*John Antaramian, Mayor of the City of Kenosha,*
*Matt Krauter, City Clerk of the City of Kenosha,*
*Eric Genrich, Mayor of the City of Green Bay, and*
*Kris Teske, City Clerk of the City of Green Bay*