# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DONALD J. TRUMP,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No. 20-CV-1785-BHL

WISCONSIN ELECTIONS COMMISSION, *et al.*,

    Defendants.

## MEMORANDUM OF LAW OF DEFENDANTS GEORGE L. CHRISTENSON AND JULIETTA HENRY IN SUPPORT OF THEIR MOTION FOR ATTORNEY FEES

In support of their motion for attorney fees, defendants George L. Christenson, in his capacity as the Milwaukee County Clerk, and Julietta Henry, in her capacity as the Milwaukee County Elections Director (together, "Milwaukee County"), join and incorporate by reference the arguments in Governor Evers' motion for fees, supporting brief, and declarations (ECF Nos. 144–151). Milwaukee County also submits this additional brief to elaborate on one of the strongest and most straightforward grounds for awarding fees here: the extreme, unprecedented, and anti-democratic relief that plaintiff, Donald J. Trump, sought. Although the form of his desired remedy was a moving target, the substance was always the same: Trump sought to set aside the results of the presidential election in Wisconsin, discarding the ballots of nearly 3.3 million voters and opening the door for the state legislature to appoint a slate of electors presumably favorable to himself. Trump never offered any legal or factual basis for his breathtaking request, and none exists. The relief he sought was entirely baseless and amply justifies the imposition of sanctions against Trump and his counsel under both 28 U.S.C. § 1927 and this Court's inherent authority.

1

## RELEVANT BACKGROUND

As this Court noted in its December 12, 2020 Decision and Order dismissing Trump's claims, the Wisconsin Elections Commission ("WEC") guidance that Trump challenged was in place long before he brought this lawsuit. (ECF No. 134 at 6-9.) The WEC issued guidance on voters' use of "indefinitely confined" status on March 29, 2020, and regarding the use of absentee ballot drop boxes on August 19, 2020. (Pl. Ex. 2, ECF No. 117-2; Pl. Ex. 13, ECF No. 117-13.) The WEC's guidance on the third issue—how to deal with missing or incorrect witness addresses on absentee ballots—dates back even further, to October 18, 2016, more than four years before Trump filed this challenge. (Stipulation, ECF No. 127 ¶ 4; ECF No. 117-72.)

Trump easily could have challenged this guidance long before the 2020 election. *See Trump v. WEC,* 983 F.3d 919, 926 (7th Cir. 2020) ("The President had a full opportunity before the election to press the very challenges to Wisconsin law underlying his present claims."), *cert. denied,* 2021 WL 850635 (Mem.) (Mar. 8, 2021). Yet, whether strategically or for some other reason, he chose not to. Instead he waited to bring this action until *after* millions of Wisconsin voters had already cast their ballots and handed victory in this state to President Biden and Vice President Harris.

The presidential election took place on November 3, 2020. (Stipulation, ECF No. 127 ¶ 7.) The county canvasses were complete on November 17, 2020. (*Id.* ¶ 8.) The next day, Trump requested a recount of the votes only in Milwaukee and Dane Counties. (*Id.* ¶ 9.) After the recount confirmed the election results, the WEC certified the results and Governor Evers signed the certificate on November 30, 2020. (Def. Ex. 501, ECF No. 119-1.) After an unsuccessful petition to commence an original action in the Wisconsin Supreme Court, Trump filed two parallel lawsuits on December 3, 2020: this federal lawsuit, and a substantially similar action in state circuit court.

2

A full month had already passed since the election. And with roughly one more month until Congress was to count the Electoral College votes under 3 U.S.C. § 15, this action had to proceed at breakneck pace. The Court set an evidentiary hearing for December 10, 2020, leaving less than a week to respond to discovery, identify witnesses, file dispositive motions, and oppose Trump's motion for expedited declaratory and injunctive relief. (*See* Scheduling Order, ECF No. 45.) Milwaukee County filed a motion to dismiss and a 31-page supporting brief on December 8, 2020. (ECF Nos. 78, 81.) The hearing went forward on December 10, 2020, and this Court promptly issued its decision on the merits on December 12, 2020. (ECF No. 134.) All the while, Milwaukee County and various of its co-defendants were simultaneously litigating Trump's parallel state-court action in circuit court and then the Wisconsin Supreme Court, which issued its decision rejecting Trump's arguments on December 14, 2020. *Trump v. Biden,* 2020 WI 91, 951 N.W.2d 568 (2020), *cert. denied,* 2021 WL 666465 (Mem.) (Feb. 22, 2021).

