# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

DONALD J. TRUMP, Candidate for President
of the United States of America,

        Plaintiff,

    v.                                 Case No.: 2:20-cv-01785-BHL

THE WISCONSIN ELECTIONS COMMISSION, and its
Members, ANN S. JACOBS, MARK L. THOMSEN,
MARGE BOSTELMANN, DEAN KNUDSON,
ROBERT F. SPINDELL, JR., in their official capacities,
SCOTT MCDONELL in his official capacity as the Dane
County Clerk, GEORGE L. CHRISTENSON in his
official capacity as the Milwaukee County Clerk,
JULIETTA HENRY in her official capacity as the
Milwaukee Election Director, CLAIRE WOODALL-
VOGG in her official capacity as the Executive Director
of the Milwaukee Election Commission, MAYOR TOM
BARRETT, JIM OWCZARSKI, MAYOR SATYA
RHODES-CONWAY, MARIBETH WITZEL-BEHL,
MAYOR CORY MASON, TARA COOLIDGE,
MAYOR JOHN ANTARAMIAN, MATT KRAUTER,
MAYOR ERIC GENRICH, KRIS TESKE, in their
official capacities; DOUGLAS J. LA FOLLETTE,
Wisconsin Secretary of State, in his official capacity, and
TONY EVERS, Governor of Wisconsin, in his official capacity,

        Defendants.

---

## DEFENDANTS CORY MASON, TARA COOLIDGE, JOHN ANTARAMIAN, MATT KRAUTER, ERIC GENRICH, AND KRIS TESKE'S REPLY BRIEF IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEY FEES

---

      The plaintiff's brief fails to address the core of the movants' argument for sanctions – that

he named them in a lawsuit with the flimsiest of premises and sought an extraordinary remedy, the

discounting of the votes of the citizens in each municipality, without producing any evidence to

support the allegations involving these defendants. As the movants described in their initial brief, they were the subjects of only a handful of paragraphs in the plaintiff's 72-page complaint. [Dkt. No. 153, p. 3-4; Dkt. No. 1, ¶¶ 214-217, 218, 221-223, 226, 229]. Since the plaintiff failed to address these arguments[1], and because the plaintiff's remaining arguments are unpersuasive, this Court should grant the pending motion for attorney's fees.

## I.     The Movants' Motion was Timely.

Twelve days elapsed between the filing of the judgment in this case plaintiff's and the resolution of the plaintiff's appeal to the Seventh Circuit. Relying primarily on the decision in *Overnite Transportation Co. v. Chicago Industrial Tire Co.,* 697 F.2d 789 (7th Cir. 1983), the plaintiff contends that this Court lacks jurisdiction over the pending motion because it was filed after the ruling on appeal. Yet the fact situation in *Overnite* was not remotely close to that here, and the holding in that case is inconsistent with the Supreme Court's subsequent ruling that federal courts may consider matters such as motions for costs and attorney fees after an appeal is no longer pending. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395 (1990).

For these reasons, as well as the argument set forth in Section III of Governor Evers' Brief in Reply, which these movants adopt and incorporate by reference, this Court has jurisdiction to resolve the defendants' motion.

## II.    The Plaintiff Has Conceded the Movants' Substantive Arguments in Favor of an Award of Attorney Fees.

The movants dispute that any of the plaintiff's claims were meritorious or grounded in law or fact. Rather, as many courts have pointed out, they were an extraordinary and dangerous attempt to distort the rules governing democratic elections in Wisconsin and elsewhere. This was only one

---

[1] The plaintiff also did not dispute that the attorney fees sought are reasonable, both in rate and in time spent.

2

aspect of the plaintiff's larger scheme to undermine the 2020 General Election[2], [3]. *See Trump v. Biden*, 2020 WI 91, ¶ 32, 394 Wis. 2d 629, 951 N.W.2d 568, *cert. denied*, 141 S. Ct. 1387, 209 L. Ed. 2d 128 (2021); *Trump v. Evers*, No. 2020AP1971-OA, (Wis. Dec. 3. 2020). [Dkt. No. 94-4].

As a threshold matter, because the plaintiff failed to address the specific arguments raised by the movants in their motion and brief in support, he has conceded those arguments. A party concedes an argument by failing to respond to it. *Bhd. of Maint. of Way Emps. Div./IBT v. Norfolk S. Ry. Co.*, 903 F. Supp. 2d 583, 598 (N.D. Ill. 2012); *see also Palmer v. Marion County*, 327 F.3d 588, 597–598 (7th Cir.2003). The Seventh Circuit has "repeatedly made clear that perfunctory and underdeveloped arguments that are unsupported by pertinent authority, are waived (even when those arguments raise constitutional issues)." *Kramer v. Banc of Am. Sec., LLC,* 355 F.3d 961, 964 n. 1 (7th Cir.2004). "[G]iven our adversarial system of litigation, it is not the role of this Court to research and construct legal arguments open to the parties, *especially when they are represented by counsel.*" *United States v. Amerson,* 185 F.3d 676, 689 (7th Cir.1999) (emphasis added).

