# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

DONALD J. TRUMP, Candidate for President of the United States of America,

    Plaintiff,

v.

THE WISCONSIN ELECTIONS COMMISSION, and its members, ANN S. JACOBS, MARK L. THOMSEN, MARGE BOSTELMANN, DEAN KNUDSON, ROBERT F. SPINDELL, JR., in their official capacities, SCOTT MCDONELL in his official capacity as the Dane County Clerk, GEORGE L. CHRISTENSON in his official capacity as the Milwaukee County Clerk, JULIETTA HENRY in her official capacity as the Milwaukee Election Director, CLAIRE WOODALL-VOGG in her official capacity as the Executive Director of the Milwaukee Election Commission, MAYOR TOM BARRETT, JIM OWCZARSKI, MAYOR SATYA RHODES-CONWAY, MARIBETH WITZEL-BEHL, MAYOR CORY MASON, TARA COOLIDGE, MAYOR JOHN ANTARAMIAN, MATT KRAUTER, MAYOR ERIC GENRICH, KRIS TESKE, in their official capacities; DOUGLAS J. LA FOLLETTE, Wisconsin Secretary of State, in his official capacity, and TONY EVERS, Governor of Wisconsin, in his official capacity.

    Defendants.

Case No. 20CV1785

## DEFENDANT GOVERNOR EVERS'S REPLY BRIEF IN SUPPORT OF HIS PETITION FOR ATTORNEYS' FEES AND SANCTIONS

# INTRODUCTION

More than eight months ago, former-President Trump filed this lawsuit in an audacious attempt to overrule the will of the voters by fiat. He sought unprecedented relief, and his team pressed the case in a slapdash manner incommensurate with the gravity of the subject matter. Now, Trump recasts the litigation in a sepia tone, glossing over flaws with conclusory exculpations and dismissing criticism as "Monday morning quarterbacking." (Dkt. 164 at 40, 55) This cavalier attitude typifies the entire case and underscores why sanctions are both warranted and necessary.

Trump provides no legitimate defense of litigation conduct that went beyond mere procedural missteps, constituting a deliberate abuse of the judicial process and attempt to overturn the votes of 3.3 million Wisconsinites. Governor Evers already detailed the conduct of Trump and his counsel. (Dkt. 145 at 9-19) These actions cannot be dismissed as harmless error or seeking a non-frivolous extension of existing law. The sum of this conduct warrants sanctions.[1]

Recent sanctions decisions in other post-election litigation support the propriety of sanctions here. Federal trial courts in Michigan and Colorado awarded fees under both 28 U.S.C. § 1927 and inherent authority in other baseless post-election cases. *King v. Whitmer*, No. 20-13134, slip op. at *103 (E.D. Mich. Aug. 25, 2021); *O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-3747, 2021 WL 3400671 (D. Colo. Aug. 3, 2021).[2] The Michigan and Colorado decisions cited several key considerations also present here. There, as here, the litigation was "not a normal case in any sense," as its purpose was "questioning the validity of a Presidential election, and the fairness of the basic mechanisms of American democracy." *O'Rourke*, 2021 WL 3400671, at *2, *15. There, as here, the attorneys failed to conduct an appropriate pre-suit investigation, filing pleadings quickly thrown together without adequate vetting. *Id.* at *15-23; *King*, slip op. at *80-81. There, as here, attorneys copied portions of the pleadings from other sources without any effort

---

[1] Trump complains that Governor Evers's fee petition was written to "impugn the motives of President Trump and his legal counsel" in ways "expressly intended to be 'punitive.'" (Dkt. 164 at 1-2) But this argument is not about what Trump or his counsel thought or felt—either last fall or now. Rather, it focuses on the actions they took and the consequences that foreseeably followed from those actions.

[2] Pursuant to E.D. Wis. Civil L. R. 7(j)(2), copies of unpublished cases cited here are filed with this brief.

at independent verification. And there, as here, litigation was a "game of wait-and-see" involving a strategic decision "to challenge the legitimacy of the election if and only if Former President Trump lost." *King*, slip op. at *96. For all of these reasons, the courts in both Michigan and Colorado found those cases exemplified bad-faith litigation that merited sanctions. So, too, here.