Trump immediately appealed this Court's ruling on December 12, 2020, and the Seventh Circuit ordered expedited briefing at Trump's request. Defendants had roughly two days to produce a 42-page consolidated appellee brief. (*See Trump v. WEC,* No. 20-3414 (7th Cir. 2020), ECF No. 73.) The Seventh Circuit issued its decision on December 24, 2020. *Trump v. WEC,* 983 F.3d 919 (7th Cir. 2020). Trump then filed a petition for a writ of certiorari in the U.S. Supreme Court, which was ultimately denied, finally bringing this hard-fought litigation to a conclusion. *Trump v. WEC,* 2021 WL 850635 (Mem.) (Mar. 8, 2021) (denying certiorari).

## LEGAL STANDARD

A court may award fees under Section 1927 against counsel who "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The Seventh Circuit has interpreted this language to authorize fees where an attorney has acted in an "objectively

3

unreasonable" manner by 1) pursuing a claim that is "without a plausible legal or factual basis and lacking in justification" or 2) showing "serious and studied disregard for the orderly process of justice." *Walter v. Fiorenzo,* 840 F.2d 427, 433 (7th Cir. 1988) (internal citations and punctuation omitted). Subjective bad faith is sufficient but not necessary to support the imposition of sanctions; "objective bad faith" is also enough. *Boyer v. BNSF Railway Co.,* 824 F.3d 694, 708 (7th Cir. 2016) (citation omitted), *modified on reh'g,* 832 F.3d 699 (7th Cir. 2016). A court may infer bad faith from the lack of any legal or factual basis for a suit. *See Walter,* 840 F.2d at 433.

In addition to their authority under Section 1927, federal district courts enjoy inherent authority to sanction a party or counsel. *Royce v. Michael R. Needle P.C.,* 950 F.3d 939, 953 (7th Cir. 2020). That authority stems from courts' responsibility to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (internal citation and quotation marks omitted). Sanctions may serve to punish misconduct in a given case and to deter similar conduct in future cases. *See Textor v. Bd. of Regents of N. Ill. Univ.,* 711 F.2d 1387, 1396 (7th Cir. 1983).

## ARGUMENT

The Court should award sanctions against Trump and his counsel under Section 1927 and the Court's inherent authority for all the reasons explained in Governor Evers' motion and supporting papers. In particular, fees are warranted here because the extraordinary relief that Trump sought—to nullify the election results in Wisconsin—was objectively unreasonable. There was no plausible legal or factual basis for such far-reaching, anti-democratic relief. But Trump's and his attorneys' dogged insistence on pursuing it anyway forced the parties and the Court into expedited and costly litigation, so exponentially multiplying the proceedings as to constitute unreasonable and vexatious conduct.

4

**I.      Trump and His Counsel Lacked Any Plausible Basis for the Relief They Sought.**

Trump's complaint sought declarations that the defendants violated the Electors Clause and the Equal Protection and Due Process Clauses, and that these violations "likely tainted" enough ballots to have changed the outcome of the election in Wisconsin. (ECF. No. 1 at pp. 71-72.) He therefore asked the Court to enjoin "any actions inconsistent" with these declarations and to "remand[ ] this case to the Wisconsin legislature to consider [defendants' alleged violations] and determine what remedy, if any, [it] should impose." (*Id.*)

A federal court, however, has no authority to "remand" a case to a state legislature. On the contrary, the Seventh Circuit and other federal courts have repeatedly recognized that they have no authority to instruct a legislative body what to do. *See, e.g., Pitts v. Unarco Indus., Inc.,* 712 F.2d 276, 280 (7th Cir. 1983) ("[I]t is not the courts' business to instruct the Indiana legislature."); *U.S. v. Bd. of Sch. Comm'rs of Indianapolis,* 677 F.2d 1185, 1190 (7th Cir. 1982) ("It is not the province of a federal court to instruct the legislature."); *see also Longshore v. U.S.,* 77 F.3d 440, 443 (Fed. Cir. 1996) ("It is not for this court to instruct Congress on how to oversee and manage its creations."). There was no plausible legal authority for Trump's request for a "remand."