Here, the movants established a specific basis for why they are entitled to an award of fees pursuant to 28 U.S.C. § 1927, 42 U.S.C. § 1988, and this Court's inherent authority. The plaintiff included them as defendants in his suit on very thin grounds and then abandoned those claims completely a few days later by failing to produce *any* evidence specific to the movants' municipalities or how they conducted the 2020 General Election. [Dkt. No. 127 – Stipulation of Proposed Facts]. The only evidence that the plaintiff produced about CTCL grants contradicted the plaintiff's claims that they were somehow manipulated by the movants. And the plaintiff did

---

[2] Trump Pressed Justice Dept. to Declare Election Results Corrupt, Notes Show, https://www.nytimes.com/2021/07/30/us/politics/trump-justice-department-election.html?action=click&module=Spotlight&pgtype=Homepage (July 30, 2021)

[3] Wisconsin GOP leaders say Trump is 'misinformed' after the former president claimed they are hiding election corruption, https://www.jsonline.com/story/news/politics/2021/06/26/vos-says-trump-misinformed-after-former-president-claimed-wisconsin-gop-leaders-hiding-election-corr/5356805001/ (June 26, 2021)

not attempt to explain how such grants violated his constitutional rights. Not surprisingly, since they were absent from the evidentiary record, this Court made no reference to the movants in its Decision and Order, beyond being identified. [Dkt. No. 134]. Because the plaintiff had abandoned this argument, the Court also did not need to address the allegations surrounding CTCL grants.

The plaintiff's allegations regarding drop boxes arguably present a closer call, as he at least addressed drop boxes in his consolidated response. [Dkt. No. 164, pp. 15-17]. But the plaintiff did not, and cannot, show what the movants did or failed to do that justified their involvement in his frivolous suit. Indeed, the plaintiff acknowledges that the Wisconsin Elections Commission developed drop box guidance consistent with information from the U.S. Cybersecurity and Infrastructure Security Agency (CISA). [Dkt. No. 165, pp. 15-16]. The plaintiff did not explain, however, what the movants did (if anything) beyond follow that guidance. Nor did he identify any issues with the movants' use of drop boxes, or how many drop boxes they used, or how many ballots were received via drop box. The only specific issue identified – a drop box that also accepted tax bills, water bills and parking tickets – involved a drop box in Oshkosh, the officials of which were not named as defendants. In the stipulation of facts presented to the Court, there are no facts presented involving the movants' use of drop boxes[4].

Again, the plaintiff failed to address this basis for an award of fees, conceding that the movants apparently were tossed into this suit without justification. Instead, the plaintiff's response

---

[4] The plaintiff's response elides this fact. He states, "Over 500 absentee ballot drop boxes were used across Wisconsin, including in Madison, Milwaukee, Green Bay, Kenosha, and Racine, in the November 2020 presidential election. (ECF 127, p. 8 ¶ 28.)" This information is not contained in the stipulation, which makes no mention of Green Bay, Kenosha or Racine, beyond being identified in their attorneys' signature block. [Dkt. No. 127]. The plaintiff's exhibits contain one media report regarding voting in Green Bay, but it did not involve drop boxes or CTCL grants. [Dkt. No. 117-30]. It also contains the WEC list of drop boxes, which does include drop boxes operated by Kenosha and Racine. [Dkt. No 117-18]. It does not address how these drop boxes were operated. Both the WEC list and other exhibits presented by the plaintiff make clear that many municipalities used drop boxes, but few were named as defendants. [Dkt. No. 117-18; *see e.g.* Dkt. No. 117-19, 117-20, 117-21, 117-22, 117-23].

4

is confined to arguments raised by Governor Evers. [Dkt. No 164, § 3.D]. This is a sufficient and independent reason for this Court to award attorney's fees to the movants.