Trump cannot evade responsibility based on the timing of Governor Evers's motion. The Seventh Circuit's *Overnite* ruling is an antiquated, outlier decision irreconcilable with subsequent Supreme Court precedent. As such, this Court should find Governor Evers's motion timely and impose attorney fees jointly and severally against former-President Trump and his attorneys.[3]

## ARGUMENT

### I. Trump's Litigation Conduct Warrants Sanctions.

Nearly a month after losing re-election and having the results confirmed via recount, Trump prosecuted a lawsuit, devoid of factual or legal support, in an attempt to subvert the voters' will, pushing bad-faith election litigation to new lows. His actions warrant sanctions under the Court's inherent authority, and his attorneys' conduct merits fee shifting under 28 U.S.C. § 1927.

Awarding fees under § 1927 or sanctions under the Court's inherent authority requires a showing of bad faith.[4] (Dkt. 145 at 6-9) Bad faith can be established by the actions of a party or that party's attorney. (*See id.*) "[A] lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law." *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Id.* As the *King* court explained, "Plaintiffs' counsel may not bury

---

[3] Notwithstanding Trump's contrary assertion (embellished with underlining, bold, and italics), Governor Evers seeks no 28 U.S.C. § 1927 award against Trump as a non-lawyer. (*See* Dkt. 164 at 6 n.11) To be sure, Governor Evers seeks relief under both § 1927 and this Court's inherent authority. But, as clearly stated, against Trump personally he seeks only inherent-authority sanctions. (*See* Dkt. 145 at 6-7, 29)

[4] Trump attempts to move the goalposts, asserting that "Governor Evers' *[sic]* concedes he must demonstrate that Plaintiff's lawsuit was 'frivolous.'" (Dkt. 164 at 34) Governor Evers makes no such concession. The standard, as set forth in Governor Evers's opening brief, is objective bad faith. That will often (maybe including here) overlap with frivolousness, but any overlap does not alter the standard.

their heads in the sand and thereafter make affirmative proclamations about what occurred above ground. In such cases, ignorance is not bliss—it is sanctionable." Slip op. at *78.

The totality of the litigation conduct here unequivocally establishes that this suit was, from the outset, unreasonable and vexatious. Both Trump and his counsel should have known that, and his lawyers had an obligation to conduct a reasonable investigation before rushing into court. Individually, the instances of conduct complained of here were egregious; collectively, they establish sanctionable bad faith. Trump offers little substantive defense, instead regurgitating the same threadbare arguments already rejected at every stage of this proceeding and in numerous state-court decisions. The Court should assess sanctions in the amount of the attorney fees Wisconsin taxpayers incurred in this bad-faith litigation.

None of Trump's defenses is convincing, but the points below warrant special attention.

### A. There is no excuse for Trump's egregious delay in challenging the election rules.

Trump offers no legitimate explanation for filing suit nearly one month *after* the election. Fundamentally, his suit challenged Wisconsin's election-administration ground rules. These rules were not new for the November 2020 election. Some were used in the 2016 election, and Trump did not complain, because he liked the outcome of that contest. There is no defense for Trump's decision to sit on his hands and challenge established WEC guidance only once he lost the election.

Trump first argues that WEC's guidance was issued within six weeks of the November election, which he asserts conflicts with the Supreme Court's guidance in *Purcell*. (Dkt. 164 at 43) Trump's factual premise is false. The guidance at issue here took effect well before the election:

- WEC's guidance on witness addresses was issued in October of 2016 and used in 13 elections before Trump's challenge.
- WEC's guidance on indefinitely confined voters was issued in March of 2020, used in three elections, and litigated in the state Supreme Court before Trump' challenge.
- WEC's guidance on absentee-ballot drop boxes was issued in August of 2020, and reiterated the rules under which drop boxes were used in the prior two elections.

Though WEC issued all of the guidance that Trump asserts was unlawful before the November 2020 election, Trump waited until one month *after* the election—and after his loss was confirmed

by recount—before first raising his claims in this federal forum. That is why the Seventh Circuit held that Trump's claims, separate and apart from their lack of merit, were barred by laches. *Trump v. Wis. Elections Comm'n*, 983 F.3d 919, 926 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1516 (U.S. 2021) (Trump's "delay alone is enough to warrant affirming the district court's judgment"). Tellingly, Trump did not even invoke *Purcell* in the merits proceedings or in his initial appellate brief. His sudden reliance on *Purcell* shows that Trump and his attorneys fired before aiming; now, belatedly, they seek to backfill a justification for their precipitous and improper actions.

Trump also attempts to justify his dilatory challenge by asserting that he cannot possibly know the election rules in every state. (Dkt. 164 at 44) This argument is insufficient, as "ignorance of the law is no excuse," *United States v. Dutcher*, 851 F.3d 757, 763 (7th Cir. 2017), and belied by the fact that Trump filed eight pre-election lawsuits in four states (Dkt. 127 at 3). Clearly, Trump could monitor the ground rules pre-election. He is responsible for, and bears the consequences of, his carelessness in ignoring Wisconsin's procedures until after the election.

And carelessness is the only appropriate description. Trump apparently made no effort to investigate the rules until he was dissatisfied with the outcome. The fact that Trump waited until after the votes were counted and recounted to identify and hire counsel for this case lays bare how belated, and poorly thought out, his claims here were. (Dkt. 130 at 22:22-23:5) It also underscores the lack of an "appropriate inquiry," *TCI Ltd.*, 769 F.2d at 445, before filing litigation. Yet, undaunted by the calendar and heedless of their obligations to avoid bad-faith filings, Trump and his attorneys proceeded at the eleventh hour to press these specious claims in an effort to overturn a valid, lawful election. Their approach merits sanctions.

**B. Trump's claims were meritless.**

Trump relies heavily on the Seventh Circuit's ruling that his claims were justiciable and this Court's dicta. Neither protects Trump, or his counsel, from the consequences of their conduct.

Justiciability is the bare minimum for a case to proceed and merely means a court has authority to adjudicate a case. *See, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 701 (2011). It does not

4

Case 2:20-cv-01785-BHL   Filed 08/27/21   Page 5 of 17   Document 170

mean the claims in that case are meritorious. *See, e.g.*, *Baker v. Carr*, 369 U.S. 186, 199 (1962); *Bell v. Hood*, 327 U.S. 678, 682 (1946). This Court questioned Trump's standing but found a justiciable controversy, based on a "tenuous" connection between the claims and the relief sought. (Dkt. 134 at 13 n.8) The Seventh Circuit affirmed that Trump had standing. *Trump*, 983 F.3d at 924-25. None of this goes to the merits of Trump's claims.

Justiciability notwithstanding, both this Court (Dkt. 134 at 17-23) and the Seventh Circuit, *Trump*, 983 F.3d at 926-27, found the claims meritless. The Seventh Circuit rebuked Trump for filing in federal court claims that belonged in—and had already been adjudicated by—state court. *Id.* at 927. It brushed aside Trump's attempt to make a federal case, noting that "even on a broad reading of the Electors Clause, Wisconsin lawfully appointed its electors in the manner directed by its Legislature." *Id.* This Court had reached the same conclusion. (Dkt. 134 at 17-23)

The Seventh Circuit decision emphasizes the frivolousness of this case. Prior to the appeal, state law had been definitively interpreted. *Trump v. Biden*, 2020 WI 91, 394 Wis. 2d 629, 951 N.W.2d 568, *cert. denied,* 141 S. Ct. 1387 (2021). Yet, Trump ignored that binding decision and pressed on. His lawyers deliberately misstated the holding of the case, citing a dissent rather than the majority decision that denied him any relief. *See* Appellant's Brief, *Trump v. Wis. Elections Comm'n*, No. 20-3414, Dkt. 41 at 4, 16, 34 (7th Cir. Dec. 16, 2020).

Even before the appeal, this case was indefensible on the merits. Trump's appeal of the recount was proceeding on an expedited schedule in state court. There was no justification for him to simultaneously seek relief in a federal forum, especially because, as the Seventh Circuit explained, the federal courts "are not the ultimate authority on Wisconsin law. That responsibility rests with the State's Supreme Court." *Trump*, 983 F.3d at 927. Even if Trump's claims were factually based and legally substantiated—and, to be clear, they were neither—this suit had no merit because it was superfluous given the ongoing appeal in the state recount procedure.

For its part, this Court never held that Trump's claims were meritorious or even cognizable. Instead, this Court observed that Trump's legal theory lacked any limiting principle:

> If plaintiff's reading of "Manner" was correct, any disappointed loser in a Presidential election, able to hire a team of clever lawyers, could flag claimed deviations from the election rules and cast doubt on the election results. This would risk turning every Presidential election into a federal court lawsuit over the Electors Clause. *Such an expansive reading of "Manner" is thus contrary both to the plain meaning of the Constitutional text and common sense.*

(Dkt. 134 at 20 (emphasis added)) Litigation advancing a novel interpretation of constitutional text is one thing, but a lawsuit that needlessly duplicates ongoing proceedings in another court and does so to advance an argument at odds with common sense is a bad-faith exercise that merits sanctions.

### C. Trump multiplied proceedings by suing in both state and federal courts.

Trump makes no effort to, nor could he, deny that he pursued nearly identical claims in both federal and state courts. As the Seventh Circuit called out, both the state and federal lawsuits turned on whether WEC guidance was consistent with state law. *Trump*, 983 F.3d at 927. Yet, Trump pursued both suits in search of two bites at the same apple. This deliberate strategy multiplied proceedings, imposed additional expenses on taxpayers, and squandered the Court's time and resources. It is particularly galling because the Wisconsin Supreme Court had already reiterated directly to Trump that the recount appeal was the "exclusive judicial remedy for testing the right to hold an elective office as the result of an alleged irregularity, defect or mistake committed during the voting or canvassing process." Wis. Stat. § 9.01(11); *Trump v. Evers*, No. 2020AP1971-OA (Wis. Dec. 3, 2020) (Hagedorn, J., concurring) (available at Dkt. 94-4).

Rather than try to distinguish the state and federal cases, Trump and his counsel muddy the waters by focusing on justiciability. (Dkt. 164 at 46-48) But, as above, that is no answer. Even if this case raised a justiciable question, it unnecessarily multiplied proceedings. Trump could—and, per Wis. Stat. § 9.01(11), should—have concentrated all of his claims in the state-court recount appeal. Instead, he used this Court as a safety valve to pursue additional procedural and strategic options once he received an adverse state-court ruling. (An adverse ruling was inevitable, because his claims were barred by laches, unsupported by facts, and bereft of merit, as the state courts held. *Trump v. Biden*, 2020 WI 91, ¶¶9-32) By abusing the federal forum to press superfluous, meritless litigation, Trump acted in bad faith and opened himself and his lawyers to sanctions.

### D. Trump multiplied these proceedings by abandoning claims mid-stream.

A key failure that necessitates sanctions here is the lack of any "appropriate inquiry" to ensure Trump's claims were objectively reasonable and not vexatious. *TCI Ltd.*, 769 F.2d at 445. Trump offers only a half-hearted defense of his initial filings and arguments. But the record shows that, by bringing claims without proper vetting, Trump increased the expense of defending this suit. This is particularly true with respect to claims Trump pleaded and then abandoned, even within the one week between the initiation of this case and the merits hearing.

To justify his abandoned Equal Protection claim, Trump asserts he would have seen it through, if only there had been witnesses at the evidentiary hearing. (Dkt. 164 at 52) But the evidence presented was within Trump's control—indeed he bore the burdens of production and of proof. Even after reaching a stipulation, Trump could have presented other evidence—subject to the crucible of adversary litigation—on issues that remained in dispute. Trump's blithe dismissal that the Equal Protection claim was a casualty of the parties' factual stipulation is a non-sequitur.

Moreover, Trump completely ignores that his belated abandonment of his baseless Equal Protection claim increased the costs that Defendants, all government actors, bore to defend this suit. Trump put the Equal Protection claim in his Complaint, and he refused to abandon it at the pretrial conference. (Dkt. 122 at 1) But he offered no coherent argument supporting that claim in the Complaint, his briefing, or oral argument. Defendants had no choice but to research the Equal Protection claim—first trying to construct a plausible theory the claim might be trying to vindicate and then assembling established precedent to dismantle that theory—and respond to it. Trump now implicitly concedes that he abandoned the argument only after the parties reached agreement on stipulated facts, more than two hours after the evidentiary hearing was scheduled to begin. (Dkt. 164 at 50-53) It follows from this concession that Trump acknowledges his litigation conduct required Defendants to waste time and resources rebutting the baseless claim. Here, too, had Trump's attorneys had more than a couple of days to assemble the Complaint (Dkt. 130 at 22:22-23:5), perhaps they could have conducted sufficient pre-suit investigation.

The same failures apply with equal force to the Due Process claim Trump asserted and then abandoned, and the First Amendment claim that Trump asserted and then abandoned (with little explanation except to say it was not actually a claim, but merely an error (Dkt. 164 at 51-52)). In ordinary litigation, parties amend their pleadings and theories to fit the facts unearthed in discovery. Here, there was no discovery and no amendment. Instead, Trump discarded claims willy-nilly whenever convenient and adopted new arguments at will. For instance, he first sought a "remand" to the Wisconsin Legislature (Dkt. 1 at 72), then an order requiring Governor Evers issue a certificate of determination consistent with appointment of electors by the Wisconsin Legislature (Dkt. 109 at 41), and finally to void the election and "revert" the case to the Legislature (Dkt. 130 at 59-60). His scattershot approach not only exacerbated the burdens this needless litigation imposed on Defendants, but also highlighted his counsel's utter lack of basic pre-suit preparation. Both are bases for shifting fees and imposing sanctions.

### E. Trump never adduced evidence to support his claims.

Trump fails even to address the dearth of evidence he presented in support of his claims. He alleged the election was void—without knowing how many ballots were affected by the WEC guidance about which he complained. Trump's Complaint alleges that WEC's practices "likely" affected more than 50,000 ballots. (Dkt. 1 at 72) But he never quantified the affected ballots, much less identified them. He provided no factual basis, just *ipse dixit*. This underscores the absence of pre-suit investigation. Trump was obligated to present evidence, but he offered only speculation that enough ballots were affected to reach his desired outcome. That is not enough. *See King*, slip op. at *70 ("Inferences must be reasonable and come from facts proven, not speculation or conjecture."). State law gave Trump the option to undertake a full recount, which would have allowed his team to identify the ballots they wanted to challenge. Trump demurred. And, even in the two counties where he did undertake a recount, Trump failed to identify actual ballots that were invalid under his erroneous interpretation of state law. Proclaiming that enough ballots *could* have been affected to question the outcome is not justification for a lawsuit attacking the integrity of an

entire election. *See King*, slip op. at *91 ("Nor is it acceptable to use the federal judiciary as a political forum to satisfy one's political agenda. Such behavior by an attorney in a court of law has consequences…. [F]ederal courts are reserved for hearing genuine legal disputes which are well-grounded in fact and law.").

None of this is surprising. Trump's counsel acknowledged in the Complaint that they "liberally borrowed" from an *amicus curiae* brief filed by different counsel, in a different case, brought by a different plaintiff, in a different state. (Dkt. 1 at 10 n.5) It beggars belief that licensed attorneys could believe it proper to import wholesale passages from a brief about Pennsylvania's election, with its own rules and own issues, as a means of formulating allegations against Wisconsin's electoral ground rules. This method of assembling pleadings without conducting an adequate pre-suit investigation merits sanctions.

## II. Other Courts Are Imposing Sanctions in Cases with Similar Circumstances.

Sanctions have been ordered in similarly meritless post-election cases. These decisions have made clear that the conduct of Trump and his counsel here crossed the line and is sanctionable. Federal District Courts in Colorado and Michigan both recently sanctioned attorneys for bringing baseless lawsuits attempting to overturn the results of November's presidential election. Those decisions are instructive, because they both have parallels to this case.

The *O'Rourke* court emphasized the singular subject matter at issue, explaining that lawyers "making allegations questioning the validity of a Presidential election, and the fairness of the basic mechanisms of American democracy, must conduct extensive independent research and investigation into the validity of the claims before filing suit." 2021 WL 3400671, at *15; *see also id.* at *27 ("required degree of due diligence and pre-filing investigation was heightened" in volatile post-election environment). The *O'Rourke* court also emphasized that the lawsuit was brought even after multiple similar lawsuits were uniformly rejected across the country. *Id.* at *7-8. Ultimately, the court imposed sanctions because the "lawsuit put into or repeated into the public record highly inflammatory and damaging allegations" and "[d]oing so without a valid legal basis

or serious independent personal investigation into the facts was the height of recklessness." *Id.* at *24. So, too, in Michigan, where the court concluded the imposition of sanctions was "required to deter the filing of future frivolous lawsuits designed primarily to spread the narrative that our election processes are rigged and our democratic institutions cannot be trusted." *King*, slip op. at *103-04. As the *King* court noted, this "narrative may have originated or been repeated by Former President Trump and it may be one that 'many Americans' share; however, that neither renders it true nor justifies counsel's exploitation of the courts to further spread it." *Id.* at *104. Each of those observations fits this case to a T, but the parallels do not end there.

In both *O'Rourke* and *King*, as here, "Plaintiffs' counsel failed to conduct the pre-filing reasonable inquiry required of them as officers of the court." *Id.* at *93. "As officers of the court, Plaintiffs' counsel had an obligation to do more than repeat opinions and beliefs, even if shared by millions." *Id.* at *94. "[A]ttorneys have an obligation to the judiciary, their profession, and the public (i) to conduct some degree of due diligence before presenting allegations as truth; (ii) to advance only tenable claims; and (iii) to proceed with a lawsuit in good faith and based on a proper purpose." *Id.* at *2. Due to Plaintiffs' "remarkable request" for relief, "any reasonable pre-filing investigation needed to involve extensive due diligence." *O'Rourke*, 2021 WL 3400671, at *28.

And in both *O'Rourke* and *King*, as here, counsel borrowed heavily from other lawsuits, without undertaking independent corroboration. "This is not okay. The Court remains baffled after trying to ascertain what convinced Plaintiffs' counsel otherwise." *King*, slip op. at *80-81 (quoting *Schottenstein v. Schottenstein*, 230 F.R.D. 355, 361-62 (S.D.N.Y. 2005), for principle that "[s]ubstituting another lawyer's judgment for one's own does not constitute reasonable inquiry"); *see also id.* at *83 ("Plaintiffs' counsel will not escape accountability for their failure to conduct due diligence before recycling [] from other cases to support their pleadings here."). The same holds here, where Trump's counsel acknowledges that they "liberally borrowed" from an *amicus curiae* brief filed in a different case. (Dkt. 1 at 10 n.5) That they lacked time to conduct a proper investigation is not a valid excuse. *King*, slip op. at *35-37.

This "borrowing" by Trump's counsel exacerbated the vexatious nature of this case. Trump's counsel relied on the work of other lawyers in other cases from other states for the framework of their claims, including the Equal Protection, Due Process, and First Amendment claims that Trump made no effort to flesh out, much less prove. The *King* court held such an approach sanctionable. Slip op. at *65. The conduct here is worse—not only did Trump and his lawyers fail to present evidence to substantiate most of their claims, they failed even to develop the theories into coherent constitutional arguments. *See* § I.D, *supra*.

There are other parallels as well. For one thing, in *King*, plaintiffs' counsel failed to serve defendants until the court ordered they do so. Slip op.at *7, *16. Here, Trump failed to effectuate service until the morning of the evidentiary hearing. (Dkt. 130 at 42:17-43:17; Dkt. 124) For another, the *King* plaintiffs "failed to present any evidence to support their allegation[s]." Slip op. at *68. This echoes Trump's anemic attempts to justify his abandoned Equal Protection claim by asserting it would have been pursued if only there had been witnesses at the evidentiary hearing. *See* § I.D, *supra*. For a third, in *King*, like here, "Plaintiffs' attorneys waited until after votes were tallied to file this lawsuit, even though the record suggests that—well in advance of Election Day— they knew or should have known about the things of which they complained." *King*, slip op. at *96. "This game of wait-and-see shows that counsel planned to challenge the legitimacy of the election if and only if Former President Trump lost." *Id.* The same is true here. *See* § I.A, *supra*.

Accordingly, the courts in Colorado and Michigan imposed sanctions under both § 1927 and their inherent authority. *O'Rourke*, 2021 WL 3400671, at *31-32; *King*, slip op. at *103. Each of those cases, like this one "should never have been filed. [Defendants] should never have had to defend it. If Plaintiffs' attorneys are not ordered to reimburse [Defendants] for the reasonable fees and costs incurred to defend this action, counsel will not be deterred from continuing to abuse the judicial system to publicize their narrative." *King*, slip op. at *107.

The logic of *King* and *O'Rourke* applies here. The Seventh Circuit has already held that "Rule 11 sets out a standard that we think applies equally to § 1927: a complaint must be warranted by existing law or a good faith argument for the extension, modification, or reversal of existing

11

law." *TCI Ltd.*, 769 F.2d at 447 (internal quotation omitted). The Court's inherent authority extends not only to actual litigation conduct, but also to actions taken (or not taken) prior to filing suit. *Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010). Read together, these two holdings make clear that Trump was obligated to perform appropriate factual and legal research before filing his complaint. Filing this particular suit, in the tinderbox context of last December, under the breakneck timeline Trump insisted upon, without proper factual or legal investigation, and trying to invalidate the results of a presidential election, was nothing short of brazen and reckless. This lawsuit amplified vitriolic rhetoric declaring the November election fraudulent. It, like every other post-election lawsuit filed by Trump and his allies, was doomed from the beginning. Trump and his attorneys cannot escape sanctions by arguing they were merely being creative, when in fact "a reasonably careful attorney would have known, after appropriate inquiry," that their approach was "unsound, … objectively unreasonable and vexatious." *TCI Ltd.*, 769 F.2d at 445.

Nor do *King* and *O'Rourke* stand alone. Rudolph Giuliani, who represented Trump in a number of post-election matters, had his law license suspended based on his false statements regarding the November 2020 election, and for his role in attempting to overturn the results of that election. *Matter of Giuliani*, 197 A.D.3d 1, 146 N.Y.S.3d 266, 283 (N.Y. Sup. Ct. App. Div. 2021). While Mr. Giuliani's law license was suspended primarily for false statements, his sanction nonetheless serves as an example of post-election conduct and litigation leading to consequences. Every lawyer who signed the *King* plaintiffs' pleadings has been ordered to complete continuing legal education and has been referred "for investigation and possible suspension or disbarment." Slip op. at *108. And, as Governor Evers has noted, the District Court for D.C. also made a disciplinary referral on a meritless post-election suit. (Dkt. 145 at 23 & n.9 (citing *Wis. Voters All. v. Pence*, No. CV 20-3791 (JEB), 2021 WL 686359 at *2 (D.D.C. Feb. 19, 2021))

### III. Governor Evers's Petition was Timely Filed.

Governor Evers filed his sanctions motion in a reasonable time. This entire case, including the Seventh Circuit appeal, transpired in three weeks. Trump relies on *Overnite Transportation*

*Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789 (7th Cir. 1983), to argue it is too late for sanctions in this case. But *Overnite* is of questionable validity and, in any event, should not apply here.

The Supreme Court implicitly abrogated the limits *Overnite* applied to § 1927 motions. Writing years after *Overnite*, the Supreme Court held that "a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). Collateral issues, such as "motions for costs or attorney's fees are 'independent proceeding[s] supplemental to the original proceeding.'" *Id.* (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 170 (1939)). Consequently, "a determination may be made after the principal suit has been terminated." *Id.* Indeed, "even 'years after the entry of a judgment on the merits' a federal court could consider an award of counsel fees." *Id.* at 395-96 (quoting *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 451 n.13 (1982)). Here, Defendants sought fees mere months after Trump initiated this lawsuit, and only one month after the Supreme Court denied the last of his fruitless appeals. *Overnite*, even if it has not been abrogated, is simply inapposite.

The district court decisions Trump relies on shed little light because they do not evaluate *Cooter*'s effect on *Overnite*'s continuing vitality. Only one of the cases Trump cites, *Northlake Marketing & Supply, Inc. v. Glaverbel, S.A.*, 194 F.R.D. 633, 635 (N.D. Ill. 2000), even addresses *Cooter*. That case, however, involved neither § 1927 nor inherent authority, and it does not mention *Overnite*. *Northlake*'s only reference to inherent authority or § 1927 arises when the court muses that there should be a uniform three-month time limit for bringing any sanctions motion on any basis.[5] Those musings are not the law, and *Northlake* has no bearing here; it, like the other cases Trump cites to resuscitate *Overnite*, should be disregarded because none engages the substance of *Cooter* and its effect on *Overnite.*

*Overnite*'s status as an outlier further emphasizes its error. (*See* Dkt. 145 at 28-29) Trump's only defense to *Overnite*'s outlier status is to cite three cases, none of which helps his cause. One

---

[5] The *Northlake* court suggested that the 90-day timeline established by *Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1992), may be appropriate to Rule 11, § 1927, and inherent authority, but noted that filing a motion outside of that window was "not a per se bar" under local rules. 194 F.R.D. at 635.

is a Third Circuit decision that rejects *Overnite*'s jurisdictional holding. (*See id.* (citing *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 100 (3d Cir. 1988)) The second is a district court decision in the Sixth Circuit. (Dkt. 164 at 32) But a subsequent Sixth Circuit decision *expressly repudiated* the holding of *Overnite*. (*See* Dkt. 145 at 29 (citing *In re Ruben*, 825 F.2d 977, 982 (6th Cir. 1987)) The repudiation was partially based on the fact that the appeal there—as here—"was pending for only a brief time." *Ruben*, 825 F.2d at 982. Last is an Iowa state-court decision from 1987, borrowing from *Overnite* to address a state-law question. A case rejecting *Overnite*'s holding, another subsequently overruled, and a single, decades-old state-law decision do not disprove the assertion that the legal mainstream has bypassed *Overnite*'s federal jurisdictional holding.

Even if *Overnite* is still good law, it is distinguishable due to the extremely condensed timeline this case followed—a timeline imposed by Trump's strategic choices. Within three weeks, Trump commenced this action, the issues were briefed, oral argument was held, the Court issued a reasoned decision, and a merits appeal was filed, briefed, and decided. Trump appealed on December 12, 2020. (Dkt. 138) The appellate court pressed Governor Evers and all governmental co-Defendants to consolidate their arguments into a joint brief, but allotted only two days for that briefing. Order, *Trump v. Wis. Elections Comm'n*, No. 20-3414, Dkt. 9 (7th Cir. Dec. 14, 2020).

It would have been patently unreasonable to expect any party to submit a petition for fees during the miniscule pendency of the appeal, and it would be deleterious to the administration of justice if a plaintiff who filed a meritless lawsuit and litigated it shoddily, as here, could escape sanctions by rushing through an emergency appeal. In *Overnite*, unlike here, the appeal at issue was pending for eight months, and the fee petition was not filed until two months after the appeal was decided. *See* 697 F.2d at 792. Further, the median Seventh Circuit appeal lasts more than 20 times as long as this one did.[6] Fee motions "must not be unreasonably delayed." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 707 (7th Cir. 2014). This one was not. Governor Evers filed his

---

[6] *See* https://www.uscourts.gov/file/33212/download (last accessed August 17, 2021).

motion within a month of the Supreme Court denying review, and less than four months after the suit began. The timing was eminently reasonable under the extraordinary circumstances.

Even were this Court to find that *Overnite* remains good law, it would have no preclusive effect on this Court's inherent authority. *Overnite* limited the time for motions under § 1927, but not under a court's inherent authority. "[D]istrict courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 953 (7th Cir. 2020) (internal quotation marks and citations omitted). Since *Overnite* does not apply to a district court's inherent authority to impose sanctions, this Court can still exercise its discretion to impose sanctions on the collateral issue of fees.

## IV. Trump Concedes the Reasonableness of the Hourly Fees Requested and the Time Expended by Governor Evers's Counsel.

Trump's lengthy response to the present motions spends most of its time creating and thrashing strawmen. But one aspect of the argument is particularly notable: Trump makes no effort to question or rebut any portion of the affidavits and supporting materials submitted by Governor Evers or any other co-Defendant in support of the motions for fees. He has now waived any challenge to the sufficiency of those materials. *See, e.g.*, *U.S. v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008). There is no dispute about the qualifications of Governor Evers's counsel, the reasonableness of their rates, or the propriety of the time they billed for their work on this case.[7]

### CONCLUSION

Under both 28 U.S.C. § 1927 and this Court's inherent authority, sanctions are warranted to cover the fees incurred in this case. Trump's attempts to paper over his litigation strategy are unavailing. His conduct in this Court cannot be ignored but must serve as a cautionary example.

---

[7] As expressly anticipated (*see* Dkt. 146, ¶34), Governor Evers's counsel submits with this reply brief a supplemental declaration substantiating fees incurred in this litigation since March 28, 2021. The filing of this supplemental declaration does not reopen questions addressed in prior declarations, including the qualifications of counsel, the reasonableness of the rates, or the propriety of time entries already submitted.

Respectfully submitted this 27th day of August, 2021.

/s/ Jeffrey A. Mandell
Jeffrey A. Mandell
Rachel E. Snyder
Richard A. Manthe
STAFFORD ROSENBAUM LLP
222 W. Washington Ave., Suite 900
Madison, WI 53701-1784
Telephone: 608-256-0226
Email: jmandell@staffordlaw.com
Email: rsnyder@staffordlaw.com
Email: rmanthe@staffordlaw.com

*Attorneys for Defendant,*
*Governor Tony Evers*