That is why, when pressed on this point, Trump quickly backtracked, revising his request to seek an injunction mandating that Governor Evers certify electors chosen by the Wisconsin legislature. (*See* Dec. and Order, ECF No 134 at 2.) Trump later amended his request for relief again, explaining this time that he wanted the Court to declare the election a "failure" and discard the results. (*See id.*) The common thread in these various formulations was an effort to nullify the election results and ignore the ballots cast by nearly 3.3 million Wisconsin voters.

This Court rightly characterized Trump's legal arguments as "*extraordinary*" and his requested relief as "even more *extraordinary*." (*Id.* at 1.) Indeed, that was an understatement, for

5

there was no legal basis whatsoever for what Trump was asking this Court to do. As the Seventh Circuit put it, there was a "gap" between Trump's desire to change the election results and the relief that a federal court can potentially provide. *Trump v. WEC,* 983 F.3d at 924. Trump's proposed remedy "would [have] impose[d] unquestionable harm on the defendants, and the State's voters." *Id.* at 926. Wisconsin Supreme Court Justice Hagedorn put it more bluntly in a related case, writing that Trump's desired remedy was a "real stunner" that "would appear to be unprecedented in American history"; "the most dramatic invocation of judicial power that I have ever seen." *Wis. Voters Alliance v. WEC,* No. 2020AP1930, pp. 2-3 (Dec. 4, 2020) (unpublished order) (Hagedorn, J., concurring) (copy available at ECF No. 95-18).

Moreover, the court order Trump sought, nullifying an entire election, would be not only unprecedented but also unconstitutional. "It is undeniable that the right to vote is a fundamental right guaranteed by the Constitution." *Shipley v. Chicago Bd. of Election Comm'rs,* 947 F.3d 1056, 1061 (7th Cir. 2020) (citing, *e.g., Burdick v. Takushi,* 504 U.S. 428, 433 (1992)). Accordingly, "the right to vote can neither be denied outright, nor destroyed by alteration of ballots." *Reynolds v. Sims,* 377 U.S. 533, 555 (1964) (internal citations omitted); *but cf. Burdick,* 504 U.S. at 433 (recognizing that "the right to vote in any manner" is not "absolute"). Denial of millions of votes is precisely what Trump's requested relief here would have achieved here. Of course, a court cannot issue a remedy in the election context that is itself constitutionally problematic. *See Bush v. Gore,* 531 U.S. 98, 109 (2000) (stopping recount ordered by state court that was "inconsistent with the minimum procedures necessary to protect the fundamental right of each voter").

Trump and his counsel should have been aware of the fundamental defects with their sought-after remedy before filing this suit. Among other reasons, a federal district court in

Pennsylvania ruled against Trump in a similar case on November 21, 2020—almost two weeks before Trump filed this lawsuit—and explained that:

> Granting Plaintiffs' requested relief would necessarily require invalidating the ballots of every person who voted in Pennsylvania. Because *this Court has no authority to take away the right to vote of even a single person*, let alone millions of citizens, it cannot grant Plaintiffs' requested relief.

*Donald J. Trump for President, Inc. v. Boockvar,* No. 4:20-cv-2078, 2020 WL 6821992, at *13 (M.D. Pa. Nov. 21, 2020) (emphasis added). The Third Circuit affirmed, reiterating that "tossing out millions of mail-in ballots would be drastic and unprecedented, disenfranchising a huge swath of the electorate." *Donald J. Trump for President, Inc. v. Sec'y of Pa.,* 830 Fed. Appx. 377, 382 (3d Cir. 2020) (unpublished). The Third Circuit's opinion came down on November 27, 2020. But rather than heeding the court's admonition, Trump and his legal team filed this action seeking the same unprecedented and baseless relief.

The Court can and should infer from this conduct both objective and subjective bad faith on the part of Trump and his counsel. And given the enormous importance of the electoral process, it should issue a strong sanction to deter Trump and other candidates from coming to federal court seeking similarly baseless relief in the future, a result that is virtually certain to occur absent such a deterrent.

## II. Trump's Baseless Request for Relief Multiplied these Proceedings and Increased Defendants' Costs.

Trump's attempt to overturn the election results was not only frivolous but also led directly to the multiplication of these proceedings and the significant costs incurred by Milwaukee County and its co-defendants. The only reason for the extremely expedited schedule in this Court and in the Seventh Circuit (as well as in state court) was the asserted need to resolve Trump's claims before the Electoral College vote was accepted and a new president inaugurated. That was also the reason why both the federal lawsuit and the state-court lawsuit were allowed to proceed in tandem,

7

rather than in succession. As this Court pointed out in its decision, "given the importance of the federal issue *and the limited timeline available*, it would be inappropriate to wait for the conclusion of the state court case." (ECF No. 134 at 17, emphasis added.) The limited timeline was a function of Trump's requested relief, his unprecedented effort to undo his defeat before there was a new president.[1]

### III. Milwaukee County's Fee Request Is Reasonable.

Milwaukee County seeks an award of $65,520 in attorney fees through April 3, 2021, plus any additional fees incurred thereafter and any punitive or deterrent sanctions the Court deems appropriate. (*See* accompanying Declaration of Andrew A. Jones ("Jones Dec.") ¶ 14 and Ex. A.) The $65,520 figure covers 327.6 hours of attorney time at a discounted rate of $200 per hour. (*Id.*) In these circumstances, that amount is more than reasonable.

Courts typically evaluate a fee request using a lodestar calculation equal to the hours reasonably spent on the case times a reasonable hourly rate. *Montanez v. Simon,* 755 F.3d 547, 553 (7th Cir. 2014). The 327.6 hours spent by Milwaukee County's attorneys at the law firm of Hansen Reynolds LLC are reasonable. (Jones Dec. ¶¶ 11-14.) Due to the expedited case schedule in this Court and the Seventh Circuit, as well as the simultaneous litigation in the circuit court and Supreme Court of Wisconsin, it was necessary to staff this litigation with a team of four lawyers. (*Id.* ¶ 4.) The lawyers divided the various legal issues among themselves and had to work in tandem, often around the clock, to meet extremely short, court-imposed deadlines. (*Id.*) Because the case involved numerous and complex issues of federal constitutional law and various standing,

---

[1] The other major cause of the truncated timeline was of course Trump's unjustifiable delay in challenging the WEC guidance at issue. Trump and his counsel should have known, based on well-established case law, that their delay also barred the relief they sought. *See Trump v. WEC,* 983 F.3d at 925–26 (emphasizing that "[t]he timing of election litigation matters" and discussing the case law in this Circuit).

abstention, and equitable doctrines, it required extensive research, analysis, and writing—all the more so because the stakes were extremely high. (*Id.*) In these circumstances, 327.6 hours was a reasonable expenditure of time. (*Id.* ¶ 12.)

The rate charged by Hansen Reynolds—$200 per hour for all attorneys on the matter—is significantly reduced from the firm's normal rates on complex commercial and constitutional litigation. (*Id.* ¶ 13.) As further evidenced by the declarations filed by the other defendants (ECF Nos. 146–151, 154), $200 per hour is well below the market rate for this type of litigation and is reasonable as well.

## CONCLUSION

For the reasons given above, in the declaration of Andrew A. Jones, and in Governor Evers' motion for fees and accompanying papers, Milwaukee County respectfully requests an order requiring Trump and his attorneys, jointly and severally, to pay Milwaukee County's attorney fees in this action, plus any further sanctions the Court deems appropriate.

Dated at Milwaukee, Wisconsin this 8th day of April, 2021.

**HANSEN REYNOLDS LLC**

*/s/ Andrew A. Jones*
Andrew A. Jones
James F. Cirincione
301 N. Broadway, Suite 400
Milwaukee, WI 53202
(414) 455-7676 (phone)
(414) 273-8476 (fax)
ajones@hansenreynolds.com
jcirincione@hansenreynolds.com

John W. McCauley
10 E. Doty Street, Suite 800
Madison, WI 53703
(608) 841-1351 (phone)
jmcauley@hansenreynolds.com

*Attorneys for Defendants*
*George L. Christenson and Julietta Henry*