## III. The Plaintiff's Failure to Pursue Any Claims Against the Movants Requires an Award of Fees.

The plaintiff named the mayors and clerks of the cities of Kenosha, Green Bay and Racine as defendants in his suit. The plaintiff's only allegations involving these defendants were (1) that the municipalities where they served used absentee drop-boxes during the elections and (2) that these municipalities also received grants from the Center for Tech and Civil Life ("CTCL")[5]. [Dkt. No. 1, ¶¶ 208-234]. At least one of these topics – the use of CTCL funds, was fully litigated in this Court before the plaintiff filed his complaint. *Wisconsin Voters All. v. City of Racine*, No. 20-CV-1487, 2020 WL 6129510,*1 (E.D. Wis. Oct. 14, 2020).

Pressing claims that are evidently "worthless," only to abandon them later, is sanctionable conduct. *Mach v. Will Cty. Sheriff*, 580 F.3d 495, 501-502 (7th Cir. 2009). So too is proceeding with claims once a party knows they are without factual support. *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1029 (7th Cir. 1999)(failure to withdraw or amend a counterclaim that an attorney knew lacked any factual basis was sanctionable under Rule 11).

Had the plaintiff or his counsel investigated the CTCL issue, for example, they would have found that Judge Griesbach had ruled that the program was lawful five weeks before the plaintiff filed suit. And had the plaintiff or his counsel reviewed the plaintiff's own exhibits, they would have found that the receipt of CTCL grants was not part of a "directed effort by the five largest cities in Wisconsin to reduce guardrails against mail-in ballot fraud" or "promote a massive absentee ballot expansion program," but rather was a funding opportunity open to "every election

---

[5] The Complaint also contained vague allegations regarding poll workers or election officials correcting absentee ballots or preventing poll observers. [Dkt. No. 1, ¶ 291, 235].

official in the country." [Dkt. No. 117-31, p. 2]. They would have also discovered that *many* Wisconsin municipalities took advantage of this program, belying the plaintiff's claims of "partisan correlation of funding." [Dkt. No. 101-7, pp. 24-28]. Similarly, they would have discovered that the movants' use of drop boxes was consistent with WEC guidance and that many municipalities used drop boxes in the 2020 General Election. [Dkt. No. 117-18; *see e.g.* Dkt. No. 117-19, 117-20, 117-21, 117-22, 117-23]. The plaintiff and his counsel failed to perform this type of basic review, but went ahead and named the movants as defendants. They continue to insist that the movants' conduct was a "privately funded partisan effort" despite evidence *they presented to the Court.* Confusingly, the plaintiff insists that this was both a targeted plan and part of a "statewide proliferation." [Dkt. No. 164, pp. 48-49]. Finally, the plaintiff now claims that he was not challenging election results based on the receipt of CTCL grants, but this is incorrect. The plaintiff's complaint states:

> 295. When viewed in light of the patent violations of Wisconsin election law discussed herein, it is evident that the CTCL funding, the five Mayors' Voting Plan coupled with the unlawful directives of the Wisconsin Elections Commission *facilitated a disturbing number of illicit acts* and practices by Wisconsin election officials which increased the risk of fraud in the November 3, 2020 election and squarely conflicted with the directions of the Wisconsin Legislature."

In any event, the plaintiff now disclaims any issue with the CTCL grants or the voting plans beyond objections to the guidance issued by WEC. Given his current position, it is even more confounding that the movants were involved in this case in the first instance. The plaintiff has demonstrated reckless conduct and bad faith first by including the movants in his lawsuit and then, when it was clear there was no factual or legal basis upon which to proceed against them, by not dismissing them promptly from this action.

**IV.    Conclusion.**

In addition to the foregoing, and for purposes of efficiency, the movants adopt and incorporate by reference in Sections I through III of the Argument section of Governor Evers' Brief in Reply. For the reasons stated herein and in the arguments incorporated by reference, and pursuant to 28 U.S.C. § 1927, 42 U.S.C. § 1988, and the Court's inherent authority, Defendants Cory Mason, Tara Coolidge, John Antaramian, Matt Krauter, Eric Genrich and Kris Teske, in their official capacity, respectfully request this Court to tax attorney's fees in the amount of $42,570 imposed jointly and severally against plaintiff Donald J. Trump and his attorneys.

Dated this 26th day of August, 2021.            LAWTON & CATES, S.C.

*/s/ Daniel P. Bach*
Dixon R. Gahnz, SBN: 1024367
Daniel P. Bach, SBN: 1005751
Daniel S. Lenz, SBN: 1082058
Terrence M. Polich, SBN: 1031375

345 W. Washington Avenue, Suite 201
P.O. Box 2965
Madison, WI 53701-2965
(608) 282-6200

dgahnz@lawtoncates.com
dbach@lawtoncates.com
dlenz@lawtoncates.com
tpolich@lawtoncates